IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF TEXAS

JUSTIN RIDDLE, Plaintiff,

v.

X CORP aka TWITTER, INC., Defendant.

Case No. 1:25-cv-00073-DII

SUPPLEMENTAL COMPLAINT FOR RENEWED INFRINGEMENT AND DMCA ABUSE

Plaintiff Justin Riddle hereby supplements his Complaint with the following critical developments:

## I. CONTINUED INFRINGEMENT DURING LITIGATION

### A. Deliberate Resurgence of Misconduct

In a striking display of hubris and disregard for the judicial process, the individual misappropriating Plaintiff's likeness has boldly resurfaced on X Corp's platform to resume their campaign of harassment 6 months after the last violation. Even more troublingly, this sudden reappearance coincides to the day with the court's issuance of a subpoena in this matter, raising the specter of insider collusion and obstruction at X Corp. See below, account created in February, 2025.



## B. Incontrovertible Evidence of Ongoing Violations

Plaintiff has meticulously documented the infringer's renewed misconduct, compiling timestamped screen recordings that irrefutably establish the scope and persistence of the infringing posts. This damning video evidence, available at https://youtube.com/shorts/ZbrC9YCi8nI, leaves no doubt that X Corp has once again failed to act in the face of blatant, repeat offenses it is fully aware of - a disturbing echo of the willful blindness that first necessitated this action.

## C. Willful Disregard of DMCA Obligations

As with each prior instance of infringement, Plaintiff dutifully availed himself of X Corp's designated DMCA takedown process, submitting detailed notices that identified the specific posts and accounts at issue. Yet in keeping with its pattern of selective enforcement, X Corp has neither removed the offending content nor suspended the repeat infringer - deliberate inaction that amounts to willful blindness under the standard articulated in *BMG v. Cox*. X Corp's failure to

address open and notorious infringement it has actual knowledge of represents a

wholesale abandonment of its legal duties as a service provider.







## II. PLATFORM ARCHITECTURE FACILITATING ABUSE

### A. Strategic Interface Obfuscation

Compounding its misconduct, X Corp has made the unconscionable yet clearly intentional choice to design its platform in a way that actively conceals harassment from those targeted by it. By requiring victims to proactively search out abusive content directed at them rather than centrally flagging such material, X Corp has created a "head in the sand" system calibrated to superficially distance itself from knowledge of misconduct while ensuring harassers can operate unimpeded. This is not a neutral engineering choice, but a deliberate effort to plausibly deny awareness of the rampant violations X Corp's architecture invites.

### B. Actual and Constructive Knowledge

X Corp's willful blindness defense is further foreclosed by the overwhelming evidence of its actual and constructive knowledge of the infringement at issue. From the complaint properly served on its registered agent to multiple rounds of email and chat communications to the provision of granular takedown notices to the video recordings submitted with this filing, X Corp has received notification of these violations through every conceivable channel. No reasonable observer could conclude the company remains unaware of the repeat offenses or the features of its own product that perpetuate them. X Corp's continued inaction in the face of this

knowledge telegraphs that its true priority lies in protecting abusers rather than victims.

## III. EVASIVE LITIGATION CONDUCT

### A. Retaliatory Selective Enforcement

X Corp's response to being held accountable in this action speaks volumes about its bad faith approach to content moderation and user protection. Rather than deploying its vast resources to investigate Plaintiff's extensively documented claims, X Corp retaliated by arbitrarily unsuspending Plaintiff's account after months of inaction - an about-face clearly intended to disrupt Plaintiff's standing in this litigation. Such blatantly selective enforcement confirms X Corp's two-faced content policies serve as a sword to punish disfavored speech and a shield to immunize preferred parties.

### B. Systematic Suppression of Accountability

Far more insidious than any single act of retaliation, X Corp has simultaneously overhauled its user agreements to erect new procedural barriers carefully calculated to prevent future plaintiffs from holding it accountable for the scourges of infringement, harassment, and abuse its profit model is built on. From truncated limitations periods to obscure venue restrictions to mandatory waivers of core user rights, these oppressive contract terms are unmistakably designed to elevate X Corp's commercial interest in impunity over its ethical duty to safeguard the

community it serves. The fact that X Corp was laser-focused on rolling back user protections at the very moment it was confronted with the real-world ramifications of its negligent stewardship speaks to its true priorities when the veil of public relations is lifted.

C. Prioritizing Liability Over Responsible Stewardship

At every turn, X Corp has revealed its determination to limit its own liability exposure and foreclose avenues of user redress, no matter how much damage is done to its user base in the process. Rather than investing in good-faith reforms to its abusive platform architecture or evenhanded enforcement of its community standards, the company has devoted its legal sophistication to staying one step ahead of accountability though recursively more draconian terms of service. That X Corp feels the need to resort to such legalistic self-protection instead of addressing the root enablers of harassment on its platform is a telling indication that it knows its conduct cannot withstand scrutiny. This is the behavior of an enterprise that recognizes its indifference to user welfare is indefensible on the merits.

https://legal.x.com/en/purchaser-terms.html

D. Structural Betrayal of User Trust

Put simply, this is not how a company that believed in its own righteousness would behave. The X Corp of today sadly bears little resemblance to the once-idealistic startup that publicly championed free expression, user autonomy, and transparent

moderation. Now, as a cynical industry incumbent laser-focused on maximizing engagement at any cost, X Corp acts like a company with everything to hide and nothing to be proud of. Its every move in this litigation, from its use of suspension as a retaliatory weapon to its promulgation of a labyrinthine liability-laundering user agreement, has been calibrated to maintain a sanitized public image while trampling on user rights behind the scenes. The result is a textbook example of the unaccountable corporate overreach the internet's founding visionaries warned us about.

## IV. COMPOUNDED PERSONAL HARMS

The human toll of X Corp's misconduct cannot be overstated. With every day that the company deliberately fails to act against infringement it has been made aware of and has the technical capacity to prevent, it empowers malicious actors to inflict grievous personal and professional wounds on Plaintiff. From the ceaseless anguish of being impersonated by a hateful doppelganger to the incalculable reputational stain of having one's name and likeness associated with harassment to the loss of economic opportunity that flows from an inability to control one's online identity, X Corp's choices have ravaged Plaintiff's well-being and dignity. No one should have to endure such comprehensive violations of their privacy, voice, and self-determination simply to participate in the digital public square.

## V. RELIEF REQUESTED

In light of X Corp's escalating misconduct and the catastrophic individual and societal harms it has wrought, Plaintiff renews his request for:

A. An immediate injunction compelling X Corp to:

1) Permanently remove all content that infringes Plaintiff's copyright or misappropriates his likeness

2) Suspend and ban the accounts responsible for these repeat offenses

3) Implement proactive monitoring and filtering protocols to prevent the reposting of infringing material

4) Reform and redesign platform features that conceal harassment from victims and facilitate abuse

B. Compensatory and enhanced damages including:

1) The maximum statutory damages available for X Corp's willful and repeat infringements

2) Actual damages for the severe emotional, reputational, and economic injuries directly attributable to X Corp's misconduct and deliberate inaction

3) Punitive damages at a level sufficient to strip X Corp of the profits it derived from its choice to tolerate and enable abusive conduct, and to deter the company from perpetuating its harmful practices going forward

C. Continuing court supervision and jurisdiction over:

1) X Corp's pattern of revising its user contracts to suppress accountability and user rights

2) The company's compliance with all ordered injunctive relief, including technical and architectural changes to its platform

3) The implementation of and adherence to robust anti-harassment protocols and repeat infringer policies

D. Any other legal or equitable relief within the power of this Court to grant that would vindicate Plaintiff's rights, prevent further irreparable harm, and send an unambiguous message that the abuse and exploitation of the digital public trust will not be tolerated under the law.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, and that proper service was executed on X Corp through its registered agent as documented in the record.

Respectfully submitted,

Justin Riddle

402-813-2156