**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| JUSTIN RIDDLE,<br><br>      Plaintiff,<br><br>v.<br><br>X CORP. formerly known as TWITTER, INC.,<br><br>      Defendant. | Civil Action No. 1:25-cv-00073-ADA |

**DEFENDANT X CORP.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**I. INTRODUCTION**

Federal Rule of Civil Procedure 12(b)(6) mandates dismissal of Plaintiff's Complaint (Dkt. 3; "Compl."). Plaintiff alleges that unnamed third parties created accounts impersonating Plaintiff on Twitter,[1] the social media platform operated by X Corp., and that X Corp. failed to suspend those accounts. He also alleges that X Corp. suspended his account and charged him for premium services it did not provide to him.

Plaintiff's Complaint should be dismissed for at least four independent reasons.

*First*, Plaintiff's claims fail because X Corp.'s Terms of Service ("Relevant TOS") and Purchaser Terms of Service ("Purchaser Terms"), to which Plaintiff necessarily agreed when he created his account and subscribed to paid services on Twitter, provide X Corp. the express contractual right to suspend Plaintiff's accounts without liability to him, and disclaim any liability for his inability to access or use Twitter or for content posted by other users on the platform.

*Second*, section 230 of the Communications Decency Act of 1996 ("Section 230"), 47 U.S.C. § 230, immunizes X Corp. from Plaintiff's claims seeking to hold X Corp. liable for its

---

[1] "Twitter" the social media platform has been rebranded as "X." For ease of reference, this brief continues to refer to it as "Twitter" because the Complaint does so.

4939-0509-3668 V1

purported decision not to remove the impersonating accounts and content.

*Third*, the First Amendment to the U.S. Constitution independently bars those claims because it protects X Corp.'s editorial decisions about the content it permits to be disseminated on its private social media platform.

*Fourth*, Plaintiff fails to state any plausible claim against X Corp.

Because no amendment can save Plaintiff's futile claims, Plaintiff's Complaint should be dismissed with prejudice.

## II.    BACKGROUND

### A.    The Complaint's Allegations

Plaintiff alleges X Corp. "formerly known as Twitter, Inc." operates "Twitter," the "social media platform[]." Compl. ¶¶ 20, 72. He alleges he has a Twitter account for which he pays for "premium services." *Id.* ¶¶ 22, 48. Plaintiff further alleges that, starting in November 2023, unknown third parties ("Third-Party Does") "creat[ed] Twitter accounts using Plaintiff's name and likeness without his consent" ("Third-Party Accounts") for the purpose of "impersonating him." *Id.* ¶¶ 2, 22, 77. He alleges the Third-Party Does "obtained and altered content" from Plaintiff's account that was "stor[ed] on X Corp[.]'s systems," "in violation of Twitter's terms of service." *Id.* ¶¶ 68, 78. As part of impersonating Plaintiff, the Third-Party Does allegedly used a photograph of Plaintiff and his wife ("Photograph") as the profile picture of the Third-Party Accounts. *Id.* ¶¶ 21–22. He also alleges that, between December 2023 and May 2024, he submitted to X Corp. four "takedown notices" about the Third-Party Does' use of the Photograph to "block the plaintiff while using his image" and to "impersonat[e] him," but that X Corp. did not "remove or disable access to the offending accounts." *Id.* ¶¶ 22–23, 70. Plaintiff also alleges his Twitter account was "suspended" from "February and July 2024" after one of his posts "was reported for violating [X

2

Corp.'s] rules." *Id.* ¶¶ 26, 30. He alleges he could not "access . . . cancellation features" during the period his account was suspended, that X Corp. charged him "six times" for premium services he did not receive, and that X Corp. "[c]onceal[ed] the true nature of its billing practices." *Id.* ¶¶ 30– 31, 49.

Plaintiff asserts eight claims: (1) copyright infringement, (2) "fraudulent billing," (3) negligence, (4) violation of the Texas Deceptive Trade Practices Act ("DTPA"), (5) violation of the Stored Communications Act ("SCA"), (6) violation of the Computer Fraud and Abuse Act ("CFAA"), (7) identity theft under Nebraska Revised Statutes section 28-639, and (8) common law misappropriation of identity. *Id.* ¶¶ 45–55, 65–84. Plaintiff seeks $75 million in statutory damages, as well as financial damages, emotional distress damages, punitive damages, and injunctive relief. *Id.* ¶¶ 57–59, pp. 31–32 (prayer for relief).

### B.    The Relevant TOS and Purchaser Terms

In creating and using his Twitter account, Plaintiff necessarily agreed to the Relevant TOS. RJN, Ex. 1 at 1 ("These Terms are an agreement between you and X Corp., which provides X and the Services . . . ."). And by subscribing to receive premium services on X, Plaintiff necessarily agreed to the Purchaser Terms. *Id.*, Ex. 2 at 1 ("By using or accessing a Paid Service[] from X [Corp.], . . . you agree to be bound by the [Purchaser] Terms."); *id.*, Ex. 3 (same).

The Relevant TOS in effect when his account allegedly was suspended provides that X Corp. "may . . . suspend or terminate users . . . without liability to" Plaintiff, as well as "terminate [Plaintiff's] account . . . for any . . . reason or no reason." *Id.*, Ex. 1 at 2, 3. Those terms also contain a disclaimer which provides that X Corp. "disclaim[s] all . . . liability for . . . the . . . availability . . . of the Services," or any "harm that results from your access to or use of the Services or any Content." *Id.*, Ex. 1 at 3. The Relevant TOS also has a limitation of liability provision that states:

> [X Corp.] SHALL NOT BE LIABLE FOR ANY INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL OR PUNITIVE DAMAGES . . . WHETHER INCURRED DIRECTLY OR INDIRECTLY, OR ANY . . . INTANGIBLE LOSSES, RESULTING FROM . . . ANY CONDUCT OR CONTENT OF ANY THIRD PARTY ON THE SERVICES, INCLUDING WITHOUT LIMITATION, ANY . . . OFFENSIVE OR ILLEGAL CONDUCT OF OTHER USERS OR THIRD PARTIES . . . . THE LIMITATIONS OF THIS SUBSECTION SHALL APPLY TO ANY THEORY OF LIABILITY, WHETHER BASED ON WARRANTY, CONTRACT, STATUTE, [or] TORT . . . .

*Id.*, Ex. 1 at 4. The Relevant TOS also provides that the "[t]he laws of the State of California . . . will govern these Terms and any dispute that arises between [Plaintiff] and [X Corp.]" *Id.*, Ex. 1 at 4.[2]

The version of the Purchaser Terms in effect when Plaintiff's account allegedly was suspended provide that "X [Corp.] may suspend or terminate [the user's] access to Paid Service(s) or cease providing [the user] with all or part of the Paid Services (without any liability) at any time for any or no reason." *Id.*, Ex. 2 at 2; Ex. 3 at 2. Those terms also have a limitation of liability provision that is substantively identical to that contained in the Relevant TOS. *Id.*, Ex. 2 at 3; Ex. 3 at 3. The Purchaser Terms also provide:

> SUBSCRIPTION PLANS ARE PREPAID, NON-REFUNDABLE (UNLESS REQUIRED BY LAW), AND AUTOMATICALLY RENEW AT THE END OF EACH SUBSCRIPTION PERIOD UNLESS THE SUBSCRIPTION IS CANCELLED FOLLOWING THE CANCELLATION PROCEDURES BELOW.

*Id.*, Ex. 2 at 5; Ex. 3 at 5. And in a section titled "Cancelling Your Subscription," the Purchaser Terms provide that the applicable cancellation procedures depend on the third-party payment processor the user used to subscribe to X Premium:

> (1) "[i]f you purchased your [Twitter] Premium subscription using Apple's in-app purchasing, you may only cancel your subscription via the Apple App Store";
> (2) "[i]f you purchased . . . using Google's in-app purchasing, you may only

---

[2] After the alleged events giving rise to this action occurred, X Corp. updated the TOS, which now contain a choice of law provision in favor of the State of Texas.

cancel your subscription via the Google Play Store"; and (3) "[i]f you purchased
. . . using Stripe, you may only cancel your subscription via Stripe."

*Id.*, Ex. 2 at 5; Ex. 3 at 5. They also explain: "Regardless of how your subscription was purchased, your subscription automatically renews unless you cancel at least 24 hours before your subscription period ends." *Id.*

## III.    LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citation omitted). "[P]lausibility" requires the plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable." *Id.* at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. While "pro se complaints are held to less stringent standards . . ., regardless of whether the plaintiff is proceeding pro se or is represented by counsel, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (cleaned up).

## IV.    ARGUMENT

### A.    California Law Applies to Plaintiff's State Law Claims

As a threshold matter, California law applies to Plaintiff's state law claims under the Relevant TOS's choice of law provision. "A federal court is required to follow the choice of law rules of the state in which it sits." *Resol. Tr. Corp. v. Northpark Joint Venture*, 958 F.2d 1313, 1318 (5th Cir. 1992). "Texas law recognizes the 'party autonomy rule' that parties can agree to be governed by the law of another state." *Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319, 324 (Tex.

2014). To determine whether a choice of law provision is enforceable, Texas courts apply section 187 of the Restatement (Second) of Conflicts of Laws. *Id.* Under that section, "whether a choice-of-law provision is enforceable depends initially on whether the issue in dispute is one that the parties could have resolved by including an explicit provision in their contract." *McKeehan v. McKeehan*, 355 S.W.3d 282, 291 (Tex. App. 2011) (citing Restatement (Second) Conflicts of Laws § 187). Here, the disputed issues are resolvable by express provisions in the Relevant TOS. The Relevant TOS expressly addresses Plaintiff's contention that X Corp. is liable for conduct of the Third-Party Does and content on the Third-Party Accounts. RJN, Ex. 1 at 4 (limiting X Corp.'s liability for, among other things, "ANY CONDUCT OR CONTENT OF ANY THIRD PARTY" on Twitter; *see also Fagan Holdings, Inc. v. Thinkware, Inc.*, 750 F. Supp. 2d 820, 825 (S.D. Tex. 2010) (issue of performance and breach of contract "can be resolved through reference to explicit provisions" of contract).[3]

The Relevant TOS' choice of law provision also encompasses Plaintiff's state law claims. "Choice-of-law provisions can be either narrow—drafted to apply only to the interpretation or construction of an agreement—or broad—drafted to apply to the entirety of the parties' relationship." *Canidae, LLC v. Cooper*, 2022 WL 660197, at *14 (N.D. Tex. Feb. 9, 2022) (citing *Caton v. Leach Corp.*, 896 F.2d 939, 943 (5th Cir. 1990)), *report & recomm. adopted*, 2022 WL 658581 (N.D. Tex. Mar. 4, 2022). The Relevant TOS's choice of law provision broadly applies to Plaintiff's state law claims, and therefore California law governs them. *See* RJN, Ex. 1 at 4 ("The laws of the State of California, excluding its choice of law provisions, will govern these Terms and *any dispute* that arises between you and [X Corp.]" (emphasis added)); *see also Grosser v.*

---

[3] Plaintiff does not dispute the validity or enforceability of the TOS. *See* Compl. ¶ 78 (Third-Party Does' "impersonation" of Plaintiff was "in violation of Twitter's terms of service").

*Red Mango FC, LLC*, 2013 WL 12134086, at *6 (N.D. Tex. Apr. 25, 2013) (choice of law clause "encompasse[d] [plaintiff's] extracontractual claims" where the clause covered "all claims arising out of or related to this Agreement or the parties' relationship created hereby").

Thus, California law applies to Plaintiff's state law claims.

### B.    The Relevant TOS and Purchaser Terms Expressly Bar Plaintiff's Claims

The disclaimers and limitation of liability clauses in the Relevant TOS and the Purchaser Terms, which are binding on Plaintiff, bar Plaintiff's claims against X Corp. The Relevant TOS provides that X Corp. "disclaim[s] all . . . liability for . . . the . . . availability . . . of the Services" RJN, Ex. 1 at 3. And the Relevant TOS and the Purchaser Terms provide that X Corp. "SHALL NOT BE LIABLE FOR ANY . . . DAMAGES . . . RESULTING FROM . . . ANY CONDUCT OR CONTENT OF ANY THIRD PARTY ON THE SERVICES" for "ANY THEORY OF LIABILITY," including "STATUTE" and "TORT (INCLUDING NEGLIGENCE)." *Id.*, Ex. 1 at 4; *id.*, Ex. 2 at 3; *id.*, Ex. 3 at 3. "Limitation of liability clauses 'have long been recognized as valid in California' and may be used at a dismissal stage to reject a party's claims." *KST Data, Inc. v. DXC Tech.*, 2018 WL 5733515, at *3 (C.D. Cal. Apr. 30, 2018) (quoting *Lewis v. YouTube, LLC*, 244 Cal. App. 4th 118, 125 (2015) (dismissing claim based on limitation of liability clause); *see also Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 36 (2021) (enforcing limitation of liability clause in a prior version of the TOS).

All of Plaintiff's claims are based on the Third-Party Does' purported creation of accounts impersonating Plaintiff on Twitter and on X Corp.'s alleged charging of him for premium services when his account was suspended. *See* Compl. ¶¶ 45–55, 65–84. His claims therefore fall squarely within, and are completely barred by, the disclaimer and limitation of liability clauses in the Relevant TOS and the Purchaser Terms. *See Damner v. Facebook, Inc.*, 2020 WL 7862706, at *6–

8 (N.D. Cal. Dec. 31, 2020) (dismissing negligence claim because limitation of liability clauses disclaimed protecting users and responsibility for third-party actions); *Darnaa, LLC v. Google Inc.*, 236 F. Supp. 3d 1116, 1123 & n.3 (N.D. Cal. 2017) (enforcing YouTube's limitation of liability clause in its terms of service and dismissing complaint), *aff'd sub nom. Darnaa, LLC v. Google LLC*, 756 F. App'x 674 (9th Cir. 2018).

      **C.**     **Section 230 Immunizes X Corp. from Plaintiff's Claims**

Plaintiff's negligence, SCA, CFAA, Nebraska identity theft, and misappropriation of identity claims seek to hold X Corp. liable based on the Third-Party Accounts and content, and thus they are barred by Section 230. "By its plain text, [Section] 230 creates federal immunity to any cause of action that would make internet service providers liable for information originating with a third-party user of the service." *Diez v. Google, Inc.*, 831 F. App'x 723, 724 (5th Cir. 2020). Under Section 230(c)(1), "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." Section 230(e)(3) provides, in relevant part, "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." "Courts have construed the immunity provisions in § 230 broadly in all cases arising from the publication of user-generated content." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (collecting cases).

Here, all three prongs of the Section 230 analysis are met: (1) X Corp. is an "interactive computer service" provider; (2) the Third-Party Accounts and content constitute "information provided by another information content provider"; and (3) Plaintiff's allegations treat X Corp. as a "publisher" of that content. *See* 47 U.S.C. § 230 (c)(1). Thus, X Corp. is immune from liability for Plaintiff's claims that are based on those accounts and content.

*X Corp. is an "interactive computer service" provider.* Section 230 broadly defines "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer . . . service." 47 U.S.C. § 230(f)(2). As courts unanimously have held, X Corp. (formerly Twitter, Inc.), is an "interactive computer service provider[]." *E.g.*, *Morton v. Twitter, Inc.*, 2021 WL 1181753, at *3 (C.D. Cal. Feb. 19, 2021) ("Twitter provides the prototypical service entitling it to protections of [Section 230]" and "[e]very decision the Court has seen to consider the issue has treated Twitter as an interactive computer service provider, even at the motion to dismiss stage." (citation omitted)). Plaintiff's allegations require the same conclusion. *See* Compl. ¶ 20 (X Corp. "operates one of the world's largest the social media platforms").

*The Third-Party Accounts and content are information provided by another "information content provider."* Section 230 defines an "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). The alleged Third-Party Accounts and content from those accounts constitute "information provided by another information content provider" —*i.e.*, the Third-Party Does— under the second prong of the Section 230 analysis. *E.g.*, Compl. ¶ 67 (the Third-Party Does "creat[ed] accounts impersonating Plaintiff"); *see Herrick v. Grindr LLC*, 765 F. App'x 586, 591 (2d Cir. 2019) (defendant was not the "information content provider" of "impersonating content" created by a third party); *Wells v. Youtube, LLC*, 2021 WL 2652966, at *4 (N.D. Tex. May 17, 2021) (YouTube was not the "information content provider" because plaintiff "does not dispute that the provider of her image was a third party"), *report & recomm. adopted*, 2021 WL 2652514 (N.D. Tex. June 28, 2021); *La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 994 (S.D. Tex.

2017) (Facebook was not the "information content provider" because plaintiff "fail[ed] to allege a single fact suggesting that the Facebook Defendants authored the offending posts.").

*Plaintiff's claims seek to treat X Corp. as a "publisher."* For Plaintiff's claims that seek to hold X Corp. liable for the Third-Party Accounts and content, the third prong of Section 230 is satisfied. 47 U.S.C. § 230(c)(1); *see also Fed. Trade Comm'n v. Match Grp., Inc.*, 2022 WL 877107, at *7 (N.D. Tex. Mar. 24, 2022) (Section 230 barred fraud claims premised on "accounts created by fraudsters"); *Herrick*, 765 F. App'x at 591 (Section 230 barred tort claims premised on defendant's failure to remove "accounts impersonating" plaintiff).

For his negligence, SCA, CFAA, Nebraska identity theft, and misappropriation of identity claims, Plaintiff alleges the Third-Party Does "creat[ed] Twitter accounts using Plaintiff's name and likeness," including the Photograph, and that X Corp. failed to "remove or disable access to the offending accounts and communications." Compl. ¶¶ 2, 22, 70, 77; *see also id.* ¶¶ 51–52, 65–84. These claims, at their core, seek to impose liability against X Corp. for its alleged decision not to suspend the Third-Party Accounts and not to remove their content, and thus the third prong of the Section 230 analysis is met. *See Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1170–71 (9th Cir. 2008) ("[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230"); *La'Tiejira*, 272 F. Supp. 3d at 994 (Section 230 barred claims that "seek to hold the . . . Defendants liable for decisions about the monitoring, screening, and deletion of user-generated content").

In sum, all three prongs of the Section 230 analysis are met, and therefore X Corp. is immune from Plaintiff's negligence, SCA, CFAA, Nebraska identity theft, and misappropriation of identity claims. *See Al-Ahmed v. Twitter, Inc.*, 648 F. Supp. 3d 1140, 1162 (N.D. Cal. 2023)

(Section 230 barred SCA and state statutory claims); *Joude v. WordPress Found.*, 2014 WL 3107441, at *8 (N.D. Cal. July 3, 2014) (Section 230 barred claim for misappropriation of identity).

###### D. The First Amendment Bars Plaintiff's Claims

The First Amendment independently bars Plaintiff's negligence, SCA, CFAA, Nebraska identity theft, and misappropriation of identity claims because that constitutional amendment protects X Corp.'s editorial decisions about what content it permits to be disseminated on its private social media platform.

The Supreme Court recently confirmed that "[w]hen [social media] platforms use their Standards and Guidelines to decide which third-party content those feeds will display . . . they are making expressive choices. And because that is true, they receive First Amendment protection." *Moody v. NetChoice, LLC*, 603 U.S. 707, 740 (2024). Consistent with this conclusion, this Court has recognized that "[l]ike a newspaper or a news network, [X Corp.] makes decisions about what content to include, exclude, moderate, filter, label, restrict, or promote, and those decisions are protected by the First Amendment." *O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1186–87 (N.D. Cal. 2022) (dismissing on First Amendment grounds claims based in part on X Corp.'s suspension of a user's account), *aff'd on other grounds sub nom. O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023); *see also Padilla*, 579 F. Supp. 3d at 1188 ("[X Corp.] has important First Amendment rights that would be jeopardized by a Court order telling [X Corp.] what content-moderation policies to adopt and how to enforce those policies."); *Mac Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251, 1261 (S.D. Fla. 2021) (X Corp. "has a First Amendment right to decide what to publish and what not to publish on its platform" (internal quotation marks omitted)). Here, Plaintiff's negligence, SCA, CFAA, Nebraska identity theft, and misappropriation of identity claims stem from the same

protected publisher conduct—X Corp.'s alleged decisions not to suspend the Third-Party Accounts and not to remove their content. *See* Compl. ¶¶ 51–52, 65–84. Thus, the First Amendment bars those claims.

### E.    Plaintiff Fails to State Any Plausible Claim for Relief

#### 1.    *Plaintiff Fails to Allege a Plausible Copyright Infringement Claim*

Two types of copyright infringement exist: direct and secondary. *BWP Media USA, Inc. v. T & S Software Assocs., Inc*., 852 F.3d 436, 439 (5th Cir. 2017). "Direct liability is imposed on those who trespass into the copyright owner's exclusive domain by using or authorizing the use of the copyrighted work." *Id.* (cleaned up). "Secondary infringement involves liability for actions of third parties." *Id.* Courts have recognized two types of secondary infringement: contributory infringement and vicarious infringement. *Joseph Paul Corp. v. Trademark Custom Homes, Inc.*, 2017 WL 5479611, at *4 (N.D. Tex. Nov. 15, 2017) (citing *Metro-Goldwyn-Mayer Studios, Inc. v. Groksler, Ltd.*, 545 U.S. 913, 930 (2005).

Plaintiff fails to plausibly allege that X Corp. directly infringed the copyright to his Photograph. The elements of direct copyright infringement are "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *BWP Media*, 852 F.3d at 439. The second element is not satisfied unless the defendant "acted with 'volitional conduct'— that is, there must be actual infringing conduct with a nexus sufficiently close and causal to the illegal copying that one could conclude that the [defendant] . . . trespassed on the exclusive domain of the copyright owner." *Canada Hockey, LLC v. Texas A&M Univ. Athletic Dep't*, 2022 WL 445172, at *10 (5th Cir. Feb. 14, 2022) (cleaned up) (quoting *BWP Media*, 852 F.3d at 440). Plaintiff's copyright infringement claim is based on the *Third-Party Does'* purported use of the Photograph; Plaintiff does not allege any "volitional conduct" by X Corp. *See* Compl. ¶ 22;

*Canada Hockey*, 2022 WL 445172, at *10 (affirming dismissal of direct infringement claim premised on third party's infringing conduct); *BWP Media*, 852 F.3d at 442 (no direct infringement where defendant "host[ed] the forum on which infringing content was posted, but its connection to the infringement end[ed] there"). Thus, the Complaint fails to plausibly allege direct copyright infringement by X Corp.

Plaintiff also fails to plausibly allege contributory copyright infringement by X Corp. "Contributory infringement requires evidence of 'active steps taken to encourage infringement.'" *Danze & Davis Architects, Inc. v. Legend Classic Homes, Ltd*., 2012 WL 13046845, at *3 (S.D. Tex. Jan. 5, 2012) (ellipsis omitted) (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 930 (2005)). Plaintiff does not allege that X Corp. actively encouraged the Third-Party Does to use his Photograph (nor could he plausibly do so), and therefore his contributory copyright infringement claim fails. *See Johnston v. Kroeger*, 2021 WL 3571279, at *4 (W.D. Tex. Aug. 11, 2021) (dismissing contributory infringement claim where plaintiff failed to allege defendant "materially contributed to infringing activity"), *report & recomm. adopted*, 2021 WL 8442050 (W.D. Tex. Aug. 26, 2021); *Danze & Davis*, 2012 WL 13046845, at *4 (dismissing with prejudice contributory infringement claim where plaintiff did not allege defendant "actively sought to encourage and/or promote the use of its . . . services to induce, cause, or contribute materially to the infringing conduct of others").

Plaintiff also fails to plausibly allege vicarious copyright infringement, which imposes liability only "where a defendant profits directly from the infringement and has a right and ability to supervise the direct infringer." *BWP Media USA, Inc. v. T & S Software Assocs., Inc*., 2015 WL 3406536, at *2 (N.D. Tex. May 27, 2015) (internal quotation mark omitted) (citing *Metro-Goldwyn-Mayer*, 545 U.S. at 931 n.9). Plaintiff does not allege that X Corp. profited directly from

13

the Third-Party Does' purported use of the Photograph, which is fatal to his claim. *See Bell v.*
*Llano Indep. Sch. Dist.*, 2020 WL 5370591, at *5 (W.D. Tex. Feb. 13, 2020) (dismissing vicarious
infringement claim where plaintiff failed to allege defendant received any "direct financial benefit"
from another party's direct infringement). Nor does the Complaint plausibly allege that X Corp.
had the right or ability to "supervise" the Third-Party Does. *See Canada Hockey LLC v. Texas*
*A&M Univ. Athletic Dep't*, 2019 WL 13131745, at *12 (S.D. Tex. Mar. 29, 2019) (dismissing
vicarious infringement claim where plaintiffs did not allege defendant "had supervisory authority
over" any of the "allegedly direct infringers"), *aff'd*, 2022 WL 445172 (5th Cir. Feb. 14, 2022).

In sum, Plaintiff fails to plead a plausible copyright infringement claim.

## 2.    *Plaintiff Fails to Allege a Plausible "Fraudulent Billing" Claim*

At the outset, Plaintiff's "fraudulent billing" claim fails because it is not an actual claim.
Even if construed as a fraud claim, it still fails. The elements of fraud under California law are:
"(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of
falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and
(e) resulting damage." *Lazar v. Superior Ct.*, 12 Cal. 4th 631, 638 (1996).[4] Plaintiff fails to
plausibly allege any of these elements, much less with the requisite particularity. *See Williams v.*
*WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997) (cleaned up) ("[W]e apply [Rule 9(b)] with
force, without apology."). Plaintiff's conclusory allegation that X Corp. "[f]ail[ed] to disclose
material facts about account suspension and billing" does not identify with particularity any

---

[4] The elements of fraud are similar under Texas law. *See JPMorgan Chase Bank, N.A. v. Orca*
*Assets G.P., LLC*, 546 S.W.3d 648, 653 (Tex. 2018) (elements: (1) false representation; (2) the
defendant "knew the representation was false or made it recklessly as a positive assertion without
any knowledge of its truth;" (3) defendant's intent to induce reliance; and (4) plaintiff's actual
and justifiable reliance resulting in injury); *Smith v. BCE Inc.*, 225 F. App'x 212, 218 (5th Cir.
2007) (fraud by omission requires "all the [same] elements" except "the misrepresentation
element can be proven by omission of a material fact in light of a duty to disclose" (cleaned up)).

purportedly misrepresented information. Compl. ¶ 48; *see also Casey v. Gen. Motors, LLC*, 2021 WL 1388638, at *8 (S.D. Cal. Apr. 13, 2021) (Plaintiff "fails to describe with specificity the content of the omission and where the omitted information should or could have been revealed . . . ." (cleaned up)). Plaintiff also does not allege any facts showing that X Corp. knew it was omitting any information or intended to defraud him. *See Eferton DMCC v. Asia-Glob. Renewable Energy Corp.*, 2016 WL 5886900, at *1 (C.D. Cal. Apr. 22, 2016) (dismissing fraud claim where plaintiff provided no "factual basis that would make the allegations of knowledge and intent plausible"). Plaintiff also fails to plausibly allege actual or justifiable reliance, because he fails to allege he "changed his position in reliance on" any purported omission by X Corp., much less any damages caused by any purported omission. *Deschaine v. IndyMac Mortg. Servs.*, 2014 WL 281112, at *4 (E.D. Cal. Jan. 23, 2014) (dismissing fraud claims), *aff'd*, 617 F. App'x 690 (9th Cir. 2015); *Austin v. Zhang*, 2022 WL 298573, at *2 (N.D. Cal. Feb. 1, 2022) (dismissing fraud claim where plaintiff failed to allege "how he changed position in reliance on the statement, or how reliance on the statement caused him damages").

Thus, Plaintiff's "fraudulent billing" claim thus should be dismissed.

### 3.    *Plaintiff Fails to Allege a Plausible Negligence Claim*

Under California law, "[t]he elements of a negligence cause of action are the existence of a legal duty of care, breach of that duty, and proximate cause resulting in injury." *Castellon v. U.S. Bancorp*, 220 Cal. App. 4th 994, 998 (2013). Plaintiff's negligence claim is based on X Corp.'s alleged (1) failure to prevent the Third-Party Does' purported use of the Photograph to impersonate him and (2) billing for premium services after suspending Plaintiff's Twitter account. *See* Comp. ¶¶ 51–53. Neither theory plausibly alleges negligence.

Under California law, generally "there is no duty to act to protect others from the conduct

of third parties." *Brown v. USA Taekwondo*, 11 Cal. 5th 204, 214 (2021). There are exceptions to this rule, where "there exists a special relationship between the parties" or there is "some other set of circumstances giving rise to an affirmative duty to protect." *Id.* at 209. The special relationship doctrine requires the defendant have either (a) a special relationship with the plaintiff that gives the plaintiff "a right to expect protection," or (b) a special relationship with the third party where the defendant has "an ability to control the third party's conduct." *Golick v. Cal.*, 82 Cal. App. 5th 1127, 1149 (2022) (cleaned up).

Plaintiff does not allege facts that would show he and X Corp. had a special relationship such that plaintiff had a right to expect protection from X Corp or that X Corp. had an ability to control the Third Party Does' conduct. *See id.* at 1149 ("Relationships between parents and children, colleges and students, employers and employees, common carriers and passengers, and innkeepers and guests, are all examples of special relationships that give rise to an affirmative duty to protect."); *King v. Facebook, Inc.*, 572 F. Supp. 3d 776, 786 (N.D. Cal. 2021) (no "special relationship" between Facebook and plaintiff-user). Plaintiff also does not allege "some other set of circumstances" that would give rise to an "affirmative duty" on X Corp.'s part to protect Plaintiff from the Third-Party Does' conduct. *See Golick*, 82 Cal. App. 5th at 1144–45 (cleaned up) (such circumstances exist where the defendant placed the plaintiff "in a dangerous situation," exposed the plaintiff "to an unreasonable risk of harm," or "undert[ook] to aid" the plaintiff). As such, he fails to plausibly allege X Corp. owed him a duty to protect him from the Third-Party Does' conduct.

To the extent Plaintiff's negligence claim is based on X Corp.'s alleged charges for premium services Plaintiff allegedly did not receive, the claim fails because cancellation of subscriptions is explicitly governed by the Purchaser Terms, RJN, Ex. 2 at 5, Ex. 3 at 4-5, and

"conduct amounting to a breach of contract becomes tortious only when it also violates a duty *independent of* the contract arising from principles of tort law." *Erlich v. Menezes*, 21 Cal. 4th 543, 551 (1999) (emphasis added). As such, Plaintiff does not plausibly allege any duty concerning his purported subscription for premium services that is independent of the Purchaser Terms to which he agreed. *See Mishiyev v. Alphabet, Inc.*, 444 F. Supp. 3d 1154, 1160 (N.D. Cal. 2020) (dismissing negligence claim with prejudice where plaintiff "d[id] not plead the existence of any duty independent of [defendant's] contractual obligations"), *aff'd*, 857 F. App'x 907 (9th Cir. 2021). Also, where, as here, "the parties are in contractual privity" and the plaintiff's claims are "not independent of the contract," California's economic loss rule bars recovery for negligence where no physical injury to a person or property is alleged.[5] *Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 535 (2022); *see Udo v. Wells Fargo Bank, N.A.*, 2023 WL 8600791, at *2 (N.D. Cal. Dec. 12, 2023) (economic loss rule barred negligence claim alleging only economic loss).[6]

---

[5] Narrow exceptions to the rule exist, but Plaintiff does not allege facts sufficient to meet any of those exceptions, nor would any apply here. *See Shahinian v. Kimberly-Clark Corp.*, 2015 WL 4264638, at *8 (C.D. Cal. July 10, 2015) ("California's economic loss rule has exceptions that fall into two broad categories. The first . . . applies to product liability cases, inapplicable here, and the second . . . applies to breaches of a noncontractual duty . . . where the conduct also (1) breaches a duty imposed by some types of 'special' or 'confidential' relationships; (2) breaches a 'duty' not to commit certain intentional torts; or (3) was committed 'intending or knowing that such a breach will cause severe, unmitigable harm in the form of mental anguish, personal hardship, or substantial consequential damages.'" (citations and quotation marks omitted)).

[6] Plaintiff also cannot recover for his purported emotional harm. Recovery is "limited to economic loss unless malice, breach of a fiduciary duty, physical injury or impact," or an "unusually extreme or outrageous circumstance" is shown. *Maynard v. United Servs. Auto. Ass'n Fed. Sav. Bank*, 2022 WL 1283153, at *1–2 (N.D. Cal. Feb. 11, 2022) (citing *Branch v. Homefed Bank*, 6 Cal. App. 4th 793, 800 (1992)). Indeed, "[i]t is only in specialized cases where recovery of emotional distress damages has been allowed for a negligence claim without physical injury . . . ." *Maynard*, 2022 WL 1283153, at *1–2 (citing *Branch*, 6 Cal. App. 4th at 800, and *Quezada v. Hart*, 67 Cal. App. 3d 754, 762 (1977)). The Complaint does not plausibly allege any of these circumstances, and therefore Plaintiff cannot recover for his purported emotional harm.

17

Plaintiff therefore fails to plausibly allege a negligence claim, which should be dismissed.

**4.** ***Plaintiff Fails to Allege a Plausible DTPA Claim***

Plaintiff's claim for violation of the DTPA should be dismissed. Because California law applies (Section IV.A, *supra*), this Texas-law claim is barred. *See Maynard v. PayPal, Inc*., 2019 WL 3552432, at *5 (N.D. Tex. Aug. 5, 2019) (enforcing Delaware choice of law provision and dismissing DTPA claim); *see also Cory v. Stewart*, 103 F.4th 1067, 1076 (5th Cir. 2024) (Delaware choice of law "preclude[d] access to non-Delaware statutes."). Even if Texas law applies (it does not), Plaintiff fails to plausibly allege a DTPA claim. To state a claim under the DTPA, a plaintiff must plausibly allege (1) the plaintiff "is a consumer under the DTPA," (2) the defendant "committed a false, misleading, or deceptive act under § 17.46(b) of the DTPA, breached an express or implied warranty, or engaged in an unconscionable action or course of action," and (3) the defendants' "acts were the producing cause " of the plaintiff's "actual damages." *Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co*., 313 F.3d 899, 907 (5th Cir. 2002).

Plaintiff does not plausibly allege any violation of the DTPA. *First*, the Complaint does not plausibly allege any "false, misleading, or deceptive acts" because Plaintiff fails to identify the "specific provision" under section 17.46(b) on which his claim is premised. *See Kumar v. Panera Bread Co.*, 2024 WL 1216562, at *4 (5th Cir. Mar. 21, 2024) (plaintiff must allege "the defendant violated a specific provision" of the DTPA (citing *Amstadt v. U.S. Brass Corp*., 919 S.W.2d 644, 649 (Tex. 1996))); *Troy v. Am. Bar Ass'n*, 2024 WL 1886753, at *7 (E.D.N.Y. Apr. 30, 2024) (dismissing DTPA claim because "Plaintiffs fail to plead which, if any, of the DTPA's 'laundry list' of 34 deceptive practices [defendant] violated" (cleaned up)). And, as discussed above, Plaintiff does not allege fraud with particularity as Rule 9(b) requires. *See SHS Inv. v. Nationwide Mut. Ins. Co*., 798 F. Supp. 2d 811, 819 (S.D. Tex. 2011) (DTPA claim based on "vague and

generic" allegations and "Plaintiff's own legal conclusions" did not satisfy Rule 9(b)).

 *Second*, Plaintiff does not plausibly allege a DTPA claim based on a breach of warranty. The DTPA "does not create any warranties; therefore any warranty must be established independently of the act." *La Sara Grain Co. v. First Nat'l Bank*, 673 S.W.2d 558, 565 (Tex. 1984). The Complaint does not allege any warranty was breached. *See Chamberlin v. GEICO Indem. Co*., 2020 WL 5922081, at *6 (N.D. Tex. May 27, 2020) (dismissing DTPA claim "[b]ecause [plaintiff's] factual allegations do no[t] refer to any warranty—express or implied").

 *Third*, Plaintiff does not plausibly allege a DTPA claim based on unconscionable conduct. "The DTPA defines an unconscionable action as one which 'takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree'" and to the consumer's detriment. *Franklin v. Apple Inc*., 569 F. Supp. 3d 465, 480–81 (E.D. Tex. 2021) (quoting Tex. Bus. & Com. Code § 17.45(5)). Plaintiff's allegation that X Corp. engaged in "predatory billing practices" because he purportedly could not cancel his premium services subscription after his account was suspended (Compl. ¶ 44) does not plausibly show that X Corp. took advantage of his lack of knowledge, ability, experience, or capacity to a grossly unfair degree. *See Franklin*, 569 F. Supp. 3d at 481 (dismissing DTPA claim where plaintiff "ha[d] not pleaded how [defendant] took advantage of his lack of knowledge, ability, experience, or capacity to a grossly unfair degree"). Furthermore, Plaintiff's allegations that X Corp. charged for premium services that it did not provide Plaintiff amount to, at most, allegations of a breach of the Purchaser Terms, which cannot support a DTPA claim for unconscionable conduct. *See Malsom v. Match.com, LLC*, 540 F. App'x 412, 415–16 (5th Cir. 2013) (affirming dismissal of DTPA claim for unconscionable conduct because it "amount[ed] to allegations of breach of contract alone,

thereby rendering the DTPA inapplicable.").[7]

Therefore, Plaintiff's DTPA claim should be dismissed.

### 5.    *Plaintiff Fails to Allege a Plausible SCA Claim*

"With certain exceptions, § 2702 prohibits a provider of an electronic communication service or of a remote computing service to the public from knowingly divulging the contents of a communication in electronic storage or carried or maintained on the service." *In re Am. Airlines, Inc., Priv. Litig.*, 370 F. Supp. 2d 552, 560 (N.D. Tex. 2005). For his SCA claim against X Corp., Plaintiff appears to allege X Corp. violated 18 U.S.C. § 2702 of the SCA because it purportedly did not "act expeditiously to remove or disable access to the" Third-Party Accounts. *Id.* ¶ 70.[8] But Plaintiff fails to plausibly allege that X Corp. "knowingly divulg[ed]" the contents of any communication. Therefore, he fails to plausibly allege a SCA claim against X Corp.[9]

### 6.    *Plaintiff Fails to Allege a Plausible CFAA Claim*

Section 1030(a)(2)(C) imposes liability on anyone who "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any

---

[7] To be clear, Plaintiff does not plausibly allege a breach of contract. Under the Purchaser Terms, Plaintiff agreed that his alleged subscription would "AUTOMATICALLY RENEW . . . UNLESS THE SUBSCRIPTION IS CANCELLED" following the procedures applicable to his third-party payment processor, *i.e.*, cancelling through the Apple App Store, Google Play Store, or Stripe. RJN, Ex. 2 at 5; Ex. 3 at 5. Plaintiff does not allege he attempted or was prevented from cancelling through his unidentified third-party payment processor, and only alleges in conclusory fashion the purported "[a]ccount suspension prevented [his] access to cancellation features." Compl. ¶ 31.

[8] Plaintiff alleges the Third-Party Does violated 18 U.S.C. § 2701 of the SCA by "intentionally access[ing] X Corp[.]'s facilities without authorization" to "creat[e] accounts impersonating Plaintiff." Compl. ¶ 67.

[9] To the extent Plaintiff asserts a section 2701 claim against X Corp., the claim also fails. "The purpose of § 2701 is to prevent unauthorized access to a facility through which an electronic communication service is provided." *In re Am. Airlines*, 370 F. Supp. 2d at 558. X Corp. necessarily had authorization to access "X Corp[.]'s [own] facilities." Compl. ¶ 67; *see also In re Am. Airlines*, 370 F. Supp. 2d at 558 n.8 (section 2701 claim made "little sense" against defendant because it had "plenary authority to access its own facility").

protected computer." 18 U.S.C. § 1030(a)(2)(c). Plaintiff alleges the Third-Party Does violated 18 U.S.C. § 1030(a)(2)(C) of the CFAA by accessing "X Corp[.]'s servers hosting the Twitter platform," and that X Corp. violated the CFAA because it purportedly "fail[ed] to act." Compl. ¶¶ 71–75. These allegations fail to plausibly allege a CFAA claim because he does not plausibly allege that X Corp. accessed a computer without authorization. *See Land & Bay Gauging, LLC v. Shor*, 623 F. App'x 674, 683 (5th Cir. 2015) (affirming dismissal of CFAA claim for failure to plead unauthorized computer access (citing *Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 583-84 (5th Cir.2015))).

Even if construed as a civil CFAA claim, the claim still fails as a matter of law. A civil CFAA claim may be maintained "only" when the defendant's conduct "caused" or "would, if completed, have caused": (1) "loss . . . during any 1-year period . . . aggregating at least $5,000 in value"; (2) "modification or impairment" of a person's "medical examination, diagnosis, treatment, or care"; (3) "physical injury"; (4) "a threat to public health or safety"; or (5) "damage affecting a computer used by or for an entity of the United States Government in furtherance of the administration of justice, national defense, or national security." 18 U.S.C. § 1030(c)(4)(A)(i)(I)-(IV) & (g). The Complaint includes no such allegations, and therefore he fails to plausibly allege this claim. *See Van Buren v. United States*, 593 U.S. 374, 391–92 (2021) ("loss" under CFAA is limited to "technological harms—such as the corruption of files—of the type unauthorized users cause to computer systems and data"); *Dixon v. Doe*, 2024 WL 3929899, at *5 (S.D. Tex. Aug. 23, 2024) (dismissing CFAA claim because plaintiff failed to allege any of the "limited circumstances" under which a civil claim is permitted).

Thus, Plaintiff fails to allege a plausible CFAA claim.

### 7.    *Plaintiff Fails to Allege a Plausible Identity Theft Claim Under Nebraska Law*

Plaintiff's claim for identity theft under Nebraska Revised Statutes section 28-639 should be dismissed. As explained above, because California law applies under the Relevant TOS's choice of law provision, Plaintiff cannot assert this claim. *See* Section IV.A., *supra*. Moreover, "identity theft [under section 28-639] is a criminal statute that [Plaintiff] is without standing to enforce." *Wike v. Douglas Cnty.*, 2024 WL 1299255, at *2–3 (D. Neb. Mar. 27, 2024) (dismissing section 28-639 claim without leave to amend). Plaintiff's identity theft claim under Nebraska law thus fails as a matter of law and should be dismissed.

### 8.    *Plaintiff Fails to Allege a Plausible Misappropriation of Identity Claim*

The elements of a common law claim for misappropriation of identity (or right of publicity) under California law are: "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." *Slivinsky v. Watkins-Johnson Co.*, 221 Cal. App. 3d 799, 807 (1990).[10] A misappropriation of identity claim under California Civil Code section 3344 requires "all the elements of the common law cause of action," as well as "a knowing use by the defendant" and "a direct connection between the alleged use and the commercial purpose." *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 208 (2017).

Plaintiff fails to plausibly allege a misappropriation of identity claim. Plaintiff alleges that the Third-Party Does—not X Corp.—used Plaintiff's name and likeness. Plaintiff alleges that X Corp. was "a passive instrumentality and conduit," Compl. ¶ 82, but that allegation fails to

---

[10] The elements under Texas law are: (1) defendant's appropriation of plaintiff's name or likeness for its value, (2) plaintiff can be identified in the publication, and (3) an advantage or benefit to defendant. *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 638 (5th Cir. 2007).

plausibly allege that X Corp. used his identity or that X Corp. gained any advantage from any such use, nor does it plausibly allege lack of consent or resulting injury. Thus, Plaintiff fails to plausibly allege the required elements of a misappropriation claim, which should be dismissed. *See Cross*, 14 Cal. App. 5th at 209–11 (social media content "created by third parties who were using [plaintiff's] name and likeness" did not show that Facebook used plaintiff's name or likeness, or that Facebook gained any advantage); *Perfect 10, Inc. v. Google, Inc*., 2010 WL 9479060, at *13 (C.D. Cal. July 30, 2010) ("[B]oth the statutory and common law versions of a right of publicity claim require that the defendant actually use the plaintiff's likeness . . ."), *aff'd*, 653 F.3d 976 (9th Cir. 2011).

### F.     Leave to Amend Should Be Denied

Dismissal without leave to amend is "appropriate" where, as here, "amendment is futile because . . . the legal theory upon which a complaint relies is indisputably meritless." *Meeks v. DeBouse*, 2024 WL 4457846, at *1 (5th Cir. Oct. 10, 2024) (internal quotation marks omitted) (affirming denial of leave to amend). At bottom, Plaintiff's dispute is with the unnamed Third-Party Does who allegedly created the impersonating accounts using his information and the Photograph. And Plaintiff's claims are barred by the Relevant TOS and Purchaser Terms, Section 230, the First Amendment, and his fatal pleading deficiencies. *See Whitfield v. Am. Express Nat'l Bank*, 2024 WL 1543236, at *3 (W.D. Tex. Apr. 9, 2024) (denying pro se plaintiff leave to amend because "amendment would be futile"). Leave to amend therefore should be denied.

### V.     <u>CONCLUSION</u>

For all these reasons, this Court should dismiss Plaintiff's Complaint with prejudice.

Dated: March 5, 2025                    Respectfully submitted,

By:   */s/ Norma N. Bennett*
        Norma N. Bennett
        Texas Bar No. 24028492
        nbennett@shb.com
        Michella Gibbs
        Texas Bar No, 24107371
        mgibbs@shb.com
        SHOOK, HARDY & BACON, LLP
        600 Travis, Suite 3400
        Houston, Texas 77002
        (713) 227-8008 (Telephone)
        (713) 227-9508 (Facsimile)

        Kenneth M. Trujillo-Jamison
        (application for pro hac vice admission
        forthcoming)
        ktrujillo-jamison@willenken.com
        WILLENKEN LLP
        707 Wilshire Blvd., Suite 4100
        Los Angeles, CA 90017
        (213) 955-9240 (Telephone)
        (213) 955-9250 (Facsimile)

        *Attorneys for Defendant X Corp.*

4939-0509-3668 V1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 5, 2025, I filed the foregoing document with the clerk of court for the United States District Court, Western District of Texas, Austin Division, using the Court's CM/ECF filing system. I hereby certify that I have served all parties in the manner authorized by the Federal Rules of Civil Procedure, including those parties not registered for electronic filing.

Justin Riddle
16422 Patrick Ave
Omaha, NE 68116
402-813-2156
Email: justinriddle1@gmail.com

***Pro Se Plaintiff***

*/s/ Norma N. Bennett*