UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

JUSTIN RIDDLE,

 Plaintiff,

v.

X CORP., formerly known as TWITTER, INC.,

 Defendant.

Civil Action No. 1:25-cv-00073-ADA

EMERGENCY MOTION FOR PRESERVATION OF EVIDENCE AND IMMEDIATE JUDICIAL INTERVENTION

PRELIMINARY STATEMENT

Plaintiff Justin Riddle respectfully moves this Court for emergency relief to address X Corp.'s alarming pattern of evidence spoliation occurring in real time during active litigation. Within hours of Plaintiff's recent filing documenting X Corp.'s fraudulent advertising metrics, X Corp. deliberately modified its platform to hide these exact metrics from Plaintiff while continuing to charge for promotional services.

Having been through this multiple times before in Nebraska, Plaintiff is fully aware that absent professional representation from an attorney, the typical process for the Court is to do anything possible to make justice impossible for an unrepresented citizen. The problem this case presents is the uncontested, indisputable evidence brought forth. For the Court to entertain the same tactics as Plaintiff has experienced in Omaha, will only strengthen his next claim. The Plaintiff intends on proving that the system is not irrevocably broken, or that it is. With the national attention this case is now receiving, the only question that remains is whether or not our Justice system is truly interested in Justice. The answer to that question will rightfully ring throughout the nation.

The Court is faced with a simple choice: uphold the law as prescribed, or prove to America that if you have enough money and influence, you are above the law. There's no in-between, there's no alternative. No one has contested the validity of the evidence. If merely being a social media company allows a business to violate the most fundamental rules of contract, it will come out in this lawsuit, as the alternative to Justice is dismissal based on the improper use of the Oxford comma, or using "Century" instead of "Century Schoolbook" font. There's simply no way to ignore that a company is currently charging me for a service they are intentionally making unavailable and then hiding the metrics. It's not subjective. It's not confusing. It's not complicated. It's not a new technique.

AI, the same exact as used by the Texas Western District Court, says the following, as recorded real-time: https://youtube.com/shorts/RN7LS1UK2K0

As you can see, this isn't a confusing or fundamentally complicated situation. It's a simple issue of offer/acceptance and intent. Illegal in every industry, with the soon potential exception of social media companies. It's also, more plainly, a test of the system to prove whether or not even the most well drafted Pro se briefs can survive a motion to dismiss based entirely on lies, when the brief comes from an individual and the MTD comes from a team of attorneys. As much as this case is about the abuses of a social media Network (in fact all of them but one thing at a time, right?) , more fundamentally it's about whether a citizen can get Justice without deep pockets.

Plaintiff owns www.charterwestbank.com. Plaintiff won that domain unanimously in the Nebraska Supreme Court without an attorney, a Court of Record. For all practical purposes, even if a business has been around for over 20 years and was too naive to have bought their own website and someone else bought it to gripe, certainly a bank website holds too much potential for abuse to allow a citizen to own and control it without restriction. This brings us to one of two logical conclusions:

1. Plaintiff's arguments are simply so rock solid and advanced, so fundamentally sound and based on the letter of the law, the Nebraska Supreme Court had no alternative but to rule in his favor, OR,

2. The Court didn't want to address the clearly stated second part of the Appeal which was as follows:

*"This was started by CharterWest it was continued by the CFPB, the Department of Banking and Finance, the FED reserve of KC, the Attorney General, the Ombudsman, the lower court, and the appeals court, in that order. Every single tax funded agency and Safeguard was either incapable of reading, or conspired to harm a citizen, leaving only a perfectly documented exploitation by every party. In my original case the material change was as easy as looking at one single check box, on one page, of one mutilated document, yet somehow, zero (of) over two dozen trained experts knew what spoliation is. In this case, it's without question (that) Charter West is silencing a Critic. Everyone, including the lower court, states it. That's an admission, not a cause of action.*

*While representing myself I've watched as every single Legal Professional use their training to take advantage of what they mistakenly saw was a weak Target. This complete disregard for the law made it impossible for an average citizen to navigate what should be an unbiased legal system. Both of my cases I feel have proven systematic abuse, making it clear to me that if you're not in the club, the law is not just discretionary, it's irrelevant"*

A decade the Plaintiff has been demonstrating that the system is rigged. If Plaintiff, arguably one of the most capable self represented litigants in a generation, has been unable to bypass basic things that, in many cases aren't even real (for example, claiming that the plaintiff was arguing venue when there's literally nothing whatsoever to indicate that), the real message being sent isn't about the laws at all, it's about the system. What we have here is an intellectual property giant among Judges, claiming confusion about clear information.  Plaintiff prays it was an internal mistake and that the law will be the guiding factor in the case.

Most importantly, NO ONE capable, would spend the time necessary to document all of this, just for "kicks". Plaintiff, as a self represented litigant has compiled the most robust and evidence supported complaint against a social media platform that has ever been brought. The only way it doesn't survive is if the Court ignores the rules of procedure when dealing with a self represented litigant (ie allowing liberal construction, not allowing minor procedural missteps to be fatal flaws, not ignoring the facts, etc), or if the rules have changed without being updated, and the defense is allowed to openly lie to the Court.

Carlos DeLuna, Paul House, Joe Exotic and so many more lives have been destroyed by a pay for play Judiciary. Judges have the ability to ignore reality, ignore procedural abuses and ignore their oath, all without legal consequences. The Plaintiff would like to believe that AI has brought us

closer to, not further from justice for all, through allowing everyone to meet the criteria set forth by the Court. The Plaintiff is further aware of precisely how the system operates, and is documenting everything through his cases, to ensure that the truth is forever available to those who care to look. When an amended brief with as clearly documented evidence of misconduct and illegal business practices is brought as the one submitted last week by the Plaintiff, is contorted into something that doesn't remotely represent the words written, how does a prisoner, or other self represented litigant who needs a more liberal construction of their brief, even have a chance?

This represents the second documented instance of X Corp. implementing reactive technical changes to obscure evidence specifically identified in Plaintiff's legal filings. When previously confronted with evidence of deliberate algorithmic suppression and predatory billing practices, X Corp. responded not by ceasing the unlawful conduct, but instead by modifying their Terms of Service while continuing the underlying practices. Now, they have employed the same strategy again - responding to documented evidence of mathematically impossible metrics by simply hiding those metrics entirely from Plaintiff's view.

This is not a coincidental technical update but a deliberate, litigation-driven attempt to conceal evidence of ongoing fraud while continuing to charge Plaintiff for services that can no longer be monitored or verified. This Court's immediate intervention is necessary to prevent irreparable harm to the judicial process and to preserve critical evidence before it is permanently altered or destroyed.

FACTUAL BACKGROUND

NOTICE TO THE COURT: This motion includes links to video evidence recorded and published by Plaintiff. The first video (https://youtu.be/XzK7W_k3Tys) documents the advertising metrics manipulation described in the First Amended Complaint. The second video (https://youtube.com/shorts/YQK-6yQmhn8) documents X Corp.'s subsequent attempt to conceal this evidence within hours of Plaintiff's court filing.

1. On March 13, 2025, Plaintiff filed his First Amended Complaint documenting mathematically impossible advertising metrics on X Corp.'s platform, including detailed evidence of metrics showing 0% attribution suddenly changing to 100% attribution for the

same content. This filing included references to Exhibits A-12 through A-15 with contemporaneous screenshots and screen recordings demonstrating these contradictions. Plaintiff included specific video evidence of this fraud, created and published the same day as the amended complaint was filed, available at https://youtu.be/XzK7W_k3Tys.

2. Within hours of this filing, on the very same day (March 13, 2025), X Corp. implemented technical changes to their platform that now prevent Plaintiff from accessing these same metrics that were specifically identified in the court filing.

3. Before the filing, Plaintiff could access detailed metrics for his promoted posts through both the mobile application and web interface, allowing him to document the mathematical impossibilities described in his First Amended Complaint.

4. After the filing, when attempting to access the same metrics interface, Plaintiff now encounters a "blank black screen" where the metrics information previously appeared.

5. Despite removing Plaintiff's ability to view these metrics, X Corp. continues to charge for promotional services, creating a situation where Plaintiff is paying for services whose performance he can no longer monitor or verify.

6. This pattern of reactive technical changes following legal filings represents the second documented instance of such behavior: a. Following Plaintiff's original complaint regarding predatory billing practices, X Corp. modified its Terms of Service rather than addressing the underlying conduct b. Now, following Plaintiff's documentation of fraudulent metrics, X Corp. has modified its technical systems to hide these metrics while continuing to charge for services

7. Plaintiff has documented this new evidence spoliation through comprehensive screen recordings showing the "blank black screen" that now appears when attempting to access the previously visible metrics. Specifically, Plaintiff created and published video evidence on March 14, 2025 (the day after filing the amended complaint) documenting how X Corp. had eliminated his ability to view the metrics within hours of his court filing. This video

evidence is available at https://youtube.com/shorts/YQK-6yQmhn8.

## LEGAL ARGUMENT

### I. X Corp.'s Actions Constitute Impermissible Spoliation of Evidence

Courts have broad inherent authority to sanction parties who destroy or alter evidence during pending litigation. See *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (recognizing inherent authority to sanction for spoliation even absent explicit discovery order). The timing and targeted nature of X Corp.'s changes to their metrics display functionality—occurring within hours of Plaintiff's court filing specifically identifying these metrics—overwhelmingly suggests intentional evidence spoliation rather than routine business operations.

The three elements required for spoliation sanctions are clearly present:

1. **Duty to Preserve**: X Corp. had a clear duty to preserve evidence relevant to pending litigation. See *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) (duty to preserve arises when litigation is reasonably anticipated).

2. **Culpable State of Mind**: The timing of these changes—directly following a court filing highlighting the specific evidence now hidden—demonstrates the requisite culpable state of mind. See *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d Cir. 2002) (spoliation intent can be inferred from circumstantial evidence).

3. **Relevance of Evidence**: The metrics data now hidden was directly relevant to Plaintiff's claims of advertising fraud, as explicitly detailed in his First Amended Complaint. See *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 616 (S.D. Tex. 2010) (relevance established when evidence would support claims or defenses).

### II. Emergency Judicial Intervention Is Necessary to Prevent Irreparable Harm

Courts have recognized that when spoliation is ongoing, emergency intervention is appropriate to prevent irreparable harm to the judicial process. See *Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 138 (2004) (granting emergency motion to preserve evidence). Several factors make immediate intervention necessary here:

1. **Ongoing Commercial Relationship**: X Corp. continues to charge Plaintiff for promotional services while simultaneously preventing him from monitoring the performance of those services, creating ongoing financial harm.

2. **Unequal Information Access**: X Corp. maintains internal access to the complete metrics data while selectively hiding this information from Plaintiff, creating a fundamental informational asymmetry that prejudices Plaintiff's ability to develop his case.

3. **Pattern of Reactive Concealment**: This represents X Corp.'s second documented instance of reactive technical changes following legal filings, establishing a pattern of evidence concealment rather than an isolated incident.

4. **Digital Evidence Vulnerability**: The metrics data at issue is entirely digital and controlled exclusively by X Corp., making it particularly vulnerable to permanent alteration or destruction without immediate intervention.

### III. The Requested Relief Falls Well Within the Court's Authority

The relief requested falls squarely within this Court's inherent authority to ensure the integrity of judicial proceedings and prevent discovery abuses. See *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991) (recognizing courts' inherent power to fashion appropriate sanctions for conduct that disrupts the judicial process).

The Fifth Circuit has specifically recognized that "a court may impose sanctions for spoliation, including... giving an adverse inference instruction, excluding evidence, or dismissing the case, for failure to preserve evidence, even without an explicit court order." *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015).

**REQUESTED RELIEF**

For the foregoing reasons, Plaintiff respectfully requests that this Court issue an order:

1. **Prohibiting Further Evidence Alteration**: Ordering X Corp. to immediately cease any further modifications to the functionality, accessibility, or display of advertising metrics systems specifically identified in Plaintiff's filings;

2. **Mandatory Data Preservation**: Requiring X Corp. to preserve all raw and processed data related to Plaintiff's advertising metrics, including complete database records, calculation methodologies, and display parameters;

3. **Technical Documentation**: Requiring X Corp. to document and disclose: a. The exact timing, nature, and extent of all changes made to metrics display functionality after March 13, 2025 b. The names and positions of personnel who authorized or implemented these changes c. All internal communications regarding the decision to modify metrics display functionality

4. **Data Restoration**: Requiring X Corp. to restore Plaintiff's ability to view the complete metrics for his promoted posts as they existed prior to March 13, 2025;

5. **Forensic Inspection**: Appointing a neutral third-party forensic expert to: a. Examine X Corp.'s advertising metrics systems b. Document the changes made following Plaintiff's court filing c. Verify the accuracy and completeness of data preservation

6. **Expedited Discovery**: Granting expedited discovery specifically focused on: a. The technical changes implemented after Plaintiff's court filing b. Internal communications regarding these changes c. The decision-making process leading to these modifications

7. **Adverse Inference Instruction**: Placing X Corp. on notice that continued evidence spoliation may result in adverse inference instructions to the jury regarding the content of the concealed metrics;

8. **Monetary Sanctions**: Requiring X Corp. to reimburse Plaintiff for all costs associated with addressing this spoliation, including attorney's fees, expert witness costs, and expenses related to this motion;

9. **Suspension of Charges**: Ordering X Corp. to suspend all charges for promotional services until full metrics visibility is restored;

10. **Such other relief** as this Court deems just and proper to address this extraordinary attempt to manipulate evidence during active litigation.

CONCLUSION

X Corp.'s deliberate concealment of evidence specifically identified in Plaintiff's recent filing represents an extreme threat to the integrity of the judicial process. By hiding metrics data while continuing to charge for services, X Corp. is not only destroying evidence but actively exploiting the resulting information asymmetry for commercial gain. This is precisely the kind of conduct that warrants immediate judicial intervention.

This pattern of reactive concealment—modifying systems to hide evidence specifically identified in legal filings—demonstrates contempt for the judicial process that cannot be remedied through ordinary discovery mechanisms. Without emergency intervention, critical evidence may be permanently altered or destroyed, irreparably harming Plaintiff's ability to present his case and undermining the truth-seeking function of this Court.

Respectfully submitted,

Justin Riddle
Pro Se Litigant
16422 Patrick Ave
Omaha, NE 68116
402-813-2156

Date: March 16th, 2025

I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Service thru electronic system