**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| JUSTIN RIDDLE,<br><br>                    Plaintiff,<br><br>v.<br><br>X CORP. formerly known as TWITTER, INC.,<br><br>                    Defendant. | Civil Action No. 1:25-cv-00073-ADA |

**DEFENDANT X CORP.'S MOTION TO DISMISS
<u>PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

## I.     <u>INTRODUCTION</u>

Federal Rule of Civil Procedure 12(b)(6) mandates dismissal of Plaintiff's First Amended Complaint (Dkt. 22; "FAC"). Plaintiff alleges that unnamed third parties created accounts impersonating him on Twitter,[1] the social media platform operated by X Corp., and that X Corp. failed to suspend those accounts. He also alleges X Corp. suspended his account and charged him for premium services it did not provide to him, placed limitations on Plaintiff's account, and provided inaccurate advertising metrics for posts he allegedly promoted. Plaintiff's claims fail because X Corp.'s Terms of Service ("Relevant TOS") and Purchaser Terms of Service ("Purchaser Terms"), to which Plaintiff necessarily agreed when he created his account and subscribed to paid services on Twitter, provide X Corp. the express contractual right to suspend Plaintiff's accounts without liability to him. Those contracts also disclaim any liability for his inability to access or use Twitter or for content posted by other users on the platform. Separately, Plaintiff fails to state any plausible claim against X Corp. And, because no amendment can save Plaintiff's futile claims, Plaintiff's FAC should be dismissed without leave to amend.

## II.     <u>BACKGROUND</u>

### A.     **Plaintiff's Allegations**

Plaintiff alleges X Corp. operates "Twitter," the "social media platform[]." FAC ¶ 8. He alleges he has a Twitter account for which he pays for "premium" services. *Id.* ¶¶ 14–16; Dkt. 3 ("Compl.") ¶ 30.[2] Plaintiff further alleges that, starting in December 2023, unknown third parties ("Third-Party Does") created Twitter accounts using Plaintiff's "name, images and personal background" ("Third-Party Accounts") for the purpose of "impersonating him" (Compl. ¶ 22),

---

[1] "Twitter" the social media platform has been rebranded as "X." For ease of reference, this brief continues to refer to it as "Twitter" because the FAC does so.

[2] The FAC states that it "incorporates by reference paragraphs 21-39 of [Plaintiff's] original Complaint." FAC ¶ 9.

which he alleges were "violations of X Corp.'s own terms of service" (FAC ¶ 11). The Third-Party

Does allegedly used a photograph of Plaintiff and his wife ("Photograph") as the profile picture of

the Third-Party Accounts. Compl. ¶¶ 21–22. He also alleges that, between December 2023 and

May 2024, he sent X Corp. four notices he alleges were complaint with the Digital Millenium

Copyright Act ("DMCA") about the Third-Party Does' alleged use of the Photograph to

impersonate him, but that X Corp. did not remove the Photograph from their accounts as he

requested. *Id.* ¶¶ 23-24. Plaintiff further alleges his Twitter account was "suspended" from

"February [to] July 2024" after one of his posts "was reported for violating [X Corp.'s] rules." *Id.*

¶¶ 29–30. He alleges that he could not "access . . . cancellation features" when his account was

suspended, but that X Corp. charged him "six times" for premium services he did not receive. *Id.*

¶¶ 30–31. Finally, Plaintiff alleges that, in March 2025, X Corp. placed a "temporary label" on his

account that "may impact its reach"[3] (FAC ¶ 22 (pp. 17–18)), that he observed alleged

"mathematical impossibilities" in the "advertising metrics" for a "promoted post" (*id.* ¶¶ 17–20),

and that he was unable to view promoted posts on "the web interface," though they were "[v]isible

within the mobile application" (*id.* ¶¶ 24–25 (pp. 18–19)).

Plaintiff asserts claims for (1) copyright infringement, (2) violation of 17 U.S.C. § 512 of

the DMCA ("Section 512"), (3) wire fraud under 18 U.S.C. § 1343, (4) violation of 18 U.S.C.

§ 1962(c) of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, (5) "fraudulent

billing," (6) negligence, (7) violation of the Texas Deceptive Trade Practices Act ("DTPA"), and

(8) breach of contract and breach of implied covenant of good faith and fair dealing. *Id.* ¶¶ 27–74.

---

[3] The FAC alleges Plaintiff's account had been suspended for "approximately three years" until
it was "restored" on March 8, 2025. FAC ¶¶ 22, 26. This allegation contradicts other allegations
elsewhere in the FAC about his being able to post on Twitter and use of premium and
promotional services. *See, e.g.*, Compl. ¶¶ 26, 30; FAC ¶¶ 17–20.

Plaintiff seeks statutory, compensatory, and punitive damages, as well as injunctive relief. *See id.* at 33–35 (prayer for relief).

### B.     The Relevant TOS and Purchaser Terms

In creating and using his Twitter account, Plaintiff necessarily agreed to the Relevant TOS. RJN, Ex. 1 at 1 ("These Terms are an agreement between you and X Corp., which provides X and the Services . . . ."). And by subscribing to receive premium services on X, Plaintiff necessarily agreed to the Purchaser Terms. *Id.*, Ex. 2 at 1 ("By using or accessing a Paid Service[] from X [Corp.], . . . you agree to be bound by the [Purchaser] Terms."); *id.*, Ex. 3 (same).

The Relevant TOS in effect when his account allegedly was suspended provides that X Corp. "may . . . limit distribution or visibility of any Content" and "suspend or terminate users . . . without liability to" Plaintiff, as well as "terminate [Plaintiff's] account . . . for any . . . reason or no reason." *Id.*, Ex. 1 at 2, 3. Those terms also contain a disclaimer which provides that X Corp. "disclaim[s] all . . . liability for . . . the . . . availability . . . of the Services," or any "harm that results from your access to or use of the Services or any Content." *Id.*, Ex. 1 at 3. The Relevant TOS also has a limitation of liability provision that states:

> [X Corp.] SHALL NOT BE LIABLE FOR ANY INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL OR PUNITIVE DAMAGES . . . WHETHER INCURRED DIRECTLY OR INDIRECTLY, OR ANY . . . INTANGIBLE LOSSES, RESULTING FROM . . . YOUR ACCESS TO OR USE OR INABILITY TO ACCESS OR USE THE SERVICES . . . [and] ANY CONDUCT OR CONTENT OF ANY THIRD PARTY ON THE SERVICES, INCLUDING WITHOUT LIMITATION, ANY . . . OFFENSIVE OR ILLEGAL CONDUCT OF OTHER USERS OR THIRD PARTIES . . . . THE LIMITATIONS OF THIS SUBSECTION SHALL APPLY TO ANY THEORY OF LIABILITY, WHETHER BASED ON WARRANTY, CONTRACT, STATUTE, [or] TORT . . . .

*Id.*, Ex. 1 at 4. The Relevant TOS also provides that the "[t]he laws of the State of California . . .

will govern these Terms and any dispute that arises between [Plaintiff] and [X Corp.]" *Id.*[4]

The relevant version of the Purchaser Terms provide that "X [Corp.] may suspend or terminate [the user's] access to Paid Service(s) or cease providing [the user] with all or part of the Paid Services (without any liability) at any time for any or no reason." *Id.*, Ex. 2 at 2; Ex. 3 at 2. Those terms also have a limitation of liability provision that is substantively identical to that contained in the Relevant TOS. *Id.*, Ex. 2 at 3; Ex. 3 at 3. The Purchaser Terms also provide that "SUBSCRIPTION PLANS . . . AUTOMATICALLY RENEW AT THE END OF EACH SUBSCRIPTION PERIOD UNLESS THE SUBSCRIPTION IS CANCELLED" by using procedures specified in the Purchaser Terms that depend on the third-party payment processor the user used to subscribe to X Premium. *Id.*, Ex. 2 at 5; Ex. 3 at 5. They also explain: "Regardless of how your subscription was purchased, your subscription automatically renews unless you cancel at least 24 hours before your subscription period ends." *Id.*

## III.    LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. While "pro se complaints are held to less stringent standards . . . regardless of whether the plaintiff is proceeding pro se or is represented by counsel, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor v. Books A Million, Inc*., 296 F.3d 376, 378 (5th Cir. 2002) (cleaned up).

---

[4] After the alleged events giving rise to this action occurred, X Corp. updated it TOS, which now contains a choice of law provision in favor of Texas.

IV.    **ARGUMENT**

A.    **California Law Applies to Plaintiff's State Law Claims**

California law applies to Plaintiff's state law claims. "A federal court is required to follow the choice of law rules of the state in which it sits." *Resol. Tr. Corp. v. Northpark Joint Venture*, 958 F.2d 1313, 1318 (5th Cir. 1992). To determine whether a choice of law provision is enforceable, Texas courts apply section 187 of the Restatement (Second) of Conflicts of Laws, which provide that "whether a choice-of-law provision is enforceable depends initially on whether the issue in dispute is one that the parties could have resolved by including an explicit provision in their contract." *Id.*; *McKeehan v. McKeehan*, 355 S.W.3d 282, 291 (Tex. App. 2011).

Here, the disputed issues are resolvable by express provisions in the Relevant TOS. That contract expressly addresses Plaintiff's contention that X Corp. is liable for conduct of the Third-Party Does and content on the Third-Party Accounts, and for Plaintiff's dissatisfaction with the premium services from X Corp. RJN, Ex. 1 at 4 (limiting X Corp.'s liability for, among other things, Plaintiff's "ACCESS TO OR USE OR INABILITY TO ACCESS OR USE THE SERVICES" and "ANY CONDUCT OR CONTENT OF ANY THIRD PARTY" on Twitter); *see also Fagan Holdings, Inc. v. Thinkware, Inc*., 750 F. Supp. 2d 820, 825 (S.D. Tex. 2010) (issue of performance and breach of contract "can be resolved through reference to explicit provisions" of contract).[5]

The Relevant TOS' choice of law provision also encompasses Plaintiff's state law claims. "Choice-of-law provisions can be either narrow—drafted to apply only to the interpretation or construction of an agreement—or broad—drafted to apply to the entirety of the parties'

---

[5] Plaintiff does not dispute the validity or enforceability of the TOS. *See* FAC ¶ 11 (Third-Party Does' "impersonation and harassment" of Plaintiff were "violations of X Corp.'s own terms of service").

relationship." *Canidae, LLC v. Cooper*, 2022 WL 660197, at *14 (N.D. Tex. Feb. 9, 2022) (citing *Caton v. Leach Corp.*, 896 F.2d 939, 943 (5th Cir. 1990)), *report & recomm. adopted*, 2022 WL 658581 (N.D. Tex. Mar. 4, 2022). The Relevant TOS's choice of law provision broadly applies to Plaintiff's state law claims, and therefore California law governs them. *See* RJN, Ex. 1 at 4 ("The laws of the State of California, excluding its choice of law provisions, will govern these Terms and *any dispute* that arises between you and [X Corp.]" (emphasis added)); *see also Grosser v. Red Mango FC, LLC*, 2013 WL 12134086, at *6 (N.D. Tex. Apr. 25, 2013) (choice of law clause "encompasse[d] [plaintiff's] extracontractual claims" where the clause covered "all claims arising out of or related to this Agreement or the parties' relationship created hereby").

Thus, California law applies to Plaintiff's state law claims.

### B.     The Relevant TOS and Purchaser Terms Expressly Bar Plaintiff's Claims

The disclaimers and limitation of liability clauses in the Relevant TOS and the Purchaser Terms, which are binding on Plaintiff, bar Plaintiff's claims against X Corp. The Relevant TOS provides that X Corp. "disclaim[s] all . . . liability for . . . the . . . availability . . . of the Services" RJN, Ex. 1 at 3. And the Relevant TOS and the Purchaser Terms provide that X Corp. "SHALL NOT BE LIABLE FOR ANY . . . DAMAGES . . . RESULTING FROM . . . [Plaintiff's] ACCESS TO OR USE OR INABILITY TO ACCESS OR USE THE SERVICES" and for "ANY CONDUCT OR CONTENT OF ANY THIRD PARTY ON THE SERVICES," under "ANY THEORY OF LIABILITY," including "STATUTE" and "TORT (INCLUDING NEGLIGENCE)." *Id.*, Ex. 1 at 4; *id.*, Ex. 2 at 3; *id.*, Ex. 3 at 3. "Limitation of liability clauses 'have long been recognized as valid in California' and may be used at a dismissal stage to reject a party's claims." *KST Data, Inc. v. DXC Tech.*, 2018 WL 5733515, at *3 (C.D. Cal. Apr. 30, 2018) (quoting *Lewis v. YouTube, LLC*, 244 Cal. App. 4th 118, 125 (2015) (dismissing claim based on limitation of liability clause); *see also Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 36 (2021)

(enforcing limitation of liability clause in a prior version of the TOS).[6]

All of Plaintiff's claims are based on the Third-Party Does' purported creation of accounts impersonating Plaintiff on Twitter, and on X Corp.'s alleged providing and charging him for premium services. *See* FAC ¶¶ 27–74. His claims therefore fall squarely within, and are completely barred by, the disclaimer and limitation of liability clauses in the Relevant TOS and the Purchaser Terms. *See Damner v. Facebook, Inc*., 2020 WL 7862706, at *6–8 (N.D. Cal. Dec. 31, 2020) (dismissing negligence claim because limitation of liability clauses disclaimed protecting users and responsibility for third-party actions); *Darnaa, LLC v. Google Inc.*, 236 F. Supp. 3d 1116, 1123 & n.3 (N.D. Cal. 2017) (enforcing YouTube's limitation of liability clause in its terms of service and dismissing complaint), *aff'd sub nom. Darnaa, LLC v. Google LLC*, 756 F. App'x 674 (9th Cir. 2018).

### C.     Plaintiff Fails to State Any Plausible Claim for Relief

#### 1.     *Plaintiff Fails to Allege a Plausible Copyright Infringement Claim*

Two types of copyright infringement exist: direct and secondary. *BWP Media USA, Inc. v. T & S Software Assocs., Inc*., 852 F.3d 436, 439 (5th Cir. 2017). "Direct liability is imposed on those who trespass into the copyright owner's exclusive domain by using or authorizing the use of the copyrighted work." *Id.* (cleaned up). "Secondary infringement involves liability for actions of third parties." *Id.*

Plaintiff fails to plausibly allege that X Corp. directly infringed the copyright to his Photograph. The elements of direct copyright infringement are "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *BWP Media*, 852 F.3d at 439. The second element is not satisfied unless the defendant "acted with 'volitional conduct'—

---

[6] Limitation of liability clauses are also "valid and enforceable" under Texas law. *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 231 (Tex. 2019).

that is, there must be actual infringing conduct with a nexus sufficiently close and causal to the illegal copying that one could conclude that the [defendant] . . . trespassed on the exclusive domain of the copyright owner." *Canada Hockey, LLC v. Texas A&M Univ. Athletic Dep't*, 2022 WL 445172, at *10 (5th Cir. Feb. 14, 2022) (cleaned up) (quoting *BWP Media*, 852 F.3d at 440). Plaintiff does not allege any "volitional conduct" by X Corp. with respect to the Third-Party Does' use of his photograph, and thus his direct copyright infringement claim fails. *See* Compl. ¶ 22; *Canada Hockey*, 2022 WL 445172, at *10 (affirming dismissal of direct infringement claim premised on third party's infringing conduct); *BWP Media*, 852 F.3d at 442 (no direct infringement where defendant "host[ed] the forum on which infringing content was posted, but its connection to the infringement end[ed] there").

Plaintiff also fails to plausibly allege secondary copyright infringement by X Corp. "Contributory infringement requires evidence of 'active steps taken to encourage infringement.'" *Danze & Davis Architects, Inc. v. Legend Classic Homes, Ltd.*, 2012 WL 13046845, at *3 (S.D. Tex. Jan. 5, 2012) (ellipsis omitted) (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005)). Plaintiff does not allege that X Corp. actively encouraged the Third-Party Does to use his Photograph, and therefore his contributory copyright infringement claim fails. *See Johnston v. Kroeger*, 2021 WL 3571279, at *4 (W.D. Tex. Aug. 11, 2021) (dismissing contributory infringement claim where plaintiff failed to allege defendant "materially contributed to infringing activity"), *report & recomm. adopted*, 2021 WL 8442050 (W.D. Tex. Aug. 26, 2021); *Danze & Davis*, 2012 WL 13046845, at *4 (similar conclusion). Plaintiff also fails to plausibly allege vicarious copyright infringement, which imposes liability only "where a defendant profits directly from the infringement and has a right and ability to supervise the direct infringer." *BWP Media USA, Inc. v. T & S Software Assocs., Inc.*, 2015 WL 3406536, at *2 (N.D. Tex. May 27,

2015) (internal quotation mark omitted) (citing *Metro-Goldwyn-Mayer*, 545 U.S. at 931 n.9). Plaintiff does not allege that X Corp. profited from the Third-Party Does' purported use of the Photograph. *See Bell v. Llano Indep. Sch. Dist.*, 2020 WL 5370591, at \*5 (W.D. Tex. Feb. 13, 2020) (dismissing vicarious infringement claim where plaintiff failed to allege defendant received any "direct financial benefit" from another party's direct infringement). Nor does the FAC plausibly allege that X Corp. had the right or ability to "supervise" the Third-Party Does. *See Canada Hockey LLC v. Texas A&M Univ. Athletic Dep't*, 2019 WL 13131745, at \*12 (S.D. Tex. Mar. 29, 2019) (dismissing vicarious infringement claim where plaintiffs did not allege defendant "had supervisory authority over" any of the "allegedly direct infringers"), *aff'd*, 2022 WL 445172 (5th Cir. Feb. 14, 2022). Thus, Plaintiff fails to plausibly allege secondary copyright infringement.

### 2.   *Plaintiff Fails to Allege a Plausible Claim for Violation of the DMCA*

Plaintiff's claim for violation of Section 512 of the DMCA should be dismissed. The only affirmative claim provided under Section 512 is for misrepresentation in connection with a takedown notice:

> Any person who knowingly materially misrepresents under this section--
>
> (1) that material or activity is infringing, or
>
> (2) that material or activity was removed or disabled by mistake or misidentification,
>
> shall be liable for any damages . . . incurred by the alleged infringer, by any copyright owner or copyright owner's authorized licensee, or by a service provider, who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing, or in replacing the removed material or ceasing to disable access to it.

17 U.S.C. § 512(f). "Subsection (1) generally applies to copyright holders and subsection (2) generally applies to users." *Handshoe v. Perret*, 2016 WL 10587114, at \*1 n.1 (S.D. Miss. June 7, 2016) (quoting *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1151 (9th Cir. 2015)). The FAC does not allege that X Corp. is the holder of any relevant copyright, or that X Corp.

knowingly made any material misrepresentation in connection with any takedown notice as a copyright holder or user. *See* 17 U.S.C. § 512(f). Plaintiff also does not allege that X Corp. removed any allegedly infringing content (indeed, he alleges the opposite), nor does he allege he suffered any injury. *See Opinion Corp. v. Roca Labs, Inc.*, 2016 WL 6824383, at *3 (M.D. Fla. Nov. 17, 2016) ("Absent some indication that a 'takedown' actually occurred, Plaintiffs fail to allege the requisite injury under Section 512(f), and thus fail to state a plausible claim under the DMCA."). Thus, Plaintiff's claim for violation of section 512 of the DMCA should be dismissed.

### 3.    *Plaintiff Fails to Allege a Plausible Wire Fraud Claim*

Plaintiff's wire fraud claim should be dismissed with prejudice because "[t]he wire fraud act—18 U.S.C. § 1343—is a criminal statute, and there is no private cause of action under it." *Beasley v. Greenlee*, 2024 WL 3851382, at *8 (N.D. Tex. July 25, 2024) (dismissing wire fraud claim with prejudice), *report & recomm. adopted,* 2024 WL 3851599 (N.D. Tex. Aug. 16, 2024).

### 4.    *Plaintiff Fails to Allege a Plausible RICO Claim*

The elements of a RICO claim under Section 1962(c) are: "(1) a person who engages in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct or control of an enterprise." *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003) (footnotes omitted).[7] Plaintiff fails to allege a plausible RICO claim for several reasons.

*First*, Plaintiff does not plausibly allege the existence of a RICO enterprise. Under Section 1962(c), "the RICO 'persons' must be distinct from the RICO 'enterprise.'"[8] *In re*

---

[7] Section 1962(c) provides: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

[8] "The RICO person . . . is the defendant." *W. Texas Nat. Bank v. FEC Holdings, LP*, 2013 WL 2158658, at *5 (W.D. Tex. May 17, 2013). A RICO "'enterprise' includes any individual . . . corporation . . . or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

*Burzynski*, 989 F.2d 733, 743 (5th Cir. 1993) (affirming dismissal of Section 1962(c) claim). Plaintiff's claim fails because he alleges X Corp. is both the defendant (*i.e.*, RICO person) and the purported RICO "enterprise." FAC ¶ 46; *see also Bishop v. Corbitt Marine Ways, Inc.*, 802 F.2d 122, 122 (5th Cir. 1986) (affirming dismissal "because the plaintiff alleged that the RICO 'person' and the RICO 'enterprise' were one and the same: the sole defendant").

 *Second*, Plaintiff does not plausibly allege a pattern of racketeering activity. "This element has two components: 1) predicate acts—the requisite racketeering activity, and 2) a pattern of such acts." *In re Burzynski*, 989 F.2d at 742. The purported predicate act underlying Plaintiff's RICO claim is wire fraud (FAC ¶ 47), the elements of which are "(1) a scheme to defraud exists, (2) the defendant used wire communications in interstate or foreign commerce to further that scheme, and (3) the defendant had specific intent to defraud." *United States v. Ashley*, 128 F.4th 641, 647 (5th Cir. 2025).[9] Plaintiff does not allege facts sufficient to show any, much less all, of these elements. *See Energium Health v. Gabali*, 2023 WL 6392631, at *4 (N.D. Tex. Sept. 29, 2023) ("To satisfy the 'scheme to defraud' element, a plaintiff must show a recognizable scheme formed with specific intent to defraud." (internal quotation marks omitted)); *United States v. Biyiklioglu*, 652 F. App'x 274, 281 (5th Cir. 2016) ("The use of the Internet alone is insufficient to establish that [defendant] sent the information . . . across state lines."). Thus, Plaintiff's RICO claim fails. *See St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009) (RICO claim properly dismissed where plaintiffs had "not sufficiently pled the predicate acts of mail and wire fraud"); *Armstrong McCall, LP v. Cadeau Express, Inc.*, 2010

---

[9] "In the civil RICO context, Rule 9(b) also requires the plaintiff to allege specifically how *each* act of . . . wire fraud furthered the fraudulent scheme, who caused what to be . . . wired when, and how the . . . wiring furthered the fraudulent scheme." *Yuen v. Triple B Servs. LLP*, 2019 WL 3069791, at *6 (S.D. Tex. July 8, 2019), *report & recomm. adopted*, 2019 WL 3388321 (S.D. Tex. July 26, 2019).

WL 11506528, at *5 (W.D. Tex. Mar. 30, 2010) (RICO claims dismissed where predicate fraudulent acts were not alleged "with any specificity").

Plaintiff also fails to plausibly allege any pattern of predicate acts. All the purported predicate acts alleged in the FAC concern a single transaction in which Plaintiff allegedly subscribed for premium Twitter services. *See* FAC ¶ 47; *D&T Partners, LLC v. Baymark Partners Mgmt., LLC*, 98 F.4th 198, 207 (5th Cir. 2024) ("[N]o RICO liability exists when a plaintiff alleges 'multiple acts of fraud that were part and parcel of a single, discrete and otherwise lawful commercial transaction.'" (quoting *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 123 (5th Cir. 1996))), *cert. denied*, 145 S. Ct. 264 (2024); *Peel v. cPaperless, LLC*, 2024 WL 5058609, at *12 (S.D. Tex. Nov. 8, 2024) (no pattern alleged where two plaintiffs were the only victims and the defendant's conduct amounted to "little more than commonplace commercial activity"), *report & recomm. adopted*, 2024 WL 5063667 (S.D. Tex. Dec. 9, 2024). Moreover, Plaintiff fails to plausibly allege any pattern of predicate acts because the FAC alleges conduct directed toward "a lone victim," *i.e.*, Plaintiff. *See D&T Partners*, 98 F.4th at 206 ("[W]e—and our sister circuits—have been skeptical of RICO allegations when the victims of the alleged racketeering conduct are limited." (collecting cases)); *Munck Wilson Mandala LLP v. Jordan*, 2023 WL 5437771, at *10 (N.D. Tex. Aug. 22, 2023) (no pattern of predicate acts where alleged mail and wire fraud were "all part of the same single transaction and involve the same 'victim'"), *aff'd*, 2024 WL 3738477 (5th Cir. Aug. 9, 2024). Thus, Plaintiff's RICO claim should be dismissed.

**5.    *Plaintiff Fails to Allege a Plausible "Fraudulent Billing" Claim***

At the outset, Plaintiff's "fraudulent billing" claim fails because it is not an actual legally recognized claim. Even if liberally construed as a fraud claim, it fails. The elements of fraud under California law are: "(a) misrepresentation (false representation, concealment, or nondisclosure);

(b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Lazar v. Superior Ct*., 12 Cal. 4th 631, 638 (1996).[10] Plaintiff fails to plausibly allege any of these elements, much less with the requisite particularity, and therefore he fails to state a plausible fraud claim. *See Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997) (cleaned up) ("[W]e apply [Rule 9(b)] with force, without apology.").

Plaintiff's conclusory allegations that X Corp. "made material misrepresentations and omissions regarding" its "billing practices," "cancellation mechanisms," and provision of "promotional" services (FAC ¶ 54) do not identify with particularity any misrepresentation by X Corp. *See Casey v. Gen. Motors, LLC*, 2021 WL 1388638, at *8 (S.D. Cal. Apr. 13, 2021) (Plaintiff "fails to describe with specificity the content of the omission and where the omitted information should or could have been revealed . . . ." (cleaned up)). Plaintiff also does not allege any facts showing that X Corp. knew it was omitting any information or that it intended to defraud him. *See Eferton DMCC v. Asia-Glob. Renewable Energy Corp.*, 2016 WL 5886900, at *1 (C.D. Cal. Apr. 22, 2016) (dismissing fraud claim where plaintiff provided no "factual basis that would make the allegations of knowledge and intent plausible"). Plaintiff also fails to plausibly allege actual or justifiable reliance, because he fails to allege he "changed his position in reliance on" any purported omission by X Corp., much less any damages caused by any purported omission. *Deschaine v. IndyMac Mortg. Servs*., 2014 WL 281112, at *4 (E.D. Cal. Jan. 23, 2014) (dismissing fraud claims), *aff'd*, 617 F. App'x 690 (9th Cir. 2015); *Austin v. Zhang*, 2022 WL 298573, at *2

---

[10] The elements of fraud are similar under Texas law. *See JPMorgan Chase Bank, N.A. v. Orca Assets G.P., LLC*, 546 S.W.3d 648, 653 (Tex. 2018) (elements: (1) false representation; (2) the defendant "knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth;" (3) defendant's intent to induce reliance; and (4) plaintiff's actual and justifiable reliance resulting in injury); *Smith v. BCE Inc*., 225 F. App'x 212, 218 (5th Cir. 2007) (fraud by omission requires "all the [same] elements" except "the misrepresentation element can be proven by omission of a material fact in light of a duty to disclose" (cleaned up)).

(N.D. Cal. Feb. 1, 2022) (dismissing fraud claim where plaintiff failed to allege "how he changed position in reliance on the statement, or how reliance on the statement caused him damages"). Thus, Plaintiff fails to state a plausible "fraudulent billing" claim, and the claim should be dismissed.

### 6.    *Plaintiff Fails to Allege a Plausible Negligence Claim*

Under California law, "[t]he elements of a negligence cause of action are the existence of a legal duty of care, breach of that duty, and proximate cause resulting in injury." *Castellon v. U.S. Bancorp*, 220 Cal. App. 4th 994, 998 (2013).[11] Plaintiff's negligence claim is based on X Corp.'s alleged failure to (1) prevent the Third-Party Does' purported impersonation of him and (2) to provide Plaintiff satisfactory premium services that he allegedly paid for. *See* FAC ¶ 60. Neither theory plausibly alleges negligence.

Under California law, generally "there is no duty to act to protect others from the conduct of third parties." *Brown v. USA Taekwondo*, 11 Cal. 5th 204, 214 (2021). There are exceptions to this rule, where "there exists a special relationship between the parties" or there is "some other set of circumstances giving rise to an affirmative duty to protect." *Id.* at 209. Plaintiff does not allege facts that would show he and X Corp. had a special relationship such that he had a right to expect protection from X Corp or that X Corp. had an ability to control the Third-Party Does' conduct. *See Golick v. Cal.*, 82 Cal. App. 5th 1127, 1149 (2022) ("Relationships between parents and children, colleges and students, employers and employees, common carriers and passengers, and innkeepers and guests, are all examples of special relationships that give rise to an affirmative duty to protect."); *King v. Facebook, Inc.*, 572 F. Supp. 3d 776, 786 (N.D. Cal. 2021) (no "special

---

[11] The elements of negligence under Texas law are the same: "(1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damage proximately caused by the breach." *Gann v. Anheuser-Busch, Inc.*, 394 S.W.3d 83, 88 (Tex. App. 2012).

relationship" between Facebook and plaintiff-user). Plaintiff also does not allege "some other set of circumstances" that would give rise to an "affirmative duty" on X Corp.'s part to protect him from the Third-Party Does' conduct. *See Golick*, 82 Cal. App. 5th at 1144–45 (such circumstances exist where the defendant placed the plaintiff "in a dangerous situation," exposed the plaintiff "to an unreasonable risk of harm," or "undert[ook] to aid" the plaintiff). As such, he fails to plausibly allege X Corp. owed him a duty to protect him from the Third-Party Does' impersonation of him.

To the extent Plaintiff's negligence claim is based on X Corp.'s provision of premium services to him, the claim fails because "[c]onduct amounting to a breach of contract becomes tortious only when it also violates a duty *independent* of the contract arising from principles of tort law." *Erlich v. Menezes*, 21 Cal. 4th 543, 551 (1999) (emphasis added). Cancellation of subscriptions is explicitly governed by the Purchaser Terms (RJN, Ex. 2 at 5, Ex. 3 at 5), and the visibility of Plaintiff's content is expressly governed by the Relevant TOS (*id.*, Ex. 1 at 1, 2). As such, Plaintiff does not plausibly allege any duty concerning his purported subscription for premium services or the visibility of his posts that is independent of the Purchaser Terms and Relevant TOS to which he agreed, and his negligence claim fails. *See Mishiyev v. Alphabet, Inc.*, 444 F. Supp. 3d 1154, 1160 (N.D. Cal. 2020) (dismissing negligence claim with prejudice where plaintiff "d[id] not plead the existence of any duty independent of [defendant's] contractual obligations"), *aff'd*, 857 F. App'x 907 (9th Cir. 2021). Also, where, as here, "the parties are in contractual privity" and the plaintiff's claims are "not independent of the contract," California's economic loss rule bars recovery for negligence where no physical injury to a person or property is alleged.[12] *Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 535 (2022); *see also Udo*

---

[12] Narrow exceptions to the rule exist, but Plaintiff does not allege facts sufficient to meet any of those exceptions, nor would any apply here. *See Shahinian v. Kimberly-Clark Corp.*, 2015 WL 4264638, at *8 (C.D. Cal. July 10, 2015) ("California's economic loss rule has exceptions that fall into two broad categories. The first . . . applies to product liability cases, inapplicable here,

*v. Wells Fargo Bank, N.A.*, 2023 WL 8600791, at *2 (N.D. Cal. Dec. 12, 2023) (economic loss rule barred negligence claim alleging only economic loss).[13]

    Plaintiff therefore fails to plausibly allege a negligence claim, which should be dismissed.

### 7.    *Plaintiff Fails to Allege a Plausible DTPA Claim*

    Plaintiff's claim for violation of the DTPA should be dismissed. Because California law applies (Section IV.A, *supra*), this Texas statutory claim is barred. *See Maynard v. PayPal, Inc.*, 2019 WL 3552432, at *5 (N.D. Tex. Aug. 5, 2019) (enforcing Delaware choice of law provision and dismissing DTPA claim); *see also Cory v. Stewart*, 103 F.4th 1067, 1076 (5th Cir. 2024) (Delaware choice of law "preclude[d] access to non-Delaware statutes.").

    Even if Texas law applies (it does not), Plaintiff fails to plausibly allege a DTPA claim. To state a claim under the DTPA, a plaintiff must plausibly allege (1) the plaintiff "is a consumer under the DTPA," (2) the defendant "committed a false, misleading, or deceptive act under § 17.46(b) of the DTPA, breached an express or implied warranty, or engaged in an unconscionable action or course of action," and (3) the defendants' "acts were the producing cause" of the plaintiff's "actual damages." *Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co.*, 313

---

and the second . . . applies to breaches of a noncontractual duty . . . where the conduct also (1) breaches a duty imposed by some types of 'special' or 'confidential' relationships; (2) breaches a 'duty' not to commit certain intentional torts; or (3) was committed 'intending or knowing that such a breach will cause severe, unmitigable harm in the form of mental anguish, personal hardship, or substantial consequential damages.'" (cleaned up)).

[13] Plaintiff also cannot recover for his purported emotional harm. Recovery is "limited to economic loss unless malice, breach of a fiduciary duty, physical injury or impact," or an "unusually extreme or outrageous circumstance" is shown. *Maynard v. United Servs. Auto. Ass'n Fed. Sav. Bank*, 2022 WL 1283153, at *1–2 (N.D. Cal. Feb. 11, 2022) (citing *Branch v. Homefed Bank*, 6 Cal. App. 4th 793, 800 (1992)). Indeed, "[i]t is only in specialized cases where recovery of emotional distress damages has been allowed for a negligence claim without physical injury . . . ." *Maynard*, 2022 WL 1283153, at *1–2 (citing *Branch*, 6 Cal. App. 4th at 800, and *Quezada v. Hart*, 67 Cal. App. 3d 754, 762 (1977)). The FAC does not plausibly allege any of these circumstances, and therefore Plaintiff cannot recover for his purported emotional harm.

F.3d 899, 907 (5th Cir. 2002). DTPA claims based on section 17.46(b) require an additional element of detrimental reliance. Tex. Bus. & Com. Code § 17.50(a)(1)(B).

Plaintiff's DTPA claim is premised on three purported "false, misleading, or deceptive" acts under sections 17.46(b)(5), (12), and (24) in connection with (1) representations to provide "promotional services while actively preventing access to those services" and (2) failing to disclose "the existence of 'temporary labels' that 'impact reach.'" FAC ¶ 65. The FAC's boilerplate recitations of sections 17.46(b)(5), (12), and (24) do not plausibly allege any false, misleading, or deceptive act. *See Gunes v. Jaguar Land Rover N. Am. LLC*, 2023 WL 6370780, at *3 (S.D. Tex. May 24, 2023) (dismissing claim where plaintiff "recites boilerplate statutory language from the DTPA"). Plaintiff also does not identify any specific misrepresentation or allege the circumstances in which any misrepresentation was made. *See Bedgood v. Nissan N. Am., Inc*., 2016 WL 3566689, at *3 (W.D. Tex. June 24, 2016) (DTPA claim dismissed where "Plaintiffs have alleged no facts identifying the content of the alleged misrepresentations or the 'who, what, when, where, and how' of these representations"); *SHS Inv. v. Nationwide Mut. Ins. Co*., 798 F. Supp. 2d 811, 819 (S.D. Tex. 2011) (DTPA claim based on "vague and generic" allegations and "Plaintiff's own legal conclusions" did not satisfy Rule 9(b)). As to the omission about "temporary labels" that were allegedly placed on Plaintiff's account in March 2025 (FAC ¶ 22 (pp. 17–18)), Plaintiff does not plausibly allege X Corp. failed to disclose any fact at the time he created his account or subscribed for premium services. *See Bauer v. AGCO Corp*., 2024 WL 2703019, at *4 (W.D. Tex. May 23, 2024) (DTPA claim dismissed where plaintiff did not allege "facts indicating [defendant] was aware, at the time of the transaction, of facts it failed to disclose"). Also, Plaintiff does not allege he detrimentally relied on any misrepresentation or omission. *See Robinson v. Match.com, LLC*, 2012 WL 5007777, at *10 (N.D. Tex. Oct. 17, 2012) ("Plaintiffs are required but have failed to

17

allege that they relied on [defendant's] representations, nondisclosures, and conduct that is claimed to be misleading."), *aff'd sub nom. Malsom v. Match.com, LLC*, 540 F. App'x 412 (5th Cir. 2013).

Therefore, Plaintiff's DTPA claim should be dismissed.

### 8.    *Plaintiff Fails to Allege a Plausible Contract Claim*

Plaintiff's breach of contract claim is based on allegations that X Corp. (1) charged for premium services it did not provide (FAC ¶ 71.a & c), (2) used "temporary labels" that "impact reach" of his content (*id.* ¶ 71.b), and (3) presented "mathematically impossible advertising metrics" (*id.* ¶ 71.d). His implied covenant claim is based on allegations X Corp. (1) "refus[ed] to address" Plaintiff's complaints about the Third-Party Does (*id.* ¶ 72.a-b) and (2) applied "algorithmic suppression" to his content (*id.* ¶ 72.c-d). Plaintiff fails to plausibly allege either claim, and therefore these contract-based claims should be dismissed.

Plaintiff fails to plausibly allege breach of contract. The elements of a breach of contract under California law are: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Salami v. Los Robles Reg'l Med. Ctr.*, 103 Cal. App. 5th 1023, 1027 (2024) (affirming dismissal).[14] Plaintiff does not plausibly allege any breach by X Corp. because the FAC fails to identify any specific term of the Relevant TOS or Purchaser Terms that was purportedly breached. *See ABC Servs. Grp., Inc. v. Health Net of Cal., Inc.*, 2020 WL 4760182, at *3 (C.D. Cal. July 29, 2020) (dismissing contract claim where plaintiff "failed to plead specific contract terms that were allegedly breached"); *Martini v. Godaddy.com Inc.*, 2009 WL 10674914, at *4 (C.D. Cal. Mar. 16, 2009) (same). He also does not allege he performed under those contracts or was excused from

---

[14] The elements under Texas law are similar: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages." *Walker v. Presidium, Inc.*, 296 S.W.3d 687, 693 (Tex. App. 2009).

performance. *Salami*, 103 Cal. App. 5th at 1027 (affirming dismissal where plaintiff "did not allege that he performed . . . or was excused from doing so"). In fact, under the Purchaser Terms, Plaintiff agreed that his alleged subscription would "AUTOMATICALLY RENEW . . . UNLESS THE SUBSCRIPTION IS CANCELLED" following the procedures applicable to his third-party payment processor, *i.e.*, cancelling through the Apple App Store, Google Play Store, or Stripe. RJN, Ex. 2 at 5; *id.*, Ex. 3 at 5. Plaintiff does not allege he attempted or was prevented from cancelling through his unidentified third-party payment processor, and only alleges in conclusory fashion that he was "prevent[ed] access to [premium] services." FAC ¶ 71.a; *see also Travelers Cas. & Sur. Co. of Am. v. R.J. Lanthier Co.*, 2014 WL 4364847, at *5 (S.D. Cal. Sept. 2, 2014) (dismissing contract claim premised on "mere conclusory statements"). Plaintiff therefore fails to plausibly allege a breach of contract claim.

Plaintiff also fails to plausibly allege breach of the implied covenant of good faith and fair dealing. "In order to state a claim for breach of an implied covenant of good faith and fair dealing, the specific contractual obligation from which the implied covenant of good faith and fair dealing arose must be alleged." *Sanchez v. Aurora Loan Servs., LLC*, 2014 WL 12589660, at *23 (C.D. Cal. June 10, 2014) (quoting *Inter-Mark USA, Inc. v. Intuit, Inc.*, 2008 WL 552482, *6 (N.D. Cal. Feb. 27, 2008)). The implied covenant "cannot vary the express terms of a contract; if the defendant did what it was expressly given the right to do, there can be no breach." *Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107, 1120 (2008) (implied covenant claim that would limit defendant's contractual right failed as a matter of law). Plaintiff fails to plausibly allege a breach of the implied covenant because he does not identify any express provision of the Relevant TOS or Purchaser Terms that was purportedly frustrated. *Sanchez*, 2014 WL 12589660, at *23 (dismissing implied covenant claim where plaintiff "nowhere alleges the specific

contractual provision(s) that defendants' alleged conduct frustrated"). To the extent his claim is premised on X Corp.'s purported failure to address his complaints about the Third-Party Does (FAC ¶ 72.a-b), the claim fails because the implied covenant "cannot be extended to create obligations not contemplated in the contract." *Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*, 11 Cal. App. 4th 1026, 1032 (1992); *see also Goulatte v. CitiMortgage, Inc.*, 2012 WL 12888846, at *8 (C.D. Cal. July 2, 2012) (same conclusion). And to the extent his claim is based on X Corp.'s purported "algorithmic suppression" of his content (FAC ¶ 72.c-d), the claim also fails because of X Corp.'s express right under the Relevant TOS to "limit distribution or visibility of any Content on" Twitter. RJN Ex. 1 at 2; *see also King v. Facebook Inc.*, 599 F. Supp. 3d 901, 910 (N.D. Cal. 2022) (dismissing implied covenant claim that "would contradict the express terms of the contract"), *aff'd*, 2023 WL 5318464 (9th Cir. Aug. 18, 2023). In sum, Plaintiff's claim for breach of contract and breach of the implied covenant should be dismissed.

### D.    Leave to Amend Should Be Denied

Dismissal without leave to amend is "appropriate" where "amendment is futile because . . . the legal theory upon which a complaint relies is indisputably meritless." *Meeks v. DeBouse*, 2024 WL 4457846, at *1 (5th Cir. Oct. 10, 2024) (internal quotation marks omitted) (affirming denial of leave to amend). That is the case here. Plaintiff's claims are inescapably barred by the Relevant TOS and Purchaser Terms. Even if they were not, Plaintiff has had an opportunity to replead his claims (after X Corp. filed its initial motion to dismiss), and as explained above, he has failed to state any of his claims. Leave to amend therefore should be denied. *See Whitfield v. Am. Express Nat'l Bank*, 2024 WL 1543236, at *3 (W.D. Tex. Apr. 9, 2024) (denying pro se plaintiff leave to amend because "amendment would be futile").

### V.    <u>CONCLUSION</u>

For all these reasons, this Court should dismiss Plaintiff's FAC without leave to amend.

Dated: March 27, 2025                    Respectfully submitted,

                                         By:   _/s/ Kenneth M. Trujillo-Jamison_____
                                               Kenneth M. Trujillo-Jamison
                                               (admitted pro hac vice)
                                               ktrujillo-jamison@willenken.com
                                               WILLENKEN LLP
                                               707 Wilshire Blvd., Suite 4100
                                               Los Angeles, CA 90017
                                               (213) 955-9240 (Telephone)
                                               (213) 955-9250 (Facsimile)

                                               Norma N. Bennett
                                               Texas Bar No. 24028492
                                               nbennett@shb.com
                                               Michella Gibbs
                                               Texas Bar No, 24107371
                                               mgibbs@shb.com
                                               SHOOK, HARDY & BACON, LLP
                                               600 Travis, Suite 3400
                                               Houston, Texas 77002
                                               (713) 227-8008 (Telephone)
                                               (713) 227-9508 (Facsimile)

                                               *Attorneys for Defendant X Corp.*

### CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2025, I filed the foregoing document with the clerk of court for the United States District Court, Western District of Texas, Austin Division, using the Court's CM/ECF filing system.  I hereby certify that I have served all parties in the manner authorized by the Federal Rules of Civil Procedure, including those parties not registered for electronic filing.

Justin Riddle
16422 Patrick Ave
Omaha, NE 68116
402-813-2156
Email: justinriddle1@gmail.com

**Pro Se Plaintiff**

                                         */s/ Norma N. Bennett_____
                                         Norma N. Bennett