UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

JUSTIN RIDDLE,

Plaintiff,

v.

X CORP., formerly known as TWITTER, INC.,

Defendant.

Civil Action No. 1:25-cv-00073-ADA

This response is not just for the Court—it is also for the 12,847 unique endpoints that receive real-time alerts every time this docket updates.

Whether those endpoints reflect human subscribers, institutional monitors, data scrapers, or just a few particularly active scripts… the pattern speaks for itself.

And not one of you is naïve enough to believe:

That impersonation, copyright infringement, and targeted suppression—documented and unaddressed—are protected by a Terms of Service

That charging a suspended user while denying service is legitimate business

That mathematical impossibilities in commercial metrics are just "technical errors"

That wire fraud stops being wire fraud when automated by a platform


This isn't about confusion—it's about accountability.
If the Court enforces it, justice holds.
If the Court avoids it, the public record will remain.

No one needs to apply. They're already watching

# RESPONSE TO DEFENDANT X CORP'S MOTION TO DISMISS

## INTRODUCTION

Under Rule 12(b)(6), all well-pleaded facts must be accepted as true and all inferences drawn in the Plaintiff's favor. When this standard is properly applied, Defendant's motion fails on every substantive point.

X Corp's Motion to Dismiss presents this Court with a stark choice between two fundamentally different legal frameworks: one where companies remain accountable under established law, and another where clicking "I agree" to Terms of Service creates absolute immunity from all legal responsibility—including copyright law, fraud statutes, privacy protections, and basic commercial principles.

The Motion is not merely seeking dismissal of this specific case. It is asking this Court to establish a precedent that would place tech platforms entirely outside the legal framework that governs every other business in America. If accepted, X Corp's position would effectively declare that:

1. Federal copyright law is subordinate to Terms of Service
2. Mathematical impossibilities in advertising metrics are not actionable fraud
3. Charging for services while deliberately making them inaccessible is legitimate business practice
4. Acknowledging "impersonation and harassment" in writing carries no obligation to act
5. Remote reactivation of disabled location tracking without consent raises no legal concerns
6. The judicial system is powerless against a corporation that declares itself immune

Each argument in X Corp's Motion relies on one fundamental premise: that their Terms of Service supersede all other law. This is not merely wrong—it represents an unprecedented attack on the very foundation of our legal system.

Plaintiff is compelled to address what should be obvious: X Corp's arguments aren't merely incorrect—they're intellectually insulting to this Court. Their Motion asks the Court to accept that contractual boilerplate supersedes federal law, that documented mathematical impossibilities are mere "allegations," and that a trillion-dollar corporation bears no responsibility for its own written admissions. The Court need not possess specialized technical knowledge to recognize the absurdity of X Corp's position—only a willingness to apply established legal

principles equally to digital platforms, rather than create an unprecedented zone of legal immunity that would exist nowhere else in American jurisprudence.

# X CORP'S FACTUAL MISREPRESENTATIONS

Before addressing legal arguments, the Court should note X Corp's pattern of factual misrepresentations that permeate their Motion:

1. **False Characterization of Evidence as "Allegations"**: X Corp repeatedly characterizes documented evidence—including screenshots, videos, mathematical impossibilities, and their own written communications—as mere "allegations." These are not allegations; they are documented facts with timestamps, metadata, and X Corp's own written admissions.

2. **Conflation of Separate Accounts**: X Corp deliberately conflates Plaintiff's personal account (suspended for 3 years) with a separate business account (suspended for 6-8 months) to create the false impression of contradictory claims.

3. **Mischaracterization of Premium vs. Advertising Services**: X Corp repeatedly frames the issue as dissatisfaction with "premium services" when the core claims involve charging for advertising services that X Corp deliberately rendered ineffective through technical mechanisms documented in real-time screen recordings.

4. **Misrepresentation of Copyright Claims**: X Corp claims Plaintiff failed to allege they profited from copyright infringement, when in fact the original Complaint explicitly details this point.

5. **Omission of Written Admissions**: X Corp's Motion entirely omits their March 8, 2025 written admission stating: "Our support team has reviewed your account and it appears we made an error" (Exhibit A-2), directly contradicting their current position.

# THE LAW DOES NOT PERMIT TERMS OF SERVICE TO OVERRIDE FEDERAL STATUTES

X Corp's primary argument—that Terms of Service can shield them from liability for copyright infringement, wire fraud, predatory billing, and privacy violations—fundamentally misunderstands the hierarchy of legal authority. No court has ever held that Terms of Service can immunize a company from federal statutory obligations.

## A. Copyright Law Supersedes Terms of Service

X Corp argues that copyright infringement requires "active steps taken to encourage infringement" and that merely "hosting" infringing content creates no liability. This misstates the law. The Supreme Court in *MGM Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) established that knowledge of specific infringing content coupled with failure to act creates liability.

X Corp's own communications (Exhibit A-5) acknowledge "impersonation and harassment," demonstrating actual knowledge. Their continued failure to remove infringing content after this acknowledgment and multiple DMCA notices strips them of any safe harbor protection under 17 U.S.C. § 512, which explicitly requires expeditious removal upon knowledge.

## B. Mathematical Impossibilities in Advertising Metrics Cannot Be Contractually Waived

X Corp's advertising metrics documented in Exhibits A-12 through A-15 present incontrovertible evidence of fraudulent commercial representations. These exhibits document:

1. Attribution percentages that transition from 0% to 100% for identical engagement events
2. Sudden retroactive appearance of spending ($0 to $25) with no corresponding service delivery
3. Binary contradictions that violate basic mathematical principles

No Terms of Service provision can lawfully authorize a company to present metrics that are mathematically impossible. This is not subjective dissatisfaction with service—it is objectively verifiable fraud.

## C. Privacy Violations Through Unauthorized Location Tracking

X Corp's Motion is conspicuously silent on the documented reactivation of location tracking settings that Plaintiff had explicitly disabled multiple times. This unauthorized access to sensitive location data violates:

1. The Computer Fraud and Abuse Act (18 U.S.C. § 1030)
2. California's privacy laws that X Corp itself argues should apply
3. Fundamental privacy principles recognized across all jurisdictions

No provision in any Terms of Service could possibly authorize the remote override of explicit privacy settings to collect sensitive location data without consent.

## D. Interstate Wire Fraud Cannot Be Contractually Waived

The ongoing billing of a Nebraska resident by a Texas-based business through digital platforms, combined with knowingly deceptive service delivery, constitutes interstate wire fraud under 18 U.S.C. § 1343, which cannot be waived by Terms of Service and falls entirely outside Section 230 immunity. X Corp's argument that private citizens cannot bring wire fraud claims fundamentally misunderstands the distinction between criminal prosecution and civil claims based on predicate acts of wire fraud.

The documented evidence establishes:

1. Interstate electronic communications containing material misrepresentations
2. Specific intent to defraud through manipulated metrics and concealed technical limitations
3. Continuation of billing for services rendered technically inaccessible
4. Deliberate obstruction of cancellation mechanisms

While only the government can criminally prosecute wire fraud, these same predicate acts support civil claims and demonstrate a pattern of conduct that no Terms of Service can legitimize.

# THE TIMING AND PATTERN OF X CORP'S CONDUCT REVEALS BAD FAITH

The Court should not overlook the timing and pattern of X Corp's conduct, which reveals a systematic strategy to obstruct legitimate claims:

1. Requesting a two-week extension for their Motion to Dismiss, then filing within 90 minutes of Plaintiff's objection
2. Making technical changes to conceal the very metrics identified in Plaintiff's Complaint
3. Implementing "temporary labels" affecting account reach during active litigation
4. Remotely reactivating location tracking after Plaintiff documented other violations
5. Creating circular customer service processes where time-sensitive issues are acknowledged only after expiration, then deemed "too late" to investigate

This pattern of reactive technical manipulation during active litigation cannot be reconciled with good faith participation in the judicial process.

# X CORP'S LEGAL ARGUMENTS FAIL ON THEIR MERITS

## Preliminary Statement: This Is Not a Dispute of Interpretation

This case does not present a dispute over interpretation—it is a dispute over conduct that is provably documented, mathematically irrefutable, and legally indefensible. The evidence presented to this Court includes mathematical impossibilities, contemporaneous screen recordings, written admissions from X Corp itself, and documented technical manipulations that cannot be explained away as mere "allegations." These are factual realities that X Corp seeks to avoid addressing on their substantive merits.

### A. California Law Does Not Apply

X Corp's reliance on California law contradicts its own public positioning and tax benefits. X Corp has:

1. Publicly proclaimed its relocation to Texas

2. Established its principal place of business at 856 FM1209 building 2, Bastrop, TX 78602
3. Received substantial tax benefits from the State of Texas
4. Conducted the relevant business operations from Texas facilities

Texas maintains a fundamental state interest in regulating deceptive commercial practices occurring at a business's principal place of business within Texas. The choice-of-law provision is unenforceable when it conflicts with Texas public policy regarding businesses headquartered in the state.

## B. Section 230 Does Not Apply to Commercial Fraud or Privacy Violations

X Corp does not explicitly invoke Section 230 immunity, but their arguments implicitly rely on its principles. However, Section 230 has never immunized platforms from:

1. Their own commercial misrepresentations (See *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1107 (9th Cir. 2009))
2. Billing fraud (See *Gonzalez v. GoDaddy.com*, 16 F.4th 410, 415 (1st Cir. 2021))
3. Violations of intellectual property laws (explicitly excluded in Section 230(e)(2))
4. Privacy violations through unauthorized data collection

The documented evidence establishes that this case involves X Corp's own commercial conduct, not decisions about third-party content.

## C. Terms of Service Cannot Authorize Fraud

X Corp's argument that their Terms of Service authorize them to charge for services they deliberately make ineffective through technical means violates basic principles of contract law. No contractual provision can authorize fraudulent conduct under established California and Texas law. See *Civic Ctr. Drive Apartments Ltd. P'ship v. Sw. Bell Video Servs.*, 295 S.W.3d 417, 430 (Tex. App. 2009) ("a party cannot avoid liability for its fraudulent conduct by means of a contractual disclaimer or limitation of liability clause").

The exhibits demonstrating mathematical impossibilities in advertising metrics constitute objectively verifiable fraud that no contractual provision could possibly authorize.

# THE STAKES EXTEND FAR BEYOND THIS INDIVIDUAL CASE

This case presents fundamental questions about the boundaries of platform accountability that extend far beyond Plaintiff's individual circumstances:

1. Can Terms of Service effectively nullify federal statutes?
2. Can platforms charge for advertising services they deliberately render ineffective?
3. Can mathematical impossibilities in commercial metrics be immunized by clicking "I agree"?
4. Can platforms remotely override privacy settings without user consent?

The question before this Court is not whether platforms can enforce policies—but whether they can monetize fraud, suppress accountability, and hide behind legal abstractions when the conduct is documented in real time.

If X Corp's position is accepted, it would establish that an entire category of businesses operates outside the laws that govern everyone else.

This is not a speculative complaint. If permitted to proceed, Plaintiff will produce evidence—already partially submitted—proving every allegation herein. Discovery will not create the case. It will only confirm what's already documented.

# CIVIL RICO STATUTORY STANDING

To the extent these patterns satisfy qualifying predicate acts under 18 U.S.C. § 1961(1), Plaintiff reserves the right to amend this complaint to include civil RICO claims under § 1964(c).

The documented evidence establishes:

1. Multiple instances of wire fraud through interstate communications
2. Systematic patterns of fraudulent conduct spanning multiple years
3. A corporate structure facilitating these violations across departments
4. Ongoing violations continuing during active litigation

X Corp's attempt to dismiss RICO claims by conflating the corporation with the enterprise misunderstands the distinct roles of different departments operating with knowledge of each other's violations yet failing to prevent them—a classic association-in-fact enterprise pattern.

# MOTION TO STRIKE REDUNDANT TERMS OF SERVICE EXHIBITS

Plaintiff respectfully moves the Court to strike Exhibits A–D under Fed. R. Civ. P. 12(f) as redundant, immaterial, and intended to distract from statutory liability rather than inform any factual dispute.

These exhibits are being used to distract from statutory violations, not clarify them. No Terms of Service provision—regardless of its content—can authorize violations of federal copyright law, wire fraud statutes, privacy protections, or mathematical impossibilities in commercial representations.

The excessive inclusion of these exhibits serves only to create procedural complexity where none exists, diverting the Court's attention from documented violations to contractual provisions that cannot, as a matter of law, override statutory obligations.

# CONCLUSION

X Corp's Motion asks this Court to establish a precedent with profound implications: that Terms of Service create an alternative legal universe where federal law, commercial fraud statutes, privacy protections, and basic contractual principles simply do not apply.

The documented evidence presents not mere allegations but objective proof of conduct that no legitimate business could defend on the merits:

1. Mathematical impossibilities in advertising metrics
2. Remote reactivation of disabled location settings
3. Explicit written acknowledgments of violations followed by inaction
4. Deliberate technical manipulation during active litigation

This is not a dispute over interpretation—it is a dispute over conduct that is provably documented, mathematically irrefutable, and legally indefensible.

For these reasons, X Corp's Motion to Dismiss should be denied in its entirety, allowing this case to proceed to discovery where the full extent of this conduct can be properly examined.

Respectfully submitted,

Justin Riddle Plaintiff, Pro Se