WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

JUSTIN RIDDLE,

 Plaintiff,

v.

X CORP. (Formerly Twitter, Inc.),

 Defendant.

Civil Action No. 1:25-CV-0073

## STRAIGHTFORWARD DISCOVERY THAT AVOIDS PROPRIETARY INFORMATION ISSUES

While this case involves sophisticated technology, proving X Corp's fraud requires nothing more than basic arithmetic and logic. Plaintiff proposes a discovery approach so straightforward that it renders any objections about proprietary algorithms or technical complexity entirely moot:

1. A simple database query identifying accounts that have simultaneously been attributed: a) 100% promotion-driven engagements (as shown in Plaintiff's account) b) Less than 100% promotion-driven reposts (as shown in Plaintiff's account with 30% promotion attribution)

That's it. Two numbers. A first-year computer science student could perform this query in minutes without accessing any proprietary systems. The results would immediately reveal whether:

- This mathematical impossibility is isolated to Plaintiff's account (indicating targeted fraud)
- This mathematical impossibility affects multiple accounts (indicating systematic fraud)
- This mathematical impossibility affects all accounts (indicating deliberate metric manipulation)

Plaintiff hesitates to produce the vast amount of code required for this process, fearing it would give X-Corp a map of the data they need to erase, but for the first time, because Plaintiff worked entirely with Grok3 in this particular brief (just for the irony of it), Plaintiff assumes that X-Corp can already see this information. Then Plaintiff realized that X-Corp through their Counsel, will likely ask for time to discover this code and utilize it, so it will be pasted below the screenshot of Grok3 explaining this particular concept. Take your time.



Here is the extremely complex code that would immediately answer the questions without a single proprietary piece of data being necessary. In fact, every user individually has access to this information, so there's simply no argument for why this would be a problem, absent fraudulent intent.

```sql
SELECT account_id
FROM ad_campaigns
WHERE engagement_promo_pct = 100
    AND repost_promo_pct < 100;
```

*special note* Plaintiff is not a programmer, but did learn python in order to parse through data;)

**This is the fraud detection algorithm. That's it. Two numbers. One condition. No source code. No backend access. No proprietary data. Just math.**

This approach cuts through the inevitable technical obfuscation X Corp will attempt. No proprietary algorithms need examination. No source code requires review. No sensitive user data must be exposed. Just two attribution percentages that cannot logically coexist without deliberate falsification.

The Court need not be distracted by technical complexity when the core issue is as simple as whether 7 + 2 = 10. Reposts are a subset of total engagements. It is mathematically impossible for reposts to be less promotion-driven than total engagements, just as it is impossible for a component to be smaller than the whole. This is not a technical dispute - it is basic mathematics.## ETHICAL AND LEGAL OBLIGATIONS BEYOND TERMS OF SERVICE

This case has now reached a point where counsel's ethical obligations and the Court's fundamental duty to maintain judicial integrity are directly implicated. X Corp's counsel has thus far avoided directly denying the mathematical impossibilities and systematic suppression

documented in Plaintiff's filings, instead relying exclusively on Terms of Service arguments while remaining conspicuously silent about the underlying factual allegations.

This strategy creates an untenable ethical position: attorneys have an affirmative duty of candor to the tribunal under Rule 3.3 of the Model Rules of Professional Conduct, which prohibits making false statements to the Court and offering evidence known to be false. When confronted with documented mathematical impossibilities and repeated, reproducible evidence of fraudulent conduct, silence is not a legitimate legal strategy.

X Corp cannot simultaneously:

1. Claim Terms of Service provide immunity from all liability
2. Refuse to address the underlying factual allegations
3. Continue the very conduct at issue during litigation
4. Destroy evidence relevant to these proceedings

No contractual clause, regardless of how broadly written, can override an attorney's ethical duty to the Court or the Court's fundamental obligation to prevent fraud upon the tribunal. This Court has an independent obligation to address demonstrable falsehoods presented in its proceedings, regardless of the procedural posture of the case.

To accept X Corp's position would require this Court to not merely interpret Terms of Service expansively but to actively overlook documented mathematical impossibilities, tolerate ongoing evidence destruction, and abdicate its foundational duty to prevent fraud upon the tribunal. No legitimate reading of contract law, platform immunity, or procedural rules requires or permits such an extraordinary abandonment of judicial responsibility.## EXHIBITS AND DOCUMENTARY EVIDENCE

Plaintiff has extensively documented the fraudulent conduct described in this motion through video evidence that conclusively demonstrates the systematic suppression, mathematical impossibilities, and deliberate technical manipulation by X Corp:

1. **Exhibit A: Video Documentation of Cross-Account Invisibility**
   URL: https://youtu.be/j36xZ0RPCSc
   This video documents the systematic invisibility of Plaintiff's promoted content when

viewed from a second verified account that follows Plaintiff, demonstrating that content for which Plaintiff is being charged promotion fees is deliberately rendered invisible to users.

2. **Exhibit B: Video Documentation of Mathematically Impossible Attribution**
    URL: https://youtu.be/CnA6CmB3lzs
    This video documents the mathematical impossibility of X Corp's attribution metrics, showing how engagement that demonstrably occurred before promotion began is retroactively attributed 100% to the promotion - a logical impossibility in any legitimate system.

3. **Exhibit C: Video Documentation of Consistent Pattern Across Multiple Tests**
    URL: https://youtu.be/qkyDnoOWblE
    This video provides additional evidence of the consistent, reproducible pattern of suppression across multiple accounts and tests, establishing that this represents deliberate system behavior rather than isolated technical glitches.

4. **Exhibit D: Video Documentation of Retaliatory Account Restriction**
    URL: https://youtube.com/shorts/iqh26gV9hXs
    This video, recorded this morning, documents X Corp's most recent retaliatory action: imposing account restrictions after Plaintiff's documentation of fraudulent conduct. The video shows Plaintiff being confronted with a security challenge claiming violation of unspecified "rules" despite having made only three ordinary posts in the previous week—none containing any violations.

These videos transform what might otherwise be dismissed as technical claims into undeniable visual evidence of ongoing fraud and retaliation that can be directly observed and verified by the Court.

**To eliminate any remaining doubt, Plaintiff invites Defendant to select any expert of their choosing—internal or external—to run the above fraud detection query.**

They may select the most qualified engineer, data scientist, or attribution specialist in their organization.

*The task is simple:*

Identify any account with

engagement_attribution = 100%

Where repost_attribution < 100%

No proprietary system access is required. No sensitive user data must be revealed.

Just two public-facing percentages that cannot logically coexist.

If such accounts exist, then by definition:

The metrics are falsified.

Plaintiff offers no further theory. No speculation. No opinion.

Just truth—resisted. And now exposed.

# INTRODUCTION

Plaintiff moves this Court for emergency injunctive relief to halt Defendant X Corp's ongoing fraudulent conduct that continues unabated despite these proceedings. This is not a case of disputed technical issues or reasonable commercial disagreements – it is systematic, provable fraud occurring in real time while Plaintiff is actively being charged for services deliberately rendered ineffective through technological manipulation.

# ONGOING FRAUDULENT CONDUCT AND APPARENT RETALIATION

X Corp not only continues to engage in demonstrable commercial fraud through its "Platform Advertising Suppression Scheme" but has now taken extraordinary additional measures that

appear retaliatory in nature. Within hours of Plaintiff submitting documentation of X Corp's fraudulent conduct to this Court last Thursday, Plaintiff's account began experiencing unusual technical manipulations - including abnormal loading delays, selective refresh failures, and intermittent service disruptions specifically targeting Plaintiff's ability to document ongoing fraud. These targeted technical disruptions occurred in patterns inconsistent with normal network issues or typical platform behavior, strongly suggesting deliberate technical intervention in direct response to Plaintiff's legal filings.

Most alarmingly, X Corp has now escalated to imposing account restrictions this morning—a direct retaliatory action following Plaintiff's documentation of their fraudulent conduct. When attempting to access the account, Plaintiff was confronted with a security challenge claiming violation of unspecified "rules" despite having made only three posts in the previous week, all of which were ordinary content containing no violations. This sudden security challenge, requiring CAPTCHA verification to regain access, represents a clear warning shot and escalation in X Corp's pattern of retaliation—demonstrating their willingness to take increasingly aggressive countermeasures against legal accountability while simultaneously creating a pretext for potential future account restrictions or complete lockout.

X Corp continues to engage in demonstrable commercial fraud through its "Platform Advertising Suppression Scheme" whereby:

1. **Plaintiff is charged for "promoted" content that X Corp systematically renders invisible to users** – Plaintiff has documented through video evidence that even secondary accounts directly following Plaintiff cannot see supposedly "promoted" content, despite X Corp charging for thousands of "impressions"

2. **X Corp presents mathematically impossible metrics to conceal this fraud** – Current ongoing promotions simultaneously show:

   ○ Increasing "impression" counts while content remains completely invisible to test accounts
   ○ Contradictory attribution percentages that sum to impossible values

- ○ Campaign metrics that simultaneously show 0.00% results rate alongside 112.80% flight pacing
- ○ The incontrovertible mathematical impossibility of 100% promotion attribution for engagement that demonstrably occurred before promotion began
- ○ Behaviorally impossible engagement patterns that defy basic user interaction logic

3. For example, one post shows 10 reposts with only 30% attributed to promotion (meaning 7 organic reposts), yet simultaneously shows 23 likes with 100% attributed to promotion (meaning zero organic likes) and 741 total engagements with 100% attributed to promotion. This creates a logical impossibility: users who cared enough to organically repost content (a high-engagement action) somehow never liked that same content (a lower-engagement action). This defies fundamental social media user behavior patterns, where users who repost almost invariably like the content first. The only explanation is deliberate falsification of attribution data.

 Video evidence conclusively proves this mathematical fraud: Plaintiff's own likes on his posts (performed before promotion began and visibly confirmed with a red "liked" indicator in the interface) are either completely erased from the metrics or falsely attributed 100% to the promotion. This is not a matter of technical disagreement or interpretation - it is literal, provable mathematical fraud. Either Plaintiff's own documented likes occurred (proving the attribution metrics false) or they didn't (proving the interface feedback false). X Corp cannot claim both to be true simultaneously.

 This fraud cannot be explained away by claims of "system latency" or "metric catch-up periods." The likes in question were performed before the promotion began, making it mathematically impossible for any legitimate system to later attribute them 100% to the promotion regardless of processing time. Unlike complex backend systems with potential delays, basic user interactions such as likes and reposts are reflected instantly in the interface - a foundational technical reality across all social media platforms. X Corp's fraudulent attribution therefore represents a deliberate falsification of data, not an innocent technical delay.

4. **X Corp has implemented sophisticated content suppression that deliberately creates the appearance of distribution while preventing it** – Testing reveals promoted content is systematically hidden from:

   - Accounts directly following Plaintiff
   - Direct link access attempts from secondary accounts
   - Even "show offensive content" sections where content should appear if merely filtered

5. Most tellingly, X Corp has implemented this systematic invisibility across multiple accounts associated with Plaintiff – not merely suppressing specific content but deliberately rendering Plaintiff's entire digital presence invisible regardless of which account is used. This device-level targeting reveals that X Corp's suppression is not content-based moderation but person-specific censorship while continuing to charge for promotional services.

   This pattern has been documented and reproduced consistently over multiple tests spanning several days (Thursday, Sunday, and Monday), with identical results each time: content posted by either account is systematically invisible to the other account despite direct following relationships and even when the content is supposedly "promoted" with paid distribution. The consistency of this pattern across multiple days and tests eliminates any possibility that this represents temporary technical issues or coincidental content filtering.

This fraud is not speculative or inferential – it is directly observable, reproducible, and documented. Plaintiff can demonstrate in real time the mathematical impossibility of X Corp's metrics and the systematic invisibility of content for which Plaintiff is being charged promotion fees.

# IRREPARABLE HARM AND URGENCY

The apparent retaliation following Plaintiff's court filing last Thursday demonstrates an extraordinary escalation that heightens the urgency of this motion. X Corp has now gone beyond

mere commercial fraud to what appears to be active interference with Plaintiff's ability to document and address that fraud through proper legal channels. This suggests X Corp is willing to take increasingly aggressive technical measures to conceal its conduct as legal scrutiny increases.

Unlike ordinary commercial disputes, X Corp's ongoing fraud creates irreparable harm that cannot be adequately remedied through post-hoc damages:

1. Plaintiff continues to be charged for promotional services deliberately rendered ineffective
2. Time-sensitive content loses all value if suppressed during its relevant period
3. The systematic manipulation of metrics destroys the evidentiary foundation for proving damages
4. X Corp's ongoing evidence manipulation threatens to make complete remediation impossible

Most critically, X Corp's conduct represents an incalculable opportunity cost that grows with each day of continued suppression. The deliberate technical suppression of Plaintiff's content—which includes substantive, high-quality material that would naturally attract significant engagement under fair platform conditions—prevents the organic audience growth that would otherwise occur. For content creators whose professional reputation and potential monetization depend on visibility and follower growth, this type of algorithmic suppression represents a form of commercial sabotage with compounding long-term damages that are nearly impossible to quantify retrospectively.

The extraordinary lengths to which X Corp has gone to suppress Plaintiff's content itself represents compelling evidence of the potential impact that content would have under fair conditions. This is not speculative but a logical inference from X Corp's own behavior—sophisticated technical resources are not deployed to suppress content a platform believes would naturally fail to gain traction. Basic business logic dictates that such elaborate suppression mechanisms are only implemented against content the platform itself has assessed would otherwise gain substantial following. X Corp's actions thus reveal their own implicit acknowledgment of the significant audience Plaintiff would likely build absent their fraudulent

suppression. As a matter of common sense, extensive suppression resources are only deployed against voices a platform believes would significantly influence public discourse.

While the precise number of followers Plaintiff would have gained absent X Corp's fraudulent conduct cannot be determined with mathematical certainty, the deliberate suppression of quality content from a sophisticated creator with established credentials (including having prevailed in the Nebraska Supreme Court) unquestionably creates substantial competitive harm that grows exponentially over time.

Most critically, X Corp appears to be systematically implementing the very conduct at issue in this litigation while the case is pending – rendering meaningless any potential future judgment if allowed to continue.

# PRESERVATION OF EVIDENCE IS A BASELINE JUDICIAL DUTY

Plaintiff respectfully notes that ordering preservation of evidence during litigation is perhaps the most basic, uncontroversial judicial function possible. It requires no determination on the merits, no finding of fault, and no preliminary judgment about the ultimate outcome of the case. It simply maintains the status quo to ensure that whatever the eventual ruling, it will be based on complete rather than selectively preserved evidence.

The documented erasure of historical metrics, retroactive alteration of attribution data, and systematic pattern of evidence manipulation occurring in real time creates an urgent need for this most fundamental of judicial protections. When a party is actively manipulating the very evidence that would demonstrate their liability—and continues doing so even after being called out in court filings—the integrity of the entire judicial process is at stake.

This Court would not hesitate to order preservation of physical evidence in a personal injury case, financial records in a fraud case, or communications in a harassment case. The digital equivalents here—metrics, attribution data, algorithm configurations, and promotional delivery systems—deserve the same basic protection from ongoing manipulation.

# ANTICIPATING PROCEDURAL DELAY TACTICS

Plaintiff anticipates X Corp may request additional time to respond to this emergency motion, despite having been on notice of these exact issues since the beginning of this litigation. This Court should reject any such delay tactics for several compelling reasons:

1. **The issues raised are not new** - Plaintiff has repeatedly documented X Corp's fraudulent metrics and suppression tactics in multiple previous filings. X Corp has had ample time to formulate a response to these fundamental issues.

2. **No response can justify mathematical impossibilities** - There exists no legitimate legal argument that could justify charging for promotional services while simultaneously rendering them ineffective, or that could explain how 100% of engagement could come from a promotion when engagement demonstrably occurred before the promotion began. Mathematical reality is not subject to procedural delay.

3. **Evidence continues to disappear during delay** - As documented in previous filings, X Corp continues to erase and alter evidence while the Court deliberates. Every day of procedural delay enables further evidence manipulation that directly compromises the integrity of these proceedings.

4. **Terms of Service arguments have already been made** - X Corp has already argued that its Terms of Service provide blanket immunity for any conduct, no matter how fraudulent. No amount of additional time will transform this legally untenable position into a legitimate defense against provable commercial fraud.

5. X Corp may attempt to argue that "there is no case law governing this specific situation." This argument itself proves Plaintiff's point. No rational company would allow such an obvious mathematical contradiction to reach litigation, as it would expose them to immediate liability. The absence of precedent on whether a company can charge for services it deliberately doesn't provide while presenting mathematically impossible metrics is not a weakness in Plaintiff's case but rather evidence of how extraordinary X Corp's conduct truly is. No court has needed to rule on whether 100% and less than 100% can simultaneously be true because the answer is self-evident. The lack of precedent on

whether 2+2=4 does not make basic arithmetic debatable.

Time for response is appropriate in cases involving novel legal questions or disputed facts. This case presents neither - just the simple question of whether a technology company can charge for services it is deliberately not providing while presenting mathematically impossible metrics to conceal this fact. The answer to this question does not require extensive briefing or delay.

# ANTICIPATING DEFENDANT'S RESPONSE

Plaintiff anticipates X Corp may attempt to argue that Plaintiff voluntarily chose to purchase promotional services and is free to discontinue them. This circular argument fails for three critical reasons:

1. **Fraud vitiates consent** - A promotional service that systematically and deliberately prevents the very distribution it claims to provide while charging for "views" that demonstrably don't exist constitutes fraud, not legitimate service. No customer "voluntarily" pays for fraudulent services.

2. **Consumer protection laws prohibit charging for services not delivered** - The issue is not Plaintiff's choice to purchase legitimate services, but X Corp's deliberate technical manipulation to prevent delivery while continuing to charge as though services were being provided.

3. **The requested relief preserves X Corp's business options** - Plaintiff is not asking to receive services without payment, but rather for either legitimate service delivery OR cessation of charges for services being deliberately suppressed. X Corp remains free to choose which legitimate business approach to take.

4. **X Corp's conduct contradicts its own Terms of Service defense** - X Corp claims its Terms of Service provide near-absolute discretion to manage the platform, including the right to suspend accounts or deny service for virtually any reason. Yet rather than honestly exercising this claimed discretion by simply declining to offer promotional services to

Plaintiff—which, while potentially discriminatory, would at least be transparent—X Corp instead engages in deliberate deception. X Corp chooses to accept payment while secretly rendering the service ineffective through technical manipulation, revealing that their true objective is not legitimate exercise of discretion but fraudulent profit. This strategic hypocrisy exposes the fundamental dishonesty of X Corp's position: they claim unlimited rights under their Terms of Service yet lack the forthrightness to openly exercise those claimed rights, instead resorting to clandestine technical manipulation that constitutes outright fraud.

# RELIEF REQUESTED

Given the escalating nature of X Corp's conduct, including apparent technical retaliation following legal filings and now imposing account restrictions, Plaintiff respectfully requests this Court to:

1. Issue an immediate temporary restraining order requiring X Corp to: a) Cease imposing any further account restrictions or limitations b) Deliver the promotional services as legitimately represented and charged for, with verifiable distribution to actual users, OR c) Cease charging for promotional services that are being deliberately rendered ineffective

2. Order immediate preservation of all internal data, metrics, algorithms and technical documentation related to Plaintiff's account

3. Appoint a neutral technical special master to inspect X Corp's promotion and content distribution systems

4. Require X Corp to provide full transparency in real-time metrics with independent verification

5. Impose appropriate sanctions for ongoing evidence manipulation

6.  Schedule an evidentiary hearing within seven (7) days to prevent further evidence destruction and retaliation while preserving the utility of time-sensitive evidence

This extraordinary relief is warranted by the extraordinary nature of X Corp's conduct – a sophisticated technological scheme designed to charge users for services that are deliberately rendered ineffective through code-based manipulation, while presenting fraudulent metrics to conceal this conduct.

# CONCLUSION

When a defendant continues the very conduct at issue in litigation, openly defies basic commercial honesty, presents mathematically impossible metrics, manipulates evidence and service delivery in real time, and then escalates to direct retaliation through account lockouts—the Court must act decisively to preserve the integrity of these proceedings.

This Court would not hesitate to issue immediate injunctive relief to prevent ongoing physical harm, stop the destruction of evidence, or halt patent violations of law when clearly documented. The mathematical impossibilities and systematic suppression documented here present the same legal urgency - ongoing harm that grows each day while evidence is actively being manipulated. Justice delayed is particularly concerning when the delay itself enables the defendant to continue the very conduct at issue and potentially destroy evidence relevant to these proceedings.

For this Court to accept X Corp's position would require not merely a novel interpretation of Terms of Service law, but a wholesale suspension of the fundamental laws of mathematics and logic themselves. X Corp effectively asks this Court to believe that:

- Numbers can simultaneously increase and decrease
- 100% of engagement can come from promotion when engagement demonstrably occurred before promotion
- A user can both exist and not exist in the same system at the same time
- Statistical impossibilities become "normal" when a Terms of Service says so

No court in American jurisprudence has ever held that a private company's Terms of Service can override the laws of mathematics, logic, and basic counting. Yet this is precisely what X Corp's position requires. The decision before this Court is not a close call between competing legal theories but a fundamental question of whether objective reality and mathematical truth still constrain commercial conduct in the digital age.

X Corp's conduct represents not mere breach of contract but calculated, ongoing fraud with apparent escalation following judicial involvement, creating an immediate need for injunctive intervention.



Respectfully submitted,

JUSTIN RIDDLE
 Plaintiff, pro se

April 15th, 2025

I certify under penalty of perjury that every single word contained in this document is true to the best of my knowledge and service was performed through Electronic Filing Notice.


On a final note, after receiving my previous brief in Nebraska last week, rather than address the logical contradictions, the Trial Court sent me a partial refund for the Appeal, and somehow ended it without a word from the Court of Appeals.

Yes, that's correct, when presented  with similarly impossible logic to contradict, in Nebraska they've chosen now to simply cancel appeal. After they've already taken my money and it's already been given an appeal number and it's already been acknowledged by the Nebraska Court of Appeals, the lower court took back and closed and refunded some, not all of the money, in an effort to keep this from scrutiny.

Four months the case sat idle in the court of appeals, and now the lower Court has rendered them a paper tiger. Obviously, I will proceed as planned, I don't recognize the order from a Judge who claims no jurisdiction, yet reached up into the Court of Appeals to pull a case back to reassert no jurisdiction. That being said, the legal system in Nebraska is so corrupt, so far beyond the law mattering at all that it has made me quite aware of all the little strategies and tricks that are used to avoid a merits-based review.

Fortunately in this situation, the review is right in front of us all.