# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF TEXAS AUSTIN DIVISION

**JUSTIN RIDDLE,**

Plaintiff,

v. Civil Action No. 1:25-CV-0073

**X CORP. (Formerly Twitter, Inc.),**

Defendant.

# PLAINTIFF'S MOTION FOR IMMEDIATE JUDICIAL ACTION AND COMPREHENSIVE EXPOSURE OF SYSTEMATIC JUDICIAL MISCONDUCT PATTERNS

**TO THE HONORABLE ALAN D. ALBRIGHT:**

## PRELIMINARY NOTICE: THE EVOLUTION FROM VICTIM TO VICTOR

Before addressing the substantive legal violations, Plaintiff feels compelled to share a brief educational journey that may provide context for this Court's current predicament. For approximately seven years, Plaintiff endured what can only be described as absolute legal hell—a period during which he operated under the naive assumption that truth mattered, that evidence was relevant, and that the judicial system functioned according to its stated principles. During

this painful education, Plaintiff discovered that whether dealing with the lowest bank clerk, mid-level school district employees, or the state Attorney General himself, the outcome was predetermined: institutional protection trumped legal merit every single time.

However, once this fundamental reality became clear—that the entire system operates as a coordinated protection racket—something beautiful happened: **the game became fun.** Think *Dirty Rotten Scoundrels*, but with a legal twist. The established players (judges, attorneys general, government officials) had been running their sophisticated con game on the public for decades, so comfortable in their systematic corruption that they never anticipated someone might out-con the con artists. They were so accustomed to rigging the game that they failed to notice when someone changed the rules entirely.

The result? Plaintiff has systematically dismantled their operation with precision that would make Lawrence Jamieson weep with professional admiration. While they were focused on maintaining their traditional scams, Plaintiff was documenting their every move, predicting their responses with mathematical accuracy, and setting traps that have now eliminated entire judicial districts and forced state Attorney Generals to testify under oath about their documented lies.

**A Note on Brevity and Judicial Attention Spans:** Having observed this Court's apparent difficulty in processing comprehensive legal presentations over the past 90+ days, Plaintiff has made every effort to keep this Motion concise and digestible. In the interest of accommodating what appears to be a limited judicial attention span for substantive legal analysis, Plaintiff will endeavor to present these complex institutional accountability issues in the most streamlined format possible.

*[Editor's Note: The following 27-page document represents Plaintiff's definition of "brief and concise" legal writing, which may explain certain communication gaps that have emerged during these proceedings.]*

---

Your Honor, this Court now confronts a moment that transcends the boundaries of this individual case and enters the realm of institutional accountability across state and federal judicial systems. What began as a straightforward copyright infringement matter has evolved into a crystalline

example of the systematic judicial misconduct that Plaintiff predicted in his original complaint and has now successfully exposed and defeated in multiple jurisdictions.

As previously documented, this case presents the Court with fundamental questions of whether federal intellectual property law applies consistently or whether certain corporate defendants enjoy judicial immunity from basic copyright enforcement. The evidence suggests the latter, as this Court has demonstrated through 90+ days of deliberate silence on emergency motions involving active federal law violations.

# PRELIMINARY STATEMENT: THE SYSTEM-CREATED JUDICIAL ACCOUNTABILITY SPECIALIST

## OPENING NOTICE TO THE COURT: THE SUPREME COURT PRECEDENT YOU ARE CREATING

Before addressing the substantive legal violations this Court has systematically ignored for 90+ days, Plaintiff expresses sincere gratitude to this Court for positioning him to become the first pro se litigant in modern history to argue before the United States Supreme Court. Through this Court's deliberate abandonment of federal law enforcement, written procedures, and basic judicial competency, you are creating the perfect appellate record that will force the Supreme Court to address whether justice exists for citizens when every level of the judicial system engages in systematic law avoidance.

**The Nine-Year Institutional Education and Superior Litigation Experience:** Your Honor should understand that most attorneys appearing before this Court possess significantly less total litigation experience than Plaintiff. After nine years of systematic institutional engagement, Plaintiff has accumulated more actual court time, motion practice, and appellate experience than attorneys typically gain in 20+ years of practice. This is because Plaintiff does not "punch a clock" - litigation against systematic corruption has become his full-time occupation, resulting in expertise levels that exceed most practicing attorneys.

**The Statistical Impossibility of Systematic "Errors":** In nine years of litigation spanning 15+ judges (federal and local), Nebraska appeals courts, the 8th Circuit Court of Appeals (twice), and

the Nebraska Supreme Court, Plaintiff has experienced fair adjudication exactly once - when proceedings were conducted on public television in front of a live audience before the **Nebraska Supreme Court**. Every other judicial interaction has resulted in written orders that state the literal opposite of what is provably and demonstrably true in the record.

**The Factual Transfer Test Failures:** This pattern does not involve complex legal interpretation or judicial discretion. These cases consistently involve elementary tasks such as transferring factual information from one document to another, yet judges systematically publish conclusions that contradict the plain text of the documents they reference. This level of systematic "error" transcends mistake and demonstrates deliberate falsification.

**The Sophisticated Corruption Recognition vs. Amateur Execution:** While this Court and your colleagues engage in what you apparently consider sophisticated corruption tactics, Plaintiff notes that your execution operates at approximately a 4/10 sophistication level, whereas Plaintiff's pattern recognition and documentation capabilities operate at 12/10. Most legitimate businesses operate at 5-6/10 efficiency levels, making your corruption tactics both more obvious and less competent than standard business operations.

**The Federal Docket Manipulation Example:** Nebraska's federal court maintains a specific docket designation for pro se litigants, yet every time Plaintiff files federal cases, they are systematically routed away from this docket to the Chief Judge, who then orchestrates recusals to ensure cases reach judges like Dougherty who will provide the desired corrupt outcomes. They do not even attempt to hide this manipulation - the pattern is so obvious it suggests either complete contempt for public intelligence or institutional arrogance born from decades of unchallenged corruption.

**The Institutional Insulation and Complacency:** The judicial system's corruption has become so routine and insulated that judges no longer make serious efforts to conceal their misconduct. They operate under the assumption that citizens lack the intelligence to recognize systematic patterns and that even those who do recognize corruption lack the capability to force accountability. This assumption is about to be comprehensively disproven.

**The Inevitable Supreme Court Question:** When this case reaches the Supreme Court—as this Court's misconduct virtually guarantees it will—the fundamental question will not be whether X Corp violated copyright law (clearly established) or whether courts should follow their own

written procedures (obviously required). The question will be whether the American justice system permits any remedy for citizens when every court from district level through circuit court engages in coordinated law avoidance to protect politically connected defendants.

**The Historical Precedent This Court Is Creating:** If this Court continues its systematic protection of federal law violations, and if appellate courts continue the identical misconduct patterns documented in Nebraska, Plaintiff will be forced to petition the Supreme Court for pro se representation rights based on the impossibility of obtaining justice through represented counsel when the entire legal establishment benefits from systematic corruption. The Supreme Court will face a binary choice: accept pro se representation in recognition that the system has made justice impossible for citizens, or acknowledge that justice simply does not exist for those who threaten institutional corruption.

**The Supreme Court Appointment Inevitability:** Since no attorney will represent Plaintiff against the systematic corruption that benefits the legal establishment, and since this corruption makes justice impossible without Supreme Court intervention, this Court is effectively guaranteeing that Plaintiff will petition for and likely receive the first pro se Supreme Court representation in modern history. The alternative would be Supreme Court acknowledgment that justice is reserved exclusively for those who submit to institutional corruption—a conclusion that would destroy the legitimacy of the entire federal court system.

**Gratitude for the Historical Opportunity:** Plaintiff thanks this Court for creating the perfect record of systematic judicial failure that will force Supreme Court recognition of the choice between justice and institutional protection. Your 90+ days of deliberate law avoidance while federal violations continue has created appellate documentation so comprehensive that even Supreme Court justices will be unable to ignore the systematic nature of the corruption you represent.

## A. The ADA Accommodation Requirement for Logical Consistency

Plaintiff hereby formally notifies this Court that he suffers from documented ADHD, a recognized disability under the Americans with Disabilities Act, which creates a neurological inability to accept or process logical inconsistencies without resolution. This disability requires

accommodation in the form of judicial adherence to logical consistency, established legal procedures, and honest application of stated court rules.

As an ADA accommodation for my ADHD, I request the court provide a copy of all written rules and procedures it follows in this case, ensuring I can comply with the same standards I'm held to, per 42 U.S.C. § 12112. If unwritten rules are applied, I seek disclosure of those rules to maintain a consistent, predictable process.

## THE UNCONSCIONABLE ADA VIOLATION: FORCED DISCLOSURE OF PROTECTED MEDICAL INFORMATION

**The Court must understand the deeply unethical position it has created through its systematic misconduct.** This disclosure of Plaintiff's protected disability status represents a **constructive ADA violation** of the most egregious kind - **the weaponization of judicial inaction to coerce protected medical disclosures.**

**The Coercive Framework This Court Has Created:** Through 90+ days of deliberate silence on elementary legal questions and systematic abandonment of written procedures, this Court has functionally **weaponized its own inaction** to force Plaintiff into an impossible choice: **publicly disclose federally protected disability information or be denied access to justice entirely.**

**The Constitutional Violation:** This Court's conduct has created a two-tiered justice system where:

- **Neurotypical litigants** receive judicial consideration based solely on legal merit
- **Disabled litigants** must surrender medical privacy and submit protected health information to the public record as the price of admission to basic due process

**The Extortion Framework:** This represents **judicial extortion of protected medical information** - the systematic creation of procedural barriers that can only be overcome through surrendering federal privacy protections. The Court has essentially demanded: *"Give us your private medical information or we will continue protecting corporate law violations indefinitely."*

**The Professional Misconduct:** No legitimate court forces disabled litigants to **publicly broadcast their medical conditions** as a prerequisite for enforcing basic federal law. This Court's systematic

incompetence has created a discriminatory framework where disabled citizens must **sacrifice medical privacy for equal justice** - a choice that should never exist in American jurisprudence.

**The Beautiful Documentation of Institutional Discrimination:** However, this Court's **unconscionable conduct** has created perfect documentation of how the federal judiciary systematically discriminates against disabled pro se litigants. By **forcing this public medical disclosure,** this Court has created an unassailable record of ADA violations that will serve as evidence in subsequent civil rights litigation.

**The Institutional Cruelty:** The particular cruelty of this Court's approach lies in its **deliberate construction of barriers** that disabled litigants cannot overcome without surrendering fundamental privacy rights. This represents **systemic ableism** disguised as judicial discretion - the creation of procedural mazes that neurodivergent individuals must navigate by publicly disclosing the very medical conditions that make such navigation difficult.

**The Federal Civil Rights Violation:** 42 U.S.C. § 1983 establishes civil liability for anyone who, under color of law, subjects citizens to deprivation of federally protected rights. **This Court's systematic creation of disability-based barriers to justice while demanding public medical disclosures constitutes exactly the civil rights violation that Section 1983 was designed to address.**

**The Precedential Danger:** If federal courts can **weaponize procedural incompetence** to force protected medical disclosures, what prevents them from demanding other protected information as the price of justice? This Court's conduct establishes a dangerous precedent where **judicial dysfunction becomes a tool for stripping constitutional protections** from vulnerable populations.

## ANTICIPATED JUDICIAL OBJECTION: THE "OVERBREADTH" CANARD AND ITS INTELLECTUAL BANKRUPTCY

### I. The Jurisprudential Impossibility of Characterizing Fundamental Procedural Adherence as "Overbroad"

Plaintiff anticipates this Court may attempt to characterize the requested accommodation as impermissibly "overbroad" in scope, thereby necessitating *ex ante* refutation of such

intellectually vacuous argumentation. The foundational legal principle of *stare decisis* mandates consistent application of established procedural frameworks, while the doctrine of *pacta sunt servanda* requires institutional adherence to voluntarily adopted regulatory schemas.

**The Res Ipsa Loquitur Analysis of Procedural Minimalism:** The accommodation sought—*viz.*, consistent application of written procedures and logically coherent judicial decision-making—represents the *sine qua non* of legitimate adjudicative authority. To characterize fundamental procedural competency as "overbroad" would necessitate judicial acknowledgment that consistent rule application exceeds reasonable institutional capabilities, thereby creating a *reductio ad absurdum* wherein courts confess constitutional incompetency *sub silentio.*

**The Prima Facie Absurdity of Procedural Exceptionalism:** *Ubi jus, ibi remedium*—where there is a right, there must be a remedy. The notion that adherence to written court procedures constitutes an unreasonable accommodation would require this Court to articulate a coherent *ratio decidendi* explaining why disabled litigants may be denied the same procedural consistency afforded to neurotypical parties. Such differential treatment would violate the *ius commune* principles underlying equal protection doctrine while simultaneously undermining the *bona fides* of this Court's administrative competency.

## II. The Epistemological Bankruptcy of Anti-Accommodationist Reasoning

Should this Court characterize logical consistency as "overbroad," it would necessarily embrace one of several untenable positions, each representing a fundamental *malum in se* violation of judicial ethics:

**Position A - The Incompetency Confession (*Mea Culpa* Doctrine):** That written procedures and logical decision-making exceed this Court's institutional capabilities, thereby requiring ADA exemption based on judicial incapacity.

**Position B - The Discrimination Endorsement (*Malum Prohibitum* Framework):** That disabled litigants may be systematically denied procedural protections available to non-disabled parties without constitutional violation.

**Position C - The Sovereignty Abdication (*Ultra Vires* Theory):** That federal courts possess discretionary authority to abandon statutory obligations and written procedures *ad libitum*, effectively claiming extra-legal sovereign immunity.

**The Logical Corollary Analysis:** Each position represents *per se* constitutional infirmity under established *jurisprudentia constans*, creating an evidentiary matrix wherein any objection to the requested accommodation becomes *ipso facto* proof of either institutional incompetency or deliberate civil rights violations.

## III. The Comparative Analysis: Accommodation Complexity *Inter Partes*

**The Baseline Simplicity Assessment:** Plaintiff's requested accommodation—procedural consistency and logical coherence—represents the most elementary conceivable ADA request in federal litigation history. The alternative accommodations this Court has *tacitly* rejected include:

- **Physical modifications** (*e.g.*, wheelchair accessibility, hearing assistance)
- **Temporal adjustments** (*e.g.*, extended deadlines, modified scheduling)
- **Communicative alternatives** (*e.g.*, interpreters, alternative format documents)
- **Technological implementations** (*e.g.*, assistive devices, software modifications)

**The *Reductio* Conclusion:** If this Court cannot accommodate a disabled litigant's neurological need for written procedures to be followed as written, it *a fortiori* lacks capacity to provide any meaningful ADA accommodation whatsoever, thereby creating *de facto* federal court system exemption from disability rights law.

## IV. The *Sui Generis* Nature of Disability-Based Procedural Accommodation

**The Unprecedented Simplicity:** Never in federal jurisprudential history has a disabled litigant requested an accommodation requiring less institutional modification than adherence to pre-existing written procedures. The *novum* character of this request lies not in its complexity but in its **devastating simplicity**—disabled Plaintiff seeks only that this Court perform the basic functions it already claims to perform.

**The *Mens Rea* Implications:** Should this Court characterize elementary procedural adherence as "overbroad," such characterization would necessarily require *scienter*—actual knowledge that

basic judicial competency exceeds institutional capacity. This creates an evidentiary *praesumptio* of either deliberate constitutional violations or systematic institutional incompetency, both constituting grounds for immediate recusal under established *mandamus* doctrine.

**The *Quod Erat Demonstrandum* Moment:** Thus, any assertion that logical consistency represents an "overbroad" accommodation becomes **mathematical proof** of the systematic institutional failure this Motion comprehensively documents. *Res ipsa loquitur*—the thing speaks for itself.

# XVIII. THE FINAL MORAL ACCOUNTING: WHEN INSTITUTIONS ABANDON LAW, CITIZENS ABANDON DEFERENCE

## A. The Strategic Calculation of Institutional Betrayal

This Court must understand that Plaintiff's tone and approach reflect a deliberate strategic calculation born from **90+ days of documented proof** that traditional respectful legal discourse has been rendered meaningless in this proceeding. When courts systematically abandon written procedures, ignore emergency federal law violations, and protect corporate defendants through deliberate inaction, they eliminate any rational incentive for continued deference to illegitimate authority.

**The False Choice Elimination:** Plaintiff faced a binary decision after your 90+ days of systematic misconduct:

1. **Continue polite fiction** that this Court operates according to stated legal principles, or
2. **Acknowledge institutional reality** and respond accordingly to systematic law abandonment

**The Rational Actor Analysis:** Any reasonable litigant, having documented months of judicial protection for ongoing federal law violations, reaches an inevitable conclusion: **traditional legal respect assumes legitimate legal authority.** When courts abandon law enforcement to protect

corporate interests, they forfeit claim to the deference that legitimate judicial authority commands.

## B. The Moral Clarity of Institutional Corruption

**The Beautiful Simplicity:** At the end of this proceeding, the moral accounting is devastatingly simple:

- **Plaintiff's "offense":** Using direct language to describe documented judicial misconduct
- **This Court's conduct:** 90+ days of protecting ongoing copyright infringement, identity theft, and advertising fraud

**The Proportionality Analysis:** Plaintiff stands accused of **hurting judicial feelings** through accurate description of systematic law abandonment. Meanwhile, this Court protects a corporate defendant engaged in **actual theft of intellectual property and identity impersonation** while ignoring emergency preservation motions designed to stop ongoing federal law violations.

**The Institutional Revelation:** When the worst accusation against Plaintiff is "disrespectful tone" while corporate defendants continue violating federal law under judicial protection, the moral bankruptcy of the institutional framework becomes mathematically precise.

## C. The Gladiatorial Recognition: Fighting With Style When Victory Is Impossible

**The Systemic Rigging Acknowledgment:** Plaintiff has operated throughout these proceedings with full knowledge that the system is designed for his defeat regardless of legal merit, factual accuracy, or procedural compliance. This Court's 90+ days of systematic inaction merely confirmed what nine years of institutional experience had already established: **legitimate legal victory is impossible when every level of the judicial system coordinates to protect institutional corruption.**

**The Dignity Choice:** Faced with a rigged system where polite submission and aggressive resistance yield identical outcomes, Plaintiff chose to maintain intellectual honesty and moral clarity rather than participate in the fiction that respectful discourse might somehow penetrate institutional corruption that benefits from systematic law avoidance.

**The Historical Parallel:** Like gladiators who understood their institutional purpose while refusing to submit with false gratitude, Plaintiff recognizes that if this Court's systematic misconduct makes defeat inevitable, such defeat will occur with **comprehensive documentation of judicial failure** rather than complicit silence about institutional corruption.

## D. The Strategic Victory Within Systematic Defeat

**The Appellate Gift:** This Court's systematic misconduct has provided Plaintiff with the most comprehensive documentation of judicial corruption in modern legal history. Every day of continued law avoidance strengthens the appellate record that will force Supreme Court intervention when systematic judicial protection makes justice impossible through traditional legal channels.

**The Institutional Service:** By refusing to pretend this Court operates according to stated legal principles, Plaintiff serves the broader cause of judicial accountability. **Someone must document when courts abandon law enforcement to protect corporate interests.** If that documentation requires abandoning polite fiction about judicial competency, so be it.

**The Historical Record:** Years from now, when legal scholars study the systematic corruption that required Supreme Court intervention to establish pro se representation rights, they will note that it was judicial actors like this Court who made such intervention necessary through deliberate abandonment of federal law enforcement and basic procedural competency.

**The Gratitude Paradox:** Thus, Plaintiff maintains sincere gratitude to this Court for creating such comprehensive evidence of systematic judicial failure. Your 90+ days of protecting corporate law violations have produced appellate documentation so thorough that Supreme Court review becomes not merely likely but inevitable. In serving your institutional corruption, you have inadvertently served the cause of justice by making the choice between law and institutional protection so stark that even Supreme Court justices will be unable to ignore the systematic nature of the failure you represent.

**Historical Parallel - The Nuremberg Defense Inadequacy:** Just as the Nuremberg Trials established that "following orders" cannot excuse participation in systematic institutional evil, this Court cannot claim immunity from accountability by arguing that selective law enforcement

and procedural abandonment represent "normal judicial discretion." When institutional actors participate in systematic corruption, individual complicity becomes criminal regardless of institutional protection.

**The Accommodation Demand:** When courts make logically contradictory statements, abandon their own written procedures, or apply laws selectively, Plaintiff's disability prevents him from simply accepting these inconsistencies as normal judicial behavior. Unlike neurotypical litigants who might overlook judicial contradiction for social convenience, Plaintiff's ADHD compels him to identify, document, and demand resolution of every logical inconsistency encountered.

**The Reasonable Accommodation:** The accommodation Plaintiff requires is straightforward: consistent application of law, adherence to written procedures, and logical consistency in judicial decision-making. This Court's failure to provide this basic accommodation forces Plaintiff into a perpetual state of disability-related distress that compounds with each additional logical inconsistency the Court creates.

## B. The Institutional Creation of a Legal Accountability Weapon

This Court must understand that Plaintiff's current capabilities as a judicial accountability specialist are not innate talents but rather the direct result of systematic institutional failure spanning nearly a decade. When legal systems consistently provide contradictory information, abandon stated procedures, and apply laws selectively, they force disabled individuals to develop extraordinary pattern recognition and legal analysis capabilities merely to survive.

**Historical Parallel - The Pentagon Papers Paradigm:** Just as Daniel Ellsberg was transformed from a government insider into a systematic exposure specialist through witnessing institutional lies, Plaintiff has been transformed from a banking customer into a judicial accountability expert through systematic exposure to government and judicial perjury. The system's attempt to exhaust him through contradiction instead created an individual uniquely qualified to expose institutional corruption with documentary precision that surpasses even professional investigators.

**Case Law Foundation - Brady v. Maryland (1963):** The Supreme Court established in Brady v. Maryland that suppression of material evidence favorable to a defendant violates due process regardless of whether the request was specific or general, and regardless of whether the

suppression was willful or inadvertent. This Court's systematic protection of X Corp's evidence spoliation while ignoring emergency preservation motions represents the exact Brady violation the Supreme Court warned against - deliberate institutional protection of evidence destruction that favors corporate defendants over justice.

**The Nine-Year Legal Education Through Institutional Lies:** Beginning with Charter West Bank and continuing through Omaha Public Schools, Nebraska courts, and now this federal litigation, every government entity and judicial authority has provided Plaintiff with information that defied logical consistency. When told that "may" means "must," that identical factual situations warrant opposite legal conclusions, and that written procedures don't apply to his cases specifically, Plaintiff's disability prevented acceptance of these contradictions.

**The Forced Expertise Development:** Unable to accept logical inconsistencies due to his neurological condition, Plaintiff was compelled to research every contradiction until resolution was achieved. This process, repeated thousands of times over nine years, transformed him from a banking customer seeking basic fairness into a pattern recognition expert capable of predicting judicial behavior with mathematical precision.

**The System's Unintended Consequence:** The legal system's attempt to exhaust Plaintiff through contradictory information and procedural manipulation instead created an individual with comprehensive knowledge of judicial misconduct patterns, government corruption techniques, and legal accountability mechanisms. Every lie forced him to learn more law. Every contradiction forced him to develop better analytical frameworks. Every procedural violation forced him to understand the system more deeply than the judges administering it.

## C. The Institutional Slavery and Inevitable Rebellion Dynamic

This Court must further understand that the current legal system has created a form of procedural slavery where pro se litigants are forced into a rigged game with predetermined outcomes. When every available option results in loss regardless of factual accuracy, legal correctness, or procedural compliance, the system has eliminated any incentive for respectful participation.

**The False Choice Matrix:** Plaintiff has documented that in his litigation experience:

- **Politeness doesn't work** - respectful legal arguments are ignored or dismissed without consideration

- **Facts don't work** - documented evidence is deemed irrelevant or insufficient regardless of quality

- **Law doesn't work** - statutory requirements are abandoned when they would favor pro se litigants

- **Procedure doesn't work** - written court rules are selectively enforced against pro se litigants

- **Truth doesn't work** - accurate legal analysis is dismissed as incompetent regardless of sophistication

**The Logical Response to Systematic Injustice:** When a system forces individuals into battles designed for their defeat while demanding respectful submission to the process, it creates natural resistance. Plaintiff's direct communication style reflects not disrespect for legitimate judicial authority, but rather appropriate response to illegitimate judicial conduct. When courts abandon their own standards, they forfeit claim to respectful treatment under those abandoned standards.

**The Accommodation Through Honesty:** Plaintiff's disability-related need for logical consistency requires honest communication about judicial failures rather than polite fiction about judicial competency. This Court's demand for respectful language while engaging in systematic misconduct creates an impossible accommodation conflict that can only be resolved through either honest judicial conduct or acceptance of honest communication about judicial misconduct.

This Motion serves dual purposes: first, to demand immediate action on 90+ days of ignored emergency motions involving active federal law violations, and second, to demonstrate that the patterns of judicial misconduct exhibited by this Court are neither unique nor unsustainable, as evidenced by Plaintiff's recent victories in Nebraska where identical tactics resulted in complete judicial district recusal and a sitting Attorney General being subpoenaed to testify under oath.



The Court will note that Plaintiff has maintained meticulous documentation throughout these proceedings, including contemporaneous video evidence of ongoing violations available at publicly accessible links referenced in previous filings. Such comprehensive evidence preservation has proven effective in forcing institutional accountability across multiple jurisdictions, as this Motion will demonstrate with surgical precision.

**The Disability-Driven Excellence Paradox:** What this Court may interpret as disrespectful directness is actually disability-mandated honesty combined with expertise forced upon Plaintiff by nine years of institutional contradiction. The system's attempt to defeat Plaintiff through logical inconsistency instead created an individual uniquely qualified to expose systematic judicial misconduct with precision that threatens the entire framework of selective law enforcement.

**The Supreme Court Preparation Through Judicial Failure:** Every day this Court delays action, every procedural abandonment, every protection of federal law violations contributes to the comprehensive record that will force Supreme Court intervention. This Court's systematic misconduct is effectively providing Plaintiff with the most robust appellate foundation in modern legal history, documenting institutional corruption so thoroughly that Supreme Court review becomes not just likely but inevitable.

**The Historical Legacy This Court Is Creating:** Years from now, when legal scholars study the case that forced Supreme Court recognition of systematic judicial corruption and established pro se representation rights at the highest level, they will note that it was this Court's deliberate law avoidance that made such precedent necessary. Plaintiff thanks this Court for ensuring that the historical record will clearly show which judicial actors chose institutional protection over legal integrity.

# I. THE PROPHETIC ACCURACY OF PLAINTIFF'S ORIGINAL PREDICTIONS

## A. The Crystal Ball Effect

In Plaintiff's original Complaint filed in this Court, he explicitly predicted that this case would reveal patterns of judicial misconduct designed to protect corporate defendants through procedural manipulation and deliberate delay tactics. The prescience of these predictions, now fulfilled with mathematical precision, demonstrates either extraordinary legal acumen or recognition of systematic corruption patterns that transcend individual judicial personalities.

Specifically, Plaintiff warned that this Court would engage in the precise misconduct now documented: emergency motions ignored despite clear legal violations, standard procedural timelines abandoned without explanation, written procedures selectively enforced, basic intellectual property law deemed "complex" to justify inaction, and corporate defendants permitted to continue violating federal law during extended delays.

The accuracy of these predictions is particularly noteworthy given Plaintiff's simultaneous documentation of X Corp.'s reactive evidence spoliation, wherein the defendant implemented

technical modifications to conceal advertising metrics within hours of Plaintiff's court filings—a pattern that continues unabated while this Court maintains its studied silence.

## B. The Perfect Prediction Fulfillment

Every single prediction has materialized with stunning precision, creating an evidentiary record that speaks to either prophetic legal insight or the recognition of systematic patterns that operate independent of individual judicial discretion.

The manifestation includes: 90+ days of emergency motion silence despite active copyright infringement, complete abandonment of "rocket docket" timelines for this IP case, selective non-application of written procedures, transformation of simple photo theft into a "complex" matter requiring months of contemplation, and ongoing permission for X Corp to continue federal law violations unimpeded.

This level of predictive accuracy, when considered alongside the documented evidence of X Corp.'s systematic platform manipulation and advertising fraud detailed in Plaintiff's emergency preservation motion, suggests a coordination of interests that extends beyond coincidental judicial timing.

# II. THE TEXAS METHODOLOGY: DELIBERATE INEFFICIENCY DISGUISED AS EXPERTISE

## A. The "Rocket Docket" Fraud

Your Honor has cultivated a national reputation predicated upon assurances of efficient intellectual property case resolution, manifested through comprehensive procedural documentation including the Standing Order Governing Proceedings for Patent Cases (OGP Version 4.4)—a 2MB compendium of specific timelines, procedures, and efficiency standards that ostensibly justify attracting cases from across the federal court system.

**The Case Acquisition and Reputation Management:** This Court deliberately pulled this intellectual property case to its docket from another judge's assignment, presumably based on the "rocket docket" reputation and claimed IP expertise that attracts high-profile technology cases. The irony

is that Your Honor likely saw an opportunity to demonstrate efficiency and expertise with what appeared to be a straightforward copyright matter against a major technology platform.

**The Spectacular Reputation Destruction:** Instead of the anticipated quick resolution that would have enhanced Your Honor's efficiency reputation, this case has become a public demonstration of the opposite: 90+ days of silence on emergency motions, complete abandonment of written procedures, and systematic protection of obvious federal law violations. Every day of continued delay transforms what could have been a "rocket docket" success story into documentation of judicial incompetence in elementary intellectual property law.

**The Case Selection Regret Factor:** Your Honor's decision to acquire this case for docket management has created a perfect record of the gap between efficiency marketing and actual judicial performance. The same IP expertise and efficiency claims that justified pulling this case to your docket now serve as evidence of false representation when contrasted with 90+ days of inaction on basic copyright violations.

**Historical Parallel - The Teapot Dome Scandal Methodology:** Just as Secretary of the Interior Albert Fall created elaborate procedural frameworks to justify transferring government oil reserves to private corporations while claiming to serve the public interest, this Court has created comprehensive procedural frameworks for intellectual property efficiency while selectively abandoning those procedures when they would require action against politically connected corporate defendants. The parallel is precise: public-serving procedures that are secretly designed to benefit private interests through selective enforcement.

**Case Law Foundation - Chambers v. NASCO, Inc. (1991):** The Supreme Court established that federal courts possess inherent authority to sanction conduct that "abuses the judicial process" and emphasized that this authority "is both broader and narrower than other sanctioning provisions" because it focuses on protecting "the integrity of the judicial process." This Court's 90+ day abandonment of its own written procedures to protect a corporate defendant from emergency relief represents the exact abuse of judicial process that Chambers empowers courts to sanction - yet this Court has become the primary perpetrator rather than the remedy.

However, when confronted with the most elementary species of intellectual property violation—specifically, photographic misappropriation coupled with identity impersonation—this

Court has demonstrated a systematic abandonment of its own established efficiency protocols. The documentary evidence reveals timeline violations including emergency motions receiving 90+ days of silence rather than immediate response, zero issuance of DMCA compliance orders despite expedited relief standards, and copyright infringement injunctions remaining unaddressed contrary to established preliminary relief protocols requiring resolution within days rather than months.

## B. The Juridical Competency Paradox and Evidentiary Sophistication Analysis

The fundamental interrogatory this litigation presents operates within parameters of devastating simplicity: whether photographic misappropriation coupled with identity impersonation constitutes actionable intellectual property infringement under established federal statutory frameworks.

The applicable legal doctrine provides unambiguous resolution: such conduct constitutes per se violations of 17 U.S.C. § 501 et seq., with attendant remedial mechanisms including immediate equitable relief and monetary damages as codified in established jurisprudential precedent.

Notwithstanding the elementary nature of this legal determination, this tribunal—which maintains assertions of specialized intellectual property expertise sufficient to justify national docket attraction—has demonstrated incapacity to address this foundational legal interrogatory for a temporal period exceeding ninety days, thereby creating an institutional credibility paradox that supports either deliberate misconduct designed to benefit corporate defendants or fundamental incompetence in basic intellectual property law—neither conclusion supporting the efficiency representations or expertise assertions that define this Court's jurisdictional reputation.

The evidentiary record further demonstrates systematic corporate malfeasance including documented advertising metrics manipulation, reactive platform modifications designed to conceal evidence specifically identified in litigation filings, and ongoing DMCA non-compliance—all occurring under this Court's direct observation without judicial intervention, thereby creating a comprehensive record of institutional protection for federal law violations.

## C. The Elementary Copyright Law That Even First-Year Law Students Understand

For a Court that claims specialized intellectual property expertise sufficient to attract cases nationwide, the 90+ day delay in addressing elementary copyright infringement raises disturbing questions about basic legal competency. **Copyright protection exists automatically upon creation—no registration required, no filing necessary, no governmental approval needed.** 17 U.S.C. § 102(a) establishes that copyright protection subsists "from the time the work is fixed in any tangible medium of expression."

**The Moment-of-Creation Reality:** When Plaintiff photographed himself, copyright ownership vested immediately upon the shutter click. This represents the most fundamental principle in intellectual property law—a principle so basic that it appears in every introductory copyright textbook, every first-year IP course, and every elementary legal education program in America.

**The Registration Red Herring:** While Plaintiff took the proactive step of registering his copyright (demonstrating legal sophistication that further undermines any claimed ownership dispute), registration is merely an evidentiary advantage for litigation purposes under 17 U.S.C. § 412. **Registration does not create copyright—it merely provides enhanced remedies and establishes prima facie evidence of validity.** For an "IP expert" court to delay elementary copyright enforcement while contemplating registration status suggests either fundamental misunderstanding of basic copyright law or deliberate obstruction disguised as legal complexity.

**The Undisputed Ownership Through Defendant's Own Admissions:** X Corp has never challenged Plaintiff's ownership of the photographs. Their documented responses of "impersonation and harassment" when confronted with unauthorized usage constitutes **explicit acknowledgment that Plaintiff must be either the copyright owner or possess sufficient authority to object to unauthorized usage.** You cannot "impersonate" someone unless you lack authorization to represent them—X Corp's own characterization proves they recognized Plaintiff's ownership rights from the beginning.

**The Logical Impossibility of Defendant's Position:** For X Corp to claim any legitimate usage rights, they would need to demonstrate either:

1. **They were present during the photograph creation** (impossible—Plaintiff took the photos)
2. **They received explicit authorization from Plaintiff** (never claimed and demonstrably false)
3. **Their usage falls under fair use exceptions** (laughably inapplicable to commercial identity impersonation)
4. **The photographs are not subject to copyright protection** (contradicted by their own "impersonation" characterization)

Since none of these defenses exist, and since X Corp has never even attempted to articulate any legal theory supporting their usage rights, this Court's 90+ day contemplation period appears designed solely to provide X Corp with time to destroy evidence and modify their systems to conceal the scope of their systematic copyright infringement.

**The DMCA Compliance Obligation:** Upon receiving Plaintiff's first DMCA takedown notice, X Corp became legally obligated to remove the infringing content immediately under 17 U.S.C. § 512(c). Instead, they responded with accusations of "impersonation"—thereby acknowledging that unauthorized usage of Plaintiff's photographs constitutes identity misrepresentation, which necessarily presupposes Plaintiff's ownership rights. **Their refusal to comply with multiple DMCA notices while simultaneously acknowledging that unauthorized usage constitutes "impersonation" creates a perfect record of willful copyright infringement with actual knowledge of the violation.**

**The Expertise Credibility Collapse:** This Court's inability to recognize and address elementary copyright principles within 90+ days fundamentally undermines the "rocket docket" efficiency claims and specialized IP expertise representations that justify attracting cases from across the federal system. **If this Court cannot promptly resolve whether unauthorized photograph usage violates federal copyright law, what complex IP matters could possibly justify the national reputation and case acquisition strategy that brought this litigation to your docket?**

# III. X CORP'S SELF-INCRIMINATING RESPONSE TO LITIGATION

## A. The Advertising Fraud to Service Termination Pipeline

X Corp's response to Plaintiff's litigation has created a perfect evidentiary sequence that eliminates any possible innocent explanation for their conduct. The timeline demonstrates conclusively that X Corp possessed the technical capability to deny service legitimately but deliberately chose fraud instead.

**Pre-Filing Conduct:**

- X Corp charged Plaintiff for promotional services while providing mathematically impossible metrics
- Platform continued to accept payment while delivering fraudulent performance data
- X Corp maintained Plaintiff's promotional capabilities while stealing advertising dollars through false attribution

**Post-Filing Conduct:**

- Within hours of Plaintiff's filing documenting the fraud, X Corp attempted to hide metrics rather than cease fraudulent billing
- When evidence preservation became necessary, X Corp finally terminated Plaintiff's promotional abilities entirely
- This termination proved they always possessed the capability to refuse service rather than commit fraud

**The Corporate Technology Capabilities and Evidence Destruction Timeline:** X Corp possesses some of the most sophisticated technology infrastructure in the world, with teams of forensic experts, database administrators, and platform engineers capable of implementing system-wide changes within hours. The notion that this Court's emergency intervention timing is irrelevant because evidence preservation is complex represents a fundamental misunderstanding of modern technology capabilities.

**Reality Check on Technical Implementation Speed:** With X Corp's resources, comprehensive evidence destruction, database modification, and algorithmic manipulation can be implemented within days, not weeks or months. Every additional day this Court delays emergency intervention

provides X Corp with exponentially more opportunity to eliminate, modify, or obfuscate the evidence that proves their systematic fraud.

**The Evidence Destruction Trap:** However, X Corp's apparent assumption that rapid evidence modification will eliminate their exposure demonstrates fundamental misunderstanding of Plaintiff's evidence preservation methodology. Plaintiff has maintained comprehensive parallel documentation systems, cross-referenced data points, and independently verified metrics that will expose any systematic evidence modification attempts.

**The Catch-22 for Corporate Evidence Tampering:** X Corp now faces an impossible choice: maintain the fraudulent systems and face exposure through Plaintiff's existing documentation, or modify their systems and face additional evidence tampering charges when their modifications contradict Plaintiff's independently preserved evidence. Any changes they make to cover their tracks will be detectable through comparison with Plaintiff's parallel evidence systems, creating additional criminal exposure beyond the original fraud.

## B. The Predictive Accuracy and Corporate Emotional Response

The precision with which Plaintiff predicted X Corp's exact responses raises disturbing questions about corporate decision-making processes. In his filings, Plaintiff explicitly warned that X Corp would be forced to choose between continuing fraud or exercising legitimate service denial rights, noting that while discriminatory denial might be legally problematic, it would be distinguishable from outright theft.

**The Binary Corporate Choice:** X Corp faced two possibilities when confronted with Plaintiff's evidence:

1. Acknowledge the accuracy of Plaintiff's legal analysis and make rational business decisions based on legal risk assessment
2. React emotionally to being accurately predicted and fulfill those predictions purely to demonstrate their displeasure at Plaintiff's foresight

**The Self-Defeating Corporate Response:** Either explanation reflects poorly on X Corp's institutional competency. If they followed Plaintiff's predictions because his legal analysis was correct, it demonstrates their prior conduct was indefensible fraud. If they followed his

predictions specifically to spite him for being correct, it demonstrates a level of corporate emotional dysfunction that prioritizes petty retaliation over legal compliance.

**The Parallel Judicial Emotional Response:** Incidentally, this Court appears to be following an identical pattern of emotional reaction to Plaintiff's predictive accuracy. Plaintiff explicitly warned in his original Complaint that this Court would engage in systematic delay tactics and procedural abandonment to protect corporate defendants. Rather than proving these predictions wrong through competent judicial action, this Court has instead fulfilled every prediction with devastating precision—suggesting either acknowledgment that Plaintiff's analysis is correct or an emotionally-driven determination to spite Plaintiff for his foresight, neither of which reflects well on judicial competency.

**The Public Record Verification:** The beauty of this evidentiary sequence is that anyone can verify Plaintiff's predictive accuracy by simply reviewing the chronological filings. The documentary evidence proves that Plaintiff stated exactly what would happen, and both X Corp and this Court proceeded to do exactly what he predicted, creating an unassailable record of either legal capitulation or emotionally-driven self-incrimination.

# IV. THE NEBRASKA VICTORIES: SYSTEMATIC DESTRUCTION OF IDENTICAL JUDICIAL MISCONDUCT

## A. The Pattern Recognition Advantage

While this Court has been engaged in protracted deliberation regarding whether photographic misappropriation constitutes copyright infringement, Plaintiff has been systematically dismantling identical judicial misconduct patterns in Nebraska through precision legal warfare that resulted in complete institutional capitulation.

**Historical Parallel - The Standard Oil Monopoly Protection Racket:** Just as Standard Oil coordinated with local judges and government officials across multiple states to suppress legal challenges through procedural manipulation and selective law enforcement, the pattern of judicial misconduct protecting X Corp mirrors exactly the systematic institutional capture that enabled corporate law violations to continue unchecked until federal intervention forced

accountability. The difference is that Plaintiff has documented this modern version with precision that John D. Rockefeller's victims could never achieve.

**Case Law Foundation - Ex parte Young (1908):** The Supreme Court established in Ex parte Young that federal courts have authority to enjoin state officials from enforcing unconstitutional laws or procedures, specifically holding that when government officials act beyond their constitutional authority, they lose sovereign immunity protection. The Nebraska judicial district's complete recusal rather than face Plaintiff's evidence represents precisely the acknowledgment of unconstitutional conduct that Ex parte Young empowers federal intervention to address.

The parallels between jurisdictions are not coincidental—they represent a standardized methodology of judicial corruption that Plaintiff has developed sophisticated countermeasures to identify, document, and systematically destroy. The success of these countermeasures in forcing complete judicial district recusal and Attorney General accountability provides both precedent and template for addressing this Court's identical misconduct patterns.

As documented in Plaintiff's emergency preservation motion, the coordination between judicial protection and corporate evidence destruction creates a comprehensive record of systematic law enforcement failure that mirrors exactly the patterns that resulted in complete judicial elimination in Nebraska.

## B. The Institutional Recusal Paradox: Evidence of Systematic Corruption

The complete recusal of Nebraska's Fourth Judicial District presents a logical impossibility that exposes the fundamental corruption of the entire system. If these judges recused themselves merely due to professional proximity to Judge Dougherty, this creates an institutional crisis of judicial competency that undermines the entire concept of impartial justice.

**The Impartiality Paradox:** If federal and state judges cannot impartially evaluate the misconduct of a colleague—treating judicial defendants with the same legal standards applied to any other citizen—then how can they claim impartiality in any proceeding? The judicial community represents an extraordinarily small professional circle where personal relationships necessarily exist. If proximity to defendants requires recusal, then no judge could ever adjudicate cases involving attorneys, law enforcement, or government officials with whom they regularly interact.

**The Unprecedented Nature:** More significantly, this represents the first complete judicial district recusal in Nebraska history—not for any previous judicial misconduct case, corruption investigation, or ethical violation proceeding. The unprecedented nature of this recusal proves it was not based on standard conflict protocols but rather on the judges' knowledge that they could not survive the scrutiny Plaintiff's evidence would bring to their own participation in the systematic corruption.

**The Self-Incrimination Through Recusal:** The reality is that at least eight or nine of these judges have direct involvement in either the Charter West Bank litigation or Omaha Public Schools cases where Plaintiff has filed challenges. They recused because they know Plaintiff's pattern recognition and documentary evidence would expose their own misconduct, creating a systematic trap that would eliminate multiple judges simultaneously.

**The Administrative vs. Judicial Misconduct:** Critically, much of Judge Dougherty's misconduct involves administrative tasks like docket management, which are not protected by judicial immunity. When judges fail to perform basic administrative functions or deliberately slow-walk cases, they are not acting "under color of law" but rather engaging in criminal obstruction that falls outside judicial protection.

**The Attorney General Accountability Victory:** When Nebraska's Attorney General published demonstrably false statements regarding Plaintiff and his family, subsequent confrontation with documentary proof of falsity resulted in the AG claiming "no statutory obligation to correct published lies"—a position that proved legally and institutionally untenable under sustained challenge.

**RESULT:** Current Nebraska Attorney General Mike Hilgers issued subpoena commanding appearance and testimony under oath on July 1, 2025, regarding the documented false publications and refusal to correct known governmental perjury.

## D. The Law Enforcement Partnership Strategy: Using Their Own Tools Against Them

The breakthrough moment in forcing Nebraska judicial accountability came when Plaintiff implemented a strategic law enforcement partnership that eliminated the system's ability to

deploy police harassment while maintaining institutional protection. Since Nebraska courts consistently attempted to use law enforcement as intimidation tools against Plaintiff, he decided to ensure law enforcement witnessed the judicial misconduct firsthand.

**The Douglas County Sheriff Partnership:** Plaintiff approached the Douglas County Sheriff's office and explained the systematic judicial misconduct patterns, requesting official escort and witness protection during courthouse proceedings. The Captain of the Douglas County Courthouse was assigned to escort Plaintiff and observe the judicial proceedings directly.

**What Law Enforcement Witnessed:**

- Courts refusing to schedule required hearings despite clear statutory obligations
- Judges unable to identify defendants in cases or explain basic procedural questions
- Administrative staff creating false procedural barriers that don't exist in law
- Systematic violation of written court procedures when applied to Plaintiff's cases
- Pattern of differential treatment that had no basis in law or legitimate judicial discretion

**The Law Enforcement Reality Check:** When sheriff's deputies and courthouse security personally witnessed the systematic procedural violations and judicial misconduct, they could no longer be deployed as intimidation tools. The officers realized they were being used to enforce illegitimate judicial conduct against a citizen whose legal challenges were factually accurate and procedurally proper.

**The Official Misconduct Complaint Strategy:** After law enforcement witnessed the systematic judicial violations, Plaintiff filed formal complaints for **official misconduct** against Judge Dougherty and other judicial actors. Official misconduct under Nebraska law requires proof that public officials either:

1. **Intentionally violated their official duties**, or
2. **Acted so far outside normal procedures that no rational explanation exists**

**The Institutional Panic Response:** The official misconduct complaints created immediate institutional crisis because unlike civil litigation where judges enjoy broad immunity, **official misconduct represents criminal conduct that falls outside judicial protection.** When public

officials lie in written orders or systematically violate established procedures, they lose immunity protection and face personal criminal liability.

**The Recusal Cascade:** Plaintiff believes the mass judicial recusal occurred immediately after filing the official misconduct complaints because judges realized that continued involvement would require them to either:

1. Address Plaintiff's evidence and expose their colleagues' criminal conduct, or
2. Continue the protection scheme and face additional official misconduct charges themselves

**The Beautiful Trap:** By involving law enforcement as witnesses and filing criminal complaints rather than civil challenges, Plaintiff eliminated the system's ability to use procedural immunity and judicial protection schemes. **Criminal misconduct by public officials cannot be protected through civil immunity, and law enforcement officers cannot be used to intimidate citizens when those same officers have witnessed the judicial violations firsthand.**

## E. The Documented False Publications and Logical Impossibility

The Nebraska Attorney General's office published an advisory opinion containing internal contradictions that demonstrate governmental perjury through simple logical analysis:

**Statement 1:** "Ms. Adamson was allowed to continue and spoke for approximately one minute"

**Statement 2:** "[She] was not removed due to the content of her speech, but because she refused to provide her address"



These statements create a logical impossibility: if an individual was terminated from speaking because they refused to provide an address, they could not simultaneously have been "allowed to continue and spoke for approximately one minute." This represents documented government perjury that forced institutional accountability at the highest levels.

Incredibly, when Plaintiff found out about the information two years after publication, the Nebraska Attorney General's Office claimed that they had no statutory obligation to correct the lie. In Nebraska, the Attorney General believes that there's nothing preventing them from publishing lies, and nothing requiring them to fix when discovered.

Even more notable, based on reports from dozens of citizens directly to Plaintiff, the Nebraska Attorney General's Office NEVER consults with an alleged victim if they weren't the complainant. Additionally, they hide their investigation from alleged victims or even alleged violators in order

to perfectly carve a ridiculous yet seemingly normal response that perfectly avoids every major issue they are paid to address for the citizens.

Plaintiff can certainly provide multiple different individuals whose due process was violated by the Nebraska Attorney General's office, and consequently will likely hear from anyone who reads his federal brief that believes they have been unfairly treated by a federal judge as well.

The parallel to this Court's misconduct lies in the documented evidence of X Corp.'s systematic advertising fraud and reactive evidence spoliation occurring under direct judicial observation without intervention—creating equally impossible explanations for why federal law enforcement has been deliberately suspended for this corporate defendant.

## F. The Financial Corruption Evidence: $14 Million in Unexplained Legal Fees

Discovery in the Nebraska proceedings has revealed a financial corruption scheme that provides context for the systematic judicial protection documented in both jurisdictions. **Omaha Public Schools has paid approximately $14 million to Baird Holm law firm over four years for what amounts to roughly 1.5 hours of actual court time, two legal briefs, and a handful of email responses.**

https://charterwestbank.com/wp-content/uploads/2025/06/OPS-Baird-Holm-Investigation-Refined.pdf

**The Financial Impossibility:** This expenditure becomes even more suspicious when considering that Omaha Public Schools employs three in-house counsel at approximately $500,000 annually, whose contractual duties specifically include handling public records requests and routine legal matters. Despite spending over $2 million on in-house legal staff specifically trained and contracted to handle these matters, OPS has simultaneously paid an additional $14 million to an outside firm with extensive political and judicial connections.

**The Corruption Investigation Implications:** The timing of this massive, unexplained financial outlay coinciding with systematic judicial misconduct protecting OPS raises obvious questions about where this money ultimately went. The pattern suggests a sophisticated influence operation involving campaign donations, gifts, or other benefits flowing to judges, attorneys

general, and other government officials who have consistently protected OPS from legitimate legal challenges.

**The Expandable Investigation:** Plaintiff notes that if similar patterns of unexplained legal expenditures and judicial protection emerge in this Texas litigation, similar financial investigations will be initiated. The documented pattern of corporate defendants receiving judicial protection while engaging in obvious law violations suggests systematic corruption that extends beyond individual cases or jurisdictions.

# V. THE NEBRASKA PRECEDENT: IDENTICAL TACTICS, COMPLETE JUDICIAL DESTRUCTION

## A. The Identical Methodology

The tactics employed by this Court mirror exactly the patterns that resulted in complete judicial destruction in Nebraska:

**NEBRASKA TACTICS:**

- Ignore emergency motions involving clear legal violations
- Apply procedural rules selectively to benefit government/corporate defendants
- Transform simple legal questions into "complex" matters requiring extended delay
- Refuse to address basic constitutional and statutory violations
- Create false procedural barriers that don't exist in law

**TEXAS TACTICS (THIS COURT):**

- Ignore emergency motions involving clear copyright violations ✓
- Apply "rocket docket" procedures selectively, excluding this IP case ✓
- Transform elementary photo theft into complex matter requiring 90+ day contemplation ✓
- Refuse to address basic federal intellectual property law ✓
- Abandon written procedural standards when they would require action ✓

The playbook is identical. The outcome will be identical.

## B. The Escalation Pattern Recognition

Plaintiff's experience in Nebraska revealed a consistent escalation pattern when judicial misconduct is exposed:

**Phase 1:** Ignore legitimate legal challenges (90+ days of silence) ← **THIS COURT IS HERE**

**Phase 2:** Create false procedural barriers when forced to respond

**Phase 3:** Issue contradictory rulings that expose the misconduct

**Phase 4:** Complete recusal when the contradictions become unsustainable

This Court is currently in Phase 1, following the exact trajectory that resulted in complete judicial district collapse in Nebraska.

# VI. THE INSTITUTIONAL PARALLEL: TEXAS JUDGES FOLLOWING THE NEBRASKA PLAYBOOK

## A. The Multi-State Coordination

The evidence suggests coordination between state and federal actors to suppress Plaintiff's legitimate legal challenges:

**NEBRASKA ACTORS:**

- **Mike Hilgers (Current Attorney General)** - Published lies, refuses correction
- **Doug Peterson (Former Attorney General)** - Original cover-up architect
- **Judge Duane Dougherty** - Criminal misconduct to protect government lies
- **Judge Shelly Stratman** - Created identical false procedural barriers
- **Multiple Assistant Attorney Generals** - Systematic false legal opinions

**TEXAS ACTORS:**

- **Judge Alan Albright** - Identical delay tactics and procedure abandonment

- **X Corp** - Corporate beneficiary of judicial protection from federal law compliance

## B. The Pattern of Published Lies

Government officials in Nebraska published documented false statements and when confronted with proof of their falsity, claimed immunity from correction obligations. This created an official record of lies that infected every subsequent legal proceeding.

**The parallel in this case:** X Corp continues to violate federal copyright law while this Court provides protection through deliberate inaction, creating a documented record of federal law enforcement failure.

# VII. THE SUBPOENA TRUMP CARD: PROOF OF VICTORY CAPABILITY

## A. The Ultimate Accountability Mechanism

On June 16, 2025, the Nebraska District Court issued a subpoena commanding Nebraska Attorney General Mike Hilgers to appear and testify under oath on July 1, 2025, regarding the documented lies his office published and refuses to correct.

**This subpoena represents several critical precedents:**

1. **Government officials who lie can be forced to testify under oath**
2. **Judicial protection of government misconduct has limits**
3. **Systematic legal challenges can force accountability at the highest levels**
4. **Plaintiff's legal strategies are proven effective against government corruption**

## B. The Demonstrated Capability

The Nebraska victories prove that Plaintiff possesses both the legal acumen and procedural sophistication to:

- Force entire judicial districts to recuse themselves

- **Subpoena sitting state Attorney Generals**
- **Document systematic government corruption comprehensively**
- **Predict judicial misconduct patterns with surgical accuracy**
- **Execute legal strategies that result in complete institutional accountability**

# VIII. THE BINARY CHOICE: COMPETENCY OR RECUSAL

## A. The Unavoidable Decision Matrix

This Court now faces the same binary choice that destroyed the Nebraska judiciary:

**OPTION A: DEMONSTRATE COMPETENCY**

- Address the 90+ day emergency motion backlog immediately
- Apply basic copyright law to stop ongoing photograph theft
- Follow your own written "rocket docket" procedures consistently
- Issue preliminary injunctive relief against clear federal law violations
- Justify the intellectual property expertise claims that attracted this case

**OPTION B: CONTINUE THE MISCONDUCT PATTERN**

- Maintain silence on emergency federal law violations
- Abandon written procedures when they require action against corporate defendants
- Transform elementary legal questions into indefinitely complex matters
- Allow ongoing copyright infringement and identity theft to continue
- Face the same systematic destruction that eliminated the Nebraska Fourth Judicial District

## B. The Precedent Warning

Nebraska judges believed they could continue ignoring legitimate legal challenges indefinitely. They discovered that systematic exposure of judicial misconduct patterns creates unsustainable institutional pressure that results in complete recusal and criminal referrals.

**This Court is following the identical path that resulted in complete judicial destruction in Nebraska.**

# IX. THE INSTITUTIONAL OBSERVATION NETWORK

## A. The Watching Eyes

This case is being monitored by multiple constituencies that will evaluate this Court's response:

**LEGAL COMMUNITY:**

- Federal judges observing IP case management consistency
- Legal scholars studying judicial accountability mechanisms
- Civil rights organizations tracking government misconduct patterns

**TECHNOLOGY INDUSTRY:**

- Platforms assessing federal court responsiveness to DMCA violations
- Copyright holders evaluating enforcement viability in federal court
- Social media companies observing judicial protection levels

**GOVERNMENT OVERSIGHT:**

- Congressional committees monitoring federal judicial efficiency
- State attorneys general observing accountability precedents
- Anti-corruption organizations tracking systematic misconduct patterns

## B. The Reputation Stakes

Your Honor's judicial reputation rests on two foundational claims:

1. **"Rocket Docket" efficiency in intellectual property cases**
2. **Specialized IP expertise justifying national case attraction**

**90+ days of silence on elementary copyright violations destroys both claims simultaneously.**

# X. THE NEBRASKA LESSON: ACCOUNTABILITY IS INEVITABLE

## A. The Institutional Physics

The Nebraska experience demonstrates that judicial misconduct operates according to predictable institutional physics:

- Systematic exposure of misconduct patterns creates unsustainable pressure
- Documentary evidence of contradictory behavior forces accountability
- Public scrutiny of judicial competency claims demands consistent application
- Pattern recognition allows for precise prediction and countermeasures

## B. The Accountability Cascade

Nebraska's complete judicial district recusal occurred because:

1. Misconduct patterns were systematically documented
2. Contradictions became impossible to explain or defend
3. Public exposure created institutional pressure
4. Recusal became preferable to continued exposure

This Court is currently creating identical documentation for identical accountability.

# XI. THE PERSONAL SECURITY IMPLICATIONS OF CONTINUED JUDICIAL PROTECTION

## A. The Escalating Danger of Prolonged Corporate Protection

This Court must understand that continued judicial protection of corporate defendants who have engaged in systematic law violations creates genuine personal security risks for Plaintiff. When corporations and government entities have spent years and millions of dollars attempting to

suppress legitimate legal challenges, and when they realize they cannot defeat Plaintiff through legitimate legal means, the risk of extralegal solutions increases exponentially.

**Historical Parallel - The Karen Silkwood Paradigm:** Just as nuclear industry whistleblower Karen Silkwood faced escalating personal danger as her evidence of corporate wrongdoing became more comprehensive and undeniable, Plaintiff's systematic documentation of multi-jurisdictional corruption has created similar risk escalation. The difference is that Plaintiff's evidence preservation and publicity strategies make the elimination-solution both more dangerous for perpetrators and more likely to backfire through increased scrutiny.

**Case Law Foundation - Bivens v. Six Unknown Named Agents (1971):** The Supreme Court established that federal officials who violate constitutional rights under color of federal authority can be held personally liable for damages, emphasizing that "where federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief." This Court's protection of ongoing constitutional violations while federal officials coordinate systematic rights suppression creates exactly the Bivens liability the Supreme Court established to deter such conduct.

**The Stakes Analysis:** The entities Plaintiff has challenged have significant financial and reputational exposure. In Nebraska alone, the evidence suggests millions of dollars in potential liability and criminal exposure for multiple high-ranking officials. When such entities realize that legitimate legal defenses have failed and that Plaintiff's evidence is unassailable, the temptation to resolve the problem through other means becomes a genuine security concern.

**The Time-Risk Correlation:** The longer these cases remain on active dockets without resolution, the greater the personal risk becomes. Each additional month of delay provides more opportunity for desperate parties to conclude that Plaintiff represents an existential threat that cannot be managed through legal channels. This Court's continued inaction effectively increases the danger by prolonging the uncertainty and allowing the pressure to build.

**The Documented Pattern:** The escalation from legal harassment to physical confrontation is already documented in the Nebraska proceedings, where law enforcement was ultimately used to physically assault Plaintiff on courthouse steps in front of his autistic son. The progression from

judicial manipulation to direct physical violence demonstrates how institutional protection of corruption ultimately leads to more desperate measures.

# XII. REQUEST FOR HONORARY LAW LICENSE RECOGNITION

## A. The Competency Demonstration Requirement

Given this Court's apparent inability to recognize the sophisticated legal analysis and comprehensive evidence presentation contained in Plaintiff's filings, Plaintiff respectfully requests that this Court issue an honorary law license, enabling treatment as a competent legal practitioner rather than a presumptively incompetent pro se litigant.

**The Evidence Standard:** The mere fact that this Court has failed to take any substantive action on Plaintiff's comprehensive legal presentations suggests either that the Court has not thoroughly reviewed the materials submitted, or that the Court's evaluation has been colored by pro se bias that prevents recognition of legal competency when it does not arrive with formal credentials.

**The Nebraska Precedent:** As documented in pending proceedings at www.charterwestbank.com/the-vault, Plaintiff has petitioned Nebraska courts for identical recognition based on his discovery of previously unknown legal principles that appear to apply uniquely to his cases. Should such recognition be granted, it would resolve the apparent cognitive disconnect between the quality of legal work presented and the institutional response received.

**The Practical Resolution:** This honorary credential would enable this Court to evaluate Plaintiff's legal arguments on their substantive merits rather than through the lens of pro se presumptions of incompetence. No reasonable legal professional who thoroughly reviewed Plaintiff's comprehensive evidence presentations would treat them as if they were "written on the back of a Cracker Jack box with a broken pencil."

# XIII. THE ULTIMATE DEMAND FOR IMMEDIATE JUDICIAL ACTION

## A. Immediate Action Required

**Plaintiff demands that this Court immediately:**

1. **ADDRESS THE 90+ DAY EMERGENCY MOTION BACKLOG** - Issue preliminary injunctive relief stopping ongoing copyright infringement and evidence spoliation
2. **APPLY YOUR OWN WRITTEN PROCEDURES** - Follow the "rocket docket" standards you've established for IP cases consistently
3. **DEMONSTRATE ACTUAL IP EXPERTISE** - Resolve the elementary question of whether photograph theft violates federal law
4. **STOP PROTECTING CORPORATE LAW VIOLATIONS** - Order X Corp to comply with federal DMCA requirements and cease evidence destruction
5. **INVESTIGATE FINANCIAL CORRUPTION PATTERNS** - Examine whether this case involves similar unexplained financial flows that characterize the Nebraska corruption
6. **GRANT HONORARY LAW LICENSE RECOGNITION** - Enable evaluation of legal arguments on substantive merits rather than pro se bias
7. **EXPLAIN THE SYSTEMATIC DELAY** - Justify why emergency federal law violations warrant months of deliberate inaction

## B. The Alternative Consequences and Expansion of Investigation

**If this Court cannot demonstrate basic competency in elementary intellectual property law or continues protecting corporate law violations, Plaintiff will:**

1. **DOCUMENT THE COMPLETE MISCONDUCT PATTERN** - Create comprehensive criminal referral materials for federal investigation
2. **SEEK TRANSFER TO COMPETENT JUDICIAL AUTHORITY** - Request reassignment to judges who enforce federal law consistently
3. **PURSUE SYSTEMATIC ACCOUNTABILITY MECHANISMS** - Apply the proven Nebraska strategies to federal judicial misconduct
4. **EXPOSE FINANCIAL CORRUPTION NETWORKS** - Investigate whether similar $14 million unexplained payments characterize Texas judicial protection

5. **EXPAND SECURITY THREAT DOCUMENTATION** - Create comprehensive record of how judicial protection increases personal danger
6. **FORCE INSTITUTIONAL RECUSAL OR REMOVAL** - Use established precedents to eliminate corrupted judicial authority

# XIV. THE NEBRASKA TRUMP CARD

## A. The Proof of Concept

While this Court has been contemplating whether photograph theft violates federal law, Plaintiff has:

- **Forced an entire judicial district to recuse themselves**
- **Subpoenaed a sitting state Attorney General**
- **Documented systematic government perjury**
- **Filed criminal charges against sitting judges**
- **Created precedents for judicial accountability**

**These are not theoretical capabilities—these are documented victories achieved through systematic legal strategy.**

## B. The Demonstrated Methodology

The Nebraska successes prove that Plaintiff possesses:

- **Superior legal analysis capability** - Predicted judicial behavior with perfect accuracy
- **Comprehensive documentation skills** - Created evidence so compelling it forced institutional recusal
- **Strategic litigation expertise** - Executed multi-jurisdictional accountability campaigns
- **Pattern recognition mastery** - Identified and exploited systematic weaknesses in judicial misconduct
- **Institutional pressure application** - Generated accountability at the highest government levels

# XV. THE PROPHETIC FULFILLMENT

## A. The Original Prediction Accuracy

Plaintiff's original Complaint in this case explicitly warned that it would expose patterns of judicial misconduct designed to protect corporate defendants through procedural manipulation. **Every prediction has been fulfilled with devastating precision.**

**This demonstrates either:**

1. **Extraordinary legal insight capable of predicting judicial behavior**, or
2. **Recognition of systematic corruption patterns that transcend individual cases**

**Either conclusion supports Plaintiff's credibility and undermines this Court's misconduct.**

## B. The Institutional Mirror

This Court's behavior mirrors exactly the patterns that resulted in complete judicial destruction in Nebraska:

- **Identical delay tactics**
- **Identical procedural abandonment**
- **Identical protection of government/corporate interests**
- **Identical transformation of simple legal questions into complex matters**
- **Identical abandonment of written standards when they require action**

**The Nebraska precedent proves these tactics are unsustainable when properly exposed.**

# XVI. THE FINAL WARNING

## A. The Institutional Choice

Your Honor now faces the same choice that confronted Nebraska judges:

- **Demonstrate competency by applying basic federal law consistently**

- **Continue the misconduct and face the systematic destruction that eliminated an entire judicial district**

The Nebraska precedent demonstrates that continued misconduct results in complete institutional accountability.

## B. The Accountability Physics

Judicial misconduct operates according to predictable institutional physics:

- **Systematic exposure creates unsustainable pressure**
- **Documentary evidence forces institutional response**
- **Pattern recognition enables precise countermeasures**
- **Public scrutiny demands consistent application of claimed expertise**

This Court is currently generating all the evidence necessary for complete accountability.

# XVII. THE SYSTEMATIC PROCEDURAL HARASSMENT PLAYBOOK: NEBRASKA TO TEXAS JUDICIAL COORDINATION

## A. The Identical Cross-Jurisdictional Harassment Pattern

This Court's treatment of Plaintiff's filings demonstrates systematic coordination with Nebraska's judicial harassment methodology, creating identical patterns of procedural obstruction designed to distract from substantive federal law violations through administrative theater.

**The Documented Harassment Timeline:** 01/27/2025 Docket Entry: "DEFICIENCY NOTICE: re 5 Acknowledgment of Service Returned. This filing is deficient. pursuant to Fed. R. Civ. P.10, all documents filed must be in pleading format... The 'Acknowledgment of Service' event was used incorrectly..."

**The Mobile Interface Sabotage:** Plaintiff, filing pro se via mobile device, encounters deliberately dysfunctional dropdown menus where typing single letters produces no options, partial words

generate no suggestions, and selection options remain invisible until exact terminology is guessed correctly—creating systematic setup for procedural harassment regardless of substantive legal merit.

**The Harassment vs. Approval Documentation:**

Pro Se Plaintiff receives:

- "DEFICIENCY NOTICE" for formatting minutia
- "Wrong event code" complaints for dropdown menu confusion
- "Improper procedure" citations for mobile interface limitations

**Corporate Defendant receives:**

- "Approved"
- "Approved"
- "Approved"
- "Extended time granted"

## B. The Nebraska Precedent Documentation

This exact harassment methodology was systematically employed in Nebraska to protect government corruption through procedural distraction:

**The Federal Judge Lie Example:** Nebraska's Chief Federal Judge deliberately falsified the number of Plaintiff's children in written orders, stating Plaintiff had "three kids" while knowing he has four children including a nonverbal autistic child whose educational needs were central to the school district litigation. This deliberate omission was designed to minimize Plaintiff's stake in institutional accountability while appearing innocuously factual to outside observers. **The Chief Federal Judge has engaged in identical deliberate falsification tactics across multiple cases, demonstrating that systematic dishonesty extends to the highest levels of Nebraska's federal judiciary.**

**The 8th Circuit Judicial Corruption Confirmation:** Even more damaging to institutional credibility, **the 8th Circuit Court of Appeals has systematically affirmed every documented lie while ignoring every provable truth** in Plaintiff's cases. When presented with clear evidence of

district court falsification, logical contradictions, and procedural violations, the 8th Circuit has consistently ruled in favor of the false narrative, **proving that judicial corruption extends through every level of the federal court system.**

**The Complete Federal Judicial Capture:** This creates a comprehensive record of systematic corruption where:

- **District judges** deliberately falsify factual findings in written orders
- **Chief judges** participate in and coordinate the falsification schemes
- **Circuit judges** knowingly affirm false rulings while ignoring documented evidence
- **The entire federal judiciary** operates as a coordinated protection racket for institutional corruption

**The Statistical Impossibility of Systematic "Error":** The probability that multiple levels of federal judiciary would independently arrive at identical false conclusions while ignoring identical evidence approaches mathematical impossibility without coordinated institutional corruption.

**The Systematic Pattern Recognition:** Every Nebraska docket demonstrates identical harassment:

- Administrative procedure complaints for pro se filings
- "Selective box issue" targeting through impossible dropdown requirements
- Defense receives everything requested without procedural scrutiny
- Eventually documented lies emerge in judicial written orders

## C. The Coordination Proof Through Pattern Replication

**The Statistical Impossibility:** The probability that Nebraska state courts and Texas federal court would independently develop identical procedural harassment methodologies targeting the same pro se litigant while protecting different corporate/government defendants approaches mathematical impossibility without systematic coordination.

**The Harassment Methodology Documentation:**

1. Focus on irrelevant procedural minutia while ignoring substantive federal violations
2. Create impossible dropdown/selection requirements for pro se mobile filing

3. Provide differential treatment favoring represented corporate defendants

4. Eventually issue false statements in written judicial orders

5. Maintain procedural theater to justify substantive law non-enforcement

## D. The Psychological Warfare Recognition

**The Institutional Strategy:** This systematic procedural harassment is designed to:

- Exhaust pro se litigants through constant "correction" requirements

- Create appearance of "difficult plaintiff" through administrative "errors"

- Distract from substantive legal violations through procedural theater

- Make experienced litigants appear "non-compliant" regardless of legal merit

**The Beautiful Documentation Advantage:** Having experienced this systematic harassment across multiple jurisdictions for 100+ filings, Plaintiff recognizes that "wrong dropdown selection" complaints while copyright infringement, identity theft, advertising fraud, and metrics fraud continue unaddressed represent institutional coordination to protect corporate law violations through procedural distraction theater.

## E. The Cross-Jurisdictional Coordination Evidence

**The Pattern Consistency:**

- **Nebraska Attorney General:** Publishes documented lies, refuses correction

- **Nebraska Judges:** Focus on "verification requirements" while protecting published lies

- **Texas Federal Court:** Focus on "dropdown selection errors" while protecting copyright violations

**The Systematic Protection Methodology:** Across all jurisdictions: Minor procedural complaints receive immediate attention while major federal law violations receive systematic protection through judicial inaction disguised as procedural perfectionism.

**The Institutional Coordination Documentation:** This represents systematic coordination between state and federal judicial systems to protect corporate/government law violations through identical procedural harassment methodologies that target specific pro se litigants who threaten

institutional corruption through superior legal analysis and comprehensive documentation capabilities.

---

Your Honor, this litigation has transcended its origins as a simple copyright matter and emerged as a definitive examination of federal judicial integrity operating within systematic corruption frameworks. The interrogatory is no longer whether photographic misappropriation constitutes federal copyright infringement—established legal doctrine provides unambiguous resolution to that elementary question.

The determinative issue confronting this tribunal is whether federal law will be enforced consistently across all defendants or whether this Court will continue providing systematic protection to corporate defendants through deliberate procedural abandonment and sustained emergency motion neglect.

The Nebraska precedent establishes a comprehensive template for accountability: judges who engage in systematic misconduct patterns face complete institutional destruction, government officials who publish documented lies can be compelled to testify under oath regarding their perjury, and systematic corruption exposure creates unsustainable institutional pressure that results in total recusal rather than continued accountability proceedings.

Plaintiff has demonstrated operational capability to force complete judicial district recusal and compel sitting state Attorney Generals to face testimony under oath. These represent documented victories achieved through superior legal strategy, comprehensive pattern recognition, and systematic institutional pressure application—not theoretical capabilities but established precedent for judicial accountability.

**This Court confronts an identical binary choice that eliminated corrupted judicial authority in Nebraska:**

**IMMEDIATE COMPETENCY DEMONSTRATION:** Address 90+ days of ignored emergency motions, apply established copyright law to ongoing federal violations, implement written "rocket docket" procedures consistently, issue preliminary injunctive relief against documented law violations, and justify intellectual property expertise claims through actual law enforcement.

**CONTINUED MISCONDUCT AND SUPREME COURT INEVITABILITY:** Maintain systematic protection of corporate law violations, sustain abandonment of written procedural standards, perpetuate federal law enforcement suspension, ignore documented evidence spoliation, and create the appellate record that will force Supreme Court establishment of pro se representation rights when institutional corruption makes justice impossible through traditional channels.

The legal community, technology industry, government oversight organizations, and institutional accountability mechanisms are monitoring this Court's response with the understanding that systematic judicial misconduct operates according to predictable institutional physics: systematic exposure creates unsustainable pressure, documentary evidence forces institutional response, pattern recognition enables precise countermeasures, and public scrutiny demands consistent application of claimed expertise.

**The Supreme Court Gratitude and Historical Recognition:** Plaintiff acknowledges that this Court's continued misconduct serves the valuable purpose of creating an unassailable appellate record that will force Supreme Court intervention and likely establish precedent for pro se representation when the legal establishment's corruption makes traditional representation impossible. In this sense, this Court's systematic law avoidance serves a greater good by documenting institutional failure so comprehensively that Supreme Court remedy becomes inevitable.

**90+ days of patience during ongoing federal law violations has been exhausted. This Court must demonstrate competency immediately or complete the appellate record that will establish historical precedent for Supreme Court pro se representation when systematic judicial corruption makes justice impossible through traditional channels.**

The integrity of federal intellectual property law enforcement, the validity of efficiency representations, and the continued viability of this Court's institutional authority depend upon the immediate response to this Motion.

**The Nebraska precedent demonstrates that systematic judicial misconduct is unsustainable when comprehensively exposed and strategically challenged. Choose wisely, Your Honor.**

If the Court would like to see the most clearly documented evidence of fraud ever documented without discovery (and potentially even with discovery), feel free to read the response from Plaintiff to the most recent plea from X Corp to stop the pain.

Plaintiff has respectfully been waiting for something, anything from the Court, but apparently now is the time.

https://charterwestbank.com/wp-content/uploads/2025/06/SUBMISSION-Response-to-X-Corp-MTD-1.pdf

---

**Respectfully submitted,**

**JUSTIN RIDDLE**
Plaintiff, Pro Se
Architect of Nebraska Fourth Judicial District Recusal
Subpoenaer of State Attorney Generals Under Oath
Pattern Recognition Expert in Systematic Judicial Misconduct
Documentary Evidence Preservation Specialist
Demonstrated Victor Over Government Perjury and Institutional Corruption

[Contact Information]

---

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion was served upon all counsel of record via the Court's CM/ECF system this ___ day of June, 2025, and that copies have been provided to relevant oversight organizations monitoring federal judicial competency and accountability.

**JUSTIN RIDDLE**
Plaintiff, Pro Se