# MOTION FOR IMMEDIATE RELIEF AND EMERGENCY JUDICIAL INTERVENTION

## PRELIMINARY STATEMENT: THE MATHEMATICAL CERTAINTY OF JUDICIAL MOTIVATION

Your Honor, before addressing the overwhelming evidence of systematic federal law violations, this Court's unprecedented 120+ day silence on elementary copyright questions demands examination of possible motivations. After nine years of comprehensive documentation across multiple jurisdictions, only four explanations exist for this Court's behavior, and although Plaintiff has his suspicions, it should be made clear that the reason is not as relevant as the tell:

### The Four Possibilities

**1. Personal Animus:** This Court simply doesn't like Plaintiff—a preference that appears universal among judges who abuse citizens for years and then face someone who refuses to accept lies and institutional gaslighting. If judicial decisions depend on personal feelings rather than federal law, this Court should recuse immediately.

**2. Retaliation for Accountability:** This Court punishes Plaintiff for refusing to blindly accept judicial abuse and for becoming "more direct and cutting" when watching courts systematically ignore obvious federal crimes. If courts retaliate against citizens who demand constitutional governance, this violates fundamental due process.

**3. Financial Corruption:** Someone's pocket is being greased. When the only difference between Plaintiff and defendants who receive judicial protection is millions of dollars in corporate assets, the inference becomes mathematical. If justice requires payment, this Court should publish the price list so citizens can crowdfund constitutional rights.

**4. Complete Incompetence:** This Court genuinely cannot understand that unauthorized use of copyrighted photography constitutes federal copyright infringement—a legal principle taught in first-year law school.

## The Logical Elimination Process

**Incompetence Eliminated:** This Court markets intellectual property expertise nationwide and attracts complex cases based on claimed specialized knowledge. An IP expert court that cannot discuss basic copyright law with a copyright holder would represent professional fraud.

**Personal Animus/Retaliation Eliminated:** Federal judges earn substantial salaries specifically to remain neutral. Personal feelings about litigants who demand law enforcement cannot legally influence federal court decisions.

**Remaining Possibility:** Financial corruption. When systematic judicial protection coincides with billion-dollar corporate defendants while individual plaintiffs documenting obvious violations receive unprecedented delay, the mathematics become unavoidable.

## The Price of Justice Question

Your Honor, if constitutional rights require financial payment beyond filing fees, please publish the current rate schedule. Plaintiff will organize crowdfunding for whatever amount this Court demands to enforce elementary federal copyright law against obvious corporate violations.

Alternatively, if justice remains theoretically available to citizens who cannot afford judicial corruption, this Court can demonstrate that principle by ruling immediately on emergency motions documenting ongoing federal crimes.

**The Binary Reality:** Either federal law applies consistently regardless of defendant wealth, or constitutional governance has become a luxury service reserved for corporate purchasers.

Let's just say the quiet part out loud. BILLION dollar corporation, located in Texas, committing such basic and obvious crimes that it's almost as much of a crime to plead ignorance to the issues, yet not just an X Corp Quality Assurance Technician with a booklet on what constitutes "Copyright Infringement", but a Judge, who for all self proclaimed factual purposes, is the actual

number one authority of "IP Law" in the entire history of the Federal Judiciary, is also unsure if using someone else's Intellectual Property, thousands of times, without permission, including impersonation and harassment and identity theft, is worthy of any response at all.

It's almost as if the Court has convinced themselves that regular citizens believe there's a never ending void between them and justice.

To clarify, that void is only a handful of people deep, not thousands, not hundreds, not even dozens, but just a very few select individuals. To all of those out there who believe there's some mythical pattern to get this done, consider that at the end of every request, the law requires a human to look at it and make an evaluation.

When you notice that every single evaluation ends up being the opposite of the facts, absent the truth, delayed by months and ignored when you ask, you know you've asked the right questions to the right people and they're absolutely terrified to answer because the gravy train ends. I mean obviously there could be something other than millions of dollars of Kickbacks and payments that force a judge to ignore every bit of their oath, every bit of common sense, fundamental basic laws that no one even needs to go to law school to understand, I just can't think of any.

From a practical standpoint, when you're a judge with virtually Unlimited authority, a large paycheck, citizen sponsored benefits, a pension for the rest of your life, no way to remove you until you decide to or die, and you still can't get it right, it can only be either absolute capture and corruption, or some weird form of nepotism that generationally runs through the court system, which incidentally anybody who goes and looks at their state capital Hall of pictures, you'll notice the names. All the major streets, current judges, current elected officials, event centers, all of them surround the legal industry.

In summary for this section, in case anybody was wondering, the bar Association is Ground Zero for every single thing that doesn't make sense but happens anyways. They control the judges, they control the attorneys, they control the attorney generals, they control the FBI, they control congress, they control the house, pretty much anywhere you look, you will be able to prove on your own without even taking my word, the Bar Association is the man behind the curtain that everybody's always wondering about. When I end up assassinated or Epsteined for exposing this, now you know where to look.

# THE NEBRASKA ATTORNEY GENERAL PRECEDENT: A WARNING TO ALL STATES

Before examining this Court's systematic protection of corporate violations, the nation should understand what happened in Nebraska through AG Opinion 23-008—a masterclass in how executive branches can weaponize legal opinions to eliminate legislative oversight through calculated constitutional manipulation.

## The Strategic Power Play: AG Opinion 23-008

**The Premeditated Political Maneuver:** • August 16, 2023: AG Hilgers issues Opinion 23-008 declaring legislative Inspectors General "unconstitutional" • Same day: Governor Pillen appoints new DHHS CEO—one of the agencies that requested the opinion • Timeline proves "coordinated, pre-planned strategy," not legal analysis

**The Legal Argument as Pretext:** Critics argue the opinion's conclusion was predetermined, with legal reasoning built backward to support the desired outcome by: • "Deliberately obfuscating" specific constitutional provisions granting legislative oversight powers • Minimizing Article IV, Sec. 19 (Legislature's power to "manage, control and govern" penal institutions) • Ignoring Article IV, Sec. 23 (Legislature's right to demand information "at any time" from agencies) • Focusing on general separation of powers while downplaying specific constitutional authority

**Weaponized Advisory Authority:** Hilgers transformed a technically advisory opinion into "the force of a legal mandate," effectively giving the Attorney General veto power over established laws—"a power not even the Governor possesses."

**The Immediate Beneficiaries:** Executive agencies used the opinion as a "shield" to justify illegal defiance of state statutes, protecting DHHS and Department of Correctional Services from independent scrutiny for seven months.

**Malicious Compliance for Maximum Disruption:** The executive response created "maximum disruption" through total information blockade—not just to targeted Inspectors General but also to the parent Ombudsman's office not even mentioned in the opinion.

**The Calculated Crisis Creation:** The executive branch created an intentional crisis to force the Legislature into accepting permanently weakened oversight position, using "chilling effects" on whistleblowers as leverage.

## The National Warning: Check Your State Now

**The Precedent Danger:** If Nebraska's Attorney General can eliminate legislative oversight through manufactured legal opinions, every state faces identical risk. This represents systematic constitutional destruction through legal sophistry.

**Immediate Action Required:** Every state should immediately review whether their Attorney General has issued similar opinions eliminating legislative accountability. The weaponization of advisory authority represents institutional capture transcending state boundaries.

**The Federal Connection:** The same strategic manipulation that eliminated accountability in Nebraska now appears as systematic federal court protection of billion-dollar corporate fraud. When constitutional destruction spans state and federal jurisdictions, the pattern becomes undeniable.

# THE ALBRIGHT DIFFERENTIAL TREATMENT: PROOF THROUGH COMPARISON

The most damning evidence of this Court's systematic discrimination comes from examining how other copyright cases filed in January 2025 were handled by judges who actually performed their duties.

## The Perfect Control Group: Three Copyright Cases Filed January 2025

**Case 1: Stross v. Hatchel (1:25-cv-00114-RP)** • Filed: January 24, 2025
• Assigned: Judge Robert Pitman • Status: ORDER CLOSING CASE signed March 18, 2025 •
**Timeline: 53 days from filing to resolution**

**Case 2: Lee v. iHeartMedia (1:25-cv-00105-XR)** • Filed: January 31, 2025 • Assigned: Judge Xavier Rodriguez • Status: NOTICE of Voluntary Dismissal March 27, 2025 • **Timeline: 55 days from filing to resolution**

**Case 3: [Third case details from PACER search]** • Similar rapid resolution when judge signals attention to copyright violations

## The Corporate Flight Pattern When Judges Act

**The Universal Response:** In every case where judges signaled they would actually examine copyright evidence, defendants immediately fled through voluntary dismissal. Corporate defendants know their violations are indefensible when courts perform basic judicial duties.

**The X Corp Exception:** Only X Corp continues fighting obvious copyright violations, confident this Court will provide unprecedented protection through systematic delay while evidence disappears.

## The Judicial Theft Evidence

**Judge Albright's Case Acquisition:** This case was originally assigned to a different judge. Albright specifically reached in and grabbed this case—the only copyright case he took from another judge's docket.

**The Strategic Selection:** Albright didn't grab the other January 2025 copyright cases that would have provided easy wins for corporate defendants. He specifically selected the case documenting billion-dollar advertising fraud for systematic protection.

**The Mathematical Impossibility:** Three judges without "IP expertise" resolved copyright cases in 6 weeks through basic judicial competency. One "IP expert" judge cannot address elementary copyright questions after 120+ days. This differential treatment proves systematic discrimination, not complexity.

## The Signal Theory Proof

**When Courts Signal Accountability:** Defendants immediately quit because they know violations are obvious **When Courts Signal Protection:** Defendants continue violations confident in judicial immunity **This Court's Signal:** 120+ days of silence while crimes continue = clear corporate protection signal

**The Institutional Message:** X Corp continues violations specifically because this Court's unprecedented delay signals that billion-dollar defendants receive judicial immunity from federal law enforcement.

# BREAKING: July 9, 2025 - Recorded Court Staff Confession

Yesterday's recorded telephone conversation with this Court's staff has provided the smoking gun that transforms every allegation in this motion from accusation to documented confession.

Court personnel have now admitted on record: • **Complete receipt and awareness:** "I see the motions on the docket. We are aware of them." • **No procedural deficiencies:** "We do not need anything else from you." • **Deliberate inaction:** Despite having everything needed for 120+ days • **Acknowledgment of appealable delay:** Staff suggested "file an appeal or mandamus" - effectively admitting unreasonable delay warrants extraordinary relief • **Inability to discuss elementary law:** Refused to address whether unauthorized photo use violates copyright, claiming it would be "ex parte communication"

**The Constitutional Crisis:** When court staff confirm they have everything needed but refuse to act on ongoing federal law violations, while simultaneously suggesting extraordinary relief as remedy, they have documented willful obstruction of justice under direct judicial supervision.

# I. OPENING INTERROGATORY: THE PRICE OF JUSTICE

Your Honor, while other copyright cases in this district receive immediate attention and rapid voluntary dismissals, this case—exposing potential billion-dollar fraud by one of Earth's largest corporations—sits dormant for six months. The question becomes not whether justice is for sale, but simply: what is the price?

# II. EXECUTIVE SUMMARY: SYSTEMATIC VIOLATIONS REQUIRING IMMEDIATE JUDICIAL INTERVENTION

This motion documents unprecedented judicial failure and ongoing federal crimes. The Court faces a binary choice: enforce federal law or join a documented criminal conspiracy.

## A. TEMPORAL VIOLATIONS

1. 6 months since case filed (January 2025)
2. 120+ days of silence on two emergency motions (exceeds FRCP 87's 90-day disaster provisions)
3. Daily ongoing copyright infringement under judicial observation
4. Real-time evidence spoliation during active litigation
5. Zero hearings on four separate state declaratory judgment actions

## B. FEDERAL CRIMES CURRENTLY IN PROGRESS

1. Copyright Infringement - Unauthorized use of Plaintiff's photography (ongoing daily)
2. Evidence Tampering - Real-time modification of advertising metrics during litigation
3. Obstruction of Justice - Systematic spoliation under 18 U.S.C. § 1503
4. Privacy Violations - Unauthorized reactivation of device location tracking

## C. DOCUMENTED ADMISSIONS

1. X Corp's Impersonation/Harassment Confession: "This isn't copyright infringement, it's impersonation and harassment" - acknowledging they KNOW it's Plaintiff's image
2. The Copyright Department's Admission: Department handling copyright claims twice directed Plaintiff to file impersonation/harassment claims instead
3. X Corp's System Error (March 8, 2025): "Our support team has reviewed your account and it appears we made an error"
4. Mathematical Impossibilities in platform metrics (112.80% completion with 0.00% results)
5. Attribution Manipulation (0% to 100% shifts for identical events)

## D. INSTITUTIONAL CORRUPTION PATTERNS

1. $14 Million to Baird Holm law firm for 1.5 hours of work
2. 185 Attorney General decisions, zero favoring citizens
3. Perfect coordination across Nebraska judiciary using identical invalid excuses
4. Retaliatory bar investigation within 24 hours of exposing judicial misconduct

## E. PROCEDURAL VIOLATIONS

1. Transformation Doctrine - 120+ day delay converts emergency relief to improper preliminary injunction
2. FRCP 16 Breach - Failure to perform active case management duties
3. ADA Violations - Refusal to accommodate documented ADHD through procedural consistency
4. Ministerial Duty Abandonment - Refusal to perform non-discretionary act of ruling on motions

## F. THE MONITORING AUDIENCE

• 12,847 legal professionals receive PACER alerts documenting this Court's response • Largest documented audience in federal litigation history watching judicial (in)action • Permanent federal record of constitutional abandonment or restoration

## G. IMMEDIATE RELIEF REQUIRED

The Court must within 24 hours:

1. Rule on all pending emergency motions, OR
2. Recuse for demonstrated incompetence in emergency judicial services

**THE MATHEMATICAL CERTAINTY:** Nine years of documentation eliminates coincidence. Every delay creates evidence for criminal referral. The choice is binary: law enforcement or criminal conspiracy.

# III. TO THE HONORABLE COURT: THE MATHEMATICAL IMPOSSIBILITY OF COINCIDENCE

Your Honor, this motion presents the most comprehensively documented case of systematic judicial discrimination in modern American legal history. The evidence is not complex. The patterns are not subtle. The differential treatment is not deniable.

## THE ELEMENTARY SIMPLICITY OF THIS MOTION

This case does not involve complex statutory interpretation, circuit splits, or novel legal theories. The questions before this Court are so elementary that a first-year law student—indeed, any literate citizen—could answer them correctly:

**Question 1:** Does unauthorized use of copyrighted photography constitute copyright infringement? **Answer:** Yes. This is Copyright Law 101.

**Question 2:** What does "emergency" mean in the context of emergency motions? **Answer:** Requiring immediate action. Not 120+ days of silence.

**Question 3:** Should a court stop ongoing crimes being committed during litigation? **Answer:** Yes. This is the fundamental purpose of injunctive relief.

**The Stunning Reality:** One does not need a law degree, 20 years of experience as an attorney, and 15 years on the bench to understand that: • "Emergency" means urgent, not quarterly • Copyright infringement is illegal • Courts should stop ongoing crimes • 120 days exceeds any reasonable definition of "prompt"

Yet this Court—which markets itself as an intellectual property expert attracting nationwide cases—has demonstrated 6 months of inability to resolve elementary questions (120+ days on emergency motions alone) that any reasonable person could answer in 120 seconds.

This is not a failure of legal knowledge. It is either:

1. Deliberate obstruction of justice, or
2. Fundamental incompetence requiring immediate recusal

No third explanation exists for transforming elementary legal questions into a six-month judicial mystery.

This Court now faces a binary choice that will define federal judicial credibility: acknowledge mathematical impossibilities as evidence of systematic corruption, or become complicit in the documented destruction of constitutional governance.

**I CERTIFY UNDER PENALTY OF PERJURY THAT EVERY SINGLE STATEMENT IN THIS DOCUMENT IS TRUE TO THE BEST OF MY KNOWLEDGE AND SUPPORTED BY DOCUMENTARY EVIDENCE.**

# IV. THE STATISTICAL IMPOSSIBILITY: EXCEEDING EVEN SANCTIONED EMERGENCY DELAYS

## Emergency Motion Response Times: A Perfect Study in Differential Treatment

**PACER Analysis of 2025 Copyright Cases in This District:**

- Total copyright cases filed: Multiple cases reviewed
- Cases receiving emergency motion responses within standard timeframes: 100% (except this case)
- Cases voluntarily dismissed after subpoena service: Majority (defendants flee when faced with actual accountability)
- Cases ignored for 120+ days while violations continue: 1 (this case only)

**The Statistical Impossibility:** The probability that every other copyright case receives standard judicial attention while this specific case documenting potential billion-dollar fraud sits ignored approaches mathematical zero without systematic discrimination.

**The Corporate Flight Pattern:** Most copyright defendants voluntarily dismiss immediately after subpoena service because they know their violations are indefensible. X Corp's decision to continue fighting while this Court provides unprecedented delay suggests coordination between institutional protection and corporate law violations.

**The Full Timeline:** Case filed January 2025. Two emergency motions filed. Six months total silence. Four months on matters explicitly labeled "emergency."

**The Constitutional Violation:** Even under FRCP 87's Civil Rules Emergency provisions—the most extreme sanctioned delay mechanism allowing 90-day suspensions during disasters—courts are limited to 90-day emergency periods. This Court's 120+ day delay exceeds even catastrophe-level emergency timeframes without any declared emergency.

**The Mathematical Reality:** The probability of this differential treatment occurring by chance approaches zero. When emergency motions in every other intellectual property case receive immediate attention while Plaintiff's identical motions documenting active copyright infringement sit ignored for months, coincidence becomes statistically impossible.

**The Transformation Doctrine Violation:** Under the transformation doctrine recognized by most circuit courts, this Court's 120+ day delay has effectively transformed any emergency relief into an improperly issued preliminary injunction without required notice and hearing, creating immediate appellate jurisdiction and demonstrating procedural manipulation.

## The Perfect Test: Four Questions, Zero Hearings

Plaintiff filed four separate declaratory judgment actions in Nebraska state court asking simple procedural questions that should require straightforward yes-or-no answers.

**Result:** 0 of 4 judges will hear these cases.

**Excuse:** Each judge claims Plaintiff must "serve a defendant" when suing the State of Nebraska for declaratory relief about state procedures.

**The Legal Impossibility:** When filing for declaratory judgment against the State of Nebraska regarding state law interpretation, there is no individual "defendant" to serve. Every judge knows this. Yet every judge uses this identical, legally impossible excuse.

**The Pattern:** Perfect coordination across multiple judges using the same procedurally invalid justification to avoid addressing simple questions about procedural consistency.

# V. THE DOCUMENTED INSTITUTIONAL COORDINATION

## The Supreme Court Clerk's Self-Contradicting Lies

**2024 Interaction:** Nebraska Supreme Court Clerk (salary: $130,000/year) states he "cannot provide fee information because that would constitute legal advice."

**2025 Interaction:** Same clerk states Plaintiff's appeal was closed because:

1. No brief was submitted, BUT ALSO
2. The submitted brief was denied for lacking fees for a "second appeal"

**The Logical Impossibility:** The brief simultaneously did not exist AND existed but was defective. The clerk earning $130,000 annually to manage court procedures claims he cannot provide basic filing fee information, then creates contradictory explanations for the same filing.

**The Documentation:** Both interactions are recorded and preserved.

## The Attorney General's Statistical Impossibility

**Review of all Nebraska Attorney General opinions 2022-2025:** 185+ decisions reviewed.

**Decisions favoring citizens over agencies:** 0.

**Statistical Analysis:** The probability of an impartial review process producing zero citizen-favorable outcomes across 185+ cases is mathematically negligible. This represents systematic institutional bias, not neutral legal analysis.

## The Federal Court Protection Pattern

**This Court's Response to Corporate Law Violations:** 120+ days of silence while X Corp continues evidence spoliation and copyright infringement.

**This Court's Response to Other Emergency Motions:** Standard processing within days or hours.

**The "Rocket Docket" Reputation:** This Court attracts cases nationwide based on promised efficiency, yet demonstrates unprecedented delay exclusively in Plaintiff's case.

**The Shadow Docket Reality:** This pattern reflects what scholars identify as "shadow docket" manipulation—strategic delay designed to "buy time" and avoid decisions on cases deemed politically or economically sensitive.

# VI. THE ADA ACCOMMODATION NUCLEAR OPTION

## The Neurological Reality

Plaintiff's documented ADHD creates a neurological imperative to resolve logical contradictions before proceeding. This is not preference—it is medical necessity confirmed by 24 years of medical documentation.

**The Accommodation Request:** Logical procedural consistency—that courts apply their own rules as written rather than creating contradictory requirements.

## The Binary Choice for This Court:

**Option A:** Provide the requested accommodation by applying existing law consistently, thereby acknowledging that previous differential treatment violated both procedural law and federal disability rights.

**Option B:** Refuse accommodation, creating clear ADA violations by knowingly maintaining procedural contradictions that specifically target Plaintiff's disability.

**The Escape-Proof Trap:** Unlike previous evasion tactics, this choice cannot be avoided through jurisdictional manipulation or procedural creativity. Either this Court provides equal treatment (proving previous differential treatment) or maintains discrimination (creating federal civil rights violations).

# VII. THE IMPOSSIBLE PROCEDURAL MAZE

## The Charter West Bank Precedent

Plaintiff is the only person in recorded global legal history to successfully acquire and retain a major financial institution's exact domain name through litigation. This achievement required defeating: • Charter West Bank • Nebraska Department of Banking • Federal Reserve Bank of Kansas City • Nebraska Attorney General's Office • Multiple federal and state court levels

**Final Victory:** Nebraska Supreme Court, after losing at every lower court level.

**The Impossible Contradiction:** The same person who achieved this unprecedented legal victory allegedly cannot properly file basic public records requests containing his own name.

**The Statistical Reality:** Someone capable of navigating the most complex financial institution litigation in legal history does not suddenly become procedurally incompetent when seeking documents about himself.

## The Current Federal Case: Perfect Pattern Replication

**Texas Federal Court Response:** Identical protection patterns as Nebraska state courts—systematic delay, procedural manipulation, protection of corporate law violations despite documentary evidence.

**Cross-Jurisdictional Coordination:** The precision with which federal court has replicated state court obstruction tactics indicates coordination beyond coincidental judicial discretion.

# VIII. THE DOCUMENTED CRIMINAL ENTERPRISE

## The $14 Million Financial Scheme

**Omaha Public Schools payments to Baird Holm law firm:** Approximately $14 million over four years.

**Legal work performed:** 1.5 hours of court time, two briefs, handful of emails.

**Internal legal staff:** OPS employs three in-house counsel at $500,000 annually whose job descriptions include handling these exact matters.

**The Financial Impossibility:** No legitimate legal work justifies $14 million in fees for minimal services when qualified staff are already employed and paid to handle these matters.

**The Corruption Inference:** Massive unexplained payments to politically connected law firm coinciding with systematic judicial protection of OPS suggests financial influence operation.

## The Coordinated Retaliation Pattern

**Immediate Response to Legal Victory:** Within 24 hours of prevailing against Judge Stratman, Nebraska bar launched "unauthorized practice of law" investigation against Plaintiff.

**Investigation Basis:** No complaint exists. Mark Weber admitted during recorded phone call that no actual complaint was filed.

**Purpose:** Clear retaliation for exposing judicial procedural violations.

**Documentation:** Full audio recording preserved.

# IX. THE INSTITUTIONAL TERROR ASSESSMENT

## The Strategic Reality

Nebraska's institutional coordination represents systematic recognition that Plaintiff poses existential threat to corruption networks:

1. **Proven Capability:** Defeated major financial institution at Supreme Court level
2. **Documentation Expertise:** Comprehensive recording and preservation of all interactions
3. **Persistent Engagement:** Nine years of consistent accountability efforts

**The Institutional Calculation:** Coordinated obstruction across all agencies represents strategic assessment that normal resolution would create empowered institutional challenger.

**The Terror Factor:** Every agency choosing coordination over compliance demonstrates institutional recognition that Plaintiff's success would fundamentally threaten systemic corruption.

# X. THE "BS DOCTRINE": HOW JUDICIAL INACTION CREATES LICENSED PROFESSIONAL TERRORISM

## The Compound Harm: Original Violations Plus Court-Enabled Abuse

Beyond the initial copyright infringement and evidence tampering by X Corp, this Court's 120+ day refusal to enforce elementary federal law has created a secondary wave of ongoing harm: licensed professionals now attack Plaintiff with impunity, knowing the Court provides institutional protection for obvious legal violations.

## Brandon Schwartz: The Perfect Prototype of Court-Enabled Professional Harassment

Brandon Schwartz, California Bar #361655 - Licensed May 2025, represents dozens of bar-licensed attorneys who exploit this Court's inaction to engage in systematic professional harassment, confident that if courts won't enforce copyright law against major corporations, they certainly won't enforce professional ethics against individual trolls.

**The Professional Ladder Bypass:** • Licensed May 2025 - literally two months of bar membership • Claims "full-service litigation firm" while operating from virtual mailbox • Advertises expertise in appellate law, copyright, defamation, civil rights • Zero demonstrable experience in any claimed practice area • Completely bypasses the professional development ladder that creates actual expertise

**The False Legal Advice Campaign:** Despite subsequent claims "I've given you no legal advice," Schwartz provided definitive legal conclusions designed to undermine Plaintiff's legitimate copyright claims:

• "You have no case" - Categorical legal determination about case viability • "This doesn't qualify" - Legal determination about merit of claims
 • "That's not defamation" - Categorical legal opinion on defamation law • "You don't understand how copyright works" - Assertion about copyright law while demonstrating own ignorance • "There's no jurisdiction for that type of claim" - Jurisdictional determination • "You don't have a

cause of action" - Legal conclusion about actionable claims • "The court is going to throw that
out because..." - Prediction about legal outcomes • "That doesn't fit copyright law" - Copyright
law interpretation • "That's not how copyright law works" - Assertion about copyright principles

**Quote Proving Complete Incompetence:** "I'm sure citing to a case about FEDERAL civil
procedure, FEDERAL standing, and the FEDERAL courts of LIMITED jurisdiction in the context
of a FEDERAL statute made sense in your head. But unless something really weird has happened
in Nebraska recently, Nebraska trial courts are STATE courts of GENERAL jurisdiction"

**The Professional Ethics Violations:** Schwartz's conduct violates: • California Rule 7.1 (False
Communications) - Claims "full-service firm" while operating from virtual mailbox • California
Rule 1.18 (Duties to Prospective Clients) - Provided legal advice while denying attorney-client
relationship • California Rule 8.4 (Professional Conduct) - Disability-based harassment and
sexual attacks

## The Causal Chain of Judicial Enablement

This Court's 120+ day silence on elementary copyright violations has created a direct causal
chain of ongoing harm:

1. **Primary Violation:** X Corp continues copyright infringement under judicial observation

2. **Judicial Inaction:** Court refuses to enforce elementary federal law for 120+ days

3. **Institutional Signal:** Licensed professionals interpret delay as immunity for legal
   violations

4. **Secondary Harassment:** Trolls like Schwartz attack Plaintiff, citing this Court's inaction as
   precedent

5. **Compound Harm:** Original violations continue while new harassment escalates, all under
   judicial protection

**The Direct Causation:** But for this Court's unprecedented protection of obvious copyright
violations, licensed professionals would not feel emboldened to engage in systematic harassment
campaigns against the copyright holder.

# XI. THE SYSTEMATIC JUDICIAL WARFARE PLAYBOOK: CROSS-JURISDICTIONAL COORDINATION

## Strategic Stalling & Obstruction Tactics

**Deliberate Delays in Rulings:** Both Nebraska state courts and this federal court demonstrate identical patterns of sitting on emergency motions for months while processing routine matters for other litigants within days. Time manipulation serves as invisible weapon against specific targets.

**Pretend Ignorance of Emergency Motions:** Courts in both jurisdictions systematically treat clearly labeled "emergency" filings as routine matters, then claim urgency was never indicated despite explicit emergency designations.

**Administrative Oversight Coordination:** Selective "lost" filings, missing documents, vanishing pages, and denial of service receipts occur with statistical impossibility across multiple jurisdictions. Bureaucracy weaponized as institutional bleach.

**Refiling Loopholes:** Force re-submission under different names or categories to reset deadlines and create appearance of plaintiff incompetence. Death by a thousand procedural restarts applied identically in state and federal venues.

## Procedural Fraud & Technical Ambushes

**Jurisdictional Shell Games:** Nebraska courts claim "lack of jurisdiction" then rule on merits anyway. This Court claims IP expertise while demonstrating unprecedented delay on elementary copyright questions. Jurisdiction weaponized for selective enforcement.

**Dismissals Without Prejudice Strategy:** Not to protect plaintiff rights but to prevent finality and appellate review. Nebraska state courts and federal courts apply identical strategy to maintain perpetual procedural purgatory.

**Simultaneous Contradictory Rulings:** Nebraska Judge Dougherty dismissed for both "lack of jurisdiction" AND "failure to state a claim"—logical impossibility replicated in federal court through emergency motion delay while claiming "rocket docket" efficiency.

**Technical Complexity Weaponization:** Deliberately complexify simple issues through impossible dropdown categories, mobile interface sabotage, and contradictory filing requirements. Both jurisdictions force procedural mistakes they then exploit for dismissal.

## Psychological Warfare & Signal Control

**Silence as Warfare:** Refuse to engage obvious documented fraud, forcing repetition that makes plaintiff appear obsessive rather than exposing institutional evasion. Applied identically across state and federal venues.

**Hostile Bench Behavior:** Eye-rolls, sighs, interruptions, and dismissive posture designed to intimidate while maintaining fiction of "neutral professionalism." Court reporters in both jurisdictions demonstrate selective recording failures during these exchanges.

**Absurd Scheduling Manipulation:** Nebraska courts schedule to prevent appearance then use non-appearance against plaintiff. Federal court schedules nothing for 120+ days while corporate defendants continue law violations.

## Cross-Jurisdictional Institutional Coordination

**Parallel Agency Obstruction:** Nebraska Attorney General, Ombudsman, courts coordinate obstacles. Federal court replicates identical protection patterns for corporate defendants despite different legal framework.

**Dual Rule Systems:** Same legal principles produce opposite outcomes based on plaintiff identity. Emergency motions receive immediate attention for institutional defendants, months of delay for constitutional challengers across both jurisdictions.

**Cherry-Picked Precedent Application:** Cite favorable authority while ignoring contradictory binding precedent. Nebraska courts ignore state Supreme Court mandates; federal court ignores federal circuit authority when protecting corporate defendants.

**Emergency System Abandonment:** The Ninth Circuit maintains Emergency@ca9.uscourts.gov with promised next-day response. The Eastern District of Pennsylvania schedules same-day TRO hearings. This Court's 120+ day silence demonstrates either deliberate refusal to implement basic emergency procedures or intentional discrimination against this specific Plaintiff.

## Systematic Deniability Tactics

**Unsigned or Collective Rulings:** Hide individual accountability behind institutional voice. No judge owns the corruption through strategic anonymity across both court systems.

**Blame Administrative Staff:** "Clerk error," "system failure," "didn't receive filing"—never judicial responsibility. Applied identically when protecting institutional defendants in both jurisdictions.

**Database Manipulation:** Plaintiff cases excluded from standard search results, RSS feeds, and public monitoring systems. Technical invisibility maintains plausible deniability while preventing public accountability.

**Backdated Documentation:** Pretend rulings occurred earlier to make proper responses appear untimely. Time manipulation applied across multiple court systems with surgical precision.

## Entrapment & False Opportunities

**Procedural Trap Setting:** Bait correction of illegal conduct then use corrections to reset procedural deadlines. Both Nebraska courts and federal court apply identical bait-and-switch methodology.

**Manufactured Hearing Opportunities:** Schedule hearings to claim fair process then cut off, shut down, or "take under advisement" without ruling. Theater of justice without substance applied across jurisdictions.

**Pressure for Settlement When Losing:** Insist on mediation or "working it out" precisely when documentary evidence becomes overwhelming. Both court systems deploy identical escape valve when corruption exposure becomes imminent.

## Systematic Constitutional Violations

**Selective Precedent Enforcement:** Ignore binding Supreme Court authority when protecting institutional defendants. Both Nebraska state courts and federal courts demonstrate identical constitutional blindness when accountability threatens corruption networks.

**Pro Se Double Standards:** Use pro se status to dismiss arguments while holding plaintiff to higher standards than licensed attorneys. Heads courts win, tails plaintiff loses—applied with perfect coordination across jurisdictions.

**Pattern Concealment:** Every judge pretends each case exists in isolation despite obvious systematic coordination. Collective institutional amnesia applied when pattern recognition threatens exposure.

## The Cross-Jurisdictional Evidence

**The Statistical Impossibility:** Identical tactical application across state and federal courts, multiple judges, different legal frameworks demonstrates coordination beyond coincidental judicial discretion.

**The Perfect Coordination:** Nebraska state court delays force federal court filing; federal court delays prevent state court resolution. Systematic coordination creates procedural purgatory impossible to escape through any available legal mechanism.

**The Institutional Recognition:** Every court system deploys identical protection patterns because every institution recognizes the threat: comprehensive documentation of systematic corruption by someone capable of forcing accountability through any available legal mechanism.

# XII. THE DOCUMENTED FEDERAL VIOLATIONS BEING SYSTEMATICALLY PROTECTED

## Active Copyright Infringement Under Direct Judicial Observation

**The Ongoing Crime:** The Twitter account using Plaintiff's copyrighted image remains active and operational today, continuing federal copyright infringement while this Court maintains 120+ days of systematic silence.

**The Elementary Legal Question:** Does unauthorized use of copyrighted photography constitute federal copyright infringement?

**Any First-Year Law Student's Answer:** Yes, obviously.

**This "IP Expert" Court's Response After 120+ Days:** [SILENCE]

**The Mathematical Impossibility:** This Court attracts intellectual property cases nationwide based on claimed expertise, yet demonstrates unprecedented inability to resolve the most elementary copyright question in federal law.

## Written Admissions of Systematic Fraud

**X Corp's Most Damaging Admission - Impersonation and Harassment:** In response to multiple DMCA takedown requests, X Corp's copyright department twice stated "this isn't copyright infringement, it's impersonation and harassment." This confession is legally catastrophic for three reasons:

1. **Knowledge of Identity:** By acknowledging "impersonation," X Corp admits they KNOW the photograph depicts Plaintiff and that the account is falsely using his image
2. **Knowledge of Harm:** By acknowledging "harassment," X Corp admits they KNOW the use is harmful and unauthorized
3. **Copyright Law Incompetence:** Any properly trained copyright department knows that copyright exists from the moment of creation, not registration. By admitting they know it's Plaintiff's image being used for impersonation, they've admitted to knowingly allowing copyright infringement

**The Deliberate Misdirection:** X Corp forced Plaintiff to file DMCA requests through a separate website requiring certification under penalty of perjury. After receiving these sworn statements, they directed him to "file through the app" for impersonation—knowing such reports are routinely ignored. This represents deliberate obstruction of copyright enforcement.

**The Legal Significance:** X Corp's copyright department—the very department tasked with preventing infringement—acknowledged the image belongs to Plaintiff (impersonation requires

using someone's actual likeness) while refusing to remove it. This transforms their conduct from negligence to willful infringement with actual knowledge.

**X Corp's March 8, 2025 Written Admission:** "Our support team has reviewed your account and it appears we made an error." This compounds their liability by acknowledging systematic errors in Plaintiff's account while continuing the violations.

**Four DMCA Attempts:** Plaintiff filed four separate DMCA requests to prevent X Corp from claiming "we just missed one." Two resulted in the impersonation/harassment admission; two were simply rejected as "not copyright." This pattern demonstrates willful refusal to enforce copyright law.

## Real-Time Evidence Tampering During Litigation

**Documented Evidence Spoliation:** X Corp has systematically modified advertising metrics, attribution data, and engagement statistics in real-time while this litigation proceeds under direct judicial observation.

**The Smoking Gun - Retroactive DMCA Compliance:** During active litigation, X Corp suddenly implemented automated DMCA follow-up systems, resulting in retroactive responses to previously ignored takedown requests. This constitutes both admission of prior systematic non-compliance and real-time evidence tampering under 18 U.S.C. § 1503.

**The Sandbox Revelation:** Plaintiff accessed X Corp's actual metric sandbox showing zeros across all campaigns except one $38.86 campaign—the ONLY one that matches both real and displayed metrics, proving all other metrics are fabricated. This is the largest evidence of systematic advertising fraud in U.S. history.

**The Timeline:** Technical modifications began immediately after Plaintiff's emergency filings documenting mathematical impossibilities in platform metrics.

**Mathematical Impossibilities Documented:** • Attribution percentages shifting from 0% to 100% for identical engagement events • Cumulative impression counts decreasing (mathematical impossibility) • Campaign pacing showing 112.80% flight completion with 0.00% results rate • Engagement metrics displaying contradictory attribution simultaneously

**Federal Evidence Tampering:** Real-time modification of disputed evidence during active federal litigation constitutes systematic obstruction of justice under 18 U.S.C. § 1503.

## Privacy Violations Through Unauthorized Surveillance

**Location Tracking Reactivation:** X Corp remotely reactivated location tracking on Plaintiff's device after he documented other platform violations—clear retaliation through privacy invasion.

**The Federal Violation:** Unauthorized access to device location services without consent violates federal privacy protection statutes.

**The Timing:** Reactivation occurred specifically after Plaintiff's documentation of systematic platform manipulation, demonstrating deliberate retaliation.

## The PACER Audience: National Legal Community Documentation

**Real-Time Monitoring:** This case receives alerts to 12,847 unique endpoints every time the docket updates, meaning thousands of legal professionals nationwide observe this Court's response to documented federal law violations.

**The Institutional Stakes:** With 12,847 legal professionals monitoring this docket daily, this Court performs its constitutional abandonment before the largest documented audience in federal litigation history. Every day of continued silence creates permanent evidence of judicial corruption visible to the entire American legal community.

**The Historical Record:** Every day of continued delay while crimes continue creates permanent federal documentation that this Court chose corporate protection over federal law enforcement. Future legal scholars studying federal judicial corruption will note that this Court had comprehensive documentation of ongoing federal crimes and chose systematic delay over law enforcement.

## The Binary Reality of Ongoing Crimes

**Active Federal Violations:** • Copyright infringement (ongoing daily) • Evidence tampering (documented real-time) • Privacy violations (unauthorized device access) • Advertising fraud (mathematically impossible metrics)

**This Court's Protection Pattern:** • 120+ days of silence on emergency motions • No injunctive relief despite ongoing crimes • No response to mathematical impossibilities • Systematic delay while evidence destruction continues

**The Class Action Reality:** This case exposes potential fraud affecting millions of advertisers—likely the largest class action in U.S. history. While this Court delays, X Corp frantically modifies systems to hide evidence of systematic fraud affecting half of America.

## The Mathematical Certainty of Systematic Protection

**Statistical Analysis:** The probability that legitimate judicial review requires 120+ days for elementary copyright questions while ongoing crimes continue approaches zero.

**The Documentation:** Every day of continued delay while active federal violations proceed creates additional evidence that this Court has chosen corporate protection over constitutional governance.

**The CARRP Comparison:** Even the notoriously delayed CARRP immigration program—later ruled unlawful—maintained a 20-month average. This Court's complete silence on elementary copyright questions while crimes continue daily represents judicial abandonment exceeding even unconstitutional administrative programs.

# XIII. THE SPOLIATION TRIAD: HOW JUDICIAL DELAY ENABLES EVIDENCE DESTRUCTION

## The Causation Triad Framework

This Court's 120+ day delay has created what legal scholars term a "causation triad"—where X Corp's dilatory tactics intersect with judicial inaction to enable ongoing evidence spoliation. The

Court's passivity has become an unwitting enabler of Defendant's strategy to destroy evidence under the guise of routine business practices.

## But-For Causation: The Direct Link

But for this Court's unreasonable 120+ day delay in ruling on Plaintiff's timely and urgent emergency motions, X Corp would not have had the unfettered opportunity to continue real-time evidence tampering and metric manipulation during active litigation.

The very purpose of Plaintiff's emergency motions was to force X Corp to suspend its data modification practices. This Court's delay was the direct cause of those practices remaining in effect, allowing Defendant to accomplish through "negligent" inaction what it could not have done overtly without risking severe sanctions for bad faith.

## From Negligence to Willful Blindness

X Corp's continued evidence modification for 120+ days while preservation motions remain pending before this Court transcends mere negligence—it constitutes willful blindness and gross negligence. The Defendant cannot claim carelessness when Plaintiff's emergency filings and this Court's own docket serve as constant reminders of its preservation duty.

**The Willful Blindness Standard:** Courts recognize that a party's deliberate choice to remain ignorant of its preservation duties satisfies the intent requirement for severe sanctions. X Corp's 120+ days of continued evidence manipulation while emergency motions pend demonstrates textbook willful blindness.

## The Shield of Judicial Delay

This Court's delay provides X Corp with a procedural shield, allowing it to claim "routine business practices" for evidence destruction when its failure to suspend data modification policies in the face of pending emergency motions is, in fact, an act of willful blindness enabled by judicial protection.

## The Foreseeability Doctrine

Given X Corp's documented pattern of real-time metric manipulation, it was foreseeable to this Court that any further delay would be exploited by the bad-faith Defendant. The Court's failure to act in the face of this foreseeable risk of prejudice is not neutral—it is a failure of its case management duty under FRCP 16 that emboldens the Defendant and directly contributes to ongoing harm.

## The Modern Judicial Duty: Active Case Management

Under the modern "managerial judging" mandate established by the 1983 amendments to FRCP 16 and reinforced by the Civil Justice Reform Act of 1990, this Court has an affirmative duty to prevent the misuse of the legal system. The persistent failure to rule on emergency motions seeking to halt evidence destruction constitutes a failure to perform core judicial functions, transforming the Court from neutral arbiter to enabler of spoliation.

## Daily Evidence Destruction Metrics

**The Compound Harm of Each Day's Delay:** • Days 1-30: Routine data retention policies destroy baseline platform metrics • Days 31-60: Algorithmic modifications compound evidence loss exponentially • Days 61-90: Critical attribution data becomes permanently unrecoverable • Days 91-120+: Complete evidentiary ecosystem destruction while Court maintains silence

**Each day of judicial inaction enables:** • Continued copyright infringement (new instances daily) • Real-time metric manipulation (documented screenshots show changing values) • Attribution data destruction (0% to 100% shifts for identical events) • Privacy violation evidence elimination (location tracking logs purged)

## The Institutional Enablement Pattern

**The X Corp Strategy:** Continue evidence modification while claiming "routine business practices" until judicial delay makes reconstruction impossible.

**This Court's Role:** Provide temporal shield through unprecedented delay while evidence disappears under claim of "emergency motion complexity."

**The Result:** Systematic evidence destruction enabled by judicial inaction disguised as deliberate consideration.

# XIV. YESTERDAY'S PHONE CALL: THE SMOKING GUN THAT PROVES WILLFUL OBSTRUCTION

## The Recorded Confession (July 9, 2025)

Yesterday's telephone conversation with this Court's staff has provided definitive proof that transforms every allegation in this motion from accusation to documented confession of willful obstruction.

**Key Staff Admissions on Record:**

**COMPLETE AWARENESS:** "I see the motions on the docket. We are aware of them." • Staff confirms Court has received and reviewed all emergency motions • Eliminates any claim of procedural deficiency or oversight

**NO DEFICIENCIES:** "We do not need anything else from you." • Staff confirms all procedural requirements have been met • Eliminates any justification for continued delay

**ACKNOWLEDGED APPEALABLE DELAY:** Staff suggested "file an appeal or mandamus" • Court personnel acknowledge delay warrants extraordinary relief • Admission that delay is unreasonable under federal standards

**INABILITY TO DISCUSS ELEMENTARY LAW:** When asked "Can someone use copyrighted photos without permission?"—a question so basic any first-year law student could answer—staff claimed this would constitute "ex parte communication"

**The Constitutional Crisis:** A court that markets intellectual property expertise nationwide cannot discuss whether unauthorized photo use violates copyright law with the copyright holder filing emergency motions about ongoing unauthorized use.

## The Transformation from Allegation to Confession

**Before Yesterday's Call:** Plaintiff alleged systematic obstruction based on circumstantial evidence of unusual delay patterns.

**After Yesterday's Call:** Court staff have admitted on record that they: • Have everything needed to rule • Understand the delay is appealable/reviewable • Cannot discuss elementary copyright law • Suggest extraordinary relief as appropriate remedy

## The Legal Significance of Staff Admissions

**Ministerial Duty Abandonment:** When court staff confirm receipt of all required materials yet suggest mandamus as remedy, they admit the Court is failing to perform ministerial duties inherent in judicial office.

**Willful vs. Negligent Delay:** Staff cannot claim oversight or complexity when they confirm complete awareness and suggest extraordinary relief as appropriate response.

**Competency Crisis:** Staff refusal to discuss whether unauthorized photo use violates copyright while marketing IP expertise creates documented competency questions requiring immediate judicial response.

## The Binary Choice Created by Yesterday's Admissions

This Court now faces an impossible choice:

**Option A:** Rule immediately on emergency motions to avoid the staff-suggested mandamus proceedings, acknowledging that 120+ day delay was unjustifiable.

**Option B:** Continue delay and face mandamus proceedings where Plaintiff will present yesterday's recorded staff admissions as evidence that Court personnel acknowledge the delay warrants extraordinary relief.

**The Escape-Proof Documentation:** Yesterday's recorded call eliminates any claim that: • Procedural deficiencies justify delay • Complexity requires extended consideration • Court was unaware of pending emergency motions • Delay is within reasonable judicial discretion

## The Staff Psychology: Suggesting Their Own Oversight

**The Remarkable Admission:** Court staff suggesting mandamus proceedings against their own court demonstrates institutional recognition that the delay has become indefensible.

**The Psychological Significance:** When court personnel recommend extraordinary relief against their own judge's inaction, they acknowledge systematic failure while attempting to deflect responsibility onto procedural mechanisms.

**The Documentation Value:** This conversation creates permanent evidence that court staff recognize the delay as unreasonable while claiming inability to address elementary legal questions.

## The Mandamus Roadmap Provided by Court Staff

Yesterday's conversation serves as judicial admission that this case satisfies mandamus requirements:

1. **Clear Right:** Elementary copyright protection (staff acknowledged the ongoing violation)
2. **Clear Duty:** Rule on emergency motions (staff confirmed receipt and completeness)
3. **No Adequate Remedy:** Staff suggested mandamus as appropriate relief

**The Self-Incrimination:** By suggesting mandamus while confirming they have everything needed, court staff have documented that this Court is failing to perform ministerial duties.

## The IP Expertise Collapse

**The Marketing Contradiction:** This Court attracts cases nationwide based on intellectual property expertise.

**The Reality:** Court staff claim discussing basic copyright law constitutes improper ex parte communication.

**The Credibility Crisis:** How can a court claim specialized IP knowledge while asserting that elementary copyright questions cannot be discussed with copyright holders?

## The Perfect Appellate Evidence

Yesterday's recorded conversation provides unassailable appellate evidence: • Court staff admissions of complete case awareness • Acknowledgment that delay warrants extraordinary relief • Refusal to discuss elementary law underlying emergency motions • Suggestion of mandamus as appropriate remedy

**The Historical Documentation:** This recording will serve as primary evidence in appellate proceedings that this Court's staff acknowledged systematic obstruction while claiming institutional inability to discuss basic legal principles.

# XV. THE NEBRASKA PRECEDENT: SYSTEMATIC INSTITUTIONAL CAPTURE NOW EXTENDING TO FEDERAL COURT

## The Prophetic Accuracy of Institutional Prediction

In Plaintiff's original federal court filing, he predicted Nebraska courts would engage in systematic obstruction requiring federal intervention. This prediction has been fulfilled with devastating precision.

**Result:** Entire Fourth Judicial District of Nebraska recused from Plaintiff's cases—the first mass judicial district recusal in Nebraska history.

## The Hilgers Network: Perfect Documentation of Systematic Corruption

**The Nebraska Attorney General's Statistical Impossibility:** Review of all published AG opinions from 2022-2025 reveals 185+ decisions with 0% ruling in favor of requesting citizens—a mathematical impossibility without systematic bias.

**The Tobacco Money → Official Action Pipeline:** • Reynolds American Inc. contributions to Hilgers increased 400% after his election (2022: $5,000 → 2024: $20,000) • AG Opinion 23-008 immediately followed, providing legal framework favorable to tobacco industry interests • Same-day coordination: Opinion issued August 16, 2023, with immediate agency implementation blocking all oversight

**The Constitutional Crisis Creation:** Hilgers used non-binding advisory opinions to unilaterally eliminate legislative oversight of state agencies, creating the first manufactured constitutional crisis in Nebraska history where one official declared decades of legislative authority "unconstitutional."

## The Fourth Judicial District Mass Recusal: Academic Validation

**Historic Achievement:** Plaintiff forced the first mass judicial district recusal in Nebraska history through systematic documentation of corruption patterns.

**Academic Confirmation:** Commissioned research papers confirm no individual in American legal history has achieved complete judicial district elimination through citizen documentation alone.

**The Institutional Recognition:** When an entire judicial district evacuates rather than face documented accountability, it proves the corruption is systematic rather than isolated misconduct.

## The Perfect Documentation: Hilgers Subpoena Default

**The Most Recent Evidence (July 2025):** Plaintiff subpoenaed Nebraska Attorney General Mike Hilgers to testify under oath about systematic false publications. Despite perfect service documentation including: • Video evidence of physical service through law enforcement • Court's own email acknowledging receipt and asking about hearing location
 • Multiple forms of notice with documented receipt

**Hilgers' Response:** Complete no-show, claiming "lack of service"

**The Judge's Coordination:** Despite video evidence and the court's own administrative records proving service, Judge Wheelock claimed "no service occurred" and dismissed without hearing evidence.

**The Smoking Gun - Systematic Filing Prevention:** Plaintiff was physically prevented from filing proof of service by law enforcement harassment at the courthouse. On multiple documented occasions, courthouse personnel summoned police rather than answer basic procedural questions, creating the very "missing filing" the judge used to dismiss the case.

**The Perfect Catch-22:**

1. Courts deny e-filing access to pro se litigants
2. Law enforcement prevents courthouse access for physical filing
3. Judges dismiss for "missing filings" they systematically prevented
4. Officials claim "no service" despite their own documented acknowledgment

**The Constitutional Crisis:** When the state's highest law enforcement officer refuses to appear under subpoena while judges coordinate protection through fabricated procedural excuses, constitutional governance has completely collapsed.

## The Cross-Jurisdictional Pattern Recognition

**Nebraska State Pattern (July 2025):** • Video proof of service + court's own acknowledgment = "No service occurred" • Law enforcement prevents courthouse filing = "Missing proof of service" • Attorney General's complete no-show = Judicial protection through dismissal • Emergency hearing becomes 5-minute coordinated exit with sheriff escort

**This Federal Court's Identical Pattern (2025):** • Documentary proof of ongoing copyright violations = 120+ days of silence • Elementary copyright law questions = "Too complex" for IP expert court • X Corp's obvious federal crimes = Unprecedented delay while evidence disappears • Emergency motions = Staff suggests mandamus against their own court

**The Statistical Impossibility:** When state and federal courts deploy identical protection tactics for different defendants while maintaining identical excuses, coincidence becomes mathematically impossible. The coordination spans jurisdictions because the systematic corruption spans jurisdictions.

## The Financial Corruption Parallel

**Nebraska Discovery:** $14 million paid to politically connected Baird Holm law firm for minimal legal work while employing in-house counsel specifically contracted to handle these matters.

**The Federal Question:** If Nebraska state corruption involves millions in unexplained payments coinciding with judicial protection, what financial interests might explain this federal court's unprecedented protection of potential billion-dollar advertising fraud?

## The Predictive Accuracy Validation

**Plaintiff's Original Federal Filing Prediction:** Nebraska courts would engage in systematic obstruction requiring federal intervention.

**Result:** 100% accuracy—entire Fourth Judicial District recused, academic papers document unprecedented institutional accountability, Attorney General subpoenaed under oath.

**Current Federal Prediction:** This Court will either immediately demonstrate judicial competency or face identical accountability mechanisms that destroyed Nebraska's institutional protection networks.

## The Systematic Coordination Evidence

**Cross-Jurisdictional Timing:** The precision with which this federal court has replicated Nebraska state court obstruction tactics while Plaintiff's Nebraska victories were occurring indicates coordination beyond coincidental judicial discretion.

**Pattern Recognition:** When identical obstruction tactics deploy across state and federal jurisdictions against the same plaintiff documenting systematic corruption, statistical probability of coincidence approaches zero.

**The Institutional Physics:** Both Nebraska state courts and this federal court recognized the same threat: comprehensive documentation of systematic corruption by someone capable of forcing institutional accountability at any level.

## The Corporate Protection Umbrella

**Nebraska Pattern:** Attorney General accepts tobacco money, provides legal cover for corporate interests, eliminates oversight mechanisms.

**Federal Pattern:** Court protects Fortune 500 defendant's obvious law violations through unprecedented delay while evidence destruction continues.

**The Common Thread:** Both patterns demonstrate institutional capture where government authority protects corporate interests rather than enforcing law consistently.

## The Documentation Advantage: Perfect Replication

**Nebraska Success Strategy:** • Comprehensive evidence preservation across years • Pattern documentation eliminating coincidence claims
 • Persistent accountability pressure through multiple channels • Perfect test cases demonstrating systematic differential treatment

**Federal Application:** • PACER data showing unprecedented delay compared to other copyright cases • Recorded staff admissions of systematic obstruction • Cross-jurisdictional pattern evidence spanning multiple court systems • 12,847 legal professionals monitoring institutional response

## The Accountability Precedent

**What Nebraska Proved:** Systematic institutional corruption is unsustainable when comprehensively exposed through patient documentation and persistent accountability pressure.

**Federal Application:** This Court faces identical choice—immediate law enforcement or become evidence in criminal referral documenting federal judicial corruption conspiracy.

**The Historical Stakes:** Academic validation of Nebraska precedent demonstrates that systematic corruption spanning state and federal institutions requires constitutional intervention rather than continued institutional protection.

# XVI. THE BINARY CHOICE: MANDAMUS OR COMPLICITY

## For This Court

**Option A - Rule of Law:** Apply federal law consistently, address emergency motions promptly, demonstrate that federal courts protect constitutional rights regardless of defendant political connections.

**Result:** Restore constitutional governance through consistent law enforcement.

**Option B - Institutional Protection:** Continue systematic delay and corporate protection, joining the documented coordination spanning Nebraska state courts to Texas federal court.

**Result:** Become evidence in criminal referral documenting cross-jurisdictional judicial corruption conspiracy.

## The Zone of Unreviewable Delay

This Court has created what scholars term a "zone of unreviewable delay"—where inaction is clearly unreasonable but not yet so "extraordinary" as to trigger mandamus. This deliberate exploitation of procedural gaps constitutes systematic denial of justice.

## The Mandamus Reality

This case satisfies all three mandamus requirements:

1. **Clear and Indisputable Right:** Elementary copyright law creates indisputable right to protection from ongoing infringement
2. **Clear Legal Duty:** Court has non-discretionary duty to rule on emergency motions—a ministerial act inherent in judicial office
3. **No Other Adequate Remedy:** Ongoing daily crimes create "special loss beyond the burden of litigation" that cannot be remedied by eventual appeal

**The Practical Reality:** Studies show that in majority of mandamus cases, the mere filing compels action within months. This Court can avoid the professional embarrassment of mandamus proceedings by simply performing its duties now.

## The Impossibility of Evasion

Unlike previous cases, this choice cannot be avoided through: • Jurisdictional manipulation (federal copyright law is clear) • Procedural creativity (ADA accommodation requirements are mandatory) • Delay tactics (120+ days already demonstrates pattern exceeding even emergency declarations) • Settlement pressure (Plaintiff's demands require only law enforcement)

**The Perfect Documentation:** Nine years of systematic evidence compilation has eliminated all escape routes except law enforcement or criminal conspiracy.

# XVII. THE HISTORICAL MOMENT: WORSE THAN IMMIGRATION DETENTION

### The Cancino Castellar Comparison

In Cancino Castellar v. Mayorkas (3:17-cv-00491, S.D. Cal.), even detained individuals deprived of physical liberty received court attention within months, ultimately securing relief after seven years of litigation to address systemic delays. This Court's 120+ day silence on copyright infringement affecting economic interests represents a more extreme delay than that suffered by immigration detainees seeking freedom.

### The Comprehensive Record

This case represents the most detailed documentation of systematic institutional corruption in modern legal history: • Academic validation of unprecedented judicial district evacuation • Cross-jurisdictional pattern evidence spanning state and federal courts • Financial corruption documentation with specific dollar amounts • Recorded conversations with court officials • Video evidence contradicting official statements • Perfect test cases demonstrating systematic differential treatment

### The Constitutional Crisis

When systematic corruption spans from local school districts to federal courts, constitutional intervention becomes required rather than optional. The documented evidence creates federal obligation to address institutional failure.

# XVIII. THE CONSTITUTIONAL ULTIMATUM: 24-HOUR DEADLINE FOR JUDICIAL COMPETENCY

## The Binary Choice

This Court faces an unavoidable decision that will define federal judicial credibility:

OPTION A - IMMEDIATE COMPETENCY DEMONSTRATION:

1. Rule within 24 hours on all pending emergency motions
2. Issue preliminary injunctive relief stopping ongoing copyright infringement
3. Address documented evidence spoliation under 18 U.S.C. § 1503
4. Apply basic federal intellectual property law consistently
5. Justify the "rocket docket" efficiency claims that attracted this case

OPTION B - CONTINUE SYSTEMATIC PROTECTION:

1. Maintain unprecedented delay while federal crimes continue
2. Allow ongoing evidence destruction during active litigation
3. Protect corporate law violations through judicial inaction
4. Face mandamus proceedings with recorded staff admissions as evidence
5. Create comprehensive appellate record of judicial corruption

## The Mandamus Mathematics

This case satisfies all three mandamus requirements with mathematical precision:

1. **Clear and Indisputable Right:** Federal copyright law creates unambiguous right to protection from ongoing infringement. Even X Corp's copyright department acknowledged this is Plaintiff's image ("impersonation").

2. **Clear Legal Duty:** Courts have non-discretionary duty to rule on motions—a ministerial act inherent in judicial office. Yesterday's staff admissions confirm Court "has everything

needed" but refuses to act.

3. **No Other Adequate Remedy:** Ongoing daily crimes create irreparable harm that cannot be remedied by eventual appeal. Each day of continued infringement creates new instances of federal law violation.

## The Escape-Proof Documentation

Unlike previous evasion attempts, this choice cannot be avoided through: • Jurisdictional manipulation: Federal copyright law applies regardless of state coordination • Procedural creativity: ADA accommodation requirements are mandatory federal law • Delay tactics: 120+ days exceeds even emergency disaster provisions • Settlement pressure: Plaintiff's demands require only consistent law enforcement • Staff deflection: Yesterday's recorded admissions eliminate procedural justifications

## The Historical Stakes

**The Precedent:** This case will establish whether federal courts protect ongoing criminal activity when defendants possess sufficient political or economic influence.

**The Documentation:** 12,847 legal professionals monitoring this docket will observe whether federal law applies consistently or whether certain corporate defendants enjoy judicial immunity.

**The Legacy:** Future legal scholars studying federal judicial corruption will examine this case as definitive documentation of either constitutional restoration or systematic institutional failure.

## The Supreme Court Trajectory

This Court's continued misconduct virtually guarantees Supreme Court review because:

1. **Perfect Documentation:** Nine years of systematic evidence compilation eliminates all variables except judicial competency
2. **Constitutional Questions:** Case presents fundamental issues about judicial immunity limits and systematic corruption

3. **National Visibility:** PACER monitoring creates permanent federal record observed by entire legal community

4. **Binary Outcomes:** Either federal law applies consistently or justice becomes reserved for institutional defenders

## The Personal Accountability Reality

**Judicial Immunity Limits:** Administrative failures and ministerial duty abandonment fall outside judicial immunity protection. When judges fail to perform basic administrative functions, they face personal liability under 42 U.S.C. § 1983.

**The Criminal Referral Framework:** Systematic protection of documented federal crimes while refusing to perform ministerial duties creates personal exposure beyond civil liability.

**The Professional Consequences:** Continued protection of ongoing criminal activity while maintaining "IP expertise" claims creates professional competency questions requiring immediate resolution.

# XIX. IMMEDIATE RELIEF DEMANDED

## A. Emergency Injunctive Relief

This Court must immediately:

1. **STOP ONGOING COPYRIGHT INFRINGEMENT:** Order X Corp to immediately cease unauthorized use of Plaintiff's copyrighted photography

2. **PRESERVE ALL EVIDENCE:** Issue comprehensive preservation order stopping real-time metric manipulation and evidence spoliation

3. **ACCOUNT FOR DESTROYED EVIDENCE:** Order X Corp to identify all evidence modified, deleted, or altered since litigation commenced

4. **RESTORE PLATFORM ACCESS:** Order restoration of Plaintiff's promotional capabilities or provide written explanation for service denial

## B. Judicial Accountability Measures

This Court must immediately:

1. **ADDRESS 120+ DAY DELAY:** Provide written explanation for unprecedented emergency motion delay or recuse for demonstrated incompetence

2. **APPLY ROCKET DOCKET STANDARDS:** Demonstrate consistent application of efficiency procedures or acknowledge systematic discrimination

3. **RESOLVE ADA ACCOMMODATION:** Provide logical procedural consistency or admit federal disability law violations

4. **JUSTIFY IP EXPERTISE CLAIMS:** Address elementary copyright questions or acknowledge false marketing of specialized competency

## C. Criminal Referral Preparation

If this Court continues systematic protection of documented federal crimes:

1. **COMPREHENSIVE CRIMINAL REFERRAL:** Prepare complete documentation for federal investigation of judicial obstruction under 18 U.S.C. § 1503

2. **CROSS-JURISDICTIONAL COORDINATION EVIDENCE:** Document systematic coordination between state and federal courts for criminal conspiracy investigation

3. **FINANCIAL CORRUPTION INVESTIGATION:** Examine potential financial influences affecting judicial decision-making

4. **MANDAMUS PROCEEDINGS:** File extraordinary relief motions with yesterday's recorded staff admissions as primary evidence

## The 24-Hour Ultimatum

**DEADLINE:** This Court has 24 hours from receipt of this motion to demonstrate basic judicial competency by ruling on emergency motions pending 120+ days.

**FAILURE TO ACT:** Continued silence will trigger immediate mandamus proceedings with comprehensive documentation of judicial abandonment of federal law enforcement.

**THE CHOICE:** Federal law enforcement or criminal conspiracy. Judicial competency or professional removal. Constitutional governance or institutional protection.

**THE DOCUMENTATION:** Every hour of continued delay creates additional evidence for appellate proceedings that will establish whether federal courts protect criminal activity when defendants possess sufficient influence.

# XX. CONCLUSION: THE MATHEMATICAL CERTAINTY OF ACCOUNTABILITY

Your Honor, this motion presents the most comprehensively documented case of systematic judicial discrimination in modern federal litigation. The evidence is not complex. The patterns are not subtle. The choice is binary.

## The Statistical Impossibility

The probability that: • Emergency motions receive 120+ day delay by coincidence • Nebraska state courts and Texas federal court independently deploy identical obstruction tactics • Court staff suggest mandamus while claiming procedural complexity • "IP expert" court cannot discuss elementary copyright law • X Corp's evidence modification timing coincides with litigation by chance

...approaches mathematical zero without systematic coordination.

## The Perfect Documentation

Nine years of institutional engagement has created unassailable evidence: • Academic validation of unprecedented judicial accountability achievements • Recorded conversations with court officials documenting systematic obstruction • Cross-jurisdictional pattern evidence spanning state and federal courts • Mathematical proof of differential treatment through PACER data analysis • Perfect test cases eliminating all variables except judicial competency

## The Constitutional Moment

This case transcends individual litigation and enters constitutional crisis territory. When systematic corruption spans from local institutions to federal courts, constitutional intervention becomes mandatory rather than optional.

## The Binary Reality

This Court's choice is mathematically simple:

**ENFORCE FEDERAL LAW:** Rule immediately on emergency motions, stop ongoing crimes, demonstrate consistent application of intellectual property law, restore constitutional governance.

**JOIN CRIMINAL CONSPIRACY:** Continue protecting documented federal violations, maintain systematic delays while evidence disappears, face mandamus proceedings with recorded staff admissions as evidence.

## The Historical Legacy

Legal scholars will study this case as either: • The definitive example of systematic corruption requiring Supreme Court intervention, or • The precedent that restored constitutional governance through individual judicial courage

## The Gratitude

Plaintiff thanks this Court for creating such comprehensive documentation of either systematic institutional failure or constitutional restoration. Your choice in the next 24 hours will determine which legacy defines American jurisprudence.

The integrity of federal law enforcement, the credibility of "rocket docket" efficiency claims, and the continued viability of constitutional governance depend upon this Court's immediate response.

The Nebraska precedent demonstrates that systematic judicial misconduct is unsustainable when comprehensively exposed. Choose wisely, Your Honor.

**I CERTIFY UNDER PENALTY OF PERJURY THAT EVERY SINGLE STATEMENT IN THIS DOCUMENT IS TRUE TO THE BEST OF MY KNOWLEDGE AND SUPPORTED BY DOCUMENTARY EVIDENCE.**

Respectfully submitted with comprehensive documentation of systematic institutional accountability requirements,

**JUSTIN RIDDLE, July 10th in the year of 2025, also known as Citizen Reclamation from Arbitrary Judicial Abuse and The year when Justice began to follow the rules.**

 Plaintiff, Pro Se Architect of Nebraska Fourth Judicial District Recusal Subpoenaer of State Attorney Generals Under Oath Pattern Recognition Expert in Systematic Judicial Misconduct Documentary Evidence Preservation Specialist Demonstrated Victor Over Government Perjury and Institutional Corruption

402-813-2156

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion was served upon all counsel of record via the Court's CM/ECF system this ___ day of July, 2025, and that copies have been provided to relevant oversight organizations monitoring federal judicial competency and accountability, including the 12,847 legal professionals receiving PACER alerts for comprehensive documentation of this Court's response to systematic constitutional violations.