# The Triad of Spoliation: The Interplay of Judicial Inaction, Defendant Delay, and the Destruction of Evidence

## Introduction

The adversarial system of justice is predicated on a foundational principle: the ascertainment of truth through the orderly presentation of evidence. The integrity of the judicial process itself hinges on the ability of parties to conduct liberal discovery and for the trier of fact to weigh all relevant, material evidence. It is for this reason that the act of spoliation—the destruction or failure to preserve evidence for use in litigation—is viewed as one of the most corrosive forms of misconduct, second only perhaps to perjury. Spoliation undermines the core function of the courts, threatening to distort outcomes, increase litigation costs, and erode public confidence in the legal system. As one court aptly noted, spoliation "can destroy fairness and justice, for it increases the risk of an erroneous decision on the merits of the underlying cause of action". Conventionally, the legal framework addresses spoliation through a relatively linear analysis. The inquiry focuses on the actions and culpability of a single party: the spoliator. Courts assess whether the party had a duty to preserve the evidence, whether that duty was breached with a "culpable state of mind," and the degree of prejudice the innocent party suffered as a result. Sanctions are then calibrated to punish the wrongdoer, deter future misconduct, and restore, as much as possible, a level playing field for the prejudiced party. This model, while effective in straightforward cases, proves inadequate when confronted with a more complex and pernicious dynamic.

This report examines a scenario that challenges the traditional view of spoliation—one that arises from a confluence of factors creating a procedural quagmire for the diligent litigant. This scenario involves a "causation triad": the destruction of evidence that occurs at the intersection of (1) a defendant's strategic and dilatory litigation tactics, (2) a court's failure to actively manage its docket and rule on time-sensitive motions, and (3) the ultimate loss of crucial evidence during the period of judicial inaction. In this triad, the defendant's delay is not merely a nuisance; it is a weapon used to exploit systemic weaknesses, creating a window of opportunity for evidence to be destroyed, often under the guise of routine business practices. The court's passivity, in turn, becomes an unwitting enabler of this strategy.

While a survey of federal and state case law reveals an exceedingly scarce number of decisions that explicitly hold a court's own delay to be a proximate cause of spoliation, the absence of direct precedent does not signify the absence of a remedy. This report will construct a robust legal and theoretical framework for establishing causation and seeking redress in such circumstances. By dissecting the interconnected doctrines of spoliation, the duty to preserve, judicial case management, and sanctions for litigation abuse, it provides a roadmap for advocates. Part I will establish the foundational legal principles of spoliation and the duty to preserve. Part II will detail the matrix of culpability and the corresponding arsenal of judicial sanctions. Part III will analyze the distinct but interlocking roles of the defendant, the court, and the plaintiff in the axis of delay. Part IV, the analytical core of this report, will synthesize these elements to construct a cogent argument for causation, demonstrating how a court's failure to

act can be framed as a legally significant factor in the destruction of evidence. Finally, Part V will offer strategic recommendations for litigants facing this challenge, providing proactive measures to mitigate risk and reactive arguments to secure justice when evidence has been lost. The analysis aims to equip judges and litigators to recognize and confront this tripartite threat to the fair administration of justice.

# Part I: The Legal Framework of Spoliation and the Duty to Preserve

To comprehend the complexities introduced by judicial and party delay, one must first master the fundamental legal architecture governing the preservation of evidence. The doctrine of spoliation is not a modern invention but an ancient principle, refined over centuries to safeguard the truth-seeking function of the courts. Its modern application, particularly in the age of electronically stored information (ESI), creates a web of obligations that attach long before a trial begins.

## A. The Common Law and Modern Doctrine of Spoliation

The concept that a party should not benefit from the destruction of evidence is deeply embedded in the common law. Its origins can be traced to Roman law and are encapsulated in the enduring Latin maxim, *Contra Spoliaterem Omnia Praesumuntur*, which means "everything most to his disadvantage is to be presumed against the destroyer". This principle reflects a simple yet profound understanding: the act of destroying evidence implies a "consciousness of a weak case" and suggests the evidence itself was unfavorable to the spoliator.
In contemporary jurisprudence, spoliation is defined as the destruction, significant alteration, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. This definition is broad, encompassing not only deliberate acts of bad faith, such as shredding documents or wiping hard drives, but also inadvertent or careless conduct that rises to the level of negligence. The evidence subject to spoliation can take any form, including physical objects, photographs, paper documents, and, of increasing importance, ESI.
To secure a remedy for spoliation, the moving party must generally satisfy a three-pronged test. While the precise formulation may vary slightly by jurisdiction, the core elements are consistent across federal and state courts. The party seeking sanctions must establish that:

1. **A duty to preserve existed:** The party with possession, custody, or control over the evidence had an obligation to preserve it at the time it was lost or destroyed. This is the threshold inquiry; without a duty, there can be no breach.
2. **The evidence was destroyed with a "culpable state of mind":** The party's failure to preserve the evidence was not innocent. The requisite level of culpability can range from ordinary negligence to gross negligence, recklessness, or intentional bad faith, depending on the jurisdiction and the severity of the sanction sought.
3. **The lost evidence was relevant and its loss caused prejudice:** The destroyed evidence must have been relevant to the moving party's claims or defenses, and its absence must compromise the movant's ability to prove their case. Where destruction is intentional, some courts will presume the evidence was relevant and prejudicial.

This framework ensures that sanctions are not imposed for the innocent loss of irrelevant information but are instead reserved for situations where a party's culpable conduct has

genuinely undermined the adversarial process.

## B. The Trigger and Scope of the Duty to Preserve

The duty to preserve evidence is a cornerstone of modern litigation, yet its trigger point is often a subject of dispute. A common misconception is that the duty only arises upon receipt of a formal discovery request or a court order. The law, however, is clear that the obligation can attach much earlier.

The prevailing standard in most U.S. jurisdictions is that the duty to preserve is triggered when litigation is "reasonably foreseeable" or "reasonably anticipated". This is a flexible, fact-specific standard that looks beyond the formal filing of a complaint. A party is deemed to anticipate litigation when it knows, or should have known, that certain evidence may be relevant to a future legal dispute. Several events can trigger this duty, including, but not limited to:
- Receipt of a demand letter or a notice of a specific claim.
- Issuance of a pre-litigation preservation letter from opposing counsel.
- The occurrence of an event that would obviously lead to litigation, such as a catastrophic failure or serious personal injury.
- A history of similar lawsuits concerning a particular product or practice, which puts a party on notice of potential future claims.

This "reasonably foreseeable" standard is critical because it establishes a duty that exists independently of any court intervention. A defendant who receives a detailed letter outlining a potential claim and identifying relevant categories of evidence cannot later claim ignorance or that its duty to preserve had not yet begun. This pre-litigation obligation is foundational to preventing parties from preemptively destroying damaging evidence before a lawsuit can be filed.

Once this duty attaches, a party is expected to take affirmative steps to ensure the preservation of all potentially relevant information. The most critical step is the implementation of a "litigation hold". This involves suspending routine document retention and destruction policies—such as automatic email deletion or the periodic overwriting of backup tapes—and communicating the preservation obligation to all key employees, IT personnel, and any third-party data vendors. The failure to institute a litigation hold is a primary factor courts consider when assessing a party's culpability for spoliation. While not always dispositive, it is often viewed as strong evidence of at least negligence, and in some circumstances, gross negligence.

The scope of the duty extends to all forms of evidence, with ESI presenting unique challenges due to its volume, volatility, and the automated processes that can lead to its destruction. Recognizing these challenges, the Federal Rules of Civil Procedure were amended to include Rule 37(e), which creates a specific, uniform framework for addressing the loss of ESI. This rule applies only when ESI "that should have been preserved...is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced". For the spoliation of tangible evidence, or for situations not covered by Rule 37(e), federal courts rely on their inherent authority to manage their proceedings and sanction misconduct. This dual authority ensures that courts have the tools to address any form of evidence destruction that threatens the integrity of the litigation process. The establishment of a pre-litigation duty is a crucial element in the context of subsequent judicial delay. When a plaintiff later files a motion for a preservation order and a court fails to rule promptly, the plaintiff can powerfully argue that the court's inaction is not creating a new duty, but rather is allowing a pre-existing and already-breached duty to go unremedied, thereby exacerbating the harm. The defendant cannot credibly argue that it was waiting for a court order to begin preserving evidence when its duty

attached the moment it could have reasonably anticipated the lawsuit.

# Part II: The Culpability Matrix and the Arsenal of Sanctions

Once a court determines that a party has breached its duty to preserve evidence, the focus shifts to two critical questions: the spoliator's state of mind and the appropriate remedy. Courts do not treat all acts of spoliation equally. The judicial response is carefully calibrated, weighing the degree of the spoliator's fault against the level of prejudice suffered by the innocent party. This creates a culpability matrix where sanctions range from mild, curative measures for negligent acts to case-dispositive "terminating sanctions" for intentional, bad-faith destruction.

## A. Establishing the Spoliator's State of Mind

The determination of a spoliator's "culpable state of mind" is a fact-intensive inquiry that drives the severity of the potential sanction. Courts generally recognize a spectrum of culpability:

- **Ordinary Negligence:** This is the lowest level of fault and often serves as the threshold for imposing any sanction. Negligence can be found where a party fails to take reasonable steps to preserve evidence, such as failing to implement a litigation hold after the duty to preserve has been triggered. In the seminal *Zubulake* cases, the Southern District of New York established that ordinary negligence can suffice for a spoliation finding. When destruction is deemed merely negligent, the moving party often retains the burden of proving that the lost evidence was relevant and that its loss caused prejudice.
- **Gross Negligence and Willful Blindness:** This standard involves a more profound and reckless disregard for preservation obligations. A party's failure to institute any preservation measures in the face of a clear and known duty can be characterized as gross negligence. For example, continuing to allow the automatic destruction of data after receiving a specific preservation letter and being put on notice of a lawsuit may elevate conduct from simple to gross negligence. A finding of gross negligence often carries significant consequences, as it may give rise to a rebuttable presumption that the lost evidence was relevant and unfavorable to the spoliator, thereby shifting the burden of proof. The Texas Supreme Court has also embraced the concept of "willful blindness"—a party's deliberate choice to remain ignorant of its preservation duties—as sufficient to satisfy the intent requirement for severe sanctions.
- **Bad Faith and Intent to Deprive:** This represents the zenith of culpability and involves the deliberate, intentional destruction of evidence for the purpose of hiding it from an adversary. Under Federal Rule of Civil Procedure 37(e)(2), a specific finding that the spoliator "acted with the intent to deprive another party of the information's use in the litigation" is a prerequisite for the harshest sanctions related to ESI loss, such as a mandatory adverse inference instruction or a default judgment. Bad faith does not require direct evidence, like a "smoking gun" email ordering the destruction of files. It can, and often is, inferred from circumstantial evidence. For instance, in *QueTel Corporation v. Abbas*, the court inferred bad faith from the defendants' pattern of conduct, which included destroying a computer shortly after receiving a preservation letter, lying about its existence, and deleting thousands of files just days before a scheduled forensic examination.

## B. The Arsenal of Sanctions

Courts possess broad discretion to fashion a remedy that is proportionate to the spoliation that has occurred. The goal is not only to punish the spoliator and deter future misconduct but also to cure the prejudice to the innocent party and restore balance to the litigation. The judicial "arsenal" includes a range of sanctions that can be deployed as the circumstances warrant:

- **Curative and Monetary Sanctions:** For less severe instances of spoliation, particularly those arising from negligence, courts may order measures "no greater than necessary to cure the prejudice". This can include allowing additional discovery or ordering the spoliating party to pay the reasonable attorney's fees and costs incurred by the opposing party in bringing the spoliation motion. This is a common remedy that compensates the innocent party for the resources expended to address the discovery abuse.
- **The Adverse Inference Instruction:** This is one of the most frequently imposed and potent sanctions. The court issues an instruction to the jury informing them that evidence was lost or destroyed by one of the parties. The instruction can be either **permissive**, allowing the jury to infer that the lost evidence would have been unfavorable to the spoliator, or **mandatory**, requiring the jury to presume the evidence was unfavorable. Even the potential for an adverse inference can be devastating, as it frames the spoliating party as having a "guilty conscience" and something to hide. Many practitioners consider it "game over" for the offending party's case.
- **Evidentiary and Issue Preclusion:** A court may go further than an adverse inference and directly impact the evidence presented at trial. It can issue an order barring the spoliator from introducing evidence related to the lost information or, more severely, precluding the party from maintaining a particular claim or defense that relied on the destroyed evidence. This sanction directly prevents the spoliator from benefiting from their misconduct.
- **Terminating Sanctions:** These are the "death penalty" of discovery sanctions and are reserved for the most egregious circumstances. They include the dismissal of a plaintiff's lawsuit or the entry of a default judgment against a defendant. Because these sanctions adjudicate a case on grounds other than the merits, they are imposed only when a party has acted in bad faith or with willful intent, and the resulting destruction of evidence has caused such severe prejudice that no lesser sanction can cure the harm. In *QueTel*, the court upheld a default judgment precisely because the defendants' bad-faith destruction "effectively deprived the Plaintiff of its ability to pursue its claims".

The availability and severity of these sanctions vary significantly across jurisdictions, making a litigant's choice of forum a critical strategic decision. The following table provides a comparative analysis of spoliation remedies in several key U.S. jurisdictions. This consolidation of disparate legal standards offers a practical tool for assessing the legal landscape and tailoring litigation strategy accordingly. A litigator armed with this knowledge can better anticipate how a court will react to spoliation and frame their arguments to align with the controlling standards of the jurisdiction, whether it be the negligence-based approach of New York or the intent-focused framework of Texas.

| Jurisdiction | Independent Spoliation Tort Recognized? | Culpability for Adverse Inference | Standard for Terminating Sanctions | Key Case Law / Statutory Authority |
|---|---|---|---|---|
| **Federal (FRCP)** | No federal tort; | **ESI:** Intent to | **ESI:** Intent to | Federal Rule of |

| Jurisdiction | Independent Spoliation Tort Recognized? | Culpability for Adverse Inference | Standard for Terminating Sanctions | Key Case Law / Statutory Authority |
|---|---|---|---|---|
|  | may hear state tort claims in diversity jurisdiction. | deprive required for mandatory/presumptive inference under FRCP 37(e)(2). **Non-ESI:** Varies by Circuit; some require bad faith, others allow for gross negligence/willfulness. | deprive under FRCP 37(e)(2). **Non-ESI:** Egregious fault (bad faith/willfulness) and severe, irreparable prejudice. | Civil Procedure 37(e); *Chambers v. NASCO, Inc.* ; *Silvestri v. General Motors Corp.* |
| **Federal (2nd Cir.)** | Follows federal standard. | Negligence is sufficient for a permissive adverse inference. | Willfulness, bad faith, or gross negligence, coupled with a showing that a lesser sanction would be insufficient. | *Zubulake v. UBS Warburg LLC* ; *Residential Funding Corp. v. DeGeorge Fin. Corp.* |
| **Federal (4th Cir.)** | Follows federal standard. | Willful conduct may suffice for an adverse inference; bad faith not always required for lesser sanctions. | Bad faith or conduct tantamount to bad faith, where no lesser sanction will suffice to remedy the prejudice. | *QueTel Corp. v. Abbas* ; *Silvestri v. General Motors Corp.* |
| **California** | No. Tort claim for spoliation was rejected by the Supreme Court. | Willful suppression of evidence is required for the standard jury instruction (CACI 204). | Intentional destruction of evidence that renders a fair trial impossible. | *Cedars-Sinai Med. Ctr. v. Superior Court* ; *Williams v. Russ* |
| **New York** | No. Remedies are limited to discovery sanctions. | Ordinary negligence is sufficient for sanctions, including a permissive adverse inference. | Drastic remedy reserved for cases where the spoliated evidence is crucial and its loss fatally compromises the opposing party's case. | *Pegasus Aviation I, Inc. v. Varig Logistica S.A.* ; *VOOM HD Holdings LLC v. Echostar Satellite* |
| **Texas** | No. Remedies are limited to | Specific intent to conceal or destroy | Spoliation must have "fatally | *Brookshire Bros., Ltd. v. Aldridge* |

| Jurisdiction | Independent Spoliation Tort Recognized? | Culpability for Adverse Inference | Standard for Terminating Sanctions | Key Case Law / Statutory Authority |
|---|---|---|---|---|
|  | sanctions, primarily jury instructions. | evidence; OR negligent destruction that renders the spoliator unable to prove the evidence was not material. | crippled the moving party's ability to present a claim or defense". |  |
| **Florida** | No independent cause of action for first-party spoliation. May exist for third-party spoliation. | Intentional spoliation gives rise to a permissive adverse inference. Negligent spoliation creates a rebuttable presumption of negligence on the merits of the underlying case. | Reserved for the most egregious circumstances of willful destruction. | *Martino v. Wal-Mart Stores, Inc.* |
| **Illinois** | No independent tort, but spoliation can be pursued as a claim for negligence if duty, breach, and damages can be proven. | Sanctions are discretionary based on a multi-factor test, including the good faith of the parties and the prejudice caused. | Dismissal is a possible sanction for willful violations but is often reversed on appeal as being too harsh. | *Shimanovsky v. General Motors Corp.* ; Ill. Sup. Ct. Rule 219(c) |

## Part III: The Axis of Delay: The Roles of the Defendant, the Court, and the Plaintiff

The destruction of evidence rarely occurs in a vacuum. In the specific scenario under examination, spoliation is not the result of a single, isolated act but rather the culmination of a dynamic interplay between party strategy and judicial process. Understanding this "axis of delay" requires a separate analysis of the roles and responsibilities of the defendant employing dilatory tactics, the court charged with managing the litigation, and the plaintiff burdened with prosecuting their claim diligently.

### A. The Defendant's Playbook: Litigation Delay as a Weapon

While some delays in litigation are unavoidable, deliberate and strategic delay employed by a party is a recognized abuse of the judicial process. Such tactics are not merely procedural gamesmanship; they are designed to frustrate the course of justice, escalate costs for the opposing party, and, most relevant to this analysis, create opportunities for evidence to degrade,

be lost, or be destroyed. Courts possess the inherent authority, as well as authority under procedural rules, to sanction parties for engaging in such conduct.
The playbook for dilatory tactics can include a range of behaviors:
- **Failing to comply with court orders and deadlines:** This includes ignoring scheduling orders or refusing to produce discovery in a timely manner.
- **Filing frivolous or repetitive motions:** A party may file motions with little legal basis for the primary purpose of stalling proceedings and forcing the opponent to expend resources.
- **Refusing to cooperate in the discovery process:** This can manifest as a failure to participate in preparing case management protocols, refusing to attend conferences, or providing evasive and incomplete discovery responses.

In *Hotel Ruby Foo's inc. c. 9149-0417 Québec inc.*, a court strongly condemned a defendant's series of dilatory schemes—which included failing to cooperate in case management, filing dubious applications for extensions, and ultimately admitting to having no defense on the eve of trial—as being "detrimental to the proper administration of justice". As a sanction, the court ordered the defendant to pay 100% of the plaintiff's lawyers' fees. Similarly, in the federal case of *Daniels v. City of Indianapolis*, the court awarded attorney's fees to the plaintiff after finding that the defendants had "needlessly and continuously engaged in dilatory tactics" that delayed discovery and wasted the plaintiff's time and resources.

When a defendant engages in this pattern of behavior, it puts the court on notice that the party is not acting in good faith. This context is critical when evaluating subsequent spoliation. The delay is not an isolated event; it is part of a broader strategy to obstruct the litigation. This allows a plaintiff to argue that any destruction of evidence during this period of delay was not accidental or merely negligent, but was instead a foreseeable and intended consequence of the defendant's overarching strategy to thwart the plaintiff's case by any means necessary.

## B. The Court's Mandate: Active Judicial Case Management

The modern judicial role has evolved significantly from that of a passive umpire who intervenes only when called upon by the parties. Beginning with the landmark 1983 amendments to Federal Rule of Civil Procedure 16, and continuing through subsequent reforms like the Civil Justice Reform Act of 1990, the judiciary has embraced the concept of active case management. The explicit purpose of this "managerial judging" is to secure the "just, speedy, and inexpensive determination of every action".

This mandate is not merely aspirational; it is embedded in the rules of procedure. Judges are expected to take control of their cases from the outset, issuing scheduling orders, limiting disproportionate discovery, and actively managing the litigation timeline to prevent undue cost and delay. This duty is particularly acute in the face of dilatory conduct by one party. The court's role is to ensure that all parties proceed on an equal footing and to prevent the misuse of the legal system.

While judges enjoy broad discretion and immunity in their decision-making, the concept of "judicial negligence" in this context does not refer to the substance of a ruling but to the *failure to rule at all*. When a party files a time-sensitive motion—such as a motion for a preservation order to halt the imminent destruction of evidence—a court's prolonged inaction can have devastating consequences. A persistent failure to manage the docket and decide motions that, by their nature, require prompt attention can be framed as a failure to perform a core judicial function under the modern rules of civil procedure. This inaction allows prejudice to fester and can directly enable a defendant's strategy of delay and destruction. The average disposition time for

cases involving spoliation motions is already significantly longer than for civil cases in general—approximately 1.8 years (649 days)—highlighting that these disputes inherently prolong litigation. Judicial inaction on top of this already lengthy timeline can be catastrophic for the aggrieved party.

### C. The Untimely Motion: A Double-Edged Sword for the Plaintiff

The legal system places a corresponding burden of diligence on the party seeking relief. A plaintiff who discovers potential spoliation cannot sit on their rights indefinitely. Courts have made it clear that spoliation motions themselves have an expiration date, and a party that delays unreasonably in seeking sanctions risks having their motion denied as untimely.
The case of *Goodman v. Praxair Servs., Inc.* provides a key framework for this analysis, establishing several factors a court should consider when assessing the timeliness of a spoliation motion:

1. The length of the delay in bringing the motion.
2. The reasons for the delay.
3. The significance of the lost evidence.
4. The prejudice to the non-moving party caused by the delay in seeking sanctions.
5. Whether the motion should have been filed before the close of discovery or the filing of summary judgment motions.

This principle was starkly illustrated in *CSX Transportation, Inc. v. Spiniello Global, Inc.*. In that case, the defendants moved for spoliation sanctions well after the close of discovery, some eighteen months after they first became aware of the potential evidence loss. The court denied the motion, in part, because its untimeliness made it difficult to conduct the necessary factual inquiry into what ESI had existed and whether the plaintiff's preservation efforts were reasonable. The court emphasized the lesson from *Goodman*: spoliation motions must "be filed as soon as reasonably possible after discovery of the facts that underlie" them. This creates a clear imperative for plaintiffs to act swiftly when they suspect evidence has been lost.
This diligence requirement, however, gives rise to a potential paradox when intersected with judicial delay. A plaintiff may act with perfect diligence by promptly filing a motion for a preservation order upon learning that evidence is at risk. If the court then fails to rule on that motion for an extended period, during which the evidence is destroyed, the plaintiff is placed in a precarious position. The defendant, having benefited from the court's delay, might later argue that the plaintiff's subsequent motion for sanctions is "untimely" because it was filed long after the initial preservation issue arose. This creates a scenario where the court's own failure to act on a timely motion provides the wrongdoing defendant with a procedural defense against the diligent plaintiff. To counter this, a plaintiff must meticulously document their efforts to secure a ruling, demonstrating that their diligence was thwarted not by their own inaction, but by the inaction of the very institution from which they sought protection.

## Part IV: Synthesizing the Elements: Proving Causation in Cases of Judicial Inaction

The central challenge for a litigant harmed by the triad of defendant delay, judicial inaction, and evidence destruction is to forge a causal link between these elements that is strong enough to warrant sanctions against the defendant. While the legal framework places the primary duty to preserve on the litigant, a compelling argument can be made that a court's failure to act on a

timely preservation motion is a legally significant factor that enables and exacerbates the spoliation, and that this factor should weigh heavily in the court's ultimate determination of culpability and sanctions.

## A. The Evidentiary Void: The Challenge of Finding Direct Precedent

An exhaustive review of federal and state jurisprudence reveals a notable absence of case law directly on point. There appears to be no established line of cases where a court has explicitly held that its own failure to timely rule on a motion was the proximate cause of spoliation for which a defendant was then sanctioned. The reasons for this "evidentiary void" are manifold. First, the doctrine of judicial immunity provides broad protection to judges for their official acts, making direct claims of "judicial negligence" exceptionally difficult to pursue. Second, the legal system has a strong institutional bias toward placing the duty to preserve squarely and non-delegably on the shoulders of the litigants themselves. The duty exists independent of a court order, and thus, courts are reluctant to allow a party to shift blame for its own failure to preserve onto the judiciary. Finally, proving that a court's delay *caused* a defendant to destroy evidence—as opposed to the defendant simply acting on its own volition—presents a formidable evidentiary hurdle.
However, the absence of a direct precedent is not an insurmountable barrier. It simply means that the argument must be constructed from foundational principles and analogous case law, synthesizing the doctrines of spoliation, abuse of process, and judicial case management into a cohesive and persuasive narrative.

## B. Constructing the Argument: Linking Judicial Duty to Evidentiary Harm

The argument for holding a defendant accountable for spoliation that occurs during a period of judicial delay rests on a "but-for" theory of causation, fortified by principles of foreseeability and the defendant's own pattern of misconduct. The argument proceeds as follows: "But for the court's unreasonable delay in ruling on the plaintiff's timely and urgent motion for a preservation order, the defendant would not have had the unfettered opportunity to destroy the evidence in question."
A key tactic in this argument is to weaponize the defendant's likely defense: that the evidence was destroyed pursuant to a routine, automated document retention policy. For example, in *CSX Transportation*, the defendant argued that the relevant SCADA data was overwritten after 30 days in the normal course of business. A plaintiff facing judicial delay can turn this defense on its head. The argument becomes: the very purpose of our timely motion for a preservation order was to force the defendant to suspend that routine policy. The court's delay was the direct cause of that policy remaining in effect, allowing the defendant to accomplish through "negligent" inaction what it could not have done overtly without risking severe sanctions for bad faith. The court's delay, therefore, provided the defendant with a shield, allowing it to claim mere negligence when its failure to suspend its destruction policy in the face of a pending motion was, in fact, an act of willful blindness.
This argument is strengthened when the defendant has already exhibited a pattern of dilatory tactics. In such a case, the plaintiff can argue that it was *foreseeable* to the court that any further delay on its part would be exploited by the bad-faith defendant. The court's failure to act in the face of this foreseeable risk of prejudice is not a neutral act; it is a failure of its case

management duty that emboldens the defendant and contributes to the eventual harm. Furthermore, any attempt by the defendant to argue that the plaintiff "waived" their right to the evidence due to the passage of time can be rebutted using the logic from cases like *Ferrara v. Casa*, where a New York court rejected the notion that a party may discard relevant evidence during litigation simply because the opposing counsel has not yet requested it. The court in *Ferrara* refused to accept that the plaintiff's delay in making a specific request gave the defendant a license to destroy. This principle can be powerfully extended: if a plaintiff's delay does not excuse spoliation, then surely a court's delay—a delay beyond the plaintiff's control—cannot grant the defendant a license to spoliate, especially when the plaintiff has been diligently seeking a court order to prevent that very outcome.

A sophisticated defendant might counter-argue that the court's own delay constitutes an intervening, superseding cause that breaks the chain of causation from its own misconduct. The defendant's position would be that while it may have breached its initial duty to preserve, the substantial harm occurred during the period of judicial inaction, for which the defendant is not responsible. The effective rebuttal to this is to frame the court's delay not as an *intervening* cause, but as a *concurrent* one. The defendant's duty to preserve is primary, non-delegable, and continuous from the moment litigation is anticipated. The court's delay does not absolve the defendant of this ongoing duty; it merely creates an environment where the defendant's continuing breach of that duty can lead to a more catastrophic result. The fault remains with the defendant for failing to uphold its independent obligation.

## C. Case Studies in Spoliation: Re-framing the Narrative

Analyzing existing spoliation cases through the lens of hypothetical judicial delay illustrates how this argument could be deployed in practice.

- **QueTel Corporation v. Abbas**: In this case, the defendants engaged in a clear pattern of bad-faith spoliation, destroying a computer and thousands of files *after* receiving a preservation letter. The court ultimately entered a default judgment. Now, let us re-frame the facts with judicial delay. Imagine that after the plaintiff discovered the destruction of the first computer, it immediately filed an emergency motion for a temporary restraining order and an order compelling immediate forensic imaging of all remaining devices. If the trial court had then sat on that motion for six months, during which the defendants proceeded to delete the "thousands" of additional files, the plaintiff's argument for sanctions would be magnified. The plaintiff could argue: "We alerted the court to the defendant's bad-faith conduct and the imminent risk to the remaining evidence. The court's failure to act on our emergency motion was a direct, but-for cause of the subsequent, and far more prejudicial, spoliation. This expanded prejudice, enabled by judicial inaction, makes the ultimate sanction of default judgment not only appropriate but necessary."
- **Pegasus Aviation I, Inc. v. Varig Logistica S.A.**: Here, the defendants' failure to implement a litigation hold was deemed negligent by the appellate court, which remanded the case for a determination of relevance and an appropriate sanction. Let us introduce judicial delay. Suppose Pegasus filed a motion for a preservation order at the outset of the litigation, specifically citing the need for the defendants to suspend their routine data management policies. If the court failed to rule on that motion for over a year, during which time the relevant ESI was overwritten, Pegasus could argue that the defendants' conduct transcended mere negligence. The argument would be that continuing to operate without a litigation hold for over a year *while a motion to compel such a hold was pending*

*before the court* constitutes willful blindness and gross negligence. The defendant cannot claim it simply forgot or was careless when the plaintiff and the court's own docket were constant reminders of its preservation duty. The judicial delay transforms the character of the defendant's inaction from a passive oversight into an active, reckless choice to allow evidence to disappear.

These re-framed narratives demonstrate that while judicial delay may not create an independent cause of action, it can be a powerful factual component in a motion for spoliation sanctions. It can be used to elevate the defendant's perceived culpability, counter defenses of waiver or negligence, and justify the imposition of harsher sanctions.

## Part V: Strategic Recommendations and Conclusion

The intersection of defendant delay and judicial inaction creates a perilous legal environment where critical evidence can be lost, potentially eviscerating a meritorious claim or defense. Navigating this procedural minefield requires a combination of proactive strategy, relentless diligence, and sophisticated legal argument. The following recommendations are designed to equip litigants to mitigate these risks and to seek effective remedies when harm has already occurred.

### A. For the Litigant: Proactive Strategies to Mitigate Risk

A party that anticipates or finds itself in this situation cannot afford to be passive. The key to prevailing is to build an unimpeachable record of one's own diligence while simultaneously highlighting the misconduct of the defendant and, respectfully, the inaction of the court.

- **Front-Load Preservation Efforts:** The first step must occur long before a motion is ever filed. As soon as litigation is reasonably foreseeable, counsel should send a detailed and specific preservation letter to the opposing party. This letter should not be a boilerplate notice; it should identify specific categories of documents, ESI, and tangible evidence relevant to the anticipated claims and explicitly demand the suspension of any routine destruction policies. This act establishes the trigger point for the defendant's duty to preserve and removes any defense of ignorance.
- **File Motions Promptly and Build a Clear Record:** If the opposing party is unresponsive to the preservation letter or engages in any dilatory tactics, counsel must act immediately. Do not let discovery disputes linger. Promptly file a motion to compel and/or a motion for a specific preservation order. If the court fails to rule on this motion in a timely manner, the litigant must continue to build the record. This can be done by filing periodic status reports or letters with the court that (1) reiterate the urgency of the motion, (2) detail any new evidence of the defendant's non-compliance or delay, and (3) explain the ongoing and irreparable harm being caused by the court's inaction. This creates a paper trail that demonstrates the plaintiff's diligence and puts the court on notice of the consequences of its delay.
- **Frame the Motion to Emphasize Urgency and Foreseeable Harm:** The initial motion for a preservation order must be drafted to command the court's immediate attention. It should go beyond simply requesting preservation and explain precisely *why* a delay in ruling will lead to the permanent loss of evidence. For example, the motion should cite any known data retention policies of the defendant (e.g., a 30-day overwrite policy for emails or surveillance video) and argue that every day of delay risks the irretrievable loss

    of crucial information.
- **Consider the "Nuclear Option": A Writ of Mandamus:** In the most extreme and egregious cases—where a court's prolonged and unexplained delay on a critical preservation motion threatens to completely destroy a party's ability to pursue its case—counsel may need to consider petitioning a higher court for a writ of mandamus. This is an extraordinary remedy that asks the appellate court to compel the trial judge to perform their duty and rule on the pending motion. While it is a drastic step that carries risks to the relationship with the trial court, it may be the only available option to prevent catastrophic and irreversible prejudice.

## B. Conclusion: Upholding the Integrity of the Judicial Process

The fair administration of justice depends on a delicate balance of duties and responsibilities. Litigants have a duty to preserve evidence and prosecute their cases in good faith. Courts have a duty to actively manage their dockets to ensure a just and speedy resolution. The destructive triad of a defendant's strategic delay, a court's passive case management, and the resulting spoliation of evidence represents a breakdown of this balance. It is a dynamic that weaponizes procedural delay and exploits systemic weaknesses, posing a grave threat to the truth-seeking function that is the bedrock of our legal system.

This analysis demonstrates that while direct precedent may be scarce, the principles needed to combat this problem are well-established in the law. By synthesizing the doctrines of spoliation, abuse of process, and judicial case management, a diligent advocate can construct a powerful argument for sanctions. Such an argument frames the defendant's conduct not as a series of isolated failures but as a calculated strategy of obstruction, and the court's inaction not as a neutral background event but as an enabling factor that exacerbates the harm.

Ultimately, preventing this form of injustice requires vigilance from both the bar and the bench. Advocates must be relentless in their preservation efforts, prompt in seeking judicial intervention, and courageous in building a record that clearly delineates where the fault for lost evidence lies. For their part, judges must fully embrace their modern role as active case managers, recognizing that the failure to rule on a time-sensitive motion is not a passive act but one with profound and often irreversible consequences. Only through such shared commitment to procedural integrity can the courts ensure that the scales of justice are not tipped by the deliberate destruction of truth.

### Works cited

1. Sanctions and spoliation | Illinois State Bar Association, https://www.isba.org/sections/civilpractice/newsletter/2011/08/sanctionsandspoliation 2. The Duty to Preserve Evidence - American Bar Association, https://www.americanbar.org/content/dam/aba-cms-dotorg/products/inv/book/214612/Chapter%201.pdf 3. Spoliation of Evidence: Ethical and Legal Ramifications, https://www.sfbar.org/blog/spoliation-of-evidence-ethical-and-legal-ramifications/ 4. (NO "LITIGATION HOLD") + SPOLIATION = SANCTIONS - SGR Law, https://www.sgrlaw.com/articles/no-litigation-hold-spoliation-sanctions/ 5. Destroying Relevant Evidence Can Be Catastrophic in Litigation, https://www.smithlaw.com/newsroom/publications/Lessons-Learned-Destroying-Relevant-Evidence-Can-Be-Catastrophic-in-Litigation 6. In-depth Examination of the Law Regarding Spoliation in State and ..., https://www.aaml.org/wp-content/uploads/MAT102_2.pdf 7. How Spoliation of

Evidence Impacts Litigation - Jones Kelleher LLP Attorneys at Law, https://joneskell.com/how-spoliation-of-evidence-impacts-litigation/ 8. SPOLIATION OF EVIDENCE SUMMARY (00018724).DOC - mwl-law.com, https://www.mwl-law.com/wp-content/uploads/2018/02/SPOLIATION-OF-EVIDENCE-CHART.pdf 9. Legal Repercussions of Evidence Destruction in Civil Litigation, https://wadelitigation.com/legal-repercussions-of-evidence-destruction-in-civil-litigation/ 10. Amended Rule 37(e): What's New and What's Next in Spoliation? | Judicature, https://judicature.duke.edu/articles/amended-rule-37e-whats-new-and-whats-next-in-spoliation/ 11. Understanding Evidence Spoliation and Tips to Avoid It - USLAW, https://www.uslaw.org/pdf-resources/understanding-evidence-spoliation-and-tips-to-avoid-it/ 12. Spoliation - destroying evidence - in the Fourth Circuit - Thomas H. Roberts & Associates, PC, https://robertslaw.org/spoliation-destroying-evidence-in-the-fourth-circuit/ 13. Spoliation Of Evidence, Even If Done In The Normal Course Of Business, Is Sanctionable, https://fhnylaw.com/spoliation-evidence-even-done-normal-course-business-sanctionable/ 14. Spoliation of Evidence: Will the New Millennium See a Further Expansion of Sanctions for the Improper Destruction of Evidence?, https://open.mitchellhamline.edu/cgi/viewcontent.cgi?referer=&httpsredir=1&article=1731&context=wmlr 15. The evidence is gone…now what? - Plaintiff Magazine, https://plaintiffmagazine.com/recent-issues/item/the-evidence-is-gone-now-what 16. Litigation Pitfalls: Failure To Preserve Evidence In Your"Control.", https://www.deflaw.com/insights/litigation-pitfalls-failure-to-preserve-evidence-in-yourcontrol/ 17. Motions for Sanctions Based Upon Spoliation of Evidence in Civil Cases, https://www.uscourts.gov/file/federaljudicialcenterpdf 18. Preservation and Spoliation Revisited: Is it Time for Additional Rulemaking? - United States Courts, https://www.uscourts.gov/file/3476/download 19. The Preservation Obligation: Regulating and Sanctioning Pre-Litigation Spoliation in Federal Court - Washington and Lee University School of Law Scholarly Commons, https://scholarlycommons.law.wlu.edu/cgi/viewcontent.cgi?referer=&httpsredir=1&article=1050&context=wlufac 20. Brookshire Brothers v. Aldridge: Making the Spoliation Instruction a Litigation Unicorn - Texas A&M Law Scholarship, https://scholarship.law.tamu.edu/cgi/viewcontent.cgi?article=1076&context=lawreview 21. Malice/gross negligence - PMC, https://pmc.ncbi.nlm.nih.gov/articles/PMC1618741/ 22. Destroying or Withholding of Evidence May Harm Your Case, Even if You Aren't Officially Sanctioned - Fox Rothschild LLP, https://www.foxrothschild.com/publications/destroying-or-withholding-of-evidence-may-harm-your-case-even-if-you-arent-officially-sanctioned 23. When Stalled Litigation is an Abuse of the Proper Process of the Court - LEXLAW Solicitors & Barristers, https://lexlaw.co.uk/solicitors-london/when-stalled-litigation-is-an-abuse-of-the-proper-process-of-the-court/ 24. Case Law: Daynight, LLC v. Mobilight, Inc - KLDiscovery, https://www.kldiscovery.com/blog/daynight-llc-v-mobilight-inc 25. Dilatory or Frivolous: Two Recent Cases Address Appellate Court Sanctions | Perspectives, https://www.reedsmith.com/en/perspectives/2001/10/dilatory-or-frivolous--two-recent-cases-address-ap 26. A new tool to defeat dilatory tactics in judicial proceedings - Robinson Sheppard Shapiro, https://www.rsslex.com/en/bulletins/20170602_a-new-tool-to-defeat-dilatory-tactics-in-judicial-proceedings/ 27. Motion for Attorney Fees Granted Over Defendants' Dilatory Tactics: eDiscovery Case Law, https://ediscoverytoday.com/2022/01/04/motion-for-attorney-fees-granted-over-defendants-dilato

ry-tactics-ediscovery-case-law/ 28. Judicial Case Management: Caught in the Crossfire - Duke Law Scholarship Repository, https://scholarship.law.duke.edu/cgi/viewcontent.cgi?referer=&httpsredir=1&article=1484&context=dlj 29. Judicial Case Management: Caught in the Crossfire - Duke Law ..., https://scholarship.law.duke.edu/cgi/viewcontent.cgi?article=1484&context=dlj 30. Unjustified Delay Renders Spoliation Motion Spoiled Rotten - American Bar Association, https://www.americanbar.org/groups/litigation/resources/litigation-news/2024/unjustified-delay-renders-spoliation-motion-spoiled-rotten/ 31. Timing Spoliation Motions in Litigation: Key Considerations - The National Law Review, https://natlawreview.com/article/know-your-judge-considerations-when-file-spoliation-motion