UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JUSTIN RIDDLE, | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | CIVIL NO. A-25-CV-00073-ADA |
| X CORP., | § | |
| **Defendant.** | § | |

ORDER GRANTING-IN-PART AND
DENYING-IN-PART DEFENDANT'S MOTION TO DISMISS

Before the Court is Defendant X Corp.'s Motion to Dismiss Plaintiff Justin Riddle's First

Amended Complaint (the "Motion"). ECF No. 29. Having carefully considered the parties'

briefing, the relevant pleadings, and the applicable law, the Court **GRANTS-IN-PART and**

**DENIES-IN-PART** X Corp.'s Motion to Dismiss.

## I.     BACKGROUND

On January 13, 2025, Plaintiff Justin Riddle, proceeding *pro se*, filed this action against

Defendant X Corp. for claims arising from his experiences using the social media platform

Twitter.[1] ECF No. 1. X Corp. timely moved to dismiss Plaintiff's original complaint on March 5,

2025. ECF No. 14. Plaintiff then filed an amended complaint (the "First Amended Complaint" or

"FAC") on March 13, 2025, which is the operative complaint at the time of this order. *See* ECF

No. 22.[2] The FAC alleges that Plaintiff has a Twitter account for which he pays for premium

services. *Id.* at ¶¶ 14–16. It further alleges that in December 2023, unknown third parties (the

---

[1]  Though "Twitter" has been rebranded to "X," the parties continue to use "Twitter," so the Court does as well.

[2] The FAC (ECF No. 22) incorporates ¶¶ 21–39 of the original complaint (ECF No. 3) by reference. ECF No. 22 at ¶ 9. The Court cites the original complaint as necessary.

"Third-Party Does") created accounts on Twitter using Plaintiff's "name, images, and personal background" to impersonate him. ECF No. 3 at ¶ 22. The Third-Party Does allegedly used a personal photograph of him and his wife (the "Photograph") as the profile picture for their accounts. *Id.* at ¶¶ 21–22. Plaintiff claims to have a registered copyright in the Photograph. *Id.* at ¶ 21. He alleges that between December 2023 and May 2024, he sent X. Corp. four DMCA takedown notices about the Third-Party Does' alleged use of the Photograph to impersonate him, but that X Corp. did not take any remedial steps. *Id.* at ¶¶ 23–26.

Plaintiff also alleges that from February to July 2024, X Corp. suspended his premium account features after one of his posts was reported for violating X Corp.'s rules. *Id.* at ¶¶ 26, 29–30. According to Plaintiff, X Corp. continued to charge him for services he could not use during this time. *Id.* at ¶¶ 29–30. Plaintiff further alleges that he was unable to access "cancellation features" due to the suspension, despite requesting help from customer service. *Id.* at ¶ 31. Plaintiff also alleges that in March 2025, X. Corp "added a temporary label to [his] account which may impact its reach," that X Corp. engaged in "algorithmic manipulation" and "manipulated advertising metrics, showing mathematically impossible contradictions and rendering promoted content inaccessible while continuing to charge for promotion." ECF No. 22 at ¶¶ 17–26.

Based on these allegations, Plaintiff asserts claims for (1) copyright infringement, (2) violation of the Digital Millennium Copyright Act (DMCA), (3) wire fraud, (4) violation of the Racketeer Influenced and Corrupt Organizations (RICO) Act, (5) fraudulent billing, (6) negligence, (7) violation of the Texas Deceptive Trade Practices Act (TDTPA), and (8) breach of contract and breach of implied covenant of good faith and fair dealing. *Id.* at ¶¶ 27–74. X Corp.

filed its Motion to Dismiss the FAC on March 27, 2025. ECF No. 29. Plaintiff filed his Response

later the same day (ECF No. 31[3]), to which X Corp. replied on April 3, 2025 (ECF No. 34).

## II.    LEGAL STANDARD

In determining a Rule 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true,

viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*,

495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). While a complaint does not need detailed

factual allegations, it must contain sufficient factual matter that, when assumed to be true, states a

claim that has facial plausibility. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts do not

evaluate the merits of the allegations but only consider whether the plaintiff has adequately pled a

legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370,

376 (5th Cir. 2004). While the pleadings of *pro se* parties are held to a more lenient standard than

lawyers when analyzing complaints, they must still plead factual allegations that raise the right to

relief above the speculative level. *See Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir.

2016).

## III.    MATERIALS CONSIDERED

X Corp. argues that Plaintiff's claims should be dismissed because its Terms of Service

and Purchaser Terms[4] expressly bar his claims. ECF No. 29 at 6–7. Alternatively, X Corp. contends

that Plaintiff's FAC fails to state any plausible claims for relief, which for certain claims focus on

the Terms of Service and Purchaser Terms. *Id.* at 7–20. Thus, as a preliminary matter, the Court

---

[3] After X Corp. filed its reply in support of its Motion to Dismiss, Plaintiff filed what appears to be a sur-reply titled "Plaintiff's Opposition to Defendant's Motion to Dismiss." ECF No. 35. Under this Court's local rules, however, after a party files a reply in support of a motion, "no further submissions on the motion are allowed" without leave of court. W.D. Tex. Loc. R. CV-7(e)(1). Plaintiff's filing at ECF No. 35 violates this Court's local rules, and the Court does not consider it in resolving the instant Motion to Dismiss.

[4] X Corp. submitted the relevant version of X Corp.'s Terms of Service and Purchaser Terms of Service concurrently with its Motion to Dismiss, which are attached as an exhibit at ECF No. 30-1.

first addresses whether it may properly consider the Terms of Service and Purchaser Terms at this stage in the litigation.

X Corp. requests that the Court take judicial notice of the relevant Terms of Service and Purchaser Terms, or in the alternative, pursuant to the doctrine of incorporation-by-reference. ECF No. 30. Plaintiff asks the Court to strike the Terms of Service and Purchaser Terms under Federal Rule of Civil Procedure 12(f) as immaterial and redundant. ECF No. 31 at 10. Having reviewed the operative complaint, the Court finds that it may consider X Corp.'s Terms of Service and Purchaser Terms under the incorporation-by-reference doctrine because they are central to Plaintiff's claims and referenced in his FAC (*see, e.g.,* ECF No. 22 at ¶¶ 11, 29–31, 69–74). *See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (stating that at the motion-to-dismiss stage, a court may consider "any documents attached to the complaint and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint"). Because the Court considers the Terms of Service and Purchaser Terms under the incorporation-by-reference doctrine, it need not consider whether judicial notice is appropriate.

Accordingly, the Court **GRANTS** X Corp.'s Request for Judicial Notice In Support of Its Motion To Dismiss, or in the alternative, pursuant to the doctrine of incorporation-by-reference. ECF No. 30.

## IV.    DISCUSSION

### A.    Choice of Law

The parties dispute whether California or Texas law applies to Plaintiff's state law claims. X Corp. contends that California law claims apply because the Terms of Service expressly provide that "[t]he laws of the State of California . . . will govern these Terms and any dispute that arises

between you and us [*i.e.*, Plaintiff and X Corp.]" ECF No. 31-1 at 7.[5] Because this choice-of-law provision is broad, X Corp. contends it encompasses Plaintiff's claims sounding in both contracts and torts. *Id.* Plaintiff does not contest that the choice-of-law provision is broad. *See* ECF No. 31 at 7–8. Rather, Plaintiff contends that California law does not apply, arguing that Texas has "a fundamental state interest in regulating deceptive commercial practices occurring at a business's principal place of business within Texas." *Id.* at 8. According to Plaintiff, the choice-of-law provision is unenforceable because it conflicts with Texas public policy. *Id.*

In determining which state's substantive law controls, the court applies the choice-of-law rules of the forum state. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 726 (5th Cir. 2003). Texas courts apply Section 187 of the Restatement (Second) of Conflict of Laws to determine whether a choice of law provision is enforceable. *See In re J.D. Edwards World Sol'ns Co.*, 87 S.W.3d 546, 549 (Tex. 2002). Section 187 provides as follows:

> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
>
> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
> > (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
> >
> > (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement § 187; *see also DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 679 (Tex. 1990).

---

[5] Citations to ECF No. 31-1 utilize the pagination assigned by CM/ECF. All other citations utilize native pagination unless otherwise stated.

Thus, whether a choice-of-law provision is enforceable depends initially on "if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." *Id.*; *see also McKeehan v. McKeehan*, 355 S.W.3d 282, 291 (Tex. App.—Austin 2011, pet. denied). Here, Plaintiff does not argue that the issue is one which the parties could not have resolved by an explicit provision in their agreement. *See* ECF No. 31. Plaintiff's claims are founded on the conduct of the Third-Party Does and issues with the premium services provided by X Corp, both of which are addressed by explicit provisions of X Corp.'s Terms of Service. *See generally* ECF No. 22; *see also* ECF No. 30-1 at 7 (limiting liability for "inability to access or use the services" and "any conduct or content of any third party on the services"). In other words, these issues may be resolved through reference to explicit provisions of X Corp.'s Terms of Service. Accordingly, California law applies to Plaintiff's state law claims.

**B.    X Corp.'s Terms of Service and Purchaser Terms Bar Plaintiff's Claims for Breach of Contract, Breach of Implied Covenants, and Negligence**

X Corp. argues that its limitation of liability clause in the relevant Terms of Service bars Plaintiff's claims against it. X Corp.'s Terms of Service state that X Corp. "shall not be liable for any indirect, incidental, special, consequential[,] or punitive damages . . . resulting from . . . [the user's] access to or use of or inability to access or use the services, including . . . any defamatory, offensive[,] or illegal conduct of other users or third parties." ECF No. 31-1 at 7 (capitalization omitted). This liability limitation "appl[ies] to any theory of liability, whether based on warranty, contract, statute, tort (including negligence) or otherwise." *Id.* (capitalization omitted).

**1.    The parties' arguments**

Plaintiff alleges that Third-Party Does created accounts utilizing the Photograph to impersonate him on Twitter, that X. Corp. suspended his account but continued to charge him for premium services, and that X Corp. is manipulating its advertising metrics and impeding access to

his promoted posts. ECF No. 3 at ¶¶ 21–22; ECF No. 22 at ¶¶ 9, 13–26. Because limitation of liability clauses are generally enforceable, and Plaintiff's claims fall within X Corp.'s limitation of liability clauses, X Corp. argues Plaintiff's claims should be dismissed. ECF No. 29 at 6–7.

In response, Plaintiff argues at a high level that the Terms of Service cannot "immunize a company from federal statutory obligations." *See* ECF No. 31 at 5. The only argument Plaintiff makes with specificity is that "[n]o contractual provision can authorize fraudulent conduct under established California and Texas law." *Id.* at 8 (citing *Civic Ctr. Drive Apartments Ltd. P'ship v. Sw. Bell Video Servs.*, 295 S.W.3d 417, 430 (Tex. App. 2009)[6]). Plaintiff further contends that copyright law supersedes the Terms of Service, citing the Supreme Court's decision in *MGM Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005). *Id.* at 4.

X Corp. replies that Plaintiff has conceded that the Terms of Service and Purchaser Terms bar his claims other than his copyright infringement claim and other claims purportedly based in fraud. ECF No. 34 at 2. X Corp. argues that *Grokster* does not address whether a limitation of liability clause cannot apply to copyright infringement claims and that Plaintiff fails to otherwise establish so. *Id.* X Corp. further argues that the FAC fails to plausibly allege Plaintiff's fraud-based claims such that the limitation of liability clauses bar them. *Id.* (citing *Ryan v. X Corp.*, No. 24-CV-03553-WHO, 2024 WL 5058526, at *5–6 (N.D. Cal. Dec. 9, 2024)).

## 2.    Analysis

The Court agrees with X Corp. that Plaintiff's reliance on *Grokster* is misplaced and that he has not otherwise supported his assertion that the Terms of Service do not bar his copyright infringement claim. However, under § 1668 of the California Civil Code, "a party may not contract

---

[6] The Court is unable to find a Texas appellate court case of the same name using the provided citation. It appears that Plaintiff supplied an incorrect citation and parenthetical quote. Plaintiff may have intended to cite *Civic Ctr. Drive Apartments Ltd. P'ship v. Sw. Bell Video Servs.*, 295 F. Supp. 2d 1091 (N.D. Cal. 2003).

away liability for fraudulent or intentional acts." *Civic Ctr. Drive Apartments Ltd. P'ship v. Sw. Bell Video Servs.*, 295 F. Supp. 2d 1091, 1106 (N.D. Cal. Nov. 19, 2003) (quoting *Blankenheim v. E.F. Hutton & Co.*, 217 Cal. App. 3d 1463, 1471 (1990)). Thus, while "limitation of liability provisions are enforceable against claims for breach of warranty, breach of contract, negligence, and liability for third-party conduct," California law "limit[s] the enforcement of exculpatory provisions that purport to excuse a party from the party's own fraud or misconduct." *Diep v. Apple, Inc.*, No. 22-16514, 2024 WL 1299995, at *2 (9th Cir. Mar. 27, 2024).[7]

Thus, the Court finds that Plaintiff's breach of contract, breach of the implied covenant of good faith and fair dealing, and negligence claims are barred by X Corp.'s Terms of Service and should be dismissed with prejudice. *Id.*; *see also KST Data, Inc. v. DXC Tech.*, No. CV 17-07927 SJO (SK), 2018 WL 5733515, at *3 (C.D. Cal. Apr. 30, 2018) (noting that limitation of liability clauses "may be used at a dismissal stage to reject a party's claims" (quoting *Lewis v. Youtube, LLC*, 244 Cal. App. 4th 118, 125 (2015)); *Darnaa, LLC v. Google Inc.*, 236 F. Supp. 3d 1116, 1123–26 (N.D. Cal. 2017) (dismissing the plaintiff's claim for breach of the implied covenant of good faith and fair dealing based on a limitation of liability clause).

The Court also finds, as discussed further below, that Plaintiff has not plausibly alleged his fraud-based claims such that X Corp.'s limitation of liability clauses would be unenforceable under § 1668. *See Ryan*, 2024 WL 5058526, at *5–9 (dismissing the plaintiff's claims as barred by X Corp.'s Terms of Service because the plaintiff failed to plausibly allege fraud, and "[w]here there

---

[7] The Court is aware that Plaintiff does not specifically cite to this section of California's Civil Code, but the cases cited by X Corp. frequently refer to this statute. The Court is also cognizant of the "special solicitude" afforded to *pro se* litigants. *See Carbajal v. Wells Fargo Bank, N.A.*, No. EP-CV-0083-DCG, 2020 WL 13413199, at *2 (W.D. Tex. May 5, 2020); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[I]f the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.").

are no plausible allegations of fraud [or] intentional tort liability . . . the constraint [§ 1668] is inapplicable").

However, the Court declines at this stage to apply the limitation of liability clauses to Plaintiff's copyright infringement claim to the extent it alleges intentional misconduct, as § 1668 may preclude application of such clauses. *See Darnaa*, 236 F. Supp. at 1124 (noting that previously, the court had declined to apply the limitation of liability clause to claims that alleged intentional wrongs); *see also BlueGem Sec., Inc. v. Trend Micro Inc.*, No. CV09-1492 ODW (FFMx), 2010 WL 11505702, at *8–9 (C.D Cal. June 8, 2010) (suggesting that a limitation of liability clause may not apply to a copyright infringement claim based on § 1668). The Court, as explained below, finds that Plaintiff has plausibly alleged a claim of contributory copyright infringement, and therefore declines to dismiss it at this stage.

### 3.    Conclusion

In sum, the Court finds that Plaintiff's breach of contract, breach of the implied covenant of good faith and fair dealing, and negligence claims are barred by X Corp.'s Terms of Service and should be dismissed. The Court further finds, as explained below, that X Corp.'s Terms of Service are not rendered unenforceable by § 1668 as to Plaintiff's fraud-based claims because he has failed to plausibly allege these claims. Finally, the Court declines to apply, at this stage, X Corp.'s Terms of Service to Plaintiff's claim for contributory copyright infringement as he has plausibly plead a claim for relief, as further explained below.

### C.    Plaintiff Fails to Allege Plausible Fraud-Based Claims

Plaintiff fails to state claims for (1) violations of the RICO statute, (2) wire fraud under 18 U.S.C. § 1343, (3) fraudulent billing, and (4) violations of the TDPTA. Because Plaintiff does not

plausibly allege any of these fraud-based claims, California law does not render X Corp.'s limitation of liability clauses unenforceable. *See Ryan*, 2024 WL 5058526, at *5.

### 1.    Plaintiff fails to state a claim for violation of the RICO statute

Plaintiff alleges that X Corp. violated the RICO statute, specifically 18 U.S.C. § 1962(c), through actions constituting wire fraud under 18 U.S.C. § 1343. ECF No. 22 at ¶¶ 44–51. To state a RICO claim under 18 U.S.C. § 1962, a plaintiff must allege and show the following: (1) a person who engages in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct, or control of an enterprise. *St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009). A RICO "person" is the defendant and must be distinct from the RICO "enterprise." *In re Burzynski*, 989 F.2d 733, 742–43 (5th Cir. 1993). The FAC alleges that X Corp. is the RICO enterprise. *See* ECF No. 22 at ¶ 46.

Plaintiff fails to plausibly allege a RICO enterprise because the alleged RICO person and RICO enterprise are one and the same—X Corp. *See id.* Plaintiff argues that the FAC alleges a RICO enterprise because the "different departments" within X Corp. constitute an "association-in-fact enterprise." ECF No. 31 at 10. However, "[i]f the defendant is a legal entity, the plaintiff[] must do more than merely establish that the corporation, through its agents, committed the predicate acts in the conduct of its own business." *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989). Thus, because Plaintiff fails to plausibly allege a RICO enterprise, his RICO claim should be dismissed. *See St. Germain*, 556 F.3d at 743 (holding that the district court did not err in dismissing the plaintiff's § 1962(c) claim because the alleged RICO persons were indistinct from the alleged RICO enterprise); *see also Bishop v. Corbitt Marine Ways, Inc.*, 802 F.2d 122, 122 (5th Cir. 1986) (same).

### 2.     Plaintiff fails to state a claim for wire fraud

Plaintiff's claim for wire fraud independent of his RICO claim fails to state a claim for relief because "[t]he wire fraud act—18 U.S.C. § 1343—is a criminal statute, and there is no private cause of action under it." *Beasley v. Greenlee*, No. 3:22-CV-00532-X-BT, 2024 WL 3851382, at *8 (N.D. Tex. July 25, 2024) (citing *Napper v. Anderson, Henley, Shields, Bradford & Pritchard*, 500 F.2d 634, 636 (5th Cir. 1974), *R&R adopted by*, 2024 WL 3851599 (N.D. Tex. Aug. 16, 2024).

### 3.     Plaintiff fails to state a claim for fraudulent billing (*i.e.*, fraud)

Regarding Plaintiff's fraudulent billing claim, the Court finds that Plaintiff fails to plausibly allege the elements of fraud with the required specificity. Under California law, the elements of fraud include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages. *Austin v. Zhang*, No. 20-CV-05445-RS, 2022 WL 298573, at *2 (N.D. Cal. Feb. 1, 2022) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003)). Federal Rule of Civil Procedure 9(b) requires that the circumstances constituting a claim for fraud be pled with particularity. Fed. R. Civ. P. 9(b). That is, "fraud allegations must include the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *UMG Recordings, Inc. v. Global Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1106 (C.D. Cal. 2015) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).

Here, Plaintiff generally alleges that X Corp. "made material misrepresentations and omissions regarding . . . its billing practices during account suspension," "[t]he ability to access cancellation mechanisms during suspension," "[t]he delivery of paid promotional services," and "[t]he implementation of 'temporary labels' affecting the performance of paid promotions." ECF No. 22 at ¶ 54. These allegations are conclusory and fall far short of the heightened Rule 9(b)

pleading standards. *See UMG Recordings, Inc.*, 117 F. Supp. 3d at 1106 ("Conclusory allegations are insufficient, and facts constituting the fraud must be alleged with specificity."). In addition to not specifying with particularity any false representations allegedly made by X Corp., Plaintiff further fails to allege how he changed his position in reliance on any such statement. Accordingly, he has failed to state a claim upon which relief can be granted under Rule 12(b)(6) and has failed to plead fraud with particularity under Rule 9(b).

### 4. Plaintiff fails to state a claim for violations of the TDTPA

Because the Court has determined that California law applies, Plaintiff's claim for violation of the TDTPA is barred. *See Cory v. Stewart*, 103 F.4th 1067, 1076 (5th Cir. 2024) (holding that the applicable Delaware choice of law clause precluded claims under Texas statutes).[8] This alone is sufficient to dismiss Plaintiff's TDTPA claim. However, even if Texas law did apply, Plaintiff has failed to plausibly state a claim under the TDTPA.

Plaintiff alleges that X Corp. has violated the TDTPA via its "false, misleading, or deceptive acts or practices" in connection with (1) representations "to provide premium services while actively preventing access to those services" and (2) "concealing the existence of 'temporary labels' that 'impact reach' while accepting payment for promotional services. ECF No. 22 at ¶ 65. Claims made under the TDTPA for misrepresentation are subject to the heightened pleading requirements of Rule 9(b). *Bedgood v. Nissan North Am.*, No. A-16-CA-00281-SS, 2016 WL 3566689, at *3 (W.D. Tex. June 24, 2016) (citing *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001)).

---

[8] The Fifth Circuit in *Cory* stated that the outcome may have been different if the Texas statutes and Delaware statutes were dissimilar such that only allowing access to the Delaware statutes would thwart or offend Texas public policy. *Cory*, 103 F.4th at 1066 n.31. While Plaintiff argues that "Texas maintains a fundamental state interest in regulating deceptive commercial practices occurring at a business's principal place of business within Texas" and thus the choice-of-law provision "is unenforceable" for "conflict[ing] with Texas public policy," Plaintiff also states that California's unfair competition and false advertising laws provide substantially similar protections . . . resulting in no material difference in outcome. *Compare* ECF No. 31 at 8 *with* ECF No. 22 at ¶ 8F(e).

Plaintiff's TDTPA allegations are premised on the same allegations underlying his fraudulent billing allegations. These allegations likewise fail to specify the content of the alleged misrepresentations or the "who, what, when, where, and how" of these representations. *See id.* Moreover, to the extent Plaintiff alleges X Corp. failed to disclose the existence of "temporary labels," he fails to allege facts indicating that X Corp. was aware, at the time he created his account or subscribed for premium services, that facts it failed to disclose. *See Bauer v. AGCO Corp.*, No. SA-23-CV-00993-JKP, 2024 WL 2703019, at *4 (W.D. Tex. May 23, 2024) (dismissing the plaintiff's DPTA claim for failure to disclose because the plaintiff did not "allege facts indicating [the defendant] was aware, at the time of the transaction, of facts it failed to disclose"). Thus, even if Texas law applied, Plaintiff's DTPA claim would fail the requirements of Rule 12(b)(6) and Rule 9(b).

**D.     Plaintiff Alleges a Plausible Claim for Contributory Copyright Infringement Only**

There are two types of copyright infringement: direct and secondary. *BWP Media USA, Inc. v. T & S Software Assocs., Inc.*, 852 F.3d 436, 439 (5th Cir. 2017). Direct infringement occurs when a party engages in infringing conduct, while secondary infringement holds a party responsible for infringement by others, even if they have not engaged in the infringing activity. *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 433, 435 (1984).

**1.     Plaintiff fails to state a claim for direct copyright infringement**

Direct copyright infringement requires proof of two elements: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *BWP Media*, 852 F.3d at 439. The alleged infringer must have acted with "volitional conduct"—*i.e.*, "[t]here must be actual infringing conduct with a nexus sufficiently close and causal to the illegal copying that one could conclude that the machine owner himself trespassed on the exclusive domain of the

copyright owner." *Id.* at 440 (quoting *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550 (4th Cir. 2004)).

Here, the allegations do not support the reasonable inference that X Corp. directly infringed the copyright. At most, "[X Corp.] hosts the forum on which infringing content was posted" but "[t]he users [*i.e.*, the Third-Party Does] posted the infringing content," which is insufficient for direct infringement. *Id.* at 442. As noted by the Fifth Circuit, direct infringement most of the time "come[s] down to who selects the copyrighted content: the defendant or its customers." *Id.* (quoting *Am. Broadcasting Cos. V. Aereo, Inc.*, 573 U.S. 431, 453 (2014) (Scalia, J., dissenting)). Plaintiff's allegations make clear that it is X Corp.'s users—not X Corp.—that selected the Photograph and misused it on their accounts. There are no allegations that X Corp. is anything other than "the owner and manager of a system used by others who [are] violating [Plaintiff's] copyright[] and [is] not an actual duplicator itself." *Id.* (quoting *CoStar Grp.*, 373 F.3d at 546).

## 2.    Plaintiff states a plausible claim for contributory copyright infringement

Contributory infringement is "intentionally inducing or encouraging direct infringement." *Geophysical Serv., Inc. v. TGS-NOPEC Geophysical Co.*, 850 F.3d 785, 798 (5th Cir. 2017) (quoting *Grokster*, 545 U.S. at 930). To establish a claim for contributory copyright infringement, a copyright owner must show that the defendant, with knowledge of the infringing activity, induced, caused, or materially contributed to the infringing conduct of another. *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 790 (5th Cir. 1999).

X Corp. argues that Plaintiff fails to plausibly allege contributory infringement because he does not allege that X Corp. actively encouraged the Third-Party Does to use his Photograph. ECF No. 29 at 8. However, the Fifth Circuit has recognized that material contribution may be found where "an ISP knew of specific instances of repeated infringement by specific users and 'chose to

continue' providing services to them," and that such material contribution is a viable theory of secondary copyright infringement. *See UMG Recordings, Inc. v. Grande Commc'ns Networks, L.L.C.*, 118 F.4th 697, 714, 719 (5th Cir. 2024). Here, Plaintiff alleges that he submitted four DMCA takedown notices to X Corp. that "[s]pecifically identified the infringing content and accounts," but that "X Corp. failed to take any meaningful action to address the infringement," such as remove the infringing posts or accounts. ECF No. 3 at ¶¶ 23–25. Taking such allegations as true, Plaintiff has plausibly alleged contributory infringement.

### 3. Plaintiff fails to state a claim for vicarious copyright infringement

Vicarious infringement establishes liability when the "defendant profits *directly* from the infringement and has a right and ability to supervise the direct infringer, even if the defendant initially lacks knowledge of the infringement." *Bell v. Llano Indep. Sch. Dist.*, No. 6:19-CV-265-ADA, 2020 WL 5370591, at *4 (W.D. Tex. Feb. 13, 2020) (emphasis in original) (quoting *Grokster*, 545 U.S. at 931 n.9). Here, Plaintiff does not allege that X Corp. profited from the Third-Party Does' alleged use of the Photograph. Plaintiff protests that "the original Complaint explicitly details this point," but he fails to cite where in the original Complaint he does so. ECF No. 31 at 4. Having reviewed Plaintiff's original Complaint, which was superseded by Plaintiff's FAC, at most Plaintiff alleges "[p]rofit disgorgement from infringing content." *See* ECF No. 3 at ¶ 57. Even if this allegation was of legal effect,[9] it is conclusory. Thus, the Court finds that Plaintiff has not stated a viable claim for vicarious infringement.

### 4. Plaintiff fails to state a claim for violation of the DMCA

Plaintiff claims that X Corp. has violated the DCMA, 17 U.S.C. § 512, by failing to adopt and reasonably implement a policy providing for the termination of repeat infringers, and by failing

---

[9] This paragraph was not incorporated by reference in Plaintiff's FAC and has no legal effect. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) ("An amended complaint supersedes the original complaint and renders it of no legal effect.").

to remove infringing posts and/or accounts despite his submission of DMCA-compliant takedown notices. ECF No. 22 at ¶¶ 32–37. Plaintiff contends that these failures render X Corp. liable for copyright infringement. *Id.* In short, Plaintiff alleges that X Corp. failed to comply with the safe harbor provisions of the DMCA, and that this failure makes it liable for copyright infringement.

However, "[t]hese safe harbors limit liability but 'do not affect the question of ultimate liability under the doctrines of direct, vicarious, and contributory liability.'" *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1109 (9th Cir. 2007). Instead, the DMCA's safe harbor is an affirmative defense that a defendant has the burden of establishing. *UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, 384 F. Supp. 3d 743, 753 (W.D. Tex. 2019). The only affirmative claim provided under § 512 of the DMCA is for misrepresentation in connection with a takedown notice. 17 U.S.C. § 512(f). Plaintiff alleges no facts that would support such a claim. Thus, Plaintiff's claim for violation of the DMCA should be dismissed.

## V.    Leave to Amend

When ruling on a Rule 12(b)(6) motion, courts only dismiss an action with prejudice without giving an opportunity to amend upon finding the plaintiff alleged his best case or amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *See Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009).

Here, the Court concludes that further amendment should not be granted. First, Plaintiff did not request leave to amend, and the Court is not automatically obliged to afford him the opportunity. *See U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) (holding that a district court did not abuse its discretion in not allowing the plaintiff to amend because the plaintiff had not requested he be given leave to amend); *see also Melancon v. Carnival Corp.*, 835 F. App'x 721, 727 (5th Cir. 2020) (declining to allow the plaintiff to amend

her complaint on appeal because she "never requested leave to amend at the district court").

Second, Plaintiff appears to believe no amendment is necessary, as he asserts that his "brief is

virtually unassailable in whole." ECF No. 22 at 2. Accordingly, the Court assumes Plaintiff has

alleged his best case. *See Dark v. Potter*, 293 F. App'x 254, 258 (5th Cir. 2008) (assuming a

plaintiff had alleged her best case because she stated "[a]ll has been done correctly before

imploring the district court to rule speedily").[10] Third, any amendment would be futile, as

Plaintiff's breach of contract, breach of the implied covenant of good faith and fair dealing, and

negligence claims are barred by X Corp.'s Terms of Service. Moreover, Plaintiff proposes no

amendments or proffers any additional facts that he could plead to eliminate the defects that are

fatal to his fraud-based claims, direct and vicarious copyright infringement claims, and violations

of the DMCA and TDTPA claims. *See Air Liquid Mexico S. de R.L. de C.V. v. Talleres Willie,

Inc.*, No. H-14-211, 2015 WL 8763961, at *5 (S.D. Tex. Dec. 15, 2015) (finding the plaintiff's

request to replead to be futile). Finally, Plaintiff has already amended his complaint once and still

fails to plausibly allege facts in support of his common law claims and fraud-based claims. *See

Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003) (considering "repeated failure to

cure deficiencies by amendments previously allowed" in whether to deny leave to amend a

complaint). Accordingly, the Court finds it appropriate to dismiss these claims with prejudice.

---

[10] Plaintiff has also filed multiple documents, made multiple ex parte phone calls, and has emailed the Court ex parte, harassing the Court staff and the undersigned to rule on the instant Motion and his "emergency" motions, inappropriately arguing merits of both in certain instances. Plaintiff's ex parte communications are entirely inappropriate. The Court would like to make clear that the timing of its ruling is in no way impacted by Plaintiff's threats and ultimatums. As will be addressed in a subsequent order, further filings containing such threats shall be struck pursuant to Rule 11(b) and (c). *See, e.g., Strahan v. O'Reilly*, No. 22-CV-52-SM, 2022 WL 4126058, at *2 (D.N.H. Sept. 8, 2022) (striking, pursuant to Rule 11(b),(c), "notice of intent to bring suit" for having "been filed solely for an improper purpose – that is, in an effort to coerce, threaten, intimidate, and/or harass the . . . judge").

## VI.    CONCLUSION

For the reasons stated above, **IT IS ORDERED** that Defendant X Corp.'s Motion to Dismiss (ECF No. 29) is **GRANTED-IN-PART and DENIED-IN-PART**.

**IT IS FURTHER ORDERED** that Plaintiff's claims for: violation of the Digital Millennium Copyright Act (Count II); wire fraud (Count III); violation of the RICO Act (Count IV); fraudulent billing (Count V); negligence (Count VI); violation of the Texas Deceptive Trade Practices Act (Count VII); and breach of contract and breach of implied covenant of good faith and fair dealing (Count VIII) **ARE HEREBY DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's claim for copyright infringement (Count I) is **HEREBY DISMISSED WITH PREJUDICE** to the extent Plaintiff brings claims for direct copyright infringement and vicarious copyright infringement. For clarity, only Plaintiff's claim for contributory copyright infringement remains.

**SIGNED** this 11th day of July, 2025.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE