# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF TEXAS

### AUSTIN DIVISION

JUSTIN RIDDLE,

 *Plaintiff,*

v.

X CORP.,

 *Defendant.*

Civil No. 1-25-CV-00073-ADA

# MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO RULE 59(e) AND MOTION FOR JUDICIAL DISQUALIFICATION

TO THE HONORABLE COURT:

In response to this Court's concern regarding page limitations, Plaintiff respectfully submits this condensed motion addressing the fundamental issues requiring immediate correction. While the scope of documented violations might ordinarily warrant comprehensive analysis, Plaintiff acknowledges the practical constraints of judicial time and resources.

Plaintiff moves to alter the July 11, 2025 judgment and for immediate judicial disqualification under 28 U.S.C. § 455 based on documented factual inconsistencies and systematic procedural concerns.

# I. THE UNIFIED MATHEMATICAL FRAMEWORK REQUIRING ANALYSIS

### A. The Singular Logical Explanation

The documented evidence presents multiple mathematical impossibilities that, when considered collectively, point to a single logical conclusion. The record reflects:

- Impression counts decreasing from 9,965 to 9,892 during active billing
- Campaigns achieving 112.80% completion while delivering 0.00% of services
- Past organic engagement retroactively credited to future promotional efforts
- Zero delivery campaigns with full billing charges applied

### B. The Convergent Logic Analysis

While each mathematical impossibility might theoretically have individual explanations, the convergent pattern suggests a unified systematic approach. The only logical framework that explains all documented anomalies simultaneously is comprehensive metric fabrication with authentic billing.

Traditional business models typically align completion percentages with delivery percentages, maintain chronological causation in attribution systems, and preserve mathematical consistency in cumulative counting. The systematic deviation from these principles across all measured categories suggests deliberate rather than coincidental variance.

### C. The Elimination of Alternative Explanations

The mathematical impossibilities documented cannot result from:

- Technical glitches (would affect billing systems equally)

- Database errors (would not maintain perfect billing accuracy)
- Display inconsistencies (would not persist across multiple timeframes)
- Reporting delays (would not show backwards progression)

The preservation of billing accuracy alongside systematic metric impossibilities indicates selective rather than systemic technical issues. See Attachments 1-3.

### D. The Decreasing Impression Count Phenomenon

The record reflects that impression counts decreased from 9,965 to 9,892 over a 50-minute period during active billing. While this presents certain mathematical complexities, traditional accounting principles suggest cumulative totals typically increase rather than decrease absent specific interventions.

Plaintiff respectfully submits that this circumstance may warrant additional consideration beyond the Court's current finding of "insufficient evidence of manipulation." See Attachments 1-3.

### E. The Completion Percentage Discrepancy

Documentation shows campaigns achieving 112.80% completion while delivering 0.00% of contracted services, with full billing nonetheless occurring. While innovative business models occasionally challenge conventional expectations, this particular metric relationship presents certain logical questions that might benefit from further examination.

### F. The Retroactive Attribution Situation

The evidence reflects past organic engagement being subsequently credited to future promotional campaigns. While creative accounting approaches are not uncommon in modern business, the temporal mechanics of this attribution method raise certain practical questions about causation and chronology.

## II. EVIDENTIARY REVIEW CONSIDERATIONS

## A. Document 35 Video Evidence

Plaintiff submitted video documentation of the systematic processes described above. While the Court determined page limit considerations precluded examination of this material, the substantive content might nonetheless prove relevant to the underlying legal questions, should the Court find opportunity for review.

## B. Named Employee Documentation

Screenshots document manual account modifications by specifically identified X Corp personnel during billing periods. See Attachments 1-3. While such hands-on customer service is commendable, the nature of these interventions during active promotional billing cycles presents certain questions about automated versus manual system operation.

## C. The Page Count Reality

The Court referenced a 51-page motion exceeding local rules. The documented filing contained approximately 12+ pages of screenshots and exhibits, with the remaining content constituting legal argument. This distinction between textual argument and evidentiary documentation might warrant clarification regarding page limit application to supporting materials.

# III. THE CONTRIBUTORY COPYRIGHT/DMCA FRAMEWORK

The Court found Plaintiff's contributory copyright claims "plausibly alleged" based on elements including knowledge of infringement, material contribution, and failure to remediate when able. These elements appear substantially similar to those required for DMCA safe harbor violations, which the Court found insufficiently pleaded.

While legal standards certainly vary between different statutory frameworks, the factual overlap between these claims might warrant reconsideration of their relative sufficiency. See Attachments 1-3.

## A. Identical Factual Elements Analysis

**Contributory Copyright Requirements:**

1. Knowledge of direct infringement occurring
2. Material contribution to ongoing infringement
3. Ability to stop infringement but failure to do so

**DMCA Safe Harbor Violation Requirements:**

1. Knowledge of direct infringement (via notice)
2. Material contribution (platform hosting)
3. Failure to expeditiously remove when required

The Court's finding that identical factual elements support one claim while failing to support another presents certain analytical questions about consistent legal standard application.

# IV. CALIFORNIA CIVIL CODE § 1668 APPLICATION

The Court referenced California Civil Code § 1668, which prohibits contracting away liability for intentional acts, while simultaneously applying Terms of Service limitations to claims that the Court found required proof of intentional conduct (contributory copyright infringement).

This intersection of legal principles presents certain analytical complexities that might benefit from additional consideration.

## A. The Intentional Conduct Contradiction

If X Corp's conduct was intentional (required for contributory copyright infringement), then § 1668 would prohibit Terms of Service from barring claims based on that same intentional conduct. If X Corp's conduct was not intentional, then contributory copyright claims would necessarily fail.

The Court's simultaneous finding that intentional conduct both occurred (contributory copyright) and can be contractually excused (Terms of Service) presents certain logical tensions.

# V. PROCEDURAL TIMING OBSERVATIONS

## A. Response Timeline Documentation

The record reflects 180+ days of processing time for emergency motions, followed by three orders issued within 24 hours of specific plaintiff communications. While judicial workflow management presents complex challenges, this timing pattern might warrant clarification regarding standard processing procedures.

### B. The Footnote 10 Clarification

The Court provided an unprompted clarification that ruling timing was "in no way impacted by Plaintiff's threats and ultimatums." While such transparency is appreciated, the voluntary nature of this denial might raise questions about the underlying circumstances that prompted this clarification. See Attachments 1-3.

### C. Statistical Probability Analysis

The probability of random judicial response within 24 hours after 180+ days of silence approaches zero. The timing correlation with specific plaintiff communications presents certain questions about cause-and-effect relationships in judicial scheduling.

## VI. FACTUAL RECORD CLARIFICATIONS

### A. The Suspension Characterization

The Court characterized Plaintiff as being upset about suspension for "policy violations." The documented record indicates Plaintiff was suspended without policy violation identification, requested clarification for four months without response, and subsequently received X Corp correspondence stating "we made a mistake" and restoring the account.

This discrepancy between the Court's characterization and the documented timeline might warrant clarification.

### B. The "Harassing" Communication Description

The Court characterized Plaintiff's recorded telephone communication as "harassing." The audio documentation reflects Plaintiff using "sir" throughout, expressing gratitude, and maintaining professional tone throughout the brief exchange.

The divergence between this characterization and the documented audio might benefit from reconsideration.

### C. The Judicial Discretion Versus Fact Fabrication Distinction

Judicial discretion traditionally encompasses how to interpret law, which evidence to weigh, and what remedies to grant. The alteration of documented factual circumstances presents different considerations from traditional discretionary authority.

## VII. ADA ACCOMMODATION REQUEST STATUS

### A. Formal Accommodation Request Processing

Plaintiff submitted formal ADA accommodation requests related to logical consistency requirements for processing mathematical information. The record does not reflect any judicial response, acknowledgment, or ruling on these accommodation requests.

Federal law typically requires some form of accommodation process, even if ultimately denied, which might warrant attention to this procedural gap. See Attachments 1-3.

### B. Mathematical Processing Accommodation

The accommodation request specifically addressed the difficulty individuals with ADHD experience when required to accept mathematical impossibilities as plausible. The ongoing requirement to accept that 9,965 can decrease to 9,892 through natural processes creates particular cognitive processing challenges for individuals with documented attention processing differences.

### C. Accommodation Versus Substantive Rights

The requested accommodation (logical consistency in mathematical analysis) aligns with traditional judicial standards and would not create undue administrative burden. The accommodation seeks application of standard mathematical principles rather than special treatment.

# VIII. DMCA STATUTORY INTERPRETATION

## A. Safe Harbor Characterization

The Court characterized DMCA safe harbor provisions as "affirmative defenses" that platforms may assert. The statutory language at 17 U.S.C. § 512(c)(1)(C) uses "shall expeditiously remove," which traditionally indicates mandatory rather than discretionary obligations.

This interpretation difference might warrant reconsideration of the statutory framework's actual requirements.

## B. Financial Benefit Requirements

DMCA violations require knowledge and failure to act expeditiously, but do not require proof of financial benefit when valid takedown notices are properly submitted. This distinction might be relevant to the Court's analysis of the sufficiency of Plaintiff's DMCA allegations.

## C. The Four Valid Notices Reality

Plaintiff submitted four DMCA takedown notices sworn under penalty of perjury, specifically identifying infringing content and accounts. The statutory requirement of knowledge was satisfied through these formal notifications, regardless of any financial benefit analysis.

# IX. TERMS OF SERVICE CONSTITUTIONAL FRAMEWORK

## A. Federal Law Hierarchy Questions

The Court's application of Terms of Service to bar claims based on federal statutory violations raises certain constitutional questions about the hierarchy of federal law versus private contractual provisions.

If Terms of Service can override federal copyright law, similar logic might apply to other federal statutory protections, which could present broader implications for federal regulatory authority.

## B. Precedential Considerations

This ruling's precedential value for future corporate defenses against federal statutory claims might warrant consideration of the broader implications for federal law enforcement and regulatory authority.

### C. The Constitutional Apocalypse Implications

Under this Court's precedent, Terms of Service could theoretically excuse:

- Securities fraud ("Terms of Service disclaim investment accuracy")
- Drug trafficking ("Terms of Service prohibit illegal substances")
- Child exploitation ("Terms of Service require age verification")
- Terrorist organization ("Terms of Service prohibit harmful content")

The logical extension of private contractual terms overriding federal criminal statutes presents certain constitutional concerns.

## X. JUDICIAL ANALYTICAL METHODOLOGY OBSERVATIONS

### A. The Contributory Copyright "Generosity"

The Court graciously found Plaintiff's contributory copyright claims "plausibly alleged" despite characterizing most other arguments as deficient. The Court noted its obligation to identify viable legal theories for self-represented litigants even when not perfectly articulated.

Plaintiff deeply appreciates this judicial generosity and respectfully suggests that this same analytical approach might prove beneficial when applied to the mathematical impossibilities, video evidence, and constitutional violations that Plaintiff did explicitly raise and document comprehensively.

### B. Selective Application of Pro Se Accommodation

The Court's willingness to identify and preserve legal theories that Plaintiff allegedly failed to raise properly demonstrates admirable judicial consideration for self-represented litigants. This generous interpretive approach, when applied to evidence Plaintiff actually presented in detail, might yield additional insights warranting consideration. See Attachments 1-3.

Plaintiff respectfully notes that the same judicial grace extended to finding unargued legal theories might prove equally valuable when examining argued mathematical impossibilities and documented systematic fraud.

### C. The Analytical Consistency Request

The Court's demonstrated ability to identify and preserve legal claims suggests sophisticated analytical capabilities. The application of this same analytical rigor to mathematical evidence and documented constitutional violations might yield additional insights warranting judicial consideration.

## XI. SYSTEMATIC PATTERN DOCUMENTATION

### A. Standard Procedural Approach

The record reflects a consistent pattern: formatting challenges addressed immediately, substantive mathematical impossibilities processed over extended timeframes, video evidence excluded on procedural grounds, and ultimate dismissal with limited surviving claims.

While efficient case management is certainly important, this procedural prioritization pattern might warrant review. See Attachments 1-3.

### B. Representation Quality Impact

The Court's treatment of identical legal issues appears to vary based on the sophistication of legal representation rather than the underlying factual or legal merits, which raises certain equal protection considerations.

### C. Corporate Versus Individual Treatment

X Corp's Terms of Service received immediate judicial consideration and incorporation by reference, while Plaintiff's mathematical evidence and video documentation were excluded on procedural grounds. This differential treatment pattern might warrant examination.

### D. The Pro Se Destruction Protocol Documentation

The documented pattern reflects: (1) procedural nitpicking over substantive analysis, (2) extended processing delays enabling continued harm, (3) evidence exclusion on technical grounds, (4) factual mischaracterization in judicial findings, (5) dismissal of all claims except impossible-to-prove survivors, and (6) judicial self-congratulation for "fairness."

# XII. MANIFEST ERROR IDENTIFICATION

The following items appear to constitute manifest errors of law requiring correction:

- Mathematical impossibilities characterized as "insufficient evidence"
- Federal mandatory statutes characterized as discretionary defenses
- Documented facts contradicted in judicial findings
- Constitutional accommodation requests ignored entirely

These issues transcend representation quality and present fundamental questions about legal standards application. See Attachments 1-3.

### A. Mathematical Reality Versus Judicial Interpretation

The characterization of backwards-traveling numbers as "insufficient evidence of manipulation" presents certain challenges to traditional mathematical understanding and evidentiary standards.

### B. Constitutional Fabrication Analysis

The documented creation of factual statements contradicting the record (policy violation suspension) raises questions about the distinction between judicial discretion and factual fabrication.

### C. Federal Statute Mischaracterization

The treatment of mandatory statutory language ("shall") as discretionary suggestions presents certain concerns about federal law interpretation and enforcement.

# XIII. WIRE FRAUD STRAWMAN ANALYSIS

### A. RICO Predicate Act Framework

Plaintiff's wire fraud allegations were presented as RICO predicate acts, not standalone wire fraud claims. The Court's characterization of these as independent wire fraud claims presents certain analytical concerns about accurate claim characterization.

### B. Interstate Commerce Wire Fraud Application

Platform advertising billing across state lines constitutes wire fraud when systematic deception is employed. The mathematical impossibilities documented establish the deception element, while interstate commerce is inherent in national platform operations.

## XIV. THE EVIDENCE SUPPRESSION CONSTITUTIONAL CRISIS

### A. Document 35 Exclusion Analysis

The Court's refusal to examine video evidence on page limit grounds, followed by dismissal based on "insufficient evidence," creates certain procedural concerns about due process and evidence consideration.

### B. The Kafka-esque Process Documentation

The judicial process of excluding evidence then citing lack of evidence as grounds for dismissal presents certain constitutional questions about fair trial procedures and due process protections.

## XV. APPELLATE PATHWAY IMPLICATIONS

This case presents the Fifth Circuit with mathematical impossibilities that cannot be reasonably disputed factually, only ignored procedurally. The appellate court's treatment of documented mathematical fraud will necessarily establish precedent for evidence standards in federal court.

Should Supreme Court review become relevant, the case presents constitutional questions about equal justice under law when mathematical proof quality exceeds traditional evidentiary standards regardless of representation sophistication.

### A. The Manifest Error Appeal Standard

Mathematical impossibilities constitute manifest errors of law requiring appellate correction regardless of representation quality or procedural technicalities.

### B. The Constitutional Question Framework

The case presents the Supreme Court with the question of whether federal courts can ignore mathematical proof of systematic fraud based solely on wealth disparity between litigants.

### C. The Rule of Law Test

If mathematical impossibilities can be characterized as "insufficient evidence," no evidentiary standard exists that couldn't be similarly dismissed through creative judicial interpretation.

## CONCLUSION

This Court's ruling creates precedential implications extending far beyond the immediate case. The treatment of mathematical impossibilities as "insufficient evidence" and the subordination of federal statutory requirements to private contractual terms presents significant questions about federal judicial authority and constitutional protections.

Plaintiff respectfully requests reconsideration of these fundamental issues, recognizing the broader implications for judicial integrity and federal law enforcement.

The mathematical documentation remains unchanged despite judicial characterization, and constitutional questions persist regardless of procedural dispositions.

**Respectfully submitted,**

Justin Riddle

 Pro Se Litigant

## VERIFICATION UNDER 28 U.S.C. § 1746

I declare under penalty of perjury that the mathematical impossibilities documented herein remain factually accurate, the constitutional questions persist despite procedural rulings, and the systematic patterns described reflect documented judicial conduct.

Executed July 25, 2025.

---

## NOTE REGARDING ATTACHMENTS

In deference to this Court's concern for judicial efficiency and time management, Plaintiff has exercised considerable restraint in the scope of evidentiary submissions. While the documented violations encompass substantially more extensive materials, Attachments 1-3 represent approximately 361 carefully curated screenshots and exhibits, including only the most essential examples of each category of systematic violation.

Plaintiff has respectfully limited the submission to roughly a dozen representative examples of each type of documented fraud, mathematical impossibility, and constitutional violation, ensuring that no judicial time is unnecessarily consumed by secondary or peripheral evidence. This condensed evidentiary approach reflects Plaintiff's understanding of the Court's preference for streamlined documentation over comprehensive fraud demonstration.