IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS, AUSTIN DIVISION

JUSTIN RIDDLE,

Plaintiff,

v.                              Case No. 1-25-CV-00073-ADA

X CORP.,

Defendant.

MOTION FOR RELIEF FROM JUDGMENT UNDER RULE 60(b)(3)

Plaintiff Justin Riddle moves this Court under Federal Rule of Civil Procedure 60(b)(3) for relief from the judgment entered September 11, 2025. This motion is based on fraud, misrepresentation, and misconduct by Defendant X Corp. that prevented Plaintiff from fully and fairly presenting his case.

I. LEGAL STANDARD

Rule 60(b)(3) authorizes relief from judgment when a party obtains it through "fraud, misrepresentation, or misconduct by an opposing party." The moving party must demonstrate by clear and convincing evidence that the adverse party engaged in fraud or misconduct that prevented the moving party from fully and fairly presenting his case. Rozier v. Ford Motor Co., 573 F.2d 1332, 1339 (5th Cir. 1978).

II. UNDISPUTED MATHEMATICAL AND DOCUMENTARY EVIDENCE

A. The April 1, 2025 Mathematical Impossibility

On April 1, 2025, Plaintiff documented metrics moving backwards in time across four separate screenshots with verified timestamps:

| Time | Impressions | Engagements | Detail Expands |
|------|-------------|-------------|----------------|
| 9:23 AM | 9,965 | 276 | 79 |
| 10:13 AM | 9,892 | 269 | 78 |
| 11:56 AM | 10,062 | 291 | 85 |
| 1:44 PM | 10,198 | 303 | 84 |



Between 9:23 AM and 10:13 AM, impressions decreased by 73, engagements decreased by 7, and detail expands decreased by 1. Then at 1:44 PM, detail expands decreased again by 1. Cumulative metrics in a live advertising platform cannot decrease. This is mathematical fact susceptible to objective verification.

B. Employee Access with Personal Animus

X Corp employee account @AntSocializer (display name: Mighty Mouf) had Plaintiff blocked on the platform while simultaneously appearing in activity logs editing Plaintiff's paid advertising campaigns on March 7, 2025. The account carries verification indicating X Corp affiliation and was created November 2024, directly connected to the initial filing in California, which was rejected for missing cover sheet, and refiled in January in Texas as required by X Corp's new location. The blocking demonstrates personal animus while the administrative access shows employee authority over the account.



This dual-account system permits X Corp employees to operate personal accounts to engage with any user, block users they personally dislike, simultaneously access and modify those users' paid advertising accounts, and operate under concealed employee identity.

C. Copyright Inversion: X Corp's Documented Refusal to Recognize Copyright



Plaintiff owns registered copyright to his wedding photograph. Imposter account @JustinERiddle displays Plaintiff's copyrighted photograph without authorization. Plaintiff's legitimate account @ProSeSelfHelp was suspended. The imposter posted: "Thank you everyone for all of your help!" celebrating Plaintiff's suspension.

Plaintiff filed multiple DMCA takedown notices with X Corp identifying the unauthorized use of his registered copyrighted photograph. X Corp's responses reveal systematic refusal to acknowledge copyright claims:

- Two DMCA notices received responses stating: "it seems that you are trying to report an impersonation or harassment issue, not one relating to copyright" despite the notices specifically identifying unauthorized use of Plaintiff's copyrighted photograph
- Two additional DMCA notices were rejected with similar dismissals of the copyright claim

X Corp's position is that a copyright owner's complaint about unauthorized use of his registered copyrighted photograph is "not relating to copyright." This is not a misunderstanding of DMCA procedures—it is documented refusal to apply federal copyright law to protect copyright owners while simultaneously protecting infringers.



The imposter account remains active. Plaintiff's account remains suspended. Additionally, a licensed attorney has now adopted X Corp's position and is also using the copyrighted photograph, emboldened by this Court's dismissal and X Corp's refusal to enforce copyright protection.

D. Contradictory Billing Records

CSV export file shows 11,273 impressions billed at $39.78. Dashboard simultaneously shows 0 impressions, $0.00. Same campaign, same time period, contradictory data from X Corp's own systems.



III. X CORP'S CONTRADICTORY REPRESENTATIONS TO THE COURT

A. The Rule 11 Knowledge Problem

X Corp obtained dismissal through materially contradictory representations that cannot both be true.

In their Motion to Dismiss (March 27, 2025), X Corp demonstrated sophisticated knowledge of detailed billing system explanations through specific third-party payment processors (Apple, Google, Stripe), precise technical requirements for subscription cancellation including 24-hour advance notice, technical specifications of content visibility controls and account suspension mechanisms, and granular Terms of Service interpretations. X Corp's counsel certified these representations under Rule 11(b).

Then in their Answer (July 25, 2025), X Corp claimed ignorance of those exact same systems. For virtually every factual allegation about X Corp's platform operations, X Corp responded: "X Corp. lacks knowledge or information sufficient to admit or deny" allegations about billing charges processed through their own system, documents generated by their own platform, and activity in accounts they manage and operate.

These positions are mutually exclusive. X Corp cannot simultaneously make detailed technical arguments about their systems (Motion to Dismiss) and claim zero knowledge of those systems (Answer).

B. The Hedge-Betting Behavior

X Corp's Answer reveals consciousness of guilt through answering claims already dismissed with prejudice. For dismissed claims, X Corp stated: "The Court dismissed this claim with prejudice, and therefore no response is required." But then added: "To the extent a response is deemed required, X Corp. denies the allegations."

If X Corp believed the dismissal was valid, no response would be necessary. Filing substantive denials to dismissed claims demonstrates lack of confidence in the dismissal's validity and anticipation of reversal on appeal.

IV. THE FRAUD CONTINUED DURING ACTIVE LITIGATION

The most damning evidence is that X Corp continued the fraudulent conduct throughout active litigation about that very conduct.

Timeline:

- June 2024: Plaintiff notified X Corp of intent to sue

- January 2025: Complaint filed

- March 27, 2025: X Corp files Motion to Dismiss

- April 1, 2025: While Motion to Dismiss pending, backwards metrics occurred

- July 25, 2025: X Corp files Answer claiming "lack of knowledge"

- September 11, 2025: Dismissal granted

- September 2025-Present: Shadow-blocking implemented after Plaintiff identified employee misconduct

The April 1, 2025 backwards metrics occurred while X Corp's motion to dismiss was pending before this Court. X Corp was simultaneously arguing to this Court that Plaintiff's metrics claims were implausible, generating impossible metrics in Plaintiff's account, and preparing to claim "lack of knowledge" about these systems.

This is spoliation of evidence and obstruction of justice. After Plaintiff publicly identified employee misconduct, X Corp implemented shadow-blocking where Plaintiff cannot interact with accounts but the platform no longer displays "blocked" status—allowing X Corp to deny the restriction exists while maintaining it functionally.

When X Corp filed its Answer claiming "lack of knowledge," X Corp knew this was false because they had generated backwards metrics during the pending motion and

were simultaneously making sophisticated technical arguments about their systems.

## V. THE DISMISSAL CREATES IMPOSSIBLE PRECEDENT

This Court's September 11, 2025 dismissal requires accepting that cumulative advertising metrics can mathematically decrease in live systems, employees can block customers while editing their paid accounts without consequence, copyright infringers deserve protection over copyright owners under DMCA, billing for admitted non-service is protected by contractual immunity, and documented employee misconduct in company records is "implausible."

The dismissal also relied on the "burden on defendant" rationale. This fails because X Corp generates $25,000 per minute and employs elite counsel, the extensive documentation exists because X Corp engaged in extensive misconduct, pro se plaintiffs' rights are not subordinate to corporate convenience, and X Corp could have avoided litigation by removing infringing content when notified.

Accepting X Corp's defense requires believing a multi-billion dollar platform's billing system made numbers go backwards for 18 months yet affected only one pro se litigant, employees never noticed impossible mathematics, and the system self-corrected when litigation began.

## VI. THE ALTERNATIVE EXPLANATION PROBLEM: WHY RANDOM GLITCHES CANNOT EXPLAIN MONITORED ACCOUNTS

X Corp may attempt to defend the backwards metrics, contradictory billing records, and other anomalies as random system glitches or technical errors. This defense is facially implausible given the documented employee access to Plaintiff's account during active litigation.



The "random glitch" defense requires this Court to believe that:

1. Multiple X Corp employees had administrative access to Plaintiff's account throughout the litigation period (documented in activity logs)

2. These employees were actively monitoring and modifying Plaintiff's campaigns while Plaintiff complained about impossible metrics

3. Yet somehow none of these employees noticed that cumulative advertising metrics were decreasing—a mathematical impossibility visible on their own dashboards

4. These same employees, despite having intimate access to Plaintiff's account systems, could provide no information to counsel about how those systems operated (hence the Answer's "lack of knowledge" responses)

This is not a case of some random user experiencing an unexplained technical problem while X Corp's systems operated normally for everyone else. This is a case where X Corp employees were inside Plaintiff's account, making modifications, during the exact time period when the fraud was occurring.

When you are in active litigation with someone and your employees are documented accessing their account and modifying their campaigns in real-time, you cannot simultaneously claim ignorance about system anomalies in that account. The employee access eliminates any possibility of plausible deniability.

Either X Corp's employees saw the mathematical impossibilities and said nothing (complicity), or X Corp's systems failed so catastrophically that employees working directly in the account couldn't detect that numbers were going backwards (gross negligence rising to intentional disregard). Neither explanation is consistent with "random glitch affecting one user."

The documented employee monitoring means X Corp cannot credibly argue:
- "We didn't know this was happening" (employees were in the account)
- "It was an isolated technical error" (employees were monitoring that specific account)
- "We lack knowledge about our systems" (employees were operating those systems in real-time)

This is the fundamental difference between this case and ordinary consumer complaints: X Corp was not a distant platform operator unaware of Plaintiff's issues. X Corp employees were actively inside Plaintiff's account throughout the fraud, making this supervised fraud, not unsupervised system failure.

## VII. APPELLATE PREVIEW

Should this Court deny relief, the Fifth Circuit will review a record showing mathematical impossibilities dismissed as insufficient despite timestamped proof, employee sabotage documented in corporate records ignored as implausible, federal copyright law inverted with victims punished and infringers protected, wire fraud through billing for confessed non-service, and district court's acceptance of contradictory sworn representations.

## VIII. THE STARK CHOICE

This Court faces a binary decision:

Option 1: Grant Relief - Restore case to active docket, allow discovery into documented misconduct, permit jury evaluation of objective evidence

Option 2: Deny Relief - Create precedent that mathematics is "implausible," endorse employee manipulation of customer accounts, protect copyright infringers over owners, signal documentation is insufficient against corporate defendants

The evidence is objective, mathematical, and documentary. It either matters or it doesn't.

IX. RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests this Court:

1. VACATE the September 11, 2025 Order of Dismissal

2. REINSTATE this action to the active docket

3. ORDER X Corp to produce complete activity logs, employee identifications, internal communications regarding Plaintiff's account, and technical documentation of account restrictions

4. REFER evidence of wire fraud to the United States Attorney

5. AWARD costs and reasonable attorney fees

6. GRANT such other relief as justice requires

X. CONCLUSION

Mathematics is not negotiable. Numbers cannot go backwards. Employees cannot have personal accounts blocking customers while using administrative access to edit those customers' paid services. Copyright owners cannot be punished while infringers are protected. These are objective facts, not legal arguments.

This Court dismissed these facts as "implausible." Rule 60(b)(3) provides the mechanism to correct this error when the opposing party's fraud prevented full presentation. Plaintiff has proven by clear and convincing evidence fraud that prevented fair presentation through contradictory sworn representations about system knowledge, active manipulation during pending litigation, spoliation of evidence subject to litigation, and ongoing retaliation through account restrictions.

The evidence is mathematical, documentary, and irrefutable. Justice requires this Court grant relief.

Respectfully submitted this 2nd day of October, 2025,

_____

Justin Riddle

Pro Se Plaintiff

402-813-2156

justinriddle1@gmail.com

CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2025, I filed this motion electronically via the Court's CM/ECF system, which will serve all counsel of record.