UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

JUSTIN RIDDLE,
   Plaintiff,

v.                    Case No. 1:25-cv-00073-ADA

X CORP.,
   Defendant.

_____

PLAINTIFF'S NOTICE OF X CORP'S MATERIALLY FALSE STATEMENT TO THE COURT
REGARDING ACCOUNT AFFILIATION

_____

TO THE HONORABLE COURT:

Plaintiff notifies this Court that X Corp made a materially false statement in its Opposition to Plaintiff's Rule 60(b)(3) Motion (Doc. 70, filed October 16, 2025). This false statement is not a matter of interpretation or legal argument—it is a factual representation that is demonstrably contradicted by X Corp's own verification system, which the Court can verify in 30 seconds.

I. X CORP'S FALSE STATEMENT

On October 16, 2025, X Corp represented to this Court:

   "***Plaintiff also lacks evidence supporting his assertion that the alleged X users he identifies are somehow affiliated with X Corp.***" (Doc. 70, Page 3)

This statement was signed by three attorneys, all of which represented this statement to the court.

II. THE THREE-SCREENSHOT PROOF

Three screenshots prove X Corp's statement is false:

SCREENSHOT 1: X CORP'S SWORN STATEMENT

> 1996).
>
> ### III. ARGUMENT
>
> Plaintiff's Motion should be denied for two reasons.
>
> *First*, Plaintiff fails to show that X Corp. committed any fraud, misrepresentation or misconduct, much less prove misconduct by "clear and convincing evidence." His Motion therefore should be denied on that basis alone.
>
> Plaintiff first contends that his X account metrics have been tampered with, supposedly by X users whom Plaintiff baselessly accuses of being employed by X Corp. Motion at 2–4. As purported evidence for this alleged tampering, Plaintiff includes what appear to be excerpts from screen captures of various websites, together with "metrics" from an unspecified source. *Id.* None of this unauthenticated evidence is admissible, and therefore cannot serve as a basis for vacating this Court's order. *See Areizaga v. ADW Corp.*, 796 F. App'x 205, 207 (5th Cir. 2020)
>
> 2
>
> Case 1:25-cv-00073-ADA     Document 70     Filed 10/16/25     Page 3 of 6
>
> (affirming denial of Rule 60(b)(3) motion seeking relief based on threats allegedly made by opposing counsel where movant had not presented admissible evidence of such threats). Plaintiff also lacks evidence supporting his assertion that the alleged X users he identifies are somehow affiliated with X Corp. Finally, Plaintiff does not explain how this purported tampering had any impact on his presentation of his case.

**X Corp explicitly denies any affiliation exists and claims Plaintiff has no evidence of affiliation.**

SCREENSHOT 2: THE ORIGINAL ACCOUNT (@AntSocializer - "Mighty Mouf")



Account details visible in screenshot:
- Display name: "Mighty Mouf"
- Handle: @AntSocializer
- Verified account ✓ with X symbol (indicating X Corp affiliation)
- Joined: November 2024
- 32 Following, 30 Followers
- Status: "@AntSocializer has blocked you"

This screenshot proves:
1. Personal animus (blocking Plaintiff)
2. X Corp affiliation (verified badge with X symbol)
3. Account existed when identified in October 2 filing

SCREENSHOT 3: THE RENAMED ACCOUNT (@JohnCenaFan325 - "CenaMania")



Same account metrics proving it's the same account renamed:
- Display name: "CenaMania" (changed from "Mighty Mouf")
- Handle: @JohnCenaFan325 (changed from @AntSocializer)
- Joined: November 2024 (SAME join date)
- 32 Following, 32 Followers (SAME follower metrics)

Official "Verified account" badge stating:
- "This account is verified because it's an affiliate of @X on X"
- "This account is affiliated with X"
- "Verified since November 2024"

III. THE CONTRADICTION

X Corp's Statement to Court: "*Plaintiff lacks evidence these accounts are affiliated with X Corp*"

X Corp's Own Platform: "*This account is affiliated with X*"

**These statements cannot both be true.**


IV. HOW THE "AFFILIATED WITH X" BADGE WORKS

The "affiliated with X" verification badge cannot be obtained by:
  • Purchase
  • Public application
  • Third-party verification
  • User request

This badge can ONLY be assigned by X Corp invitation to:
  • X Corp employees
  • Official X Corp affiliates
  • Authorized X Corp representatives

According to X Corp's own verification policy, organizations pay a minimum of $1,000/month plus $50 per affiliated account to display this badge. A random 32-follower John Cena fan account created in November 2024 does not have $1,000/month to spend on X Corp verification.

The presence of this badge on @JohnCenaFan325 means X Corp assigned it—either as an employee account or as an official affiliate account.


V. VERIFICATION AVAILABLE IN 30 SECONDS

Any attorney at X Corp could have verified Plaintiff's claim by:
  1. Opening the X app
  2. Searching for @JohnCenaFan325
  3. Reading the official "affiliated with X" badge displayed on the account

Instead, three attorneys from two law firms signed their names to a statement claiming Plaintiff "lacks evidence" of affiliation while X Corp's own platform displays official affiliation status.

Either:
  1. X Corp knowingly made a false statement to this Court, or
  2. X Corp's attorneys failed to perform basic verification before making representations to this Court

## VI. THE MESSAGE THIS COURT IS SENDING

### A. What Gets Punished vs. What Gets Ignored

This Court has scolded Plaintiff for:
- Tone in filings
- Exceeding 20-page limits
- Being "disrespectful"

This Court has completely ignored X Corp's:
- Verifiable false statement about account affiliation
- Spoliation of evidence within 11 days of being identified in court filings
- Systematic renaming of employee accounts to obscure their identities
- Two-year refusal to remove copyrighted photograph
- Mathematical impossibilities in billing (112% completion rate, negative impressions)
- Failure to authenticate ANY of their own evidence while challenging Plaintiff's

### B. The Double Standard

If Plaintiff made a false statement to this Court:
- Immediate sanctions would be requested
- Motion to strike would be filed
- Court would likely punish Plaintiff sua sponte
- Rightfully so—lying to the court is serious

When X Corp makes a provably false statement:
- Three attorneys sign their names to it
- Court remains silent
- No sanctions
- No inquiry
- Plaintiff is told his tone is the problem

### C. The Hypocrisy

This Court has criticized Plaintiff's "tone" after nine months of documented fraud, systematic evidence spoliation, copyright violations, mathematical billing impossibilities, and now provable lies to this Court.

What tone should a person have after watching the Court:
- Ignore documented fraud
- Accept evidence with no authentication
- Remain silent while opposing counsel lies
- Scold the victim for being upset about it

VII. PATTERN OF MISREPRESENTATION

X Corp repeatedly characterizes Plaintiff's evidence as "screenshots from random websites" when the evidence comes from:
- X Corp's own application
- X Corp's own verification system
- X Corp's own business records
- X Corp's own advertising platform

This characterization is designed to suggest Plaintiff's evidence is unreliable when in reality it is X Corp's own official statements about account affiliation.

X Corp has now established a pattern:
- Claims Plaintiff's evidence is inadmissible (while providing no authentication of their own evidence)
- Denies accounts are affiliated (while their own system says otherwise)
- Characterizes their own platform data as "random websites"
- Spoils evidence within days of being identified in court filings
- Renames accounts to obscure their activity history

VIII. WHAT THIS COURT IS ENDORSING

By remaining silent on X Corp's false statement while scolding Plaintiff for tone, this Court sends a clear message:

Corporate defendants can lie. Pro se plaintiffs must be polite.

Substantive fraud is acceptable. Procedural tone violations are not.

Destroying evidence is fine. Exceeding page limits is not.

IX. THE QUESTIONS THIS COURT MUST ANSWER

If Plaintiff fabricated evidence, would this Court remain silent?

If Plaintiff made a materially false statement to the Court, would this Court ignore it?

If Plaintiff renamed his social media accounts to obscure evidence within days of being identified in a court filing, would this Court say nothing?

The answer to all three is obviously no.

So why does X Corp get different treatment?


X. THE COMMITMENT THAT CANNOT BE WALKED BACK

This is the first time X Corp has committed to a clear factual statement that can be definitively proven false.

Before this, everything was "insufficient information to respond" and "we don't know" and vague denials.

But on October 16, 2025, X Corp committed to a specific factual representation:

"*Plaintiff lacks evidence these accounts are affiliated with X Corp*"

X Corp's own platform proves this statement is false. Their biggest mistake was finally committing to something specific that can be verified.

There is no ambiguity. No interpretation. No "different perspectives."

X Corp lied. The Court can verify this in 30 seconds. And the Court has said nothing.


XI. THE ABSURDITY

If Plaintiff filed a motion stating "X Corp is randomly withdrawing money from my bank account—$50 here, $500 there" with no evidence, this Court would:
- Strike the motion
- Sanction Plaintiff

- Possibly refer to the bar for discipline

And rightfully so. Making false statements to the court is serious.

But when X Corp says "this account is not affiliated with us" while their own platform says "this account is affiliated with X," this Court:
- Says nothing
- Does nothing
- Scolds Plaintiff for his tone instead


XII. IF X CORP CAN DENY THIS, WHAT CAN THIS COURT RELY UPON?

If X Corp can deny that an account displaying "affiliated with X" is affiliated with X Corp, what statement can this Court rely upon?

If X Corp can make a materially false statement about something the Court can verify in 30 seconds, what else have they lied about?

If three attorneys from two major law firms can sign their names to a demonstrably false statement without consequence, what does that say about the integrity of this proceeding?


XIII. WILLFUL BLINDNESS TO VIDEO EVIDENCE

On October 17, 2025, Plaintiff submitted a video exhibit proving the account affiliation and demonstrating the "affiliated with X" badge on the renamed account.

The video was uploaded to a private link that tracks views.

As of October 23, 2025 (six days later), the video has ZERO views.

This means either:
1. This Court has not reviewed Plaintiff's evidence before ruling on X Corp's motions
2. X Corp has not reviewed Plaintiff's evidence before claiming Plaintiff "lacks evidence"
3. Both parties reviewed the brief but intentionally avoided viewing the video evidence

All three options demonstrate bad faith.

When X Corp claims Plaintiff "lacks evidence," they are either:
- Making representations without reviewing the evidence (bad faith)
- Lying about evidence they know exists but refuse to view (bad faith)

- Lying about evidence they viewed but deny exists (perjury)

When video evidence proves fraud on the court, spoliation, and material misrepresentation, it is not a "discovery dispute" subject to procedural timing rules. It is evidence of ongoing criminal conduct that must be addressed immediately.

XIV. THE PROCEDURAL REQUIREMENT THIS COURT CANNOT IGNORE

This is not legal advice. This is procedure.

Procedurally, when a party submits evidence to the Court, the Court is required to consider it or is allowed to ignore it. But the Court cannot selectively apply different procedural standards to different parties based on whether they have expensive attorneys.

If Plaintiff submits video evidence:
- Either the Court must review it, or
- The Court may ignore it

But the Court cannot:
- Review X Corp's submissions while ignoring Plaintiff's
- Scold Plaintiff for lack of evidence while refusing to view the evidence submitted
- Accept X Corp's characterization that "Plaintiff lacks evidence" without verifying whether that's true

The procedure must be applied equally. If X Corp submits unauthenticated screenshots and the Court accepts them, the Court cannot reject Plaintiff's authenticated video evidence on different standards.

XV. THE ULTIMATE GASLIGHTING: WHAT X CORP'S CAPABILITY ACTUALLY MEANS

The ability to rename accounts mid-conversation while preserving conversation history creates the ultimate gaslighting tool.

Consider what X Corp's system allows:

Scenario: User A is having a heated debate with User B (a troll account). User A becomes increasingly frustrated and eventually uses profanity or harsh language directed at User B.

X Corp then:

1. Renames User B's account
2. Changes the profile picture
3. Changes the bio to "68-year-old grandmother with cancer"
4. Changes the display name to something sympathetic

Now when anyone looks at the conversation history, it appears that User A was viciously attacking a sweet elderly cancer patient.

But User A was actually responding to a troll. The account User A was talking to literally did not exist at that time—not with that name, not with that identity, not with that presentation.

This is exactly what happened to Plaintiff:
  • Plaintiff's screenshots show interactions with @AntSocializer (Mighty Mouf)
  • X Corp renamed the account to @JohnCenaFan325 (CenaMania)
  • Now Plaintiff appears to be claiming interactions with an account that "doesn't exist"
  • X Corp uses this to argue Plaintiff's evidence is "random screenshots" from "random websites"

But the screenshots ARE real. The account existed. X Corp just changed it to make Plaintiff look crazy.


XVI. WHO KNOWS WHAT AT X CORP

Plaintiff is not suggesting that X Corp's attorneys necessarily understand all the technical capabilities of account renaming, verification badge systems, and conversation history manipulation.

But someone at X Corp does.

And when attorneys make representations to this Court about:
  • Whether accounts are affiliated
  • Whether Plaintiff has evidence
  • Whether screenshots are authentic

The attorneys have a duty to investigate with the people at X Corp who DO know before making those representations.

When three attorneys sign their names to a statement that "Plaintiff lacks evidence these accounts are affiliated with X Corp," they have a duty to:
1. Open the X app

   2. Search for the accounts Plaintiff identified
   3. Look at what badges those accounts display
   4. Ask X Corp employees how those badges are assigned

If they did none of these things before making representations to this Court, that is bad faith.

If they did these things and then lied about what they found, that is perjury.

Either way, X Corp's statement to this Court is false, and the attorneys who signed it are responsible.

XVII. X CORP'S RETALIATION: DISABLING PLAINTIFF'S AD ACCOUNT

Since the time that the Plaintiff discovered the billing fraud, X Corp disabled Plaintiff's ability to run advertising campaigns.

The reason provided:

> "Hi,
>
> Due to our ads standards, this account cannot be approved to run ads at this time. We are unable to provide further details to prevent potential misuse of our policies. Please rest assured that we have thoroughly reviewed the account and determined it to be ineligible.
>
> We apologize if this outcome is disappointing, but we hope this clarifies the situation."

**Translation:** "We have decided you cannot advertise, but we will not tell you why, because if we tell you what rule you allegedly broke, you will be able to prove you didn't break it."

This is not policy enforcement. This is arbitrary punishment with no due process.

### The Timeline Is Not Coincidental

Plaintiff proves mathematical impossibilities in billing → X Corp remains silent
Plaintiff proves employee accounts accessed campaigns → X Corp renames the accounts
Plaintiff proves spoliation and lies to the Court → X Corp disables Plaintiff's advertising

This is retaliation.

X Corp's message is clear: "If you document our fraud and file it in court, we will punish you and refuse to explain why."

### "To Prevent Potential Misuse of Our Policies"

This phrase reveals everything.

X Corp is saying: "We cannot tell you what you did wrong, because if we did, you might be able to defend yourself or prove you didn't do it."

That is not how rules work in any legitimate system.

Imagine if:
- Police arrested someone but refused to say what crime they committed "to prevent potential misuse of our laws"
- A bank froze someone's account but refused to explain why "to prevent potential misuse of our policies"
- An employer fired someone but refused to give a reason "to prevent potential misuse of our policies"

**That would be recognized as tyranny.**

Yet X Corp claims this is acceptable because they are a private company.

But when that private company is lying to federal courts, spoiling evidence, and manipulating public discourse at scale, it ceases to be a "private dispute."

### The Real Reason X Corp Disabled Plaintiff's Advertising

X Corp's punishment is not simply "you can't use our services anymore."

The punishment is: "We cannot let you prove we are stealing."

Plaintiff now knows:
- What mathematically impossible metrics look like
- How to document timestamp discrepancies
- How to capture billing for zero delivery
- How to preserve evidence of employee account access
- How to catch retroactive changes to campaign data

**If X Corp allows Plaintiff to continue advertising, Plaintiff will document every instance of fraud in real-time.**

X Corp cannot allow that.

So their solution is not to stop committing fraud.

Their solution is to stop Plaintiff from being able to prove fraud.

This is not policy enforcement. This is evidence suppression.

X Corp is not saying "you violated our terms, so you can't advertise."

X Corp is saying "you caught us stealing, so we cannot allow you to gather more evidence."

**That is obstruction.**

If a police department discovered an officer was under investigation for theft, and their response was to revoke the victim's ability to file police reports or enter the police station "to prevent potential misuse of our policies," that would be recognized as obstruction of justice.

X Corp is doing exactly that.

They know Plaintiff will catch them. They know Plaintiff documents everything. They know Plaintiff will prove ongoing fraud.

**So they disabled his ability to advertise—not because he violated any rule, but because he is too good at catching their violations.**

The message is clear: "If you are sophisticated enough to prove we are stealing from you, we will prevent you from using our services to prove it."


XVIII. IF THEY DO THIS IN FEDERAL COURT, WHAT DO THEY DO TO EVERYONE ELSE?

This Court must understand what makes this case unique—and terrifying.

X Corp is engaging in systematic evidence spoliation, account manipulation, and demonstrable lies to this Court while knowing that Plaintiff:
- Documents everything

- Files everything on PACER (public record)
- Posts everything on his website www.charterwestbank.com
- Has the sophistication to catch their manipulation
- Will preserve evidence even when it hurts him (page limits, filing order)

**X Corp knows Plaintiff catches everything. They complain about it constantly. They call him "disrespectful" for pointing it out.**

Yet they are still comfortable:
- Renaming employee accounts days after being identified in court filings
- Lying to this Court about affiliation when the truth is verifiable in 30 seconds
- Disabling Plaintiff's ad account and refusing to explain why
- Claiming screenshots from their own platform are "random websites"
- Spoiling evidence while litigation is pending

**If they do this to someone who documents everything and files it publicly in federal court, what are they doing to the millions of users who don't?**

### The Systematic Gaslighting of Regular Users

Consider what happens to a typical X user:

1. User has a heated argument with what appears to be a troll account
2. User documents the harassment, takes screenshots
3. X Corp renames or deletes the troll account
4. When user tries to report it or prove what happened:
   - The account "doesn't exist"
   - No trace it ever existed with that name
   - User appears to be making false accusations
   - User looks mentally unstable

For most users, the conversation history just shows them responding to an account that's now called something completely different—or doesn't exist at all.

**Most people don't quote the account handle in their responses like Plaintiff does.** Most people don't take screenshots of every interaction. Most people don't have the technical sophistication to preserve database evidence of User IDs.

So when X Corp manipulates the account, **there is no proof it ever existed in the first place.**

The user is left:

- Looking crazy
- Feeling crazy
- Questioning their own memory
- Questioning their perception of reality
- Isolated and depressed
- Unable to prove what happened

### The Mental Health Crisis This Enables

There is a reason social media has been connected to mental health crises, depression, isolation, and suicide.

**Part of that is X Corp's ability to engineer reality itself.**

In a physical public space—a mall, a park, a street—you cannot:
- Follow someone around screaming at them
- Harass them continuously
- Then disappear and claim it never happened
- Manipulate witnesses' memories of whether you were there
- Change your appearance retroactively so nobody recognizes you

But X Corp can do exactly that. At scale. To millions of people. Every single day.

And when the user says "I was harassed," X Corp says "we thoroughly reviewed it and determined it didn't happen."

And when the user says "but I have screenshots," X Corp says "screenshots from random websites are not admissible evidence."

**That is gaslighting at an industrial scale.**

### They Are Doing This In Front Of A Court

The most disturbing part: X Corp is doing all of this **in a federal court case, on the public record, while being watched.**

If they are this comfortable lying to a federal judge, spoiling evidence, and manipulating accounts when they KNOW Plaintiff is documenting everything and filing it publicly—

**What are they doing to people who aren't sophisticated enough to catch it?**
**Who don't have the resources to fight back?**
**Who don't have a platform to expose it?**

**Who aren't in federal court with everything on PACER?**

The answer: **Everything they are doing here, but without anyone watching.**

### This Is Not Just About Plaintiff

This case affects:
- Every X user who has been gaslit by account manipulation
- Every advertiser who has been defrauded with impossible metrics
- Every person who has been harassed and then had the evidence deleted
- Every user who questioned their own sanity because "that account doesn't exist"
- Every person whose mental health declined because they couldn't prove what happened

**That is not hundreds of people. That is millions. Potentially billions globally.**

### Breaking The Veil: Other Companies Will Be Held Accountable

When this pattern is exposed, people will start recognizing it in their own experiences across all platforms.

"Wait, that account I was arguing with last year—it doesn't exist anymore. Was I being manipulated?"

"Those impossible metrics in my Facebook ads—is that fraud too?"

"That Amazon review that disappeared—did they manipulate that?"

**Once the veil is broken for X Corp, users will demand accountability from every tech platform.**

This case opens the floodgates.

## Why This Reaches The Supreme Court

This case presents questions of national importance:

1. Can corporations manipulate reality for users and lie to federal courts with impunity?

2. Can corporations destroy evidence while litigation is pending without consequences?

3. Can corporations retaliate against users who document fraud by disabling their accounts?

4. Do users have due process rights when platforms engineer their perception of reality at scale?

5. Can platforms gaslight millions of users by retroactively changing conversation histories?

**These questions affect every American who uses social media. These questions affect billions of people globally.**

This is not a simple contract dispute about advertising terms.

This is about whether corporations can systematically manipulate reality, lie to courts, and destroy evidence without accountability.

**The Supreme Court needs to answer these questions.**

### What Other Platforms Are Doing

If X Corp does this brazenly in federal court, imagine:
- Facebook manipulating your memories by changing post histories
- Google changing search results retroactively to hide evidence
- Amazon deleting reviews and claiming they never existed
- LinkedIn changing message histories to gaslight professional disputes

**Once this pattern is proven for X Corp, the public will demand investigation of every major platform.**

This is the case that breaks the dam.


XIX. WHAT THIS MEANS

If this Court does not address X Corp's false statement by end of business October 24, 2025, then this Court is explicitly endorsing a two-tier system:

Tier 1 (Corporate Defendants): May lie with impunity
Tier 2 (Pro Se Plaintiffs): Will be punished for tone

Plaintiff will not accept this double standard.

A legal system where one party can lie about easily verifiable facts with no consequences is not a legal system at all.


## XX. RELIEF REQUESTED

Plaintiff respectfully requests:

1. Immediate sanctions against X Corp and its counsel for making materially false statements to this Court

2. Order compelling X Corp to produce authentication for ALL evidence they have submitted

3. Order compelling X Corp to explain under oath:
   a. How @JohnCenaFan325 obtained an "affiliated with X" badge
   b. Why X Corp denied affiliation when their own system confirms it
   c. Who authorized the renaming from @AntSocializer to @JohnCenaFan325

4. Adverse inference regarding ALL disputed facts due to X Corp's material misrepresentations

5. If this Court does not address X Corp's verifiable false statement by end of business October 24, 2025, Plaintiff will proceed with mandamus proceedings challenging this Court's acceptance of X Corp's materially false representations


## XXI. VERIFICATION

This is not a matter of interpretation. X Corp's platform says "affiliated with X." X Corp told the Court there is no affiliation. These statements are mutually exclusive.

The Court can verify this in 30 seconds by visiting the account @JohnCenaFan325 on X.

If X Corp can lie about something this easily verifiable, what else have they lied about?


Respectfully submitted,
Justin Riddle
402-813-2156
CERTIFICATE OF SERVICE:I hereby certify that a true and correct copy of the foregoing was served via CM/ECF on this 23rd day of October, 2025, to all counsel of record.